IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Watson Grinding and Manufacturing Co., | § | Chapter 11 |
| and Watson Valve Services, Inc. [1] | § | |
| | § | Case No. 20-30967 |
| Debtors. | § | Joint Administration Requested |
| | § | Emergency Hearing Requested |

### DEBTORS' MOTION TO COMPROMISE WITH TEXAS CAPITAL BANK, NATIONAL ASSOCIATION

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON FEBRUARY 10, 2020 AT 1:30 P.M. IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN FEBRUARY 10, 2020**

**To the Honorable Marvin Isgur, United States Bankruptcy Judge:**

Watson Grinding and Manufacturing Co. ("**Watson Grinding**") and Watson Valve Services, Inc. ("**Watson Valve**"), as debtors and debtors in possession (collectively, "**Debtors**" or the "**Company**") by and through its counsel, hereby moves the Court ("**Motion**") under sections 105(a), 363, 503, and 507 of title 11 of the United States Code (as amended, "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") for entry of an order approving the compromise described in this Motion. **While the parties have agreed to the proposed compromise, the factual recitations set forth**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Watson Grinding and Manufacturing Co. (9242) AND Watson Valve Services, Inc. (3572).

**herein are solely those of the Debtors and are not necessarily agreed to by Texas Capital Bank, National Association or any statutory committee.**  In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core-proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This Court has constitutional authority to enter a final order regarding this Motion. Requests for authority to compromise disputes under Bankruptcy Rule 9019 have no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable.  See *In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (See *Stern v. Marshall*, 564 U.S. 462 (2011)).  In the alternative, a request for authority to compromise under Bankruptcy Rule 9019 is an essential bankruptcy matter, triggering the "public rights" exception. See *Id*.

### BACKGROUND

4. On February 6, 2020 ("**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

5. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

6. Watson Grinding was founded as a small, privately-held specialty grinding shop in 1960 by James Watson in his garage.  Over the following years, Watson Grinding grew to

include a full-scale machine shop and began offering thermal spray coatings. As Watson Grinding continued to grow, it shifted its specialty to the manufacturing and service of valve and pump components used in the severe service process. It also specialized in turning and milling of alloys, hard metals, and large parts. Watson Grinding began experimenting with thermal spray coatings during the 1980s. Watson Grinding has developed and perfected high velocity oxygen fuel and ceramic coatings for applications to help prevent wear and corrosion in the severe service process. Watson Grinding has customers located around the world.

7. Watson Valve is relatively young, founded in 2002 to meet the growing needs of the severe service valve industry. Watson Valve has grown exponentially and services clients throughout the world. It specializes in the autoclaves and gold mining.

8. Texas Capital Bank, National Association ("**Texas Capital**") is a secured lender of the Debtors, holding as collateral a first-priority lien and security interest in, to, and against ("**Prepetition Liens**") all of the personal property of the Debtors, including, without limitation, accounts receivable, equipment, inventory, chattel paper, instruments, commercial tort claims, deposit accounts, documents, fixtures, general intangibles, health care insurance receivables, intellectual property, and all proceeds and products thereof, including, without limitation, insurance proceeds and any cash of the Debtors, and, all other collateral wherever located, in which Debtor now has or at any time hereafter has or acquires any right, title, or interest, and all proceeds and products thereof ("**Prepetition Collateral**"). Moreover, each of the Debtors' insurance policies covering the Prepetition Collateral names Texas Capital as the loss payee.

9. As of the Petition Date, Debtors were indebted and liable to Texas Capital without defense, counterclaim, or offset of any kind, for all of the prepetition indebtedness, comprised of the loans made by Texas Capital in the aggregate principal amount of not less than

$3,000,000.00, plus accrued and unpaid interest, indemnification obligations, fees, and expenses (including, without limitation, the reasonable and documented fees and expenses of Texas Capital's attorneys) and other obligations incurred in connection therewith, in each case in accordance with the terms of the prepetition loan documents ("**Indebtedness**").  Moreover, all amounts payable under the prepetition loan documents are now fully due and payable by the Debtors.  The Debtors are each jointly and severally indebted and liable to Texas Capital for such amounts without defense, counterclaim, or offset of any kind.

10. The Debtors have reached a settlement of all matters, which includes Texas Capital's waiver of (i) attorneys' fees and expenses and (ii) January accrued interest in exchange for a lump sum payment of $3 million from the Debtors.  This settlement will result in the Texas Capita being paid in full.  The total amount of interest and attorneys' fees being waived is $5,145.83 and approximately $30,000.00, respectively.

11. Relevant loan documents between the Debtors and Texas Capital will be presented at a hearing on this Motion.  The Debtors and their advisors have analyzed the Prepetition Liens and Indebtedness both with respect to this Motion and a cash collateral analysis.  As a result of its analysis, the Debtors have concluded that the Indebtedness is secured by valid, binding, perfected, enforceable, non-avoidable, first-priority liens and security interests in, to and against the Prepetition Collateral, and are not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind.  Moreover, there exists no basis upon which the Debtors can properly challenge or avoid the validity, enforceability, priority, or perfection of the Indebtedness or the Prepetition Liens.

**EMERGENCY RELIEF REQUESTED**

12. Emergency relief is requested. Paying off Texas Capital on or before February 14, 2020 is a condition of the settlement negotiated between the Debtors and Texas Capital. It will also have the benefit of mooting the necessity of certain cash collateral requirements.

**RELIEF REQUESTED**

13. The Debtors seek the entry of an Order approving the compromise between the Debtors and Texas Capital which includes a waiver of attorneys' fees and expenses and January accrued interest in exchange for a lump sum payment of $3 million pursuant to 11 U.S.C. § 363.

**ARGUMENT**

A. **LEGAL STANDARDS FOR APPROVAL OF THE COMPROMISE**

14. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a), which provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement[,]" grants further authority for the Court to approve the Settlement Agreement. The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims. . . .'" (quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

15. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy

court apprise itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate the complexity, expense, and likely duration of such litigation, and other factors relevant to a full and fair assessment of the claims. *In re Penn Central Transp. Co.*, 596 F.2d at 1114; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (quoting *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

16.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in Jackson Brewing); *see also In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (same).

17.     Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540. "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *In re Foster Mortgage*, 68 F.3d 914, 917 (5th Cir. 1995) (quoting *In*

re *Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

18. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the trustee. *See In re Neshaminy Office Bldg. Assoc.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

B. THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

19. **The Settlement Is in the Best Interests of Creditors.** The settlement is in the best interest of creditors. Texas Capital is a secured creditor of the Debtors with a lien on all of the Debtors' assets, including, without limitation, all insurance proceeds. Moreover, Texas Capital is listed as the loss payee on the Debtors' insurance policies. The source of funds to pay Texas Capital is insurance proceeds received by the Debtors prior to the Petition Date on account of claims made on business personal property – proceeds recovered on account of a policy under

which Texas Capital is the loss payee.

20.     The amount of accounts receivable, insurance proceeds, equipment, and cash collateral is well in excess of the debt owed to Texas Capital, which pursuant to the pre-petition loan documents and applicable provisions of the Bankruptcy Code entitles Texas Capital to post-petition interest and attorneys' fees.  If Texas Capital is paid in full, post-petition interest will no longer accrue on the debts owed to Texas Capital, and post-petition attorneys' fees will also cease to accrue.  Such a result would serve to preserve assets of the bankruptcy estates, which is a benefit to the Debtors' creditors.  Additionally, if Texas Capital is paid in full, the Debtors will be relieved of the burdens associated with obtaining authority to utilize cash collateral on an ongoing basis during the pendency of these chapter 11 cases, thereby reducing administrative expenses.

21.     The Debtors understand that this Court may be hesitant to grant the relief requested on a "first day" basis.  Accordingly, the Debtors and Texas Capital Bank have allowed for the ability for a statutory committee or other creditors to investigate and, if deemed necessary, challenge the validity of the Texas Capital's liens.  The Debtors and Texas Capital negotiated the challenge deadline on an arms-length basis.  The negotiated challenge deadline is 75 days from the entry of an order approving the relief requested in this Motion.

22.     Based on the foregoing considerations, the Debtors respectfully submit that the settlement between the Debtors and Texas Capital represents a fair and reasonable compromise that is in the best interest of the Debtors' estates, their businesses, and all parties-in-interest.

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the compromise between the Debtors and Texas Capital; and for such other and further relief as the Court deems appropriate.

DATED: February 9, 2020

                                                Respectfully submitted

                                                MCDOWELL HETHERINGTON LLP

                                                By:  /s/ Jarrod B. Martin
                                                Jarrod B. Martin
                                                Texas Bar No. 24070221
                                                Kate H. Easterling
                                                Texas Bar No. 24053257
                                                1001 Fannin Street
                                                Suite 2700
                                                Houston, TX 77002
                                                P: 713-337-5580
                                                F: 713-337-8850
                                                E: Jarrod.Martin@mhllp.com
                                                E: Kate.Easterling@mhllp.com

                                                JONES MURRAY & BEATTY LLP
                                                ERIN E. JONES (TBN 24032478)
                                                CHRISTOPHER R. MURRAY (TBN 24081057)
                                                4119 MONTROSE, SUITE 230
                                                HOUSTON, TX 77006
                                                P.: 832-529-1999
                                                F:  832-529-3393
                                                E: Erin@jmbllp.com
                                                E: Christopher.Murray@jmbllp.com

                                                ***PROPOSED COUNSEL FOR DEBTORS***

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 9, 2020 a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system. The undersigned further certifies that the foregoing Notice was served upon all parties listed on the attached Service List by no later than the next day after the filing in accordance with Bankruptcy Local Rule 9013-1(f).

/s/ Jarrod B. Martin
Jarrod B. Martin