UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Watson Grinding and Manufacturing Co., | § | Case No. 20-30967 |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |
| In re Watson Valve Services, Inc. | § | Case No. 20-30968 |
| | § | Chapter 11 |
| Debtor. | § | (Joint Administration Pending) |

**EMERGENCY MOTION OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY FOR PRELIMINARY INJUNCTION RESTRICTING ACCESS TO THE DEBTORS' FACILITY PENDING ENTRY OF A COURT ORDER SETTING FORTH PROTCOLS REGARDING SAFE ACCESS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The Texas Commission on Environmental Quality (the "TCEQ"), by and through the Office of the Attorney General of Texas, files this *Emergency Motion for Preliminary Injunction Restricting Access to the Debtors' Facility Pending Entry of a Court Order Setting Forth Protocols Regarding Safe Access* (the "Motion") and in support thereof respectfully states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (M), and (O).  The legal predicates for relief are provided by 11 U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 7065 and 9014.

## BACKGROUND

2.    On February 6, 2020 (the "Petition Date") Watson Grinding and Manufacturing Co. ("Watson Grinding") and Watson Valve Services, Inc. ("Watson Valve," together with Watson Grinding, the "Debtors") each filed voluntary petitions for relief under title 11, chapter 11 of the United States Code (the "Bankruptcy Code").  The Debtors have sought joint administration of their bankruptcy cases.

3.    Prior to the Petition Date, on January 24, 2020, there was an explosion (the "Explosion") at the Watson Grinding thermal spray coating facility (the "Facility").  The Facility is located at or about 4625 Gessner Road in Houston, Texas.  The Explosion resulted in loss of life and property damage both at the Facility, as well as in and around the nearby neighborhood.  To date, the cause of the Explosion has not been determined and various municipal, county, state, and federal authorities are conducting investigations.  The Debtors have provided further information

in the *Declaration of Robert L. White in Support of Chapter 11 Petition and First Day Motions* [Doc. No. 10] (the "First Day Declaration").

4.      On February 10, 2020, the Debtors appeared at a first day hearing in this case (the "First Day Hearing").  The TCEQ appeared at the First Day Hearing via telephone.

5.      Immediately following the First Day Hearing, the TCEQ arranged for a visit of the Facility.  On February 11, 2020, a representative of the TCEQ (the "TCEQ Representative") conducted a Facility visit, accompanied by the Houston Fire Department's HAZMAT team.  At that time, the TCEQ Representative observed that operations had ceased and further observed that the Facility appeared to be essentially untouched since the occurrence of the Explosion.  To the best of the TCEQ Representative's knowledge, there are currently tanks affixed to the Facility real estate, each separately containing propylene, liquid oxygen, argon, liquid nitrogen, and helium (collectively, the "Tanks").[1]  The Facility also includes bulk storage of acetylene, propane, and a compressed air tank in portable cylinders (the "Cylinders").  Some Cylinders are in racks while others are scattered along the ground, apparently untouched since the occurrence of the Explosion. The TCEQ Representative was advised that there are no leaks in any of the Tanks or Cylinders. In addition, **upon information and belief, no one has tested the structural integrity of the Tanks or the Cylinders since they endured a concussive wave generated by the Explosion, which was heard for miles around**.  The TCEQ Representative, in the course of attempting to determine whether the  Facility remains dangerous to life and the environment, was advised by Debtors' counsel[2] during her February 11 visit that certain of her inquiries were "outside the scope of" information the Debtors were willing to share.

---

[1] The Debtors assert that the Tanks containing nitrogen and oxygen have been found to be empty.  The TCEQ has not independently confirmed this.

[2] The TCEQ Representative was escorted through the Facility by attorney John V. McCoy of the law firm McCoy Leavitt & Laskey located in Waukesha, Wisconsin.  Mr. McCoy has represented himself as special counsel for the

6.     The very next day, on February 12, 2020, the Office of Texas Attorney General, acting on behalf of the TCEQ sent a letter to the Debtors (the "February 12 Letter").  A copy of the February 12 Letter is attached hereto as **Exhibit A**.   The February 12 Letter requested "[i]n order to protect the public health and safety and environment" that the Debtors "remove and dispose of the bulk chemicals contained at the site, including but not limited to the propylene, liquid oxygen, argon, liquid nitrogen, and helium and the acetylene, propane, and compressed air found in bulk storage."  The February 12 Letter further requested such removal by close of business on February 17, 2020 and that if the Debtors did not conduct such removal by that time, the "TCEQ will perform the removal, and will seek to recover its costs through administrative expense in the bankruptcy."

7.     There appears to be some confusion regarding the TCEQ's February 12 Letter and whether the TCEQ is seeking removal of the Tanks.  **For the avoidance of doubt, the TCEQ has not, and is not, seeking removal of the Tanks**.  Rather, the TCEQ is seeking the safe removal of the gas in the Tanks. Moreover, the TCEQ is seeking removal and storage of the Cylinders in accordance with applicable law.

8.     Following sending the February 12 Letter, the TCEQ was aware through e-mail correspondence that the Debtors had proposed a protocol whereby the Debtors would allow certain parties access to the Facility on February 18 and 19 and that the various gases would be removed from the Facility at some point, perhaps in late March.  At no time did the TCEQ agree to such a protocol.

9.     On February 14, 2020, the Court held a status conference and a hearing (the "February 14 Hearing") on the *Debtors' Emergency Motion to Establish Safety and Evidence*

---

Debtors. Other than a *Motion and Order for Admission* Pro Hac Vice [Doc. No. 16], however, no application to employ pursuant to Bankruptcy Code section 327(e) has been filed by Mr. McCoy.  For that matter, no Debtors' counsel has filed an application to employ.  At this point, it remains unclear to the TCEQ the scope of the various Debtors' counsel's authority in this case.

*Preservation Protocols* [Doc. No. 56] (the "Debtors' Emergency Motion").  The TCEQ appeared at the February14 Hearing and made clear on the record that the TCEQ did not agree with the Debtors' proposed protocol and further advised that the TCEQ remains very concerned about safety at the Facility, especially given the Debtors' apparent request to have many dozen people tour the Facility prior to the removal of the gases.  In addition, counsel for the Occupational Safety and Health Administration ("OSHA") appeared at the February 14, 2020 Hearing and advised the Court that no federal agency has determined that the Facility is safe.

10.     The Court provided parties at the February 14, 2020 Hearing with opportunities to confer to attempt to come to an agreement on a protocol for the removal of the gases.  Counsel for the TCEQ at that time was under the impression that an agreement had been reached whereby the Debtors would make every effort to remove the gases by the end of the day on February 17 and that the TCEQ would conduct such removal if the Debtors were unable to meet that deadline. Counsel for the TCEQ also made clear on the record that, for safety reasons, the TCEQ believes that the only personnel who should have access to the site are the personnel necessary for removal of the gases, together with a single independent third party who could collect samples of the gases during the removal for evidentiary preservation purposes.

11.     Following the February 14 Hearing, counsel for the TCEQ made repeated requests on counsel for the Debtors for a proposed written protocol memorializing the agreement.  Debtors' counsel never provided any such written protocol.  Rather, a number of e-mails were exchanged that eventually made clear to counsel for TCEQ that the Debtors would not meaningfully seek to limit access to the Facility.  Moreover, concerning statements were made by other counsel who have appeared in this case, including a statement: (i) that multiple personnel were flying in to tour

the Facility, (ii) questioning the need to remove gases, and (iii) questioning the TCEQ's authority

to regulate the Facility for safety and environmental purposes.[3]

12.     On February 18, 2020, the TCEQ Representative again toured the Facility to

determine what efforts the Debtors had made to comply with the TCEQ's requests.  The TCEQ

Representative was accompanied by Assistant Attorney General Abigail Ryan and by the Houston

Fire Marshal.  Such tour revealed that gas remained in the Tanks and that the Cylinders had not

been removed and further revealed **<u>dozens</u>** of people preparing to tour the Facility.

## <u>REQUESTED RELIEF AND BASIS THREFOR</u>

13.     The TCEQ requests, on an emergency basis, that this Court issue a preliminary

injunction pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rules 7065 and 9014

enjoining any party from accessing the Facility pending further order of this Court.

14.     Bankruptcy Code section 105(a) provides that the Court may "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Courts have recognized that section 105(a) provides bankruptcy courts with broad equitable

powers, so long as such powers are exercised in a manner consistent with the Bankruptcy Code.

*In re Young*, 416 Fed. Appx. 392, 398 (5th Cir. 2011) (citing *Marrama v. Citizens Bank of Mass.*,

549 U.S. 365, 374-75 (2007)).

15.     One of the principal purposes of the Bankruptcy Code is to have a central forum

for the resolution of disputes by a multitude of interested parties.  *In re Gary Aircraft Corp.*, 698

---

[3] To the extent that the TCEQ needs to justify its regulatory authority to the parties in interest in this case, a number of state statutes and regulations empower the TCEQ to take action to protect health and the environment including, without limitation, TEX. WATER CODE § 5.012 which provides that the TCEQ "is the agency of the state given primary responsibility to for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment."  *See also* TEX. WATER CODE § 26.014 and TEX. HEALTH & SAFETY CODE § 361.03 (both permitting the TCEQ to enter onto private property in conducting its regulatory duties).  In addition, the TCEQ's administrative rules, which are codified at 30 ADMIN. CODE §§ 1.1 *et seq*., "have the same force as statutes . . . ." *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).

F.2d 775, 783 (5th Cir. 1983). This case provides a classic example of the need for such a central forum where various disputes – both monetary and non-monetary – may be addressed. Specifically, this case appears to suffer from the malady of "too many cooks in the kitchen." The TCEQ initially believed that it would be able to come to a consensual agreement regarding access to the Facility. It is now perfectly clear that such resolution will not be possible without an order of the Court. This Court is empowered under Bankruptcy Code section 105(a) to enjoin parties from accessing the Facility pending the entry of such order. Such an injunction will have no negative effect on evidentiary preservation, because no party will be on site to negatively affect such evidence. Moreover, the injunction will address the TCEQ's safety concerns by keeping people away from Tanks and Cylinders that could very well be structurally compromised and therefore a clear and present danger to life and limb.[4]

16.    In addition, to the extent the Court requires additional legal authority to enter a preliminary injunction, Bankruptcy Rules 7065 and 9014 provides such authority. Bankruptcy Rule 7065(a)(1) provides that the Court may issue a preliminary injunction upon notice to the adverse party. The TCEQ has provided notice of this Motion to the Debtors and also has provided notice via the Electronic Filing System and via e-mails to all interested parties that the TCEQ has been made aware of by Debtors' counsel (see the Certificate of Service below). Moreover, while Bankruptcy Rule 7065 typically requires the filing of an adversary proceeding, Bankruptcy Rule 9014 authorizes the Court to "direct otherwise" the application of an adversary proceeding rule to a contested matter where – as here – the circumstances dictate such an application necessary and

---

[4] As stated on the record by counsel for the TCEQ at the February 14 Hearing, even if the Tanks and Cylinders are not currently leaking, no one knows if they are structurally sound. And, even if it is "inert" gas in a container, such gas under pressure can clearly cause the container to become a projectile. Given the lack of knowledge regarding the post-Explosion structural integrity, it is unacceptable to have multiple parties touring the Facility prior to the removal of the gases.

appropriate.  *See In re Ball*, 321 B.R. 711, 722 n.9 (Bankr. N.D. W.Va. 2007) ("While a motion for a preliminary injunction is ideally raised in the context of an adversary proceeding, the court has the power to made Fed. R. Bankr. P. 7065 applicable to contested matters . . . .").

17.     Preliminary injunctions issued under Rule 65 are governed by four factors.  These factors are: (i) the threat of irreparable harm that granting the injunction will cause to other parties to the litigation; (ii) the balance between the potential harm to the movant and any harm that granting the injunction will cause to other parties to the litigation; (iii) the probability that the movant will succeed on the merits; and (iv) the public interest.  *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 ,765 (5th Cir. 1995).

18.     Here, each applicable factor has been met.  No harm will come to the enjoined parties because restricted access means the evidence will not be disturbed.  Not granting the injunction will mean that an indeterminate number of parties will access the Facility when it is in a state deemed potentially unsafe by the TCEQ.  The third factor is not applicable here because the TCEQ is not seeking to litigate with the Debtors and other parties in interest.  Rather, the TCEQ is seeking entry of an order setting forth the protocol for safe removal of gas and access to the Facility, which will clearly govern the actions of parties in this case.  The fourth factor is met because it is in the public interest both to preserve evidence, while at the same time ensuring safety.

19.     For these reasons, the TCEQ seeks entry of an injunction restricting access to the Facility until such time as this Court may enter an order setting forth specific protocols for removal of the gases and safe access to the Facility.

WHEREFORE, PREMISES CONSIDERERED, the TCEQ respectfully requests that the Court: (i) enter an order enjoining any party from entering the Facility pending further order of this Court; (ii) scheduling an emergency hearing to consider an order setting forth a specific

protocol for safely accessing the Facility prior to and during removal of the gases; and (iii) granting such other and further relief to which the TCEQ may be justly entitled.

*[Remainder of the Page Intentionally Left Blank]*

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

RACHEL R. OBALDO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

/s/  *Jason B. Binford*
JASON B. BINFORD
Texas State Bar No. 24045499
Southern Dist. Bar No. 574720
ABIGAIL RYAN
Texas State Bar No. 24035956
Southern Dist. Bar No. 614700
Office of the Attorney General of Texas
P.O. Box 12548 MC008
Austin, Texas 78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409
jason.binford@oag.texas.gov
abigail.ryan@oag.texas.gov

ATTORNEYS FOR THE TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via the Court's
Electronic Filing System on all parties requesting notice in this proceeding and via electronic mail
on the parties listed on the attached service list.

/s/ *Jason B. Binford*