## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No.:  20-30967 |
| WATSON GRINDING & | § | |
| MANUFACTURING CO. | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |

## NOTICE OF SUBPOENAS

Please take notice that pursuant to Federal Rule of Civil Procedure 45(a)(4), the Official Committee of January 24 Claimants in the above-referenced case, intends to serve the Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) attached hereto as Exhibits "A" – "D" on (i) Matheson Tri-Gas, Inc., (ii) Western International Gas & Cylinder, Inc., (iii) Detcon, Inc., and (iv) 3M Company (collectively, the "Parties").  Service of the Subpoenas will take place on March 6, 2020, or as soon thereafter as service may be effectuated.  The Parties are required to produce the documents requested pursuant to the Subpoenas by March 27, 2020 at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, Attention: Aaron J. Power.

*[Remainder of page intentionally left blank]*

10479088v1

Dated:   March 6, 2020.

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Aaron J. Power*
Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
jwolfshohl@porterhedges.com
apower@porterhedges.com

**PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF JANUARY 24 CLAIMANTS**

## CERTIFICATE OF SERVICE

This will certify that on March 6, 2020, a true and correct copy of the foregoing Notice
was served via electronic transmission to all registered ECF users appearing in the case.

*/s/ Aaron J. Power*
Aaron J. Power

10479088v1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In Re: | § |
| | §    **Case No.: 20-30967** |
| **WATSON GRINDING &** | § |
| **MANUFACTURING CO.** | §    **CHAPTER 11** |
| | § |
|      Debtor. | § |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN BANKRUPTCY CASE (OR ADVERSARY
PROCEEDING)**

To:    **Matheson Tri-Gas, Inc., by and through its counsel of record, Greenberg Traurig, LLP, Attn: Karl D. Burrer, 1000 Louisiana St., Suite 1700, Houston, Texas 77002, burrerk@gtlaw.com.**

<em>(Name of person to whom this subpoena is directed)</em>

     ☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **Documents in Exhibit "1" attached.**

| Place: | Date and Time: |
|---|---|
|     Aaron J. Power, Porter Hedges LLP | |
|     1000 Main St., 36th Fl., Houston, TX 77002 | **March 27, 2020 at 5:00 p.m.** |

     ☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: \_\_\_\_\_ March 6, 2020 \_\_\_\_\_

       *CLERK OF COURT*

                                         OR

     _____            _____
           *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing **the Official Committee of the January 24 Claimants** who issues or requests this subpoena, is: ***Aaron J. Power, Porter Hedges LLP, 1000 Main St. 36th Fl., Houston, Texas 77002, apower@porterhedges.com, 713-226-6000.***

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed.R.Civ.P. 45(a)(4).

**EXHIBIT A**

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*
_____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows:
_____
_____
_____ _____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because:
_____
_____
.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of Compliance.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt.

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No.:  20-30967** |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**REQUEST FOR PRODUCTION OF DOCUMENTS**
**PURSUANT TO BANKRUPTCY RULE 2004**

**To:    Matheson Tri-Gas, Inc., by and through its counsel of record, Greenberg Traurig, LLP, Attn: Karl D. Burrer, 1000 Louisiana St., Suite 1700, Houston, Texas 77002, burrerk@gtlaw.com.**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of January 24 Claimants (the "Committee") files and serves this Request for Production of Documents on Matheson Tri-Gas, Inc. ("Matheson"). Matheson is instructed to produce for inspection and copying the documents set forth in the attached as **Exhibit 1** by no later than March 27, 2020, at 5:00 p.m. at Porter Hedges LLP, Attn: Joshua W. Wolfshohl, 1000 Main Street, 36th Floor, Houston, Texas 77002-6341 (or at such other date and time as agreed to by the parties).

10471827v1

**Dated:  March 6, 2020.**

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*

Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
jwolfshohl@porterhedges.com
apower@porterhedges.com

**PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF JANUARY 24 CLAIMANTS**

## CERTIFICATE OF SERVICE

This is to certify that on March 6, 2020, a true and correct copy of the foregoing Request for Production of Documents Pursuant to Bankruptcy Rule 2004 was served via United States mail, postage prepaid or by electronic transmission to the below parties.

Mary-Olga Lovett
Karl D. Burrer
Paul B. Kerlin
GREENBERG TRAURIG, LLP
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: BurrerK@gtlaw.com

Christopher M. LaVigne
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: LaVigneC@gtlaw.com

*/s/ Joshua W. Wolfshohl*

Joshua W. Wolfshohl

10471827v1

## EXHIBIT 1

## INSTRUCTIONS AND DEFINITIONS

1.      These document requests apply to all documents in your possession, custody or control regardless of their location, and regardless of whether such documents are held by your representatives, agents, attorneys, advisors, accountants, family members, or any other person. In searching for any documents responsive to these requests, you should also search all devices or media capable of containing electronic or magnetic data including, without limitation, hard drives of all computers used by any person with knowledge of the facts relevant to this dispute, network servers, back-up and archival storage systems, home computers, laptop computers, voice mail systems, floppy disks, removable data cartridges, and any cell phones.

2.      If any copy of any document whose production is sought is not identical to any other copy thereof, by reason of any alterations, different form (*e.g.*, electronic form), metadata or metatags, marginal notes, comments or other material contained thereon, attached thereto, or otherwise, all such non-identical copies shall be produced separately.  Such other copies include, without limitation, all revisions in electronic or magnetic format.

3.      All Documents. All documents produced must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  This format must remain consistent across all production numbers. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.  Any document that contains essential color should be produced in color.  "Essential color" is defined as color that is essential to the understanding of the document, such as the color in charts, maps, graphs, and photographs.

7

4.      <u>Hard Copy Documents</u>. For documents that only exist in hard copy and not electronic form, please produce those documents as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  The LFP and OPT load files should accurately reflect logical document breaks.  OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

5.      Fielded data for hard copy documents should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The fielded data should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Custodian
- Location
- Production Volume

6.      <u>Electronic Documents</u>. Please produce email, attachments, and loose native files as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates

8

number (e.g., ABC0000001).  Extracted text or OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

7.       Additionally, Excel files, spreadsheets, database files, audio files, video files, AutoCAD drawings, or any non-printable or unsupported file types should be produced in their native format with a linked path in the .DAT file.  A placeholder image with basic identifying information (File Name and Bates number) should be provided.  If counsel requests native files of other specific documents, opposing counsel will comply as long as the request is not overly burdensome or frivolous.

8.       Metadata for the emails and attachments should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

    The metadata fields should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Production Volume
- Media Type (i.e., Email, Attachment, Attached Email, Loose Edoc, Attached Edoc)
- Family Date (MM/DD/YYYY)
- Family Time (MM/DD/YYYY hh:mm:ss)
- Date Sent (MM/DD/YYYY)
- Time Sent (MM/DD/YYYY hh:mm:ss)
- Date Received (MM/DD/YYYY)
- Time Received (MM/DD/YYYY hh:mm:ss)
- Date Created (MM/DD/YYYY)
- Time Created (MM/DD/YYYY hh:mm:ss)
- Date Last Modified (MM/DD/YYYY)
- Time Last Modified (MM/DD/YYYY hh:mm:ss)
- Date Last Accessed  (MM/DD/YYYY)

10471827v1

- Time Last Accessed (MM/DD/YYYY hh:mm:ss)
- Author
- From
- To
- CC
- BCC
- Subject
- MsgID
- MD5Hash
- SHA1Hash
- File Size
- File Extension
- File Type
- File Name
- Original Folder or Pathway
- Application
- Attachment Count
- Attachment Titles
- Doc Title
- File/Doc Type (if different from Media)
- Custodian
- Confidential Designation
- Native Path

9.     In the event the volume of loose natives becomes excessively large and thereby exceedingly costly to process, counsel will notify opposing counsel and the parties will consider alternatives to a tiff/jpeg production.

10.     Production Media. Please provide all production deliverables on external USB drives or via FTP link.

11.     The Requests for Production specifically request electronically stored information and all meta-data associated with said electronically stored information.

12.     In producing documents, all documents which are physically attached to each other in your files shall be left so attached.  Documents shall be produced in the order in which they were maintained.

10471827v1

13.     For each document that you claim is privileged or otherwise not discoverable, provide a privilege log.

14.     If no responsive documents exist for a particular response, please so indicate by stating "none."

15.     For each Request for Production, please identify which bates-labeled documents are responsive.

## DEFINITIONS

1.      The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

2.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.      The term "Debtor" means Watson Grinding & Manufacturing Co.

4.      The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate Document within the meaning of this term.

5.      The term "including" means including but not limited to.

6.      The terms "regarding", "related to", "relate to", "relating to", "referred to", "refer to", and "referring to" mean having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

10471827v1

7.      The term "<u>You</u>" or "<u>Your</u>" means Matheson, its affiliates, subsidiaries, officers, managers, employees, or agents, or any person or entity authorized to act on behalf of Matheson.

8.      "<u>Watson Grinding</u>" means the Debtor.

12

## LIST OF REQUESTED DOCUMENTS

1.      Please produce all documents related to any and all federal, state, and local laws and ordinances which are applicable to the business operations and processes at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Matheson Tri-Gas, Inc. interaction with the same.

2.      Please produce all documents related to any and all industry standards which are applicable to the business operations and processes at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Matheson Tri-Gas, Inc. interaction with the same.

3.      Please produce all documents related to any and all state, local, and county laws and ordinances which are applicable to the construction, installation, and design of Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Matheson Tri-Gas, Inc. interaction with the same.

4.      Please produce all documents related to any and all state, local, and county laws and ordinances which were reviewed, consulted, and adhered to in the construction, installation, and design of Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Matheson Tri-Gas, Inc. interaction with the same.

5.      Please produce all documents related to any and all written operational policies and procedures, written and digital training materials, and written and digital training records for any and all operations, production activities, processes, or functional tasks that occur at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Matheson Tri-Gas, Inc. interaction with the same.

6.      Please produce all documents related to any and all written safety policies and procedures for any and all operations, production activities, processes, or functional tasks that occur at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas, and any and all written and digital training materials and records for such policies and procedures, and Matheson Tri-Gas, Inc. interaction with the same.

7.      Please produce all documents related to the construction, installation, and design of any equipment located at 4525 Gessner Rd., Houston, Texas by Matheson Tri-Gas, Inc.

8.      Please provide a copy of any and all contracts and master service agreements between Matheson Tri-Gas, Inc. and Watson Grinding for delivery of propylene that were in effect on January 24, 2020 and since January 2010.

9.      Please provide a copy of all invoices for delivery of propylene to Watson Grinding from January 2010 through January 24, 2020.

10.     Please produce all correspondence with the manufacturer of the propylene that was delivered to Watson Grinding from January 2010 through January 24, 2020.

13

11.     Please provide a copy of all invoices for delivery of flammable chemicals to Watson Grinding from January 2010 through January 24, 2020.

12.     Please provide a copy of any and all contracts and master service agreements between Matheson Tri-Gas, Inc. and Watson Grinding for monitoring and detection of the propylene storage tank, including but not limited to, usage rates, mechanical integrity of propylene piping system, leak detection and monitoring, and emergency services that were in effect on 24 January 2020.

13.     Please provide documentation of any and all services rendered to Watson Grinding from January 2010 through January 24, 2020, including but not limited to, supply of propylene, supply of flammable gases, supply of flammable liquids, monitoring and detection of flammable storage, and mechanical integrity of flammable storage piping systems.

14.     Please provide any and all documentation pertaining to the flammable chemicals supplied to Watson Grinding, including but not limited to chemical composition (liquid vs. gas), storage temperature, storage pressure, vaporization of liquid flammable chemicals, and odorization of flammable chemicals.

15.     Please provide a copy of any and all documentation outlining monitoring and detection components and systems installed at Watson Grinding that were under the operation and control of Matheson Tri-Gas, Inc. from January 2010 through January 24, 2020 for the detection and/or automatic shutoff of flammable gases.

16.     Please provide a copy of the monitoring and detection procedures utilized by Matheson Tri-Gas, Inc. for surveillance of the flammable gas storage and usage at Watson Grinding.

17.     Please provide any and all documentation for software utilized for monitoring and detection components and systems installed at Watson Grinding that were under the operation and control of Matheson Tri-Gas, Inc. from January 2010 through January 24, 2020 for the detection and/or automatic shutoff of flammable gases including, but not limited to, software name, version number, and vendor and user manuals.

18.     Please provide a copy of any and all inspection, maintenance, and repair records related to the propylene systems and all other storage tanks and piping systems in use or present at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and West International & Gas Cylinders, Inc. interaction with the same.

19.     Please produce all documents related to equipment parts and components provided by Matheson Tri-Gas, Inc. to Watson Grinding and Manufacturing Co. that were on site on January 24, 2020.

20.     Please produce all documents related to equipment parts and components replaced or repaired by Matheson Tri-Gas, Inc. from January 2010 through January 24, 2020 when the explosion occurred at Watson Grinding and Manufacturing Co.

21.     Please produce all documented related to any other supplies or equipment related to the propylene system provided by Matheson Tri-Gas,. to Watson Grinding and Manufacturing Co.

22.     Please produce all documents related to the corporate organizational structure of the company.

23.     Please produce all documents related to the safety policies and procedures of the company in regard to propylene.

24.     Please produce all documents related to the company's compliance with federal and state regulations regarding the delivery of propylene.

25.     Please produce all documents related to the duties and responsibilities of employees delivering propylene.

26.     Please produce all documents related to the company's own investigation and analysis of the hostile explosion incident.

27.     Please produce all documents related to all industry or professional organizations in which the company maintains a membership.

28.     Please produce all documents related to all industry or professional organizations in which any company employee serves as a member of.

29.     Please produce all documents related to any and all laws, regulations, codes and standards promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

30.     Please produce all documents related to any and all industry codes and standards promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

31.     Please produce all documents related to any and all standards of good care and good promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

32.     Please produce all documents related to any and all local laws that Matheson Tri-Gas, Inc. recognizes are applicable to their delivery of propylene.

33.     Please produce all documents related to all state laws that the Matheson Tri-Gas, Inc. recognizes are applicable to their delivery of propylene.

15

34.     Please produce all documents related to any and all federal laws that the Matheson Tri-Gas, Inc. recognizes are applicable to their delivery of propylene.

35.     Please produce all documents related to any and all industry codes and standards that the Matheson Tri-Gas, Inc. recognizes are applicable to their delivery of propylene.

36.     Please produce all documents related to any and all company policy and procedures that the Matheson Tri-Gas, Inc. recognizes are applicable to their delivery of propylene.

37.     Please produce all documents related to the make, model and serial number of any and all air monitoring and/or combustible gas detection equipment that was available to the company employee while delivering propylene.

38.     Please produce all documents related to the most recent certification/calibration documentation for any such air monitoring and/or combustible gas detection equipment identified above.

39.     Please produce all documents related to the immediate supervisor of the company employee who most recently delivered propylene to the involved facility.

40.     Please produce all documents related to the immediate supervisor's supervisor of the company employee who most recently delivered propylene to the involved facility.

41.     Please provide any and all documents and/or other media which represent the defendant's company policies and procedures related to propylene.

42.     Please provide complete employment file of the company employees who have delivered propylene to the involved facility since January 2010.

43.     Please provide any and all documents and/or other media which document any training received by the company employees who have delivered propylene to the involved facility since January 2010.

44.     Please provide any and all documents and/or other media in the company's possession relative to the delivery of propylene to the involved facility from January 2010 through January 24, 2020.

45.     Please provide any and all documents and/or other media in the company's possession relative to any service calls to the involved facility from January 2010 through January 24, 2020.

46.     Please provide any and all documents and/or other media in the company's possession relative to any reports of propylene gas leaks at the involved facility from January 2010 through January 24, 2020.

47.     Please provide any and all documentation relative to the corporate organizational structure of the manufacturer including any and all entities, parties or departments responsible for the design, manufacturing and marketing of the propylene utilization equipment.

16

48.     Please produce all documents related to the design and construction of the propylene utilization equipment.

49.     Please produce all documents related to the engineering changes made to the propylene utilization equipment.

50.     Please produce all documents related any and all instructions intended for Matheson Tri-Gas, Inc.

51.     Please produce all documents related to any and all revisions to any and all instructions intended for Matheson Tri-Gas, Inc.

52.     Please produce all documents related to any and all warnings intended for Matheson Tri-Gas, Inc.

53.     Please produce all documents related to any and all revisions to provide any and all warnings intended for Matheson Tri-Gas, Inc.

54.     Please produce all documents related to any and all issued listing and/or certifications by any other entity for the design, manufacturing and marketing of the propylene.

55.     Please produce all documentation that Matheson Tri-Gas, Inc. has applied for, obtained and/or maintains registration to any recognized quality management system standard such as ISO9001:2000.

56.     Please produce all documentation relative to any inquiries and/or investigations by any regulatory entity or agency relative to the propylene.

57.     Please produce any and all documentation of other similar incidents involving the propylene.

58.     Please produce any and all documentation of previous civil litigations involving the propylene.

59.     Please produce any and all documentation of previous consumer complaints involving propylene.

60.     Please produce any and all documents related to which individual within the corporate organization is responsible for environmental, health and safety issues.

61.     Please produce any and all documents related to a written environmental, health and safety policy or program.

62.     Please produce any and all documents related to customer inspections focusing on environmental, health and safety issues.

63.     Please produce all documents related to policies and procedures regarding the receipt, storage, distribution or usage of flammable gases such as propylene.

64.     Please produce all documents related to training regarding the receipt, storage, distribution or usage of flammable gases such as propylene.

65.     Please produce all documents related to training regarding any specific hazards located within the coatings building.

66.     Please produce all documentation relating to all safety measures which you provide your employees regarding the safe handling and storage of propylene.

67.     Please produce all documentation relating to all safety measures which you provide brokers, agents, transporters, distributors and end users regarding the safe handling and storage of propylene.

68.     Please produce all documents that provide all applicable state, federal, and all other regulations relating to the manufacturing, sales, transport, distribution, brokerage, storage and handling, which were used, possessed, owned, distributed, or referenced by you in the course of business from 1983 to present.

69.     Please produce copies of all contracts for transporting propylene to Watson Grinding within the past five years.

70.     Please produce all documents that evidence any discussion regarding alternative designs or materials to make propylene less volatile, less unstable or less flammable.

71.     Please produce all documents relating to any studies, papers, discussions, correspondence or testing regarding the explosiveness or detonation probability of propylene.

72.     Please produce all documents relating to the inclusion of any additives to make propylene safer for transportation, storage or handling.

73.     Please produce all documents relating to the safer transportation, storage and handling of propylene.

74.     Please produce all documents relating to the design specifications of propylene.

75.     Please produce all documents relating to the design (formula/specification) of the propylene.

10471827v1

76.    Please produce all documents relating to any alternative design/formulation used in the manufacturing of propylene.

77.    Please produce all documentation relating to the specifications and components of the propylene involved in this incident.

78.    Please produce all documents relating to the manufacture of the propylene involved in this incident.

79.    Please produce all documents relating to the chemical compounding makeup of the propylene involved in this incident.

80.    Please produce all documents relating to the formula of manufacturing propylene.

81.    Please produce all standards and regulations that you must comply with for manufacturing of propylene.

82.    Please produce all documentation relating to any other blasts, uncontrolled or accidental, and/or explosions involving propylene.

83.    Please produce all correspondence between you and any U.S. government agencies relating to propylene during the last 10 years.

84.    Please produce your organizational charts for the past five years.

85.    Please produce any and all documentation, including notes, reports, analyses, news articles, photographs, videos or audio tapes, relating to any fires, blasts, detonations and/or explosions involving propylene.

86.    Please produce any and all floor plans, blueprints, layouts, structural diagrams, architectural drawings or sketches, and schematics, and any subsequent changes or alterations made as a result of incidents involving leaks and/or explosions since 1980.

87.    Please produce all documents related to Watson Grinding since it became your customer.

88.    Please produce all documents prepared by and/or kept by you that relate to Watson Grinding and/or the Watson Grinding facility.

89.    Please produce all documents related to visits to Watson Grinding and/or the Watson Grinding facility; including visits by sales personnel.

90.    Please produce all documents related to money you spent on lobbying activity in the past ten (10) years.

91.     Please produce all documents related to money you spent on research and development of inherently safer technology in the past ten (10) years.

92.     Please produce all correspondence between you and the United States Bureau of Alcohol, Tobacco, and Firearms regarding the bureau's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

93.     Please produce all of your internal communications and correspondence relating to the United States Bureau of Alcohol, Tobacco and Firearms' investigation into the explosion that occurred at the Watson Grinding Facility on January 24, 2020.

94.     Please produce all correspondence between you and the United States Chemical Safety Board relating to the board's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

95.     Please produce all of your internal communications and correspondence relating to the United States Chemical Safety Board's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

96.     Please produce any and all correspondence between you and any manufacturer, or any documentation or requests to you from any manufacturer regarding the inspection of or verification of a customer's facility to ensure that the customer can safely and properly store and handle propylene.

97.     Please produce any and all documents relating to the inspection, by you, any manufacturer or any third party, of any customer's facility to ensure or verify that the customer can safely and properly store and handle propylene.

98.     Please produce any and all documentation relating to the inspection of Watson Grinding's facility, by you, any manufacturer or any third party, to ensure or verify that Watson Grinding could safely and properly store and handle propylene.

99.     Please produce all policies and procedures, inspections, and due diligence you performed at and/or on the Watson Grinding facility prior to selling and/or delivering any of your product(s) prior to the incident.

100.    Please produce all documents supporting your contention(s), if any, that Watson Grinding or any other third party were negligent in any way and/or contributed to the incident.

101.    Please produce all documents related to product stewardship.

102.    Please produce all documents related to American Chemical Counsel's Customer Care Program.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No.:  20-30967 |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN BANKRUPTCY CASE (OR ADVERSARY**
**PROCEEDING)**

To:    **Western International Gas & Cylinder, Inc., by and through its counsel of record, Greenberg Traurig, LLP, Attn: Karl D. Burrer, 1000 Louisiana St., Suite 1700, Houston, Texas 77002.**

*(Name of person to whom this subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **Documents in Exhibit "1" attached.**

| Place: | Date and Time: |
|---|---|
| Aaron J. Power, Porter Hedges LLP | |
| 1000 Main St., 36th Fl., Houston, TX 77002 | **March 27, 2020 at 5:00 p.m.** |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    March 6, 2020

*CLERK OF COURT*

_____    OR    _____
*Signature of Clerk or Deputy Clerk*                                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing **the Official Committee of the January 24 Claimants** who issues or requests this subpoena, is: *Aaron J. Power, Porter Hedges LLP, 1000 Main St. 36th Fl., Houston, Texas 77002, apower@porterhedges.com, 713-226-6000.*

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed.R.Civ.P. 45(a)(4).

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## EXHIBIT B

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name   of   individual   and   title,   if   any)*
_____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows:
_____
_____
_____ _____ on *(date)* _____; or

☐ I       returned       the       subpoena       unexecuted       because:
_____
_____
.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____   for   services,   for   a   total   of
$_____.

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of Compliance.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt.

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Case No.:  20-30967** |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**REQUEST FOR PRODUCTION OF DOCUMENTS**
**PURSUANT TO BANKRUPTCY RULE 2004**

**To:     Western International Gas & Cylinder, Inc., by and through its counsel of record, Greenberg Traurig, LLP, Attn: Karl D. Burrer, 1000 Louisiana St., Suite 1700, Houston, Texas 77002.**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of January 24 Claimants (the "Committee") files and serves this Request for Production of Documents on Western International Gas & Cylinder, Inc. ("Western"). Western is instructed to produce for inspection and copying the documents set forth in the attached as **Exhibit 1** by no later than March 27, 2020, at 5:00 p.m. at Porter Hedges LLP, Attn: Joshua W. Wolfshohl, 1000 Main Street, 36th Floor, Houston, Texas 77002-6341 (or at such other date and time as agreed to by the parties).

10471782v1

**Dated:  March 6, 2020.**

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
jwolfshohl@porterhedges.com
apower@porterhedges.com

**PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF JANUARY 24 CLAIMANTS**

## CERTIFICATE OF SERVICE

This is to certify that on March 6, 2020, a true and correct copy of the foregoing Request for Production of Documents Pursuant to Bankruptcy Rule 2004 was served via United States mail, postage prepaid or by electronic transmission to the below parties.

Mary-Olga Lovett
Karl D. Burrer
Paul B. Kerlin
GREENBERG TRAURIG, LLP
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: BurrerK@gtlaw.com

Christopher M. LaVigne
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: LaVigneC@gtlaw.com

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

10471782v1

**EXHIBIT 1**

**INSTRUCTIONS AND DEFINITIONS**

1.      These document requests apply to all documents in your possession, custody or control regardless of their location, and regardless of whether such documents are held by your representatives, agents, attorneys, advisors, accountants, family members, or any other person. In searching for any documents responsive to these requests, you should also search all devices or media capable of containing electronic or magnetic data including, without limitation, hard drives of all computers used by any person with knowledge of the facts relevant to this dispute, network servers, back-up and archival storage systems, home computers, laptop computers, voice mail systems, floppy disks, removable data cartridges, and any cell phones.

2.      If any copy of any document whose production is sought is not identical to any other copy thereof, by reason of any alterations, different form (*e.g.*, electronic form), metadata or metatags, marginal notes, comments or other material contained thereon, attached thereto, or otherwise, all such non-identical copies shall be produced separately.  Such other copies include, without limitation, all revisions in electronic or magnetic format.

3.      All Documents. All documents produced must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  This format must remain consistent across all production numbers. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.  Any document that contains essential color should be produced in color.  "Essential color" is defined as color that is essential to the understanding of the document, such as the color in charts, maps, graphs, and photographs.

7

4.      <u>Hard Copy Documents</u>. For documents that only exist in hard copy and not electronic form, please produce those documents as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  The LFP and OPT load files should accurately reflect logical document breaks.  OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

5.      Fielded data for hard copy documents should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The fielded data should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Custodian
- Location
- Production Volume

6.      <u>Electronic Documents</u>. Please produce email, attachments, and loose native files as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates

8

number (e.g., ABC0000001).  Extracted text or OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

7.      Additionally, Excel files, spreadsheets, database files, audio files, video files, AutoCAD drawings, or any non-printable or unsupported file types should be produced in their native format with a linked path in the .DAT file.  A placeholder image with basic identifying information (File Name and Bates number) should be provided.  If counsel requests native files of other specific documents, opposing counsel will comply as long as the request is not overly burdensome or frivolous.

8.      Metadata for the emails and attachments should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The metadata fields should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Production Volume
- Media Type (i.e., Email, Attachment, Attached Email, Loose Edoc, Attached Edoc)
- Family Date (MM/DD/YYYY)
- Family Time (MM/DD/YYYY hh:mm:ss)
- Date Sent (MM/DD/YYYY)
- Time Sent (MM/DD/YYYY hh:mm:ss)
- Date Received (MM/DD/YYYY)
- Time Received (MM/DD/YYYY hh:mm:ss)
- Date Created (MM/DD/YYYY)
- Time Created (MM/DD/YYYY hh:mm:ss)
- Date Last Modified (MM/DD/YYYY)
- Time Last Modified (MM/DD/YYYY hh:mm:ss)
- Date Last Accessed  (MM/DD/YYYY)

9

- Time Last Accessed (MM/DD/YYYY hh:mm:ss)
- Author
- From
- To
- CC
- BCC
- Subject
- MsgID
- MD5Hash
- SHA1Hash
- File Size
- File Extension
- File Type
- File Name
- Original Folder or Pathway
- Application
- Attachment Count
- Attachment Titles
- Doc Title
- File/Doc Type (if different from Media)
- Custodian
- Confidential Designation
- Native Path

9.     In the event the volume of loose natives becomes excessively large and thereby exceedingly costly to process, counsel will notify opposing counsel and the parties will consider alternatives to a tiff/jpeg production.

10.     Production Media. Please provide all production deliverables on external USB drives or via FTP link.

11.     The Requests for Production specifically request electronically stored information and all meta-data associated with said electronically stored information.

12.     In producing documents, all documents which are physically attached to each other in your files shall be left so attached.  Documents shall be produced in the order in which they were maintained.

10471782v1

13.     For each document that you claim is privileged or otherwise not discoverable, provide a privilege log.

14.     If no responsive documents exist for a particular response, please so indicate by stating "none."

15.     For each Request for Production, please identify which bates-labeled documents are responsive.

## **DEFINITIONS**

1.     The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

2.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     The term "Debtor" means Watson Grinding & Manufacturing Co.

4.     The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate Document within the meaning of this term.

5.     The term "including" means including but not limited to.

6.     The terms "regarding", "related to", "relate to", "relating to", "referred to", "refer to", and "referring to" mean having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

11

10471782v1

7.      The term "<u>You</u>" or "<u>Your</u>" means Western International Gas & Cylinders, Inc., its affiliates, subsidiaries, officers, managers, employees, or agents, or any person or entity authorized to act on behalf of Western.

8.      "<u>Watson Grinding</u>" means the Debtor.

12

## LIST OF REQUESTED DOCUMENTS

1.      Please produce all documents related to any and all federal, state, and local laws and ordinances which are applicable to the business operations and processes at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Western International Gas & Cylinders, Inc. interaction with the same.

2.      Please produce all documents related to any and all industry standards which are applicable to the business operations and processes at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Western International Gas & Cylinders, Inc. interaction with the same.

3.      Please produce all documents related to any and all state, local, and county laws and ordinances which are applicable to the construction, installation, and design of Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Western International Gas & Cylinders, Inc. interaction with the same.

4.      Please produce all documents related to any and all state, local, and county laws and ordinances which were reviewed, consulted, and adhered to in the construction, installation, and design of Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Western International Gas & Cylinders, Inc. interaction with the same.

5.      Please produce all documents related to any and all written operational policies and procedures, written and digital training materials, and written and digital training records for any and all operations, production activities, processes, or functional tasks that occur at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and Western International Gas & Cylinders, Inc. interaction with the same.

6.      Please produce all documents related to any and all written safety policies and procedures for any and all operations, production activities, processes, or functional tasks that occur at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas, and any and all written and digital training materials and records for such policies and procedures, and Western International Gas & Cylinders, Inc. interaction with the same.

7.      Please produce all documents related to the construction, installation, and design of any equipment located at 4525 Gessner Rd., Houston, Texas by Western International Gas & Cylinders, Inc.

8.      Please provide a copy of any and all contracts and master service agreements between Western International and Watson Grinding for delivery of propylene that were in effect on January 24, 2020 and since January 2010.

9.      Please provide a copy of all invoices for delivery of propylene to Watson Grinding from January 2010 through January 24, 2020.

10.     Please produce all correspondence with the manufacturer of the propylene that was delivered to Watson Grinding from January 2010 through January 24, 2020.

10471782v1

11.     Please provide a copy of all invoices for delivery of flammable chemicals to Watson Grinding from January 2010 through January 24, 2020.

12.     Please provide a copy of any and all contracts and master service agreements between Western International and Watson Grinding for monitoring and detection of the propylene storage tank, including but not limited to, usage rates, mechanical integrity of propylene piping system, leak detection and monitoring, and emergency services that were in effect on 24 January 2020.

13.     Please provide documentation of any and all services rendered to Watson Grinding from January 2010 through January 24, 2020, including but not limited to, supply of propylene, supply of flammable gases, supply of flammable liquids, monitoring and detection of flammable storage, and mechanical integrity of flammable storage piping systems.

14.     Please provide any and all documentation pertaining to the flammable chemicals supplied to Watson Grinding, including but not limited to chemical composition (liquid vs. gas), storage temperature, storage pressure, vaporization of liquid flammable chemicals, and odorization of flammable chemicals.

15.     Please provide a copy of any and all documentation outlining monitoring and detection components and systems installed at Watson Grinding that were under the operation and control of Western International from January 2010 through January 24, 2020 for the detection and/or automatic shutoff of flammable gases.

16.     Please provide a copy of the monitoring and detection procedures utilized by Western International for surveillance of the flammable gas storage and usage at Watson Grinding.

17.     Please provide any and all documentation for software utilized for monitoring and detection components and systems installed at Watson Grinding that were under the operation and control of Western International from January 2010 through January 24, 2020 for the detection and/or automatic shutoff of flammable gases including, but not limited to, software name, version number, and vendor and user manuals.

18.     Please provide a copy of any and all inspection, maintenance, and repair records related to the propylene systems and all other storage tanks and piping systems in use or present at Watson Grinding facilities located at 4525 Gessner Rd., Houston, Texas and West International & Gas Cylinders, Inc. interaction with the same.

19.     Please produce all documents related to equipment parts and components provided by Western International Gas & Cylinder, Inc. to Watson Grinding and Manufacturing Co. that were on site on January 24, 2020.

20.     Please produce all documents related to equipment parts and components replaced or repaired by Western International Gas & Cylinder, Inc. from January 2010 through January 24, 2020 when the explosion occurred at Watson Grinding and Manufacturing Co.

14

21.     Please produce all documented related to any other supplies or equipment related to the propylene system provided by Western International Gas & Cylinder, Inc. to Watson Grinding and Manufacturing Co.

22.     Please produce all documents related to the corporate organizational structure of the company.

23.     Please produce all documents related to the safety policies and procedures of the company in regard to propylene.

24.     Please produce all documents related to the company's compliance with federal and state regulations regarding the delivery of propylene.

25.     Please produce all documents related to the duties and responsibilities of employees delivering propylene.

26.     Please produce all documents related to the company's own investigation and analysis of the hostile explosion incident.

27.     Please produce all documents related to all industry or professional organizations in which the company maintains a membership.

28.     Please produce all documents related to all industry or professional organizations in which any company employee serves as a member of.

29.     Please produce all documents related to any and all laws, regulations, codes and standards promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

30.     Please produce all documents related to any and all industry codes and standards promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

31.     Please produce all documents related to any and all standards of good care and good promulgated by any entity that are applicable to the services of the company and the delivery of propylene.

32.     Please produce all documents related to any and all local laws that Western International Gas & Cylinder, Inc. recognizes are applicable to their delivery of propylene.

33.     Please produce all documents related to all state laws that the Western International Gas & Cylinder, Inc. recognizes are applicable to their delivery of propylene.

15

34.     Please produce all documents related to any and all federal laws that the Western International Gas & Cylinder, Inc. recognizes are applicable to their delivery of propylene.

35.     Please produce all documents related to any and all industry codes and standards that the Western International Gas & Cylinder, Inc. recognizes are applicable to their delivery of propylene.

36.     Please produce all documents related to any and all company policy and procedures that the Western International Gas & Cylinder, Inc. recognizes are applicable to their delivery of propylene.

37.     Please produce all documents related to the make, model and serial number of any and all air monitoring and/or combustible gas detection equipment that was available to the company employee while delivering propylene.

38.     Please produce all documents related to the most recent certification/calibration documentation for any such air monitoring and/or combustible gas detection equipment identified above.

39.     Please produce all documents related to the immediate supervisor of the company employee who most recently delivered propylene to the involved facility.

40.     Please produce all documents related to the immediate supervisor's supervisor of the company employee who most recently delivered propylene to the involved facility.

41.     Please provide any and all documents and/or other media which represent the defendant's company policies and procedures related to propylene.

42.     Please provide complete employment file of the company employees who have delivered propylene to the involved facility since January 2010.

43.     Please provide any and all documents and/or other media which document any training received by the company employees who have delivered propylene to the involved facility since January 2010.

44.     Please provide any and all documents and/or other media in the company's possession relative to the delivery of propylene to the involved facility from January 2010 through January 24, 2020.

45.     Please provide any and all documents and/or other media in the company's possession relative to any service calls to the involved facility from January 2010 through January 24, 2020.

46.     Please provide any and all documents and/or other media in the company's possession relative to any reports of propylene gas leaks at the involved facility from January 2010 through January 24, 2020.

16

10471782v1

47.     Please provide any and all documentation relative to the corporate organizational structure of the manufacturer including any and all entities, parties or departments responsible for the design, manufacturing and marketing of the propylene utilization equipment.

48.     Please produce all documents related to the design and construction of the propylene utilization equipment.

49.     Please produce all documents related to the engineering changes made to the propylene utilization equipment.


50.     Please produce all documents related any and all instructions intended for Western International Gas & Cylinder, Inc.

51.     Please produce all documents related to any and all revisions to any and all instructions intended for Western International Gas & Cylinder, Inc.

52.     Please produce all documents related to any and all warnings intended for Western International Gas & Cylinder, Inc.

53.     Please produce all documents related to any and all revisions to provide any and all warnings intended for Western International Gas & Cylinder, Inc.

54.     Please produce all documents related to any and all issued listing and/or certifications by any other entity for the design, manufacturing and marketing of the propylene.

55.     Please produce all documentation that Western International Gas & Cylinder, Inc.  has applied for, obtained and/or maintains registration to any recognized quality management system standard such as ISO9001:2000.

56.     Please produce all documentation relative to any inquiries and/or investigations by any regulatory entity or agency relative to the propylene.

57.     Please produce any and all documentation of other similar incidents involving the propylene.

58.     Please produce any and all documentation of previous civil litigations involving the propylene.

59.     Please produce any and all documentation of previous consumer complaints involving propylene.

60.     Please produce any and all documents related to which individual within the corporate organization is responsible for environmental, health and safety issues.

17

61.     Please produce any and all documents related to a written environmental, health and safety policy or program.

62.     Please produce any and all documents related to customer inspections focusing on environmental, health and safety issues.

63.     Please produce all documents related to policies and procedures regarding the receipt, storage, distribution or usage of flammable gases such as propylene.

64.     Please produce all documents related to training regarding the receipt, storage, distribution or usage of flammable gases such as propylene.

65.     Please produce all documents related to training regarding any specific hazards located within the coatings building.

66.     Please produce all documentation relating to all safety measures which you provide your employees regarding the safe handling and storage of propylene.

67.     Please produce all documentation relating to all safety measures which you provide brokers, agents, transporters, distributors and end users regarding the safe handling and storage of propylene.

68.     Please produce all documents that provide all applicable state, federal, and all other regulations relating to the manufacturing, sales, transport, distribution, brokerage, storage and handling, which were used, possessed, owned, distributed, or referenced by you in the course of business from 1983 to present.

69.     Please produce copies of all contracts for transporting propylene to Watson Grinding within the past five years.

70.     Please produce all documents that evidence any discussion regarding alternative designs or materials to make propylene less volatile, less unstable or less flammable.

71.     Please produce all documents relating to any studies, papers, discussions, correspondence or testing regarding the explosiveness or detonation probability of propylene.

72.     Please produce all documents relating to the inclusion of any additives to make propylene safer for transportation, storage or handling.

73.     Please produce all documents relating to the safer transportation, storage and handling of propylene.

18

74. Please produce all documents relating to the design specifications of propylene.

75. Please produce all documents relating to the design (formula/specification) of the propylene.

76. Please produce all documents relating to any alternative design/formulation used in the manufacturing of propylene.

77. Please produce all documentation relating to the specifications and components of the propylene involved in this incident.

78. Please produce all documents relating to the manufacture of the propylene involved in this incident.

79. Please produce all documents relating to the chemical compounding makeup of the propylene involved in this incident.

80. Please produce all documents relating to the formula of manufacturing propylene.

81. Please produce all standards and regulations that you must comply with for manufacturing of propylene.

82. Please produce all documentation relating to any other blasts, uncontrolled or accidental, and/or explosions involving propylene.

83. Please produce all correspondence between you and any U.S. government agencies relating to propylene during the last 10 years.

84. Please produce your organizational charts for the past five years.

85. Please produce any and all documentation, including notes, reports, analyses, news articles, photographs, videos or audio tapes, relating to any fires, blasts, detonations and/or explosions involving propylene.

86. Please produce any and all floor plans, blueprints, layouts, structural diagrams, architectural drawings or sketches, and schematics, and any subsequent changes or alterations made as a result of incidents involving leaks and/or explosions since 1980.

87. Please produce all documents related to Watson Grinding since it became your customer.

88. Please produce all documents prepared by and/or kept by you that relate to Watson Grinding and/or the Watson Grinding facility.

10471782v1

89.     Please produce all documents related to visits to Watson Grinding and/or the Watson Grinding facility; including visits by sales personnel.

90.     Please produce all documents related to money you spent on lobbying activity in the past ten (10) years.

91.     Please produce all documents related to money you spent on research and development of inherently safer technology in the past ten (10) years.

92.     Please produce all correspondence between you and the United States Bureau of Alcohol, Tobacco, and Firearms regarding the bureau's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

93.     Please produce all of your internal communications and correspondence relating to the United States Bureau of Alcohol, Tobacco and Firearms' investigation into the explosion that occurred at the Watson Grinding Facility on January 24, 2020.

94.     Please produce all correspondence between you and the United States Chemical Safety Board relating to the board's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

95.     Please produce all of your internal communications and correspondence relating to the United States Chemical Safety Board's investigation into the explosion that occurred at the Watson Grinding facility on January 24, 2020.

96.     Please produce any and all correspondence between you and any manufacturer, or any documentation or requests to you from any manufacturer regarding the inspection of or verification of a customer's facility to ensure that the customer can safely and properly store and handle propylene.

97.     Please produce any and all documents relating to the inspection, by you, any manufacturer or any third party, of any customer's facility to ensure or verify that the customer can safely and properly store and handle propylene.

98.     Please produce any and all documentation relating to the inspection of Watson Grinding's facility, by you, any manufacturer or any third party, to ensure or verify that Watson Grinding could safely and properly store and handle propylene.

99.     Please produce all policies and procedures, inspections, and due diligence you performed at and/or on the Watson Grinding facility prior to selling and/or delivering any of your product(s) prior to the incident.

10471782v1

100.    Please produce all documents supporting your contention(s), if any, that Watson Grinding or any other third party were negligent in any way and/or contributed to the incident.

101.    Please produce all documents related to product stewardship.

102.    Please produce all documents related to American Chemical Counsel's Customer Care Program.

21

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No.: 20-30967** |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN BANKRUPTCY CASE (OR ADVERSARY**
**PROCEEDING)**

To:   **Detcon, Inc., by and through its Registered Agent, Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.**

_____

*(Name of person to whom this subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **Documents in Exhibit "1" attached.**

| Place: | Date and Time: |
|---|---|
| Aaron J. Power, Porter Hedges LLP 1000 Main St., 36th Fl., Houston, TX 77002 | **March 27, 2020 at 5:00 p.m.** |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   March 6, 2020

    *CLERK OF COURT*

_____     OR     _____
   *Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

_____

The name, address, e-mail address, and telephone number of the attorney representing **the Official Committee of the January 24 Claimants** who issues or requests this subpoena, is: *Aaron J. Power, Porter Hedges LLP, 1000 Main St. 36th Fl., Houston, Texas 77002, apower@porterhedges.com, 713-226-6000.*

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed.R.Civ.P. 45(a)(4).

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

**EXHIBIT C**

**PROOF OF SERVICE**
***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)*
_____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows:
_____
_____
_____ _____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because:
_____
_____
.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of Compliance.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party of a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) Contempt.

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No.:  20-30967** |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**REQUEST FOR PRODUCTION OF DOCUMENTS**
**PURSUANT TO BANKRUPTCY RULE 2004**

**To:    Detcon, Inc., by and through its Registered Agent, Cogency Global Inc., 1601 Elm St.,**
**Suite 4360, Dallas, TX 75201.**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the
Official Committee of January 24 Claimants (the "Committee") files and serves this Request for
Production of Documents on Detcon, Inc. ("Detcon"). Detcon is instructed to produce for
inspection and copying the documents set forth in the attached as **Exhibit 1** by no later than March
27, 2020, at 5:00 p.m. at Porter Hedges LLP, Attn: Joshua W. Wolfshohl, 1000 Main Street, 36th
Floor, Houston, Texas 77002-6341 (or at such other date and time as agreed to by the parties).

10477424v1

**Dated:  March 6, 2020.**

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
jwolfshohl@porterhedges.com
apower@porterhedges.com

**PROPOSED COUNSEL FOR THE OFFICIAL COMMITTEE OF JANUARY 24 CLAIMANTS**

**CERTIFICATE OF SERVICE**

This is to certify that on March 6, 2020, a true and correct copy of the foregoing Request for Production of Documents Pursuant to Bankruptcy Rule 2004 was served via United States mail, postage prepaid or by electronic transmission to the below parties.

Detcon, Inc.
c/o Registered Agent, Cogency Global Inc.
1601 Elm St., Suite 4360
Dallas, TX 75201

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

6

10477424v1

**EXHIBIT 1**

**INSTRUCTIONS AND DEFINITIONS**

1.      These document requests apply to all documents in your possession, custody or control regardless of their location, and regardless of whether such documents are held by your representatives, agents, attorneys, advisors, accountants, family members, or any other person. In searching for any documents responsive to these requests, you should also search all devices or media capable of containing electronic or magnetic data including, without limitation, hard drives of all computers used by any person with knowledge of the facts relevant to this dispute, network servers, back-up and archival storage systems, home computers, laptop computers, voice mail systems, floppy disks, removable data cartridges, and any cell phones.

2.      If any copy of any document whose production is sought is not identical to any other copy thereof, by reason of any alterations, different form (*e.g.*, electronic form), metadata or metatags, marginal notes, comments or other material contained thereon, attached thereto, or otherwise, all such non-identical copies shall be produced separately.  Such other copies include, without limitation, all revisions in electronic or magnetic format.

3.      <u>All Documents</u>. All documents produced must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  This format must remain consistent across all production numbers. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.  Any document that contains essential color should be produced in color.  "Essential color" is defined as color that is essential to the understanding of the document, such as the color in charts, maps, graphs, and photographs.

7

4.     <u>Hard Copy Documents</u>. For documents that only exist in hard copy and not electronic form, please produce those documents as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  The LFP and OPT load files should accurately reflect logical document breaks.  OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

5.     Fielded data for hard copy documents should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The fielded data should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Custodian
- Location
- Production Volume

6.     <u>Electronic Documents</u>. Please produce email, attachments, and loose native files as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates

10477424v1

number (e.g., ABC0000001).  Extracted text or OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

      7.     Additionally, Excel files, spreadsheets, database files, audio files, video files, AutoCAD drawings, or any non-printable or unsupported file types should be produced in their native format with a linked path in the .DAT file.  A placeholder image with basic identifying information (File Name and Bates number) should be provided.  If counsel requests native files of other specific documents, opposing counsel will comply as long as the request is not overly burdensome or frivolous.

      8.     Metadata for the emails and attachments should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The metadata fields should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Production Volume
- Media Type (i.e., Email, Attachment, Attached Email, Loose Edoc, Attached Edoc)
- Family Date (MM/DD/YYYY)
- Family Time (MM/DD/YYYY hh:mm:ss)
- Date Sent (MM/DD/YYYY)
- Time Sent (MM/DD/YYYY hh:mm:ss)
- Date Received (MM/DD/YYYY)
- Time Received (MM/DD/YYYY hh:mm:ss)
- Date Created (MM/DD/YYYY)
- Time Created (MM/DD/YYYY hh:mm:ss)
- Date Last Modified (MM/DD/YYYY)
- Time Last Modified (MM/DD/YYYY hh:mm:ss)
- Date Last Accessed  (MM/DD/YYYY)

- Time Last Accessed (MM/DD/YYYY hh:mm:ss)
- Author
- From
- To
- CC
- BCC
- Subject
- MsgID
- MD5Hash
- SHA1Hash
- File Size
- File Extension
- File Type
- File Name
- Original Folder or Pathway
- Application
- Attachment Count
- Attachment Titles
- Doc Title
- File/Doc Type (if different from Media)
- Custodian
- Confidential Designation
- Native Path

9.      In the event the volume of loose natives becomes excessively large and thereby exceedingly costly to process, counsel will notify opposing counsel and the parties will consider alternatives to a tiff/jpeg production.

10.     Production Media. Please provide all production deliverables on external USB drives or via FTP link.

11.     The Requests for Production specifically request electronically stored information and all meta-data associated with said electronically stored information.

12.     In producing documents, all documents which are physically attached to each other in your files shall be left so attached.  Documents shall be produced in the order in which they were maintained.

10

10477424v1

13.     For each document that you claim is privileged or otherwise not discoverable, provide a privilege log.

14.     If no responsive documents exist for a particular response, please so indicate by stating "none."

15.     For each Request for Production, please identify which bates-labeled documents are responsive.

## DEFINITIONS

1.     The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

2.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     The term "Debtor" means Watson Grinding & Manufacturing Co.

4.     The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate Document within the meaning of this term.

5.     The term "including" means including but not limited to.

6.     The terms "regarding", "related to", "relate to", "relating to", "referred to", "refer to", and "referring to" mean having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

11

7.      The term "<u>You</u>" or "<u>Your</u>" means Detcon, Inc., its affiliates, subsidiaries, officers, managers, employees, or agents, or any person or entity authorized to act on behalf of Detcon, Inc..

8.      "<u>Watson Grinding</u>" means the Debtor.

9.      "<u>Watson Valve</u>" means Watson Valve Services, Inc.

12

## LIST OF REQUESTED DOCUMENTS

1.      Please produce all documents related to any and all calibration records of the gas sensors at Watson Grinding & Manufacturing and/or Watson Valve.

2.      Please produce all documents related to any and all sensors present and calibrated on the Watson Grinding & Manufacturing and/or Watson Valve.

3.      Please produce all documents related to any and all calibration records of all sensors that show the as-found and as-left conditions of the sensors Watson Grinding & Manufacturing and/or Watson Valve.

4.      Please produce all documents related to any and all applicable procedures and standards used in the calibration process.

5.      Please produce all documents related to any and all the equipment and devices used in the calibration of the gas sensors.  Including any calibration or certification documents for this equipment.

6.      Please produce all documents related to any and all the technicians that performed the calibrations of the gas sensors.

7.      Please produce all documents related to any and all repairs or replacements performed in the calibration or servicing of the gas sensors Watson Grinding & Manufacturing and/or Watson Valve.

8.      Please produce any and all documentation relative to the corporate organizational structure of the manufacturer including any and all entities, parties or departments responsible for the design, manufacturing and marketing of the gas sensors.

9.      Please produce all documents related to the design and construction of the gas sensors.

10.     Please produce all documents related to engineering changes made to the gas sensors.

11.     Please produce all documents related to the manufacturing process of the gas sensors.

12.     Please produce all documents related to supplying vendors for each and every component of the gas sensors.

13.     Please produce all documents related to the inspection and testing of the gas sensors.

14.     Please produce all documents related to the certification and listing activities with Underwriters Laboratories.

15.     Please produce all documents related to the certification and listing activities with any other similar services.

13

16.     Please produce all documents related to the quality control of the manufacturing process of the gas sensors.

17.     Please produce all documents related to the packaging of the gas sensors.

18.     Please produce all documents related to the shipping of the gas sensors.

19.     Please produce all documents related to warranty claims involving the gas sensors.

20.     Please produce all documents related to consumer complaints involving the gas sensors.

21.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Underwriters Laboratories.

22.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Underwriters Laboratories – Canada.

23.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the National Electrical Manufacturer's Association.

24.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the Canadian Standards Association.

25.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico.

26.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the Norma Oficial Mexicana.

27.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and any other certification and/or listing entity.

28.     Please produce all documents related to any and all sales literature which feature or contain the gas sensors.

29.     Please produce all documents related to any and all advertising materials which feature or contain the gas sensors.

30.     Please produce all documents related to any and all catalog sheets which feature or contain the gas sensors.

31.     Please produce all documents related to all brochures which feature or contain the gas sensors.

10477424v1

32.     Please produce all documents related to any and all price sheets which feature or contain the gas sensors.

33.     Please produce all documents related to any and all documentation of marketing efforts by the manufacturer of the gas sensors.

34.     Please produce all documents related to any and all internet web sites maintained by the manufacturer or any of its subsidiaries which contain information relative to the gas sensors.

35.     Please produce all documents related to any and all intranet sites maintained by the manufacturer or any of its subsidiaries which contain information relative to the gas sensors.

36.     Please produce all documents related to each and every country, including division by province and/or states, in which the gas sensors was marketed by the manufacturer.

37.     Please produce all documents related to each country, including division by province and/or states, in which the gas sensors were offered for sale to the consumer.

38.     Please produce all documents related to any and all reasonably foreseeable uses by the manufacturer of the gas sensors.

39.     Please produce all documents related to the reasonably foreseeable uses by the manufacturer of the gas sensors.

40.     Please produce all documents related to any and all intended environments of use by the manufacturer of the gas sensors.

41.     Please produce all documents related to any and all documentation relative to intended environments of use by the manufacturer of the gas sensors.

42.     Please produce all documents related to any and all applications which the manufacturer deems suitable for the gas sensors.

43.     Please produce all documents related to any and all applications which the manufacturer deems unsuitable for the gas sensors.

44.     Please produce all documents related to any and all reasonably foreseeable misuses by the manufacturer of the gas sensors.

45.     Please produce all documents related to any and all documentation relative to reasonably foreseeable misuses by the manufacturer of the gas sensors.

46.     Please produce all documents related to any and all life expectancy limits of the gas sensors.

47.     Please produce all documents related to any and all documentation relative to the life expectancy limits of the gas sensors.

15

48.     Please produce all documents related to any and all documentation relative to any testing conducted to determine and/or establish the life expectancy limits of the gas sensors.

49.     Please produce all documents related to any and all electrical safety hazards known to the manufacturer which are presented by the use of the gas sensors.

50.     Please produce all documents related to any and all documentation of any and all product hazard analyses of the gas sensors which were conducted relative to fire or explosion safety issues.

51.     Please produce all documents related to any and all documentation of any and all product hazard an analysis of the gas sensors which were conducted relative to any other safety issue.

52.     Please produce all documents related to any and all documentation of any and all failure mode and effect analyses of the gas sensors which were conducted relative to electrical safety issues.

53.     Please produce all documents related to any and all documentation of any and all failure mode and effect analyses of the gas sensors which were conducted relative to any other safety issues.

54.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to operational parameters.

55.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to the electrical components incorporated into its design and construction.

56.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to the flammability of combustible components incorporated into its design and construction.

57.     Please produce all documents related to any and all instructions intended for the end user of the gas sensors.

58.     Please produce all documents related to any and all revisions to any and all instructions intended for the end user of the gas sensors.

59.     Please produce all documents related to any and all warnings intended for the end user of the gas sensors.

60.     Please produce all documents related to any and all revisions to provide any and all warnings intended for the end user of the gas sensors.

61.    Please produce all documents related to any and all labels attached to or supplied with the gas sensors.

62.    Please produce all documents related to any and all revisions to any and all labels attached to or supplied with the gas sensors.

63.    Please produce all documents related to any and all imprints and/or embossing that were placed on the gas sensors during the manufacturing process.

64.    Please produce all documents related to any and all revisions to any and all imprints and/or embossing that were placed on the gas sensors during the manufacturing process.

65.    Please produce all documents related to any and all manufacturer's specifications for the design and construction of the gas sensors.

66.    Please produce all documents related to any and all engineering change orders for the design and construction of the gas sensors.

67.    Please produce all documents related to any and all manufacturer's specifications for the design and construction of any component part of the gas sensors.

68.    Please produce all documents related to all of the gas sensors' nomenclature.

69.    Please produce all documents related to the AWG gauge of any and all wiring in the gas sensors.

70.   Please produce all documents related to the strand count of any individual stranded conductors in the gas sensors.

71.   Please produce all documents related to the diameter of any individual stranded conductors in the gas sensors.

72.   Please produce all documents related to the composition of any and all wiring in the gas sensors.

73.   Please produce all documents related to any and all physical drawings of the design and construction of the gas sensors.

74.   Please produce all documents related to any and all revisions to any and all physical drawings of the design and construction of the gas sensors.

75.   Please produce all documents related to any and all engineering change orders for the design and construction of the gas sensors.

76.   Please produce all documents related to any and all revisions to any and all electronic based drawings of the design and construction of the gas sensors.

17

77.  Please produce all documents related to any and all codes and standards promulgated by any entity that are applicable to the design, manufacturing and marketing of the gas sensors.

78.  Please produce all documents related to any and all industry codes and standards promulgated by any entity that are applicable to the design, manufacturing and marketing of the gas sensors.

79.  Please produce all documents related to any and all standards of good care and good practice promulgated by any entity that are applicable to the design. manufacturing and marketing of the gas sensors.

80.  Please produce all documents related to any and all standards promulgated by the National Electrical Manufacturer's Association that are applicable to the design, manufacturing and marketing of the gas sensors.

81.  Please produce all documents related to any and all standards promulgated by Underwriter's Laboratories (UL) that are applicable to the design, manufacturing and marketing of the gas sensors.

82.  Please produce all documents related to any and all standards promulgated by Underwriter's Laboratories – Canada (ULC) that are applicable to the design, manufacturing and marketing of the gas sensors.

83.  I Please produce all documents related to any and all standards promulgated by the Canadian Standards Association (CSA) that are applicable to the design, manufacturing and marketing of the gas sensors.

84.  Please produce all documents related to any and all standards promulgated by the American National Standards Institute (ANSI) that are applicable to the design, manufacturing and marketing of the gas sensors.

85.  Please produce all documents related to any and all standards promulgated by the American Society for Testing and Materials (ASTM) that are applicable to the design, manufacturing and marketing of the gas sensors.

86.  Please produce all documents related to any and all standards promulgated by the American Gas Association (AGA) that are applicable to the design, manufacturing and marketing of the gas sensors.

87.  Please produce all documents related to any and all standards promulgated by the Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico (ANCE) that are applicable to the design, manufacturing and marketing of the gas sensors.

88.    Please produce all documents related to any and all standards promulgated by Norma Oficial Mexicana (NOM) that are applicable to the design, manufacturing and marketing of the gas sensors.

18

89.     Please produce all documents related to any and all standards promulgated by the manufacturer that are applicable to the design, manufacturing and marketing of the gas sensors.

90.     Please produce all documents related to any and all suppliers of any and all component parts of the gas sensors.

91.     Please produce all documents related to any and all changes of suppliers of any and all component parts of the gas sensors for the three (3) years preceding and three (3) years following the date of manufacture.

92.     Please produce all documents related to any and all vendors, distributors and/or wholesalers of the gas sensors.

93.     Please produce all documents related to any and all applications for patents for the design and construction of   the gas sensors.

94.   Please produce all documents related to any and all patents issued for the design and construction of the gas sensors.

95.   Please produce all documents related to any and all applications for patents for the design and construction of any component part of the gas sensors.

96.   Please produce all documents related to any and all patents issued for the design and construction of any component part of the gas sensors.

97.   Please produce all documents related to any and all applications for trademarks associated with the gas sensors.

98.   Please produce all documents related to any and all issued trademarks associated with the gas sensors.

99.   Please produce all documents related to any and all applications for Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

100. Please produce all documents related to any and all applications for Underwriter's Laboratories listings/mark usage for any component part of the gas sensors.

101. Please produce all documents related to any and all issued Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

102. Please produce all documents related to any and all issued Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

103. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing,

19

surveillance, inspection, auditing, certification, registration and accreditation relative to any such Underwriter's Laboratories listing/mark usage.

104. Please produce all documents related to any and all applications for Underwriter's Laboratories – Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

105. Please produce all documents related to any and all applications for Underwriter's Laboratories – Canada listings/mark usage for any component part of the gas sensors.

106. Please produce all documents related to any and all issued Underwriter's Laboratories - Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

107. Please produce all documents related to any and all issued Underwriter's Laboratories - Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

108. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Underwriter's Laboratories – Canada listing/mark usage.

109. Please produce all documents related to any and all applications for National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

110. Please produce all documents related to any and all applications for National Electrical Manufacturer's Association listings/mark usage for any component part of the gas sensors.

111. Please produce all documents related to any and all issued National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

112. Please produce all documents related to any and all issued National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

113. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such National Electrical Manufacturer's Association listing/mark usage.

114. Please produce all documents related to any and all applications for Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

115. Please produce all documents related to any and all applications for Canadian Standards Association listings/mark usage for any component part of the gas sensors.

116.  Please produce all documents related to any and all issued Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

117.  Please produce all documents related to any and all issued Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

118.  Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Canadian Standards listing/mark usage.

119.  Please produce all documents related to any and all applications for Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for the design, manufacturing and marketing of the gas sensors.

120.  Please produce all documents related to any and all applications for Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for any component part of the gas sensors.

121.  Please produce all documents related to any and all issued Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for the design, manufacturing and marketing of the gas sensors.

122.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listing/mark usage.

123.  Please produce all documents related to any and all applications for Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

124.  Please produce all documents related to any and all applications for Norma Oficial Mexicana listings/mark usage for any component part of the gas sensors.

125.  Please produce all documents related to any and all issued Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

126.  Please produce all documents related to any and all issued Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

127. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing,

surveillance, inspection, auditing, certification, registration and accreditation relative to any such Norma Oficial Mexicana listing/mark usage.

128.   Please produce all documents related to any and all applications for American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

129.   Please produce all documents related to any and all applications for American Gas Association listings/mark usage for any component part of the gas sensors.

130.   Please produce all documents related to any and all issued American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

131.   Please produce all documents related to any and all issued American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

132.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such American Gas Association listing/mark usage.

133.   Please produce all documents related to any and all applications for listings and/or certifications by any other entity for the design, manufacturing and marketing of the gas sensors.

134.   Please produce all documents related to any and all issued listing and/or certifications by any other entity for the design, manufacturing and marketing of the gas sensors.

135.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such other listing and/or certification.

136.   Please produce all documents related to any and all documentation that the manufacturer has applied for, obtained and/or maintains registration to any recognized quality management system standard such as ISO9001:2000.

137.   Please produce all documents related to any and all nonconformity reports, reject reports, material review board records, trend charts, customer feedback reports and any nonconformance documentation relating to the manufacture of the gas sensors.

138.   Please produce all documents related to any and all meeting minutes, emails, teleconference reports and any and all documentation relative to any and all anomalous events during the manufacture, inspection and testing of the gas sensors.

139.   Please produce all documents related to any and all technical service bulletins for the gas sensors.

22

140.   Please produce all documents related to any and all safety advisories relative to the gas sensors.

141.   Please produce all documents related any inquiries and/or investigations by any regulatory entity or agency relative to the gas sensors.

142.   Please produce all documents related to any voluntary and/or involuntary recalls relative to the gas sensors.

143.   Please produce all documents related to any other similar incidents involving the gas sensors.

144.   Please produce all documents related to any previous civil litigations involving gas sensors.

145.   Please produce all documents related to previous consumer complaints involving the gas sensors.

146.   Please produce all documents related to any and all production drawings and work aides for the gas sensors.

147.   Please produce all documents related to any and all standard operating procedures for the manufacturing of the gas sensors.

148.   Please produce all documents related to any and all process control documents for the gas sensors.

149.   Please produce all documents related to any and all assembly specifications and tolerances for the gas sensors.

150.   Please produce all documents related to any and all assembly line and/or work line instructions for the gas sensors.

151.   Please produce all documents related to any and all in-process inspections steps for the gas sensors.

152.   Please produce all documents related to any and all lot and batch controls for the gas sensors.

153.   Please produce all documents related to any and all operator training records for the manufacture of the gas sensors.

154.   Please produce all documents related to any and all production tooling for the manufacture of the gas sensors.

155.   Please produce all documents related to any and all inspection procedures for the manufacture of the gas sensors.

156.   Please produce all documents related to any and all sampling procedures for the manufacture of the gas sensors.

157.   Please produce all documents related to any and all inspection and test reports for the manufacture of the gas sensors.

158.   Please produce all documents related to any and all nonconforming materials reports for the manufacture of the gas sensors.

159.   Please produce all documents related to any and all records for disposal of, recycling of and/or re-manufacturing of the gas sensors found to be non-conforming during the manufacturing process.

160.   Please produce all documents related to all tooling and set-up specifications for the manufacturing of the gas sensors.

161.   Please produce all documents related to any and all physical locations where the gas sensors and/or any component part are or where manufactured.

162.   Please produce all documents related to any and all physical locations where the gas sensors and/or any component part are or where assembled.

163.   Please produce all documents related to specifications for the packaging of the gas sensors.

164.   Please produce all documents related to specifications for the shipping of the gas sensors.

165.   Please produce all documents related to any and all common carrier damage reports for any shipment involving the gas sensors.

166.   Please produce all documents related to any and all implied warranties by the manufacturer for the gas sensors.

167.   Please produce all documents related to any and all expressed warranties by the manufacturer for the gas sensors.

168.   Please produce all documents related to any and all implied warranties by any suppliers for any and all component parts of the gas sensors.

169.   Please produce all documents related to any and all expressed warranties by any suppliers for any and all component parts of the gas sensors.

170.   Please produce all documents related to any and all warranty claims made relative to the gas sensors.

171.   Please produce all documents related to the disposition of any and all warranty claims made relative to the gas sensors.

172.    Please produce all documents related to the manufacturer's other comparable products which could be utilized in the same or substantially similar applications.

173.    Please produce all documents related to any and all written, digital or computer-based documentation and/or data in the possession of the manufacturer which references the gas sensors or any and all component parts incorporated into its design and construction.

174.    Please produce all documents related to field notes, correspondence/communications, invoices, photos and/or videos associated with the maintenance, repair, alteration and/or testing of the gas sensors.

175.    Please produce all documents related to Watson Grinding.

176.    Please produce all documents related to Watson Valve.

177.    Please produce all documents related to Western International Gas & Cylinders, Inc.

178.    Please produce all documents related to Matheson Tri-Gas, Inc.

179.    Please produce all documents related to propylene.

25

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No.:  20-30967 |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN BANKRUPTCY CASE (OR ADVERSARY
PROCEEDING)**

To:     **3M Company, by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.**

*(Name of person to whom this subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **Documents in Exhibit "1" attached.**

| Place: | Date and Time: |
|---|---|
| Aaron J. Power, Porter Hedges LLP 1000 Main St., 36th Fl., Houston, TX 77002 | **March 27, 2020 at 5:00 p.m.** |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:____March 6, 2020____

*CLERK OF COURT*

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing **the Official Committee of the January 24 Claimants** who issues or requests this subpoena, is: *Aaron J. Power, Porter Hedges LLP, 1000 Main St. 36th Fl., Houston, Texas 77002, apower@porterhedges.com, 713-226-6000*.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed.R.Civ.P. 45(a)(4).

**EXHIBIT D**

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*
_____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows:
_____
_____
_____ _____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because:
_____
_____
.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.


I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*
_____

*Printed name and title*
_____

*Server's address*


Additional information regarding attempted service, etc.:

B2570 (Form 2570- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

(c) Place of Compliance.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) Protecting a Person Subject to a Subpoena; Enforcement.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

 (g) Contempt.

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Case No.:  20-30967** |
| **WATSON GRINDING &** | § | |
| **MANUFACTURING CO.** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**REQUEST FOR PRODUCTION OF DOCUMENTS**
**PURSUANT TO BANKRUPTCY RULE 2004**

**To:     3M Company, by and through its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of January 24 Claimants (the "Committee") files and serves this Request for Production of Documents on 3M. 3M is instructed to produce for inspection and copying the documents set forth in the attached as **Exhibit 1** by no later than March 27, 2020, at 5:00 p.m. at Porter Hedges LLP, Attn: Joshua W. Wolfshohl, 1000 Main Street, 36th Floor, Houston, Texas 77002-6341 (or at such other date and time as agreed to by the parties).

5

**Dated:  March 6, 2020.**

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6248 (fax)
jwolfshohl@porterhedges.com
apower@porterhedges.com

**PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF JANUARY 24 CLAIMANTS**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on March 6, 2020, a true and correct copy of the foregoing Request for Production of Documents Pursuant to Bankruptcy Rule 2004 was served via United States mail, postage prepaid or by electronic transmission to the below parties.

3M Company
c/o Registered Agent, Corporation Service Company
d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3136.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

10477475v1

**EXHIBIT 1**

**INSTRUCTIONS AND DEFINITIONS**

1.      These document requests apply to all documents in your possession, custody or control regardless of their location, and regardless of whether such documents are held by your representatives, agents, attorneys, advisors, accountants, family members, or any other person. In searching for any documents responsive to these requests, you should also search all devices or media capable of containing electronic or magnetic data including, without limitation, hard drives of all computers used by any person with knowledge of the facts relevant to this dispute, network servers, back-up and archival storage systems, home computers, laptop computers, voice mail systems, floppy disks, removable data cartridges, and any cell phones.

2.      If any copy of any document whose production is sought is not identical to any other copy thereof, by reason of any alterations, different form (*e.g.*, electronic form), metadata or metatags, marginal notes, comments or other material contained thereon, attached thereto, or otherwise, all such non-identical copies shall be produced separately.  Such other copies include, without limitation, all revisions in electronic or magnetic format.

3.      <u>All Documents</u>. All documents produced must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  This format must remain consistent across all production numbers. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.  Any document that contains essential color should be produced in color.  "Essential color" is defined as color that is essential to the understanding of the document, such as the color in charts, maps, graphs, and photographs.

7

4.      <u>Hard Copy Documents</u>. For documents that only exist in hard copy and not electronic form, please produce those documents as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates number (e.g., ABC000001).  The LFP and OPT load files should accurately reflect logical document breaks.  OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

5.      Fielded data for hard copy documents should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The fielded data should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Custodian
- Location
- Production Volume

6.      <u>Electronic Documents</u>. Please produce email, attachments, and loose native files as Group IV compressed single-page TIFF or JPEG images named by Bates number.  Provide standard LFP and OPT image load files with an image key containing the same image names/Bates numbers as the corresponding images.  All TIFF/JPEG images must be branded and named with a unique, consistently formatted identifier with an alpha prefix along with a fixed length Bates

8

number (e.g., ABC0000001).  Extracted text or OCR should be provided as document level text files with an LST load file or as a linked path in a delimited text file (a .DAT file).

7.      Additionally, Excel files, spreadsheets, database files, audio files, video files, AutoCAD drawings, or any non-printable or unsupported file types should be produced in their native format with a linked path in the .DAT file.  A placeholder image with basic identifying information (File Name and Bates number) should be provided.  If counsel requests native files of other specific documents, opposing counsel will comply as long as the request is not overly burdensome or frivolous.

8.      Metadata for the emails and attachments should be provided in a delimited text file with the following delimiters:

- Field separator = | (ASCII character 124) or , (ASCII character 020)
- Quote character = þ (ASCII character 254)
- Multi-entry delimiter = ; (ASCII character 059)
- Return value in data = ~ (ASCII character 126)

The metadata fields should include but not be limited to the following:

- Beg Doc
- End Doc
- Beg Attach
- End Attach
- Page Count
- Production Volume
- Media Type (i.e., Email, Attachment, Attached Email, Loose Edoc, Attached Edoc)
- Family Date (MM/DD/YYYY)
- Family Time (MM/DD/YYYY hh:mm:ss)
- Date Sent (MM/DD/YYYY)
- Time Sent (MM/DD/YYYY hh:mm:ss)
- Date Received (MM/DD/YYYY)
- Time Received (MM/DD/YYYY hh:mm:ss)
- Date Created (MM/DD/YYYY)
- Time Created (MM/DD/YYYY hh:mm:ss)
- Date Last Modified (MM/DD/YYYY)
- Time Last Modified (MM/DD/YYYY hh:mm:ss)
- Date Last Accessed  (MM/DD/YYYY)

10477475v1

- Time Last Accessed (MM/DD/YYYY hh:mm:ss)
- Author
- From
- To
- CC
- BCC
- Subject
- MsgID
- MD5Hash
- SHA1Hash
- File Size
- File Extension
- File Type
- File Name
- Original Folder or Pathway
- Application
- Attachment Count
- Attachment Titles
- Doc Title
- File/Doc Type (if different from Media)
- Custodian
- Confidential Designation
- Native Path

9.      In the event the volume of loose natives becomes excessively large and thereby exceedingly costly to process, counsel will notify opposing counsel and the parties will consider alternatives to a tiff/jpeg production.

10.      Production Media. Please provide all production deliverables on external USB drives or via FTP link.

11.      The Requests for Production specifically request electronically stored information and all meta-data associated with said electronically stored information.

12.      In producing documents, all documents which are physically attached to each other in your files shall be left so attached.  Documents shall be produced in the order in which they were maintained.

13.     For each document that you claim is privileged or otherwise not discoverable, provide a privilege log.

14.     If no responsive documents exist for a particular response, please so indicate by stating "none."

15.     For each Request for Production, please identify which bates-labeled documents are responsive.

## **DEFINITIONS**

1.     The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

2.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     The term "Debtor" means Watson Grinding & Manufacturing Co.

4.     The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate Document within the meaning of this term.

5.     The term "including" means including but not limited to.

6.     The terms "regarding", "related to", "relate to", "relating to", "referred to", "refer to", and "referring to" mean having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

11

7.      The term "<u>You</u>" or "<u>Your</u>" means 3M, its affiliates, subsidiaries, officers, managers, employees, or agents, or any person or entity authorized to act on behalf of 3M.

8.      "<u>Watson Grinding</u>" means the Debtor.

9.      "<u>Watson Valve</u>" means Watson Valve Services, Inc.

10477475v1

## LIST OF REQUESTED DOCUMENTS

1.      Please produce all documents related to any and all calibration records of the gas sensors at Watson Grinding & Manufacturing and/or Watson Valve.

2.      Please produce all documents related to any and all sensors present and calibrated on the Watson Grinding & Manufacturing and/or Watson Valve.

3.      Please produce all documents related to any and all calibration records of all sensors that show the as-found and as-left conditions of the sensors Watson Grinding & Manufacturing and/or Watson Valve.

4.      Please produce all documents related to any and all applicable procedures and standards used in the calibration process.

5.      Please produce all documents related to any and all the equipment and devices used in the calibration of the gas sensors.  Including any calibration or certification documents for this equipment.

6.      Please produce all documents related to any and all the technicians that performed the calibrations of the gas sensors.

7.      Please produce all documents related to any and all repairs or replacements performed in the calibration or servicing of the gas sensors Watson Grinding & Manufacturing and/or Watson Valve.

8.      Please produce any and all documentation relative to the corporate organizational structure of the manufacturer including any and all entities, parties or departments responsible for the design, manufacturing and marketing of the gas sensors.

9.      Please produce all documents related to the design and construction of the gas sensors.

10.      Please produce all documents related to engineering changes made to the gas sensors.

11.      Please produce all documents related to the manufacturing process of the gas sensors.

12.      Please produce all documents related to supplying vendors for each and every component of the gas sensors.

13.      Please produce all documents related to the inspection and testing of the gas sensors.

14.      Please produce all documents related to the certification and listing activities with Underwriters Laboratories.

15.      Please produce all documents related to the certification and listing activities with any other similar services.

10477475v1

16.     Please produce all documents related to the quality control of the manufacturing process of the gas sensors.

17.     Please produce all documents related to the packaging of the gas sensors.

18.     Please produce all documents related to the shipping of the gas sensors.

19.     Please produce all documents related to warranty claims involving the gas sensors.

20.     Please produce all documents related to consumer complaints involving the gas sensors.

21.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Underwriters Laboratories.

22.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Underwriters Laboratories – Canada.

23.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the National Electrical Manufacturer's Association.

24.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the Canadian Standards Association.

25.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico.

26.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and the Norma Oficial Mexicana.

27.     Please produce all documents related to the liaison between the manufacturer of the gas sensors and any other certification and/or listing entity.

28.     Please produce all documents related to any and all sales literature which feature or contain the gas sensors.

29.     Please produce all documents related to any and all advertising materials which feature or contain the gas sensors.

30.     Please produce all documents related to any and all catalog sheets which feature or contain the gas sensors.

31.     Please produce all documents related to all brochures which feature or contain the gas sensors.

32.     Please produce all documents related to any and all price sheets which feature or contain the gas sensors.

33.     Please produce all documents related to any and all documentation of marketing efforts by the manufacturer of the gas sensors.

34.     Please produce all documents related to any and all internet web sites maintained by the manufacturer or any of its subsidiaries which contain information relative to the gas sensors.

35.     Please produce all documents related to any and all intranet sites maintained by the manufacturer or any of its subsidiaries which contain information relative to the gas sensors.

36.     Please produce all documents related to each and every country, including division by province and/or states, in which the gas sensors was marketed by the manufacturer.

37.     Please produce all documents related to each country, including division by province and/or states, in which the gas sensors were offered for sale to the consumer.

38.     Please produce all documents related to any and all reasonably foreseeable uses by the manufacturer of the gas sensors.

39.     Please produce all documents related to the reasonably foreseeable uses by the manufacturer of the gas sensors.

40.     Please produce all documents related to any and all intended environments of use by the manufacturer of the gas sensors.

41.     Please produce all documents related to any and all documentation relative to intended environments of use by the manufacturer of the gas sensors.

42.     Please produce all documents related to any and all applications which the manufacturer deems suitable for the gas sensors.

43.     Please produce all documents related to any and all applications which the manufacturer deems unsuitable for the gas sensors.

44.     Please produce all documents related to any and all reasonably foreseeable misuses by the manufacturer of the gas sensors.

45.     Please produce all documents related to any and all documentation relative to reasonably foreseeable misuses by the manufacturer of the gas sensors.

46.     Please produce all documents related to any and all life expectancy limits of the gas sensors.

47.     Please produce all documents related to any and all documentation relative to the life expectancy limits of the gas sensors.

48.     Please produce all documents related to any and all documentation relative to any testing conducted to determine and/or establish the life expectancy limits of the gas sensors.

49.     Please produce all documents related to any and all electrical safety hazards known to the manufacturer which are presented by the use of the gas sensors.

50.     Please produce all documents related to any and all documentation of any and all product hazard analyses of the gas sensors which were conducted relative to fire or explosion safety issues.

51.     Please produce all documents related to any and all documentation of any and all product hazard an analysis of the gas sensors which were conducted relative to any other safety issue.

52.     Please produce all documents related to any and all documentation of any and all failure mode and effect analyses of the gas sensors which were conducted relative to electrical safety issues.

53.     Please produce all documents related to any and all documentation of any and all failure mode and effect analyses of the gas sensors which were conducted relative to any other safety issues.

54.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to operational parameters.

55.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to the electrical components incorporated into its design and construction.

56.     Please produce all documents related to any and all testing and/or analysis of the gas sensors relative to the flammability of combustible components incorporated into its design and construction.

57.     Please produce all documents related to any and all instructions intended for the end user of the gas sensors.

58.     Please produce all documents related to any and all revisions to any and all instructions intended for the end user of the gas sensors.

59.     Please produce all documents related to any and all warnings intended for the end user of the gas sensors.

60.     Please produce all documents related to any and all revisions to provide any and all warnings intended for the end user of the gas sensors.

61.     Please produce all documents related to any and all labels attached to or supplied with the gas sensors.

62.     Please produce all documents related to any and all revisions to any and all labels attached to or supplied with the gas sensors.

63.     Please produce all documents related to any and all imprints and/or embossing that were placed on the gas sensors during the manufacturing process.

64.     Please produce all documents related to any and all revisions to any and all imprints and/or embossing that were placed on the gas sensors during the manufacturing process.

65.     Please produce all documents related to any and all manufacturer's specifications for the design and construction of the gas sensors.

66.     Please produce all documents related to any and all engineering change orders for the design and construction of the gas sensors.

67.     Please produce all documents related to any and all manufacturer's specifications for the design and construction of any component part of the gas sensors.

68.     Please produce all documents related to all of the gas sensors' nomenclature.

69.     Please produce all documents related to the AWG gauge of any and all wiring in the gas sensors.

70.   Please produce all documents related to the strand count of any individual stranded conductors in the gas sensors.

71.   Please produce all documents related to the diameter of any individual stranded conductors in the gas sensors.

72.   Please produce all documents related to the composition of any and all wiring in the gas sensors.

73.   Please produce all documents related to any and all physical drawings of the design and construction of the gas sensors.

74.   Please produce all documents related to any and all revisions to any and all physical drawings of the design and construction of the gas sensors.

75.   Please produce all documents related to any and all engineering change orders for the design and construction of the gas sensors.

76.   Please produce all documents related to any and all revisions to any and all electronic based drawings of the design and construction of the gas sensors.

17

77.  Please produce all documents related to any and all codes and standards promulgated by any entity that are applicable to the design, manufacturing and marketing of the gas sensors.

78.  Please produce all documents related to any and all industry codes and standards promulgated by any entity that are applicable to the design, manufacturing and marketing of the gas sensors.

79.  Please produce all documents related to any and all standards of good care and good practice promulgated by any entity that are applicable to the design. manufacturing and marketing of the gas sensors.

80.  Please produce all documents related to any and all standards promulgated by the National Electrical Manufacturer's Association that are applicable to the design, manufacturing and marketing of the gas sensors.

81.  Please produce all documents related to any and all standards promulgated by Underwriter's Laboratories (UL) that are applicable to the design, manufacturing and marketing of the gas sensors.

82.  Please produce all documents related to any and all standards promulgated by Underwriter's Laboratories – Canada (ULC) that are applicable to the design, manufacturing and marketing of the gas sensors.

83.  I Please produce all documents related to any and all standards promulgated by the Canadian Standards Association (CSA) that are applicable to the design, manufacturing and marketing of the gas sensors.

84.  Please produce all documents related to any and all standards promulgated by the American National Standards Institute (ANSI) that are applicable to the design, manufacturing and marketing of the gas sensors.

85.  Please produce all documents related to any and all standards promulgated by the American Society for Testing and Materials (ASTM) that are applicable to the design, manufacturing and marketing of the gas sensors.

86.  Please produce all documents related to any and all standards promulgated by the American Gas Association (AGA) that are applicable to the design, manufacturing and marketing of the gas sensors.

87.  Please produce all documents related to any and all standards promulgated by the Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico (ANCE) that are applicable to the design, manufacturing and marketing of the gas sensors.

88.    Please produce all documents related to any and all standards promulgated by Norma Oficial Mexicana (NOM) that are applicable to the design, manufacturing and marketing of the gas sensors.

18

89.     Please produce all documents related to any and all standards promulgated by the manufacturer that are applicable to the design, manufacturing and marketing of the gas sensors.

90.     Please produce all documents related to any and all suppliers of any and all component parts of the gas sensors.

91.     Please produce all documents related to any and all changes of suppliers of any and all component parts of the gas sensors for the three (3) years preceding and three (3) years following the date of manufacture.

92.     Please produce all documents related to any and all vendors, distributors and/or wholesalers of the gas sensors.

93.     Please produce all documents related to any and all applications for patents for the design and construction of   the gas sensors.

94.   Please produce all documents related to any and all patents issued for the design and construction of the gas sensors.

95.   Please produce all documents related to any and all applications for patents for the design and construction of any component part of the gas sensors.

96.   Please produce all documents related to any and all patents issued for the design and construction of any component part of the gas sensors.

97.   Please produce all documents related to any and all applications for trademarks associated with the gas sensors.

98.   Please produce all documents related to any and all issued trademarks associated with the gas sensors.

99.   Please produce all documents related to any and all applications for Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

100. Please produce all documents related to any and all applications for Underwriter's Laboratories listings/mark usage for any component part of the gas sensors.

101. Please produce all documents related to any and all issued Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

102. Please produce all documents related to any and all issued Underwriter's Laboratories listings/mark usage for the design, manufacturing and marketing of the gas sensors.

103. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing,

19

surveillance, inspection, auditing, certification, registration and accreditation relative to any such Underwriter's Laboratories listing/mark usage.

104. Please produce all documents related to any and all applications for Underwriter's Laboratories – Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

105. Please produce all documents related to any and all applications for Underwriter's Laboratories – Canada listings/mark usage for any component part of the gas sensors.

106. Please produce all documents related to any and all issued Underwriter's Laboratories - Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

107. Please produce all documents related to any and all issued Underwriter's Laboratories - Canada listings/mark usage for the design, manufacturing and marketing of the gas sensors.

108. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Underwriter's Laboratories – Canada listing/mark usage.

109. Please produce all documents related to any and all applications for National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

110. Please produce all documents related to any and all applications for National Electrical Manufacturer's Association listings/mark usage for any component part of the gas sensors.

111. Please produce all documents related to any and all issued National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

112. Please produce all documents related to any and all issued National Electrical Manufacturer's Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

113. Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such National Electrical Manufacturer's Association listing/mark usage.

114. Please produce all documents related to any and all applications for Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

115. Please produce all documents related to any and all applications for Canadian Standards Association listings/mark usage for any component part of the gas sensors.

116.  Please produce all documents related to any and all issued Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

117.  Please produce all documents related to any and all issued Canadian Standards Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

118.  Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Canadian Standards listing/mark usage.

119.  Please produce all documents related to any and all applications for Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for the design, manufacturing and marketing of the gas sensors.

120.  Please produce all documents related to any and all applications for Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for any component part of the gas sensors.

121.  Please produce all documents related to any and all issued Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listings/mark usage for the design, manufacturing and marketing of the gas sensors.

122.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such Asociacion Nacional de Normalizacaion y Certificacion del Sector Electrico listing/mark usage.

123.  Please produce all documents related to any and all applications for Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

124.  Please produce all documents related to any and all applications for Norma Oficial Mexicana listings/mark usage for any component part of the gas sensors.

125.  Please produce all documents related to any and all issued Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

126.  Please produce all documents related to any and all issued Norma Oficial Mexicana listings/mark usage for the design, manufacturing and marketing of the gas sensors.

127.  Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing,

21

surveillance, inspection, auditing, certification, registration and accreditation relative to any such Norma Oficial Mexicana listing/mark usage.

128.   Please produce all documents related to any and all applications for American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

129.   Please produce all documents related to any and all applications for American Gas Association listings/mark usage for any component part of the gas sensors.

130.   Please produce all documents related to any and all issued American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

131.   Please produce all documents related to any and all issued American Gas Association listings/mark usage for the design, manufacturing and marketing of the gas sensors.

132.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such American Gas Association listing/mark usage.

133.   Please produce all documents related to any and all applications for listings and/or certifications by any other entity for the design, manufacturing and marketing of the gas sensors.

134.   Please produce all documents related to any and all issued listing and/or certifications by any other entity for the design, manufacturing and marketing of the gas sensors.

135.   Please produce all documents related to any and all documents, correspondence, process records, checklists, test reports, manufacturing procedures, work instructions, inspection procedures, lot and batch records, quality manuals and quality procedures related to testing, surveillance, inspection, auditing, certification, registration and accreditation relative to any such other listing and/or certification.

136.   Please produce all documents related to any and all documentation that the manufacturer has applied for, obtained and/or maintains registration to any recognized quality management system standard such as ISO9001:2000.

137.   Please produce all documents related to any and all nonconformity reports, reject reports, material review board records, trend charts, customer feedback reports and any nonconformance documentation relating to the manufacture of the gas sensors.

138.   Please produce all documents related to any and all meeting minutes, emails, teleconference reports and any and all documentation relative to any and all anomalous events during the manufacture, inspection and testing of the gas sensors.

139.   Please produce all documents related to any and all technical service bulletins for the gas sensors.

140.   Please produce all documents related to any and all safety advisories relative to the gas sensors.

141.   Please produce all documents related any inquiries and/or investigations by any regulatory entity or agency relative to the gas sensors.

142.   Please produce all documents related to any voluntary and/or involuntary recalls relative to the gas sensors.

143.   Please produce all documents related to any other similar incidents involving the gas sensors.

144.   Please produce all documents related to any previous civil litigations involving the gas sensors.

145.   Please produce all documents related to previous consumer complaints involving the gas sensors.

146.   Please produce all documents related to any and all production drawings and work aides for the gas sensors.

147.   Please produce all documents related to any and all standard operating procedures for the manufacturing of the gas sensors.

148.   Please produce all documents related to any and all process control documents for the gas sensors.

149.   Please produce all documents related to any and all assembly specifications and tolerances for the gas sensors.

150.   Please produce all documents related to any and all assembly line and/or work line instructions for the gas sensors.

151.   Please produce all documents related to any and all in-process inspections steps for the gas sensors.

152.   Please produce all documents related to any and all lot and batch controls for the gas sensors.

153.   Please produce all documents related to any and all operator training records for the manufacture of the gas sensors.

154.   Please produce all documents related to any and all production tooling for the manufacture of the gas sensors.

155.   Please produce all documents related to any and all inspection procedures for the manufacture of the gas sensors.

23

156.   Please produce all documents related to any and all sampling procedures for the manufacture of the gas sensors.

157.   Please produce all documents related to any and all inspection and test reports for the manufacture of the gas sensors.

158.   Please produce all documents related to any and all nonconforming materials reports for the manufacture of the gas sensors.

159.   Please produce all documents related to any and all records for disposal of, recycling of and/or re-manufacturing of the gas sensors found to be non-conforming during the manufacturing process.

160.   Please produce all documents related to all tooling and set-up specifications for the manufacturing of the gas sensors.

161.   Please produce all documents related to any and all physical locations where the gas sensors and/or any component part are or where manufactured.

162.   Please produce all documents related to any and all physical locations where the gas sensors and/or any component part are or where assembled.

163.   Please produce all documents related to specifications for the packaging of the gas sensors.

164.   Please produce all documents related to specifications for the shipping of the gas sensors.

165.   Please produce all documents related to any and all common carrier damage reports for any shipment involving the gas sensors.

166.   Please produce all documents related to any and all implied warranties by the manufacturer for the gas sensors.

167.   Please produce all documents related to any and all expressed warranties by the manufacturer for the gas sensors.

168.   Please produce all documents related to any and all implied warranties by any suppliers for any and all component parts of the gas sensors.

169.   Please produce all documents related to any and all expressed warranties by any suppliers for any and all component parts of the gas sensors.

170.   Please produce all documents related to any and all warranty claims made relative to the gas sensors.

171.   Please produce all documents related to the disposition of any and all warranty claims made relative to the gas sensors.

24

172.    Please produce all documents related to the manufacturer's other comparable products which could be utilized in the same or substantially similar applications.

173.    Please produce all documents related to any and all written, digital or computer-based documentation and/or data in the possession of the manufacturer which references the gas sensors or any and all component parts incorporated into its design and construction.

174.    Please produce all documents related to field notes, correspondence/communications, invoices, photos and/or videos associated with the maintenance, repair, alteration and/or testing of the gas sensors.

175.    Please produce all documents related to Watson Grinding & Manufacturing.

176.    Please produce all documents related to Watson Valve Services Inc.

177.    Please produce all documents related to Western International Gas & Cylinders, Inc.

178.    Please produce all documents related to Matheson Tri-Gas, Inc.

179.    Please produce all documents related to propylene.

10477475v1