IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Watson Grinding and Manufacturing Co.** | § | |
| | § | **Case No. 20-30967** |
| Debtor. | § | **Chapter 11** |

**KMHJ LTD'S REPLY TO THE COMMITTEE'S RESPONSES OPPOSING
KMHJ, LTD'S EXPEDITED MOTION FOR ORDER DIRECTING PAYMENT
OF PROPERTY DAMAGE INSURANCE PROCEEDS SOLELY TO KMHJ, LTD.
FOR PROPERTY DAMAGE BUILDINGS 1 AND 3 OWNED SOLELY BY KMHJ, LTD.**
[Relates to Dkt. 160, 252, 324, 344 and 349]

**TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:**

KMHJ, Ltd. ("KMHJ") files this Reply to the Committee's June 11, 2020 Supplemental Response in Opposition to the Motion ("Supp. Response") [Dkt. 344] and the Committee's April 24, 2020 first Response in Opposition to the Motion ("Orig. Response) [Dkt. 252][1], and submits the legal arguments stated herein to support KMHJ's Motion as amended [Dkt. 160 and 349].

**SUMMARY OF BASIC FACTS**

- There are eight buildings comprising the campus of Debtor's business operations ("Watson Campus"). Buildings 1 and 3 including the land on which the buildings are located are wholly owned by KMHJ (collectively the "Properties"). *See* **Exhibits 3 and 10**.

- The Debtor, Watson Grinding and Manufacturing Co. ("Debtor" or "WGM"), as tenant, never had any ownership interest in the Properties.

- WGM, as the Tenant, provided property damage and liability insurance for the Properties. The terms of the 10-year lease between Debtor and KMHJ, effective January 1, 2019 ("Lease") required WGM to provide such coverage. *See* Lease, § 15, **Exhibit 13**.

---

[1] The Committee has advised that it has withdrawn the arguments contained in its Orig. Response regarding a sham relationship between Debtor and KMHJ. [Dkt. 354, ¶ 6, top of page 3].

- Buildings 1 and 3 were essentially destroyed by the January 24, 2020 explosion within another building occupied by Debtor's business operations adjacent to the Properties.

- The Debtor's insurance provider, United Fire Group ("United Fire"), has determined that under the Commercial Insurance Policy issued to WGM by United Fire, Policy No. 85319121 (the "Policy"), property damage insurance proceeds attributable to Buildings 1 and 2 is $2,686,087.50 ("Proceeds").  United Fire has offered to pay the Proceeds subject to further Order of this Court. *See* email of June 11, 2020, from attorney for United Fire, **Exhibit C-1** filed herewith and with the Amended Motion (Dkt. 349).  In early May, 2020, United Fire deposited $2,112,000 of the Proceeds into the Registry of the Court. (Dkt. 257).

- On or about January 28, 2020, shortly after the explosion, Kelly Watson, in her capacity as the Managing Member of the General Partner of KMHJ, called WGM's insurance agent, Mark Thurmond, to confirm that KMHJ had liability and property damage coverage under WGM's Policy.  She also called the United Fire adjuster, Patrick Peden, as recommended to her by Mark Thurmond to make the same inquiry.

- As a result of the telephone inquiries by KMHJ, both the insurance agent and United Fire began an investigation regarding the property damage provisions in the Policy at the date of the explosion as to Buildings 1 and 3.

- Their investigations revealed several mistakes occurred in the Policy's Declarations pages during the process of the November 2018 annual renewal of the Policy. The investigations discovered the following:

    (i) As of the November 2018 annual renewal of the property damages provisions in the Policy (and carried over again on the November 2019 renewal), Texas Capital Bank was added in substitution for KMHJ as having the "Additional Interest," synonymous with "loss payee," on Buildings 1 and 3. *See* 2017 renewal and 2018 renewal, **Exhibits 46 and 47**.

    (ii) Texas Capital Bank never had any interest in the Properties and should not have been named in the Policy as having any "Additional Interest" in Buildings 1 and 3. **Exhibit I, Thurmond Depo. 93:15 – 94:1; Exhibit H, KMHJ Depo. 139:6 – 9**

    (iii)  KMHJ had been listed in the Policy as having the "Additional Interest" for each of the Policy's annual policy periods beginning with November 2013, and each year thereafter until the mistake occurred as of the November 2018 annual renewal. *See* annual renewal Declaration pages, **Exhibits 43 through 47**.

    (iv) KMHJ is the record owner of the Properties as shown in the Harris County Real Property Records and never should have been shown in the Policy as a "1st Mortgagee" or as a "Lender Loss Payable." **Exhibit J, Peden Depo. 31:1 – 32:1, 36:16 – 37:7, 56:5 – 58:9.**

- (v) United Fire decided to issue an Amendment to the Policy Declarations pages to correct the mistake as to the "Additional Interest" for Buildings 1 and 3 to again name KMHJ as the proper holder of the "Additional Interest" for those two buildings. **Exhibit K, Alexander Depo. 32:11 – 22, 33:7-18, 34:22-35:2.**

- Amended Declarations pages as to the property damage portion of the Policy were issued by United Fire on February 4, 2020 ("Amended Declarations"). *See* **Exhibit 40**. The Debtor's Chapter 11 Petition was filed on February 6, 2020.

- The Amended Declarations pages were issued retroactive to the beginning of the November 30, 2019 "Policy Period" to fix the mistaken designation of Texas Capital Bank as the "Additional Interest" holder, and restore KMHJ as the "Additional Interest" holder.[2]

- It is undisputed that Texas Capital Bank has never had an interest in the Properties and should not have been named in the Policy as an "Additional Interest" holder as to Buildings 1 and 3. (need nothing here)

- If United Fire had not issued the Amended Declarations returning KMHJ as the "Additional Interest" holder for Buildings 1 and 3, Texas Capital Bank would nevertheless be removed as it had no interest. **Exhibit J, Peden Depo. 56:12-57:2.**

- The Debtor's rights were not affected whatsoever by the Amended Declarations. The removal of KMHJ, or the return of KMHJ, as an "Additional Interest" holder as to Buildings 1 and 3 did not transfer any interest of the Debtor, did not create a new interest of Debtor in Buildings 1 and 3, and had no effect on the Debtor's rights as to the property damage insurance proceeds available for Buildings 1 and 3.

### BUILDINGS' OWNER IS ENTITLED TO PROPERTY DAMAGE INSURANCE PROCEEDS – DOCTRINE OF EQUITABLE LIEN

KMHJ is entitled to an equitable lien in the full amount of the Policy proceeds.

1. The insurance provisions of the Lease, Section 15 requires:

   "Tenant, at its own expense, shall provide and maintain in force during the term of this Lease, liability and property damage insurance in a[n] amount no less than $1,500,000.00 ***covering the Landlord* as well as the Tenant** with one or more responsible insurance companies…

---

[2] The Amended Declarations repeated the prior mistakes of referring to KMHJ as a "1st Mortgagee" and "Lender Loss Payable" instead of owner (although KMHJ has never loaned money to WGM). Similar descriptive errors appear in the Policy as to "Additional Interest" holders named for other buildings where it should have indicated "Owner" and not "1st Mortgagee" or "Lender Loss Payable."

(emphasis added).  *See* Lease, **Exhibit 13**[3], § 15.

2. KMHJ has found no insurance policies maintained by Tenant, WGM, prior to the United Fire Policy commencing November 30, 2013. The Policy was renewed annually thereafter to the current Policy year commencing on November 30, 2019.  KMHJ was listed as having an "Additional Interest" in the property damage portion of the Policy as to Buildings 1 and 3 in every annual Policy renewal until the mistake occurred in the November 30, 2018 annual renewal whereby KMHJ was replaced by Texas Capital Bank as having an "Additional Interest" for Buildings 1 and 3 in the property damage portion of the Policy.  *See* the annual Policy renewal Declaration pages for the Policy years of 2013 through 2018 as to entities designated as having an "Additional Interest" as to Buildings 1 and 3, attached as **Exhibits 42, 43, 44, 45, 46, and 47**.

3. Comparing the 2017 annual Policy renewal to the 2018 annual Policy renewal it is clear that the 2018 Policy renewal removed both KMHJ and Compass Bank (also a mistake) and replaced them with Texas Capital Bank as the newly designated "Additional Interest" holder.. *See* Exhibits 46 and 47.

    3.1. The Committee at ¶ 43 alleges that "Debtor made an affirmative choice in November of 2018 to remove KMHJ as "mortgagee" from the policy."  This statement is factually incorrect, and appears to suggest the the removal of KMHJ at that time was intentional and not a mistake.  It was a mistake, as Texas Capital Bank never had a mortgage interest in Buildings 1 and 3, but only as to certain other buildings on the Watson Campus.  Hence, when the CFO of WGM told the agent to list Texas Capital Bank as the Additional Interest on all of the buildings that was clearly an inadvertent mistake—as it is

---

[3] Continuously marked exhibits were used at all the depositions taken concerning KMHJ's Motion.  The numbered exhibits referred to herein are using the exhibit designations from the depositions. Therefore, the selected exhibits marked during depositions and referenced herein will not be in complete numerical sequence.

undisputed that the bank should not have been substituted in for KMHJ on buildings 1 and 3 as the Additional Interest holder for those two buildings.

4. <u>It Does Not Matter that KMHJ was Mistakenly Removed as Loss Payee/Additional Insured — KMHJ is Legally Entitled to the Proceeds</u>. The mistaken removal of KMHJ as the "Additional Interest" holder commencing with the 2018 renewal of the Policy is an unintentional breach of the Lease by WGM, because WGM as Tenant was required to "provide and maintain …property damage insurance….covering the Landlord." Lease Ex. 13, § 15. The myriad of mistakes plaguing the Policy is not material to the legal determination that KMHJ is entitled to the Proceeds pertaining to the damage to the Properties owned by KMHJ. The fact that KMHJ owns the Properties, and the Properties were insured under the terms of the Lease for the benefit of KMHJ as the Landlord is sufficient as a matter of law to require the Proceeds to be given to KMHJ.

5. However, KMHJ <u>does</u> contend, as further discussed below, that United Fire is entitled in the administration of its policies to identify mistakes and take corrective action as it did here by issuing the Amended Declarations on February 4, 2020. *See* Amended Declarations, **Exhibit 40**. Naturally if KMHJ is named in the Policy as the loss payee of the property damage proceeds for Buildings 1 and 3, it makes the determination much more direct and clear that KMHJ is entitled to the Proceeds. However, because of the equitable line doctrine, KMHJ is entitled to the proceeds regardless.

6. Pursuant to the equitable lien doctrine, it does not matter that KMHJ is not named in the property damage portion of the Policy as a loss payee or "Additional Interest" holder. The equitable lien doctrine provides that as the owner of the insured and damaged Properties and by virtue of the insurance covenants in the Lease, KMHJ is entitled to receive the Proceeds.

7. Under the equitable lien doctrine, "a breach by a lessee of a contract to insure the leased property for the benefit of his lessor will charge the benefits of any insurance taken out by

the lessee on the leased property with a lien in favor of the lessor." *Farmers Ins. Exch. v. Nelson*, 479 S.W.2d 717, 721 (Tex. Civ. App.–Waco 1972, writ ref'd n.r.e.). In those instances, it is established that "equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done." *Sierra Equip. Inc. v. Lexington Ins. Co.,* 890 F.3d 555, 557 (5th Cir. 2018) (citations omitted).

8. In arguing the equitable lien doctrine does *not apply* here, the Committee cites to two Texas cases: *Farmers Ins. Exch. v. Nelson,* 479 S.W.2d 717 (Tex. Civ. App.–Waco 1972, writ ref'd n.r.e.) and *In re McConnell,* 122 B.R. 41, 45 (Bankr. S.D. Tex. 1989). The *Farmers* case, however, supports the imposition of an equitable lien in this case, and the *In re McConnell* case is wholly distinguishable and inapplicable to KMHJ's claim for the property damage Proceeds.

9. In *Farmers,* the plaintiff owned a building, and leased the building and its contents to a lessee. In the written lease agreement between the plaintiff-owner and the lessee, the lessee agreed to "carry fire, theft and vandalism insurance in an amount satisfactory to Lessor, with loss payable clause to both Lessor and Lessee as interest appears." *Farmers Ins. Exch.,* 479 S.W.2d at 718. The policy was ultimately issued, but failed to reference the plaintiff (who was the lessor and owner). Additionally, the insurance company was not advised that the plaintiff owned any interest in the building or its contents. *Id.* Similar to the situation pertaining to KMHJ, the plaintiff, who also as here, was the lessor and owner, was unaware that the lessee failed to comply with the insurance provisions of the lease until the building was destroyed by a fire. *Id.*

10. The Waco Court of Appeals held that because of the lease requirements, the insurance proceeds were charged with a lien in favor of the plaintiff/lessor/owner, and the plaintiff was permitted to proceed directly against the insurer to recover lessor's share of property damage insurance proceeds payable under the policy. *Id.* at 721.

11. The Committee incorrectly contends that KMHJ is not entitled to an equitable lien on the Proceeds. [Dkt. 344, 1.(iv)]. The Committee rests its entire argument against the imposition of an equitable lien solely on the case of *In re McConnell,* 122 B.R. 41, 45 (Bankr. S.D. Tex. 1989). The Court in *McConnell* stated that "an equitable lien will not be implied where there is an adequate remedy at law, and where the condition is attributable to want of due diligence." *In re McConnell,* 122 B.R. at 45. The facts of *McConnell,* however, are distinguishable from the present case, and do not support the Committee's argument that KMHJ is not entitled to the Proceeds.

12. In *McConnell*, an individual borrower executed a promissory note to a bank, and then sought to secure the loan by signing a deed of trust on real property that the borrower did not own. *Id.* At 43. A simple examination of the public records by the bank would have revealed that the borrower did not, in fact, own the property in which he purported to grant a security interest to the bank. The property, encumbered by the deed of trust signed by a stranger in title to the property, was actually owned by a third party, The Bass Group. *Id*. at 43.

   12.1. The note and deed of trust were assigned to the plaintiff, Spring Service Texas, Inc., who brought suit seeking to have the court declare that the security interest in the property was valid and enforceable, <u>notwithstanding the fact that the security interest was not granted by the record title owner of the property.</u> *Id.* The court found that the plaintiff was not entitled to an equitable lien on the property of The Bass Group, which never intended to and never did grant a security interest to the bank in the property. *Id.* at 46.

   12.2. In other words, the grantee individual who signed the deed of trust on property he did not own, could not convey a security interest in the property at a point in time when the grantee did not own the property. *Id.*

12.3. The court concluded that an equitable lien did not arise because: (i) neither the bank nor the plaintiff as assignee conducted appropriate due diligence as they could have easily determined that the grantee individual was not, in fact, the record title owner of the property at the time the deed of trust was executed, and (ii) there was an adequate remedy at law because the plaintiff/assignee could have obtained a deed of trust from the actual record title owner before it accepted the assignment of the note. *Id.* Further the Court held that the plaintiff/assignee was on constructive notice that the deed of trust was invalid as the plaintiff could easily have discovered that the deed of trust was not signed by the owner of the property by looking at the real property records as to chain of title. *Id* at 44.

12.4. The bank in the first instance, and the assignee in the second instance, unreasonably accepted and relied upon a deed of trust without verifying in the public records that the grantee was the owner of the property. *Id.* at 45.

13. Here, however, WGM and KMHJ were not aware that the mistaken removal of KMHJ as an "Additional Interest" holder as to Buildings 1 and 3 under the property damage portion of the Policy had occurred in connection with the 2018 annual removal. KMHJ had been named for many years as having an "Additional Interest" in the property damage portion of the Policy.[4] See Exhibits 42 – 46.

13.1. John Watson was the general partner of KMHJ from its formation in 2000 until August 29, 2016. John Watson had properly advised Kelly Watson that WGM's insurance policy did provide property damage coverage for the Properties owned by KMHJ. At all times that was a true statement. The fact that KMHJ was inadvertently

---

[4] John Watson as the general partner of KMHJ assured that the buildings leased to WGM (Building 1 in 2001; Building two beginning in 2007) were insured for property damage at all times while WGM was the Tenant. Copies of policies prior to the November 30, 2013 Policy from United Fire no longer exist.

removed as a loss payee did not remove the insurance coverage of the Properties from the Policy. It was in both the interest of the Tenant/WGM and the Landlord/KMHJ to have property damage insurance on the leased premises to assure that KMHJ could restore the leased premises for the use of Tenant/WGM in the event of damage to the buildings.

14. There was no reason for John Watson or Kelly Watson as respective principals of WGM and KMHJ to suspect that a mistake had occurred during the 2018 Policy renewal process. Indeed, it is not uncommon or unreasonable for insureds to re-visit a long held insurance policy only after an insurable loss event has occurred.

15. Further, it was WGM's duty as Tenant in the Lease to ensure that the Policy covered KMHJ, and KMHJ had no such similar duty to verify that the Policy reflected the agreed insurance terms in the Lease. *Farmers Ins. Exch.,* 479 S.W.2d at 720,

> "an agreement between a mortgagor and a mortgagee under which the mortgagor is charged with the duty of procuring insurance upon the mortgaged property for the benefit of the mortgagee, will encumber the proceeds of any insurance so procured by the mortgagor with a lien in favor of the mortgagor. In such cases *it is the duty of the mortgagor to have a provision inserted in the policy that the proceeds shall be payable to the mortgagee as his interest might appear;* but, where he fails to do so, equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done" (emphasis added) (citations omitted)).

16. The equitable lien doctrine does not require a lessor to track down its lessee and review the policy. *Farmers Ins. Exch.,* 470 S.W.2d at 719 ("Plaintiff did not know that the Twomeys failed to comply with the insurance provision of the lease."). However, unlike the plaintiff in *McConnell*, KMHJ is not required by law or the terms of the Lease to conduct such due diligence.

17. Further, unlike the plaintiff in *McConnell*, KMHJ has no adequate remedy at law because it reasonably relied on the WMG's accurate representation that the Properties had property

damage insurance. And the Properties were, in fact, insured. The Committee argues that KMHJ had an adequate remedy at law because KMHJ could have obtained an additional insurance policy itself, and charged the premiums back to the Debtor, but KMHJ never did so. [Dkt. 334, ¶ 44].

17.1. However, such facts, while true, do not establish that KMHJ had an adequate remedy at law and, in fact, actually support the contention that an equitable lien should be imposed in this case. *See Fidelity & Guar. Ins. Corp. v. Super-Cold Southwest Co.,* 225 S.W.2d 924, 925 (Tex. Civ. App.–Amarillo 1949, writ ref'd n.r.e.). In *Fidelity,* an individual purchased equipment from a seller, and executed a promissory note and chattel mortgage in which, among other things, the purchaser/mortgagor agreed to maintain fire insurance for the protection of the seller/mortgagee's interest. *Id.* It further provided that, if the purchaser/mortgagor failed to maintain the insurance, the purchaser/mortgagor would pay the premium therefor on demand and that any proceeds of any such insurance should be applied to the replacement of the insured property or to the payment of the note secured by the chattel mortgage. *Id.*

17.2. Under such circumstances, which are nearly identical to the insurance requirements of the Lease here, the court found that purchaser/mortgagor was charged with a duty of procuring the insurance upon the property for the benefit of the seller/mortgagee. *Id.* at 927. Despite the fact that the seller/mortgagee could have obtained insurance itself and charged the premiums back to the purchaser/mortgagor, the court recognized that an equitable lien arose, giving the seller/mortgagee a right to recover under the insurance policy. *Id.*

18. It is clear that the parties agreed in writing that: (i) Debtor must maintain insurance covering both KMHJ and Debtor, (ii) all proceeds from such insurance must be used to repair, restore, rebuild, and replace the property, and (iii) any losses payable in excess such amounts will

be retained by KMHJ. Thus, KMHJ is entitled to an equitable lien in the Proceeds. *See, Tillerson v. Highrabedian,* 508 S.W.2d. 398, 400 (Tex. Civ. App.–Houston [14th Dist.] 1992, no writ.) ("When one of two parties, each of whom has an insurable interest in a particular property, agrees to get insurance for the protection of both interests, but does, in fact, procure a policy naming only himself as insured, and the property is damaged or destroyed, the other party, as between the two, is entitled to the proceeds of the policy up to the extent of his loss.").

19. Hence, under all the facts and circumstances surrounding the damage insurance coverage provided by the Policy, KMHJ is entitled to an equitable lien on the Proceeds.

### THE FEBRUARY 4, 2020, AMENDED DECLARATIONS WAS NOT AN AVOIDABLE PREFERENTIAL TRANSFER UNDER SECTION 547

20. Adding KMHJ back into the Policy on February 4, 2020 by the Amended Declarations [Ex. 40], due to United Fire's fixing the mistake of substituting Texas Capital Bank in place of KMHJ in the 2018 annual Policy renewal, does not create a voidable preferential transfer of the Debtor's rights to KMHJ under 11 U.S.C. § 547. The change cannot be considered a transfer because it did not increase, decrease, or otherwise affect any of the Debtor's rights in and to the property damage Proceeds for Buildings 1 and 3.

21. The Committee incorrectly states that "but for" the February 4, 2020 Amended Declarations, all insurance of the Proceeds would have been paid to the Debtor's estate. That is not accurate. There is no basis in law for such a conclusion. The Committee erroneously contends that KMHJ was a "stranger" to the Policy prior to the February 4, 2020 change, and therefore, could not receive the Proceeds.

22. However, as explained above, because KMHJ was the owner of the damaged Properties for which the Proceeds were being paid, the equitable lien doctrine would entitle KMHJ

to a lien on the proceeds regardless of whether the Proceeds were paid to Debtor in the first instance. Mere receipt by the Debtor of a check for the Proceeds, does not entitle the Debtor to keep the Proceeds as an asset of the Debtor's estate.

23. Even if the February 4, 2020 Amended Declarations never occurred, KMHJ would still be entitled to receive Proceeds by the equitable lien doctrine and pursuant to the terms of the Lease. If the Lease had not been rejected, § 15 of the Lease, Exhibit 13, requires that:

> All proceeds of said insurance shall be paid into a trust fund under the control of ….<u>Landlord and Tenant</u> if no institutional first mortgagee then holds an interest in the Leased Premises, for repair, restoration, rebuilding or replacement, or any combination thereof, of the Leased Premises or of the improvements in the Leased Premises…
>
> Any insurance proceeds in excess of such proceeds as shall be necessary for such repair, restoration, rebuilding, replacement or any combination thereof ***shall be the sole property of Landlord*** subject to any rights therein of Landlord's mortgagee, if any, and if the proceeds necessary for such repair, restoration, rebuilding or replacement, or any combination thereof shall be inadequate to pay the cost thereof, Tenant shall suffer the deficiency." (emphasis added.

24. Hence, even if the Proceeds were paid by a check solely to the Debtor, the Proceeds would be placed in trust to rebuild the Tenant's leased premises, and any excess Proceeds belong to the Landlord. Under no circumstance would the Proceeds become part of the Debtor's estate merely because KMHJ was not listed in the Policy as a loss payee.

25. Also, "although a stranger to the policy generally cannot maintain a suit on the policy, Texas courts have established several exceptions to that rule." *Cable Communications Network, Inc. v. Aetna Cas. & Sur. Co.,* 838 S.W.2d 947, 950 (Tex. Civ. App. Houston – 14th Dist., 1992). For example, "if a lessee promised the lessor that the leased property would be insured for the lessor's benefit and failed to do so, the benefits of the insurance policy taken out by the lessee on the leased property would be subject to the lien in favor of the lessor, and the lessor may then

proceed directly against the insurance company to recover its share of any funds payable under the policy." *Id.*

25.1. Thus, the Debtor's interest in the Proceeds prior to the February 4, 2020 Amended Declarations is the same as after the change effected by the Amended Declarations. The Amended Declarations had no effect on the ultimate entitlement of the Debtor to retain the Proceeds as a cash addition to the Debtor's estate. The existence or absence of the Amended Declarations effected no "transfer" of any interest of the Debtor in the Proceeds. The Debtor's interest in the Proceeds is the same regardless of whether KMHJ was named as a loss payee. Likewise, the Amended Declarations did not entitle KMHJ to receive any more of the Proceeds than it would have been entitled to under the Lease and/or under the doctrine of equitable lien.

**ADDITIONALLY, THE DEBTOR CANNOT KEEP THE PROCEEDS BECAUSE IT NO LONGER HAS ANY INSURABLE INTEREST IN THE PROPERTIES DUE TO THE REJECTION OF THE LEASE**

26. A party must have an insurable interest in the insured property to recover under an insurance policy. *Jones v. Tex. Pac. Indem. Co.,* 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ.). An insurable interest exists "when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.'" *Smith v. Eagle Star Ins. Co.,* 370 S.W.2d 448, 450 (Tex. 1963) (finding that because fire destroyed home in which Smith was living, she suffered pecuniary loss in form of loss of use in home even though she did not own it). The purpose of the insurable interest requirement is "to discourage the use of insurance for illegitimate purposes." *Valdez v. Colonial Cnty. Mut. Ins. Co.,* 994 S.W.2d 910, 914 (Tex. App.—Austin 1999, pet. denied).

27. KMHJ concedes that the Debtor <u>had</u> an insurable interest in the Properties as the Tenant under the Lease and all prior leases between the Debtor and KMHJ. The insurable interest arose solely by virtue of the Debtor's right to sole use and occupancy of the Properties pursuant to the various leases between KMHJ and the Debtor, including but not limited to the current Lease. However, due to the rejection of the Lease on June 6, 2020, by operation of law due to the expiration of the 120-day period to assume or reject the Lease as provided in Bankruptcy Code § 365(d)(4)(A)(i), the Debtor has no future legal interest in the Property. *Jones,* 853 S.W.2d at 795.

28. In *Jones,* the Joneses owned their home subject to a mortgagee's mortgage interest. *Id.* at 793. The Joneses insured the home, listing themselves as the "Named Insured" with the mortgagee listed as a "Mortgagee." *Id.* When the Joneses defaulted on their mortgage payments, the mortgagee foreclosed on the property and permitted the Joneses to remain in the home as tenants at sufferance. *Id.* Eleven days after foreclosure, the home was destroyed in a fire. *Id.* The Joneses collected under the policy for the loss of the home's contents, and the mortgagee collected under the policy for damage to the home and property itself. *Id.* The Joneses then filed suit on the policy to collect for the actual structural damage to the home. *Id.* The court found that the Joneses could not collect the proceeds for damage to the dwelling itself because, after the foreclosure, the Joneses became tenants at sufferance, subject to immediate eviction. *Id.* at 795. Because the Joneses had no future legal interest in the dwelling, and a diminished motive and opportunity to protect the property, the court found that the Joneses did not have an insurable interest in the dwelling and, as a result, were not entitled to the proceeds covering the damage to the home itself. *Id.*

29. Here, because the Lease has been rejected, and the Debtor through the Trustee is required to surrender the Properties, the Debtor has no further right to occupy or use the Properties. Therefore, the Debtor has no insurable interest in the Properties. Without a continuing insurable

interest in the Properties, the Debtor cannot keep the Proceeds for the property damage to the Properties owned by KMHJ. *Id.* at 794.

## THE PROCEEDS DO NOT BELONG TO THE ESTATE OF THE DEBTOR

30. "The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to debtor when the insurer pays a claim." *In re Equinox Oil Co.,* 300 F.3d 614, 618 (5th Cir. 2002). The Bankruptcy Court in *In re Sfuzzi, Inc.,* 191 B.R. 664, 666 (Bankr. N.D. Tex. Jan. 31, 1996), citing *In re Edgeworth,* 993 F.2d 51 (5th Cir. 1993), stated in other words, "The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have the right to receive and keep those proceeds when the insurer paid on the claim.

31. In the absence of the present bankruptcy case, United Fire's Amended Declarations of February 4, 2020, which restored KMHJ as a loss payee designated as an "Additional Interest," would be effective to remedy the mistaken substitution of Texas Capital Bank in place of KMHJ. The Committee acknowledges that Texas Capital Bank was not in fact a mortgagee on the Properties and is not entitled to any Proceeds. The Committee then contends that United Fire's Amended Declarations of February 4, 2020, should be disregarded---and then leaps to the conclusion, plucked out of the air, that the Debtor gets to keep the Proceeds as part of the Debtor's estate merely because Texas Capital Bank is not a legitimate loss payee mortgagee of the Properties, and United Fire does not have the right to "fix" the mistake that led to KMHJ being removed as a loss payee.

32. The Committee's unsupported conclusion is contrary to the holding in *In re Equinox Oil Co.,* 300 F.3d at 618. In the absence of the bankruptcy, the normal administration of

the Policy would not result in the Proceeds belonging to the Debtor.  Rather, in the absence of the bankruptcy the Amended Declarations would result in a check payable solely to KMHJ as the owner of Buildings 1 and 3, pursuant to Section 4 of the "Loss Payable Provisions" of the three-page endorsement to the Policy found within the Policy as pages marked as "CP 12 18 10 12," attached hereto as **Exhibit 48** (produced by United Fire as pages UF 001014 - UF 001016).

33. As previously noted, the Lease requires that the Proceeds be held in trust to enable the Tenant to assure that the Proceeds are first used to restore the Tenant's leased premises, with any excess Proceeds belonging solely to the Landlord. *See* ¶ 23 above; and **Exhibit 13,** Lease § 15. However, inasmuch as the Lease has been rejected, the Tenant is in material breach of the Lease such that all future performance under the Lease by KMHJ is excused.  "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).  Therefore, due to the rejection of the Lease, the imposition of a trust upon the Proceeds and the use restrictions imposed upon the Proceeds are no longer applicable to require KMHJ to restore Buildings 1 and 3 to WMG's specifications, or to otherwise control KMHJ's use of the Proceeds.

34. Under no set of circumstances present in the instant case would the Proceeds of the property damage insurance pertaining to Buildings 1 and 3 owned by KMHJ belong to the Debtor's estate.

WHEREFORE, because (a) the equitable lien doctrine creates a lien on the Proceeds in favor of KMHJ, (b) there was no transfer of any right or interest that the Debtor had in the Proceeds by the Amended Declarations issued by United Fire, (c) the Debtor has no independent insurable interest as to the Properties owned by KMHJ, (d) the Proceeds, in the absence of the bankruptcy, would belong to KMHJ as the owner of the Properties pursuant to the Amended Declarations, and

(e) the Debtor is in material breach of the Lease, the Proceeds belong to KMHJ without any use restrictions previously imposed by the terms of Section 15 of the Lease. KMHJ respectfully requests that this Court (i) enter the Order that accompanied KMHJ's Amended Motion [Dkt. 349] and (ii) grant KMHJ such other and further relief, both at law and equity, which the Court deems just and proper.

DATED: June 17, 2020.

                Respectfully Submitted.

                JACKSON WALKER, L.L.P.

                By: /s/ *Janet Douvas Chafin*
                    Bruce J. Ruzinsky
                    Texas Bar No. 17469425
                    Elizabeth C. Freeman
                    Texas Bar No. 24009222
                    Janet Douvas Chafin
                    Texas Bar No. 02785200
                    1401 McKinney Street, Ste. 1900
                    Houston, Texas 77010
                    Telephone: 713-752-4204
                    Facsimile: 713-308-4155
                    Email: bruzinsky@jw.com
                           efreeman@jw.com
                           jchafin@jw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 17, 2020, a true and correct copy of the foregoing Reply was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

                /s/ *Janet Douvas Chafin*
                Janet Douvas Chafin