## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WATSON GRINDING &** | § | **CASE NO. 20-30967** |
| **MANUFACTURING CO.,** | § | |
| | § | (Chapter 11) |
| Debtor. | § | |

---

| | | |
|---|---|---|
| **MARIA CASTREJON, FRANCISCO CASTREJON, ANA MENDOZA CONEJO, JOSE CANEJO, JUAN CONEJO, ANA MONTES, AND MARCELO PARROTT,** | § § § § § § | |
| | § | |
| Plaintiffs, | § | **ADVERSARY NO. _____** |
| | § | |
| v. | § | |
| | § | |
| **WATSON VALVE SERVICES, INC., WATSON GRINDING AND MANUFACTURING CO., KMHJ, LTD., KMHJ MANAGEMENT COMPANY, LLC, ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TRCC, LLC, DETCON, INC. D/B/A OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, DATAONLINE, LLC, INDUSTRIAL SCIENTIFIC CORPORATION, WESTERN INTERNATIONAL GAS & CYLINDERS, INC., AND MATHESON TRI-GAS, INC.,** | § § § § § § § § § § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

1

## NOTICE OF REMOVAL

Watson Grinding & Manufacturing Co. (the "Debtor") files this Notice of Removal of the state court action styled *Maria Castrejon, Francisco Castrejon, Ana Mendoza Conejo, Jose Canejo, Juan Canejo, Ana Montes, and Marcelo Parrott vs. Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic Equipment, Inc., TRCC, LLC, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company, Dataonline, LLC, Industrial Scientific Corporation, Western International Gas & Cylinders, Inc., and Matheson Tri-Gas, Inc.,* Cause No. 2020-39335, pending in the 270th Judicial District Court of Harris County, Texas (the "State Court Action").

### I.     Procedural Background and Nature of Suit

1.      On July 1, 2020, Maria Castrejon, Francisco Castrejon, Ana Mendoza Conejo, Jose Canejo, Juan Canejo, Ana Montes, and Marcelo Parrott (collectively, the "Plaintiffs") filed an Original Petition (the "Original Petition") against Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic Equipment, Inc., TRCC, LLC, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company, Dataonline, LLC, Industrial Scientific Corporation, Western International Gas & Cylinders, Inc., and Matheson Tri-Gas, Inc. (collectively, the "Defendants").  In their Original Petition, the Plaintiffs assert claims of negligence, gross negligence, and/or products liability - design defect against the Defendants.

2.      On February 6, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case captioned *In re Watson Grinding & Manufacturing Co.*, Case No. 20-30967, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Chapter 11 Bankruptcy Case").

## II.   Basis for Removal

3.       This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rules 9027-1, 9027-2, 9027-3, and the *General Order of Reference* entered by the District Court of this District on March 10, 2005.

4.       The State Court Action was initiated after the commencement of the Chapter 11 Case. This Notice of Removal has been timely filed pursuant to Bankruptcy Rule 9027(a)(2). *In re R.E. Loans, LLC*, No. 11-35865, 2012 WL 3262767, at *2 (Bankr. S.D. Tex. Aug. 8, 2012).

5.       Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

6.       Cases subject to jurisdiction are removable under the authority of 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title").  The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court.  The State Court Action is not a civil action by a government unit to enforce such government unit's police or regulatory power.

7.       This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) (federal district courts have "original jurisdiction of all civil proceedings…arising in or related to cases under title 11").  The State Court Action "arises in" or, alternatively, is "related to" a Title 11 case, *i.e.* the Debtor's Chapter 11 Bankruptcy Case.  In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis added); *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

8.       The resolution of this State Court Action will have a direct impact on the bankruptcy estate of the Debtor.  The State Court Action is related to the Debtor's Chapter 11 Bankruptcy Case because the outcome of State Court Action could conceivably change the Debtor's rights, liabilities,

or options in a way that would have an effect upon the handling and administration of the bankruptcy estate.

9.      Thus, the claims asserted in the State Court Action are claims that arise in or are otherwise related to the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334(b), and removal to this Court is proper pursuant to 28 U.S.C. § 1452(a).

### III.      Core or Non-Core Bankruptcy Jurisdiction

10.      This action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(A)(B)(C) and (O).  The claims and causes of action in the State Court Action have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

11.      Upon removal of the State Court Action, the Debtor consents to the entry of final orders or judgment by the bankruptcy judge.

### IV.      Parties and Notice

12.      Pursuant to 28 U.S.C. § 1452(a), Federal Bankruptcy Rule 9027(b), and Local Rule 9027-1, all adverse parties are being provided with a copy of this Notice of Removal and a copy of this Notice of Removal is being filed with the clerk of the 270th Judicial District Court of Harris County, Texas.

13.      In accordance with Local Rule 9027-1(a), the names and addresses of the parties and counsel in the State Court Action, who have or will be served with the notice, are as follows:

Abraham, Watkins, Nichols, Sorrels,
Agosto, Aziz, & Stogner
Muhammed S. Aziz
Karl P. Long
800 Commerce Street
Houston, Texas 77002

AND

Hollingsworth Law Firm, PLLC
Steve Hollingsworth
2200 North Loop West, Suite 123
Houston, Texas 77018

**ATTORNEYS FOR PLAINTIFFS**

## V.     Process and Pleadings

14.     Pursuant to Bankruptcy Rule 9027(a)(1) and Local Bankruptcy Rule 9027-1(b), true and correct copies of all process and pleadings filed in the State Court Action (as set forth in the attached Exhibit "A") have been provided to this Court.

15.     In the State Court Action, no citations have been requested.

16.     In accordance with Bankruptcy Rule 9027(c), the Debtor will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

WHEREFORE, the Debtor notifies the United States Bankruptcy Court for the Southern District of Texas, Houston Division, that the State Court Action is hereby removed in its entirety to this Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

Dated:  July 7, 2020.

Respectfully submitted,

**JONES MURRAY & BEATTY, LLP**

By: */s/ Ruth Van Meter*
Erin E. Jones
Texas Bar No. 24032478
Ruth Van Meter
Texas Bar No. 20661570
4119 Montrose Blvd,  Suite 230
Houston, Texas 77006
Phone: 832-529-1999
Fax: 832-529-5513
erin@jmbllp.com
ruth@jmbllp.com

**PROPOSED SPECIAL COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

AND

**HughesWattersAskanase, LLP**

By: */s/ Wayne Kitchens*
Wayne Kitchens
Texas Bar No. 11541110
Heather McIntyre
Texas State Bar No. 24041076
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:  (713) 759-6834
wkitchens@hwa.com
hmcintyre@hwa.com

**PROPOSED COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

AND

**McCOY LEAVITT LASKEY LLC**

By:  /s/ Michael I. Ramirez
Michael I. Ramirez
Texas Bar No. 24008604
20726 Stone Oak Parkway, Suite 116
San Antonio, TX  78258
Telephone (210) 446-2828
Fax (262) 522-7020
mramirez@mlllaw.com

**COUNSEL FOR WATSON GRINDING & MANUFACTURING CO.**

**CERTIFICATE OF SERVICE**

I certify that on July 7, 2020, a true and correct copy of the foregoing Notice was served via ECF/PACER to all parties registered to receive such service and on July 8, 2020, via first class mail (without attachments) to the following:

Abraham, Watkins, Nichols, Sorrels,
Agosto, Aziz, & Stogner
Muhammed S. Aziz
Karl P. Long
800 Commerce Street
Houston, Texas 77002

AND

Hollingsworth Law Firm, PLLC
Steve Hollingsworth
2200 North Loop West, Suite 123
Houston, Texas 77018

**ATTORNEYS FOR PLAINTIFFS**

/s/ Ruth Van Meter
Ruth Van Meter

# EXHIBIT A

Harris County Docket Sheet

# 2020-39335

**COURT:** 270th

**FILED DATE:** 7/1/2020

**CASE TYPE:** Other Injury or Damage



---

### CASTREJON, MARIA

Attorney: AZIZ, MUHAMMAD SULEIMAN

### vs.

### WATSON VALVE SERVICES INC

---

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |

7/1/2020 9:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44205983
By: Adiliani Solis
Filed: 7/1/2020 9:39 PM

CAUSE NO. _____

| | | |
|---|---|---|
| MARIA CASTREJON, FRANCISCO CASTREJON, ANA MENDOZA CONEJO, JOSE CONEJO, JUAN CONEJO, ANA MONTES and MARCELO PARROTT, | § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| WATSON VALVE SERVICES, INC., WATSON GRINDING AND MANUFACTURING CO., KMHJ, LTD., KMHJ MANAGEMENT COMPANY, LLC, ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TRCC, LLC, DETCON, INC. D/B/A OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, DATAONLINE, LLC INDUSTRIAL SCIENTIFIC CORPORATION, WESTERN INTERNATIONAL GAS & CYLINDERS, INC. and MATHESON TRI-GAS, INC. | § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW, Maria Castrejon, Francisco Castrejon, Ana Mendoza Conejo, Jose Conejo,

Juan Conejo, Ana Montes and Marcelo Parrott (collectively "Plaintiffs"), and file this Original

Petition against Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ,

Ltd. and KMHJ Management Company, LLC, Western International Gas & Cylinders, Inc.

Matheson Tri-Gas, Inc., ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc.,

Teledyne Detcon, Inc., Detcon, Inc. d/b/a Oldham, 3M Company, Firestone Cryogenic Equipment,

Inc. TRCC, LLC, DataOnline, LLC and Industrial Scientific Corporation (collectively

"Defendants"), and would respectfully show this Honorable Court the following:

Certified Document Number: 91152099 - Page 1 of 25

Certified Document Number: 91152099 - Page 2 of 25

# I.
## PARTIES

1.      Plaintiff Maria Castrejon is an individual who is a citizen and resident of Harris County, Texas.

2.      Plaintiff Francisco Castrejon is an individual who is a citizen and resident of Harris County, Texas.

3.      Plaintiff Ana Mendoza Conejo is an individual who is a citizen and resident of Harris County, Texas.

4.      Plaintiff Jose Conejo is an individual who is a citizen and resident of Harris County, Texas.

5.      Plaintiff Juan Conejo is an individual who is a citizen and resident of Harris County, Texas.

6.      Plaintiff Ana Montes is an individual who is a citizen and resident of Harris County, Texas.

7.      Plaintiff Marcelo Parrott is an individual who is a citizen and resident of Harris County, Texas.

8.      Defendant, Watson Valve Services, Inc. ("Watson Valve") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, or wherever he may be found.

9.      Defendant, Watson Grinding and Manufacturing Co. ("Watson Grinding") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, or wherever he may be found.

10.     Defendant, KMHJ, Ltd. ("KMHJ"), is a domestic limited partnership doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas.

2

Defendant may be served through its registered agent: KMHJ Management Company, LLC at 1400 McKinney Street, Suite 1212, Houston, Texas 77010.

11.     Defendant, KMHJ Management Company, LLC ("KMHJ"), is a domestic limited liability company doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: Kelly Lee Watson at 1400 McKinney Street, Suite 1212, Houston, Texas 77010, or wherever she may be found.

12.     Defendant Western International Gas & Cylinders, Inc. ("Western") is a domestic for-profit corporation doing business in the state of Texas.   This Defendant may be served through its registered agent, Denise C. Haugen, at 7173 Highway 159 E., Bellville, Texas 77418, or wherever she may be found.

13.     Defendant Matheson Tri-Gas, Inc. ("Matheson") is a foreign for-profit corporation doing business in the state of Texas.   This Defendant may be served through its registered agent, CT Corporation at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

14.     Defendant ARC Specialties, Inc. ("ARC") is domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - L. Don Knight – at 8100 Washington, Suite 1000, Houston, Texas 77007, or wherever he may be found.

15.     Defendant Automation Plus, Inc. ("Automation Plus") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent – Frank Lomelo - at 8930 Lawndale St., Suite E, Houston, Texas 77012, or wherever he may be found.

16.     Defendant Automation Process, Inc. ("Automation Process") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent – Business Filings, Inc. - at 701 Brazos St., Ste. 720, Austin, Texas 78701.

Certified Document Number: 91152099 - Page 3 of 25

17.     Defendant Detcon, Inc. d/b/a Oldham ("Detcon") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

18.     Defendant Teledyne Detcon, Inc. ("Teledyne Detcon") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent – Cogency Global, Inc.  - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

19.     Defendant Firestone Cryogenic Equipment, Inc. ("Firestone") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, or wherever she may be found.

20.     Defendant TRCC, LLC ("TRCC") is a domestic limited liability corporation doing business in the State of Texas. This defendant may be served through its registered agent – Nader Salim - at 3303 Falling Brook Court, Sugar Land, Texas 77479, or wherever he may be found.

21.     Defendant DataOnline, LLC ("DataOnline") is a foreign limited liability company doing business in the State of Texas. This defendant may be served through its registered agent – Lloyd M. Eddings - at 3142 Waldrop Dr., Dallas, Texas 75229.

22.     Defendant 3M Company ("3M") is a foreign for-profit corporation doing business in the State of Texas. This Defendant may be served through its registered agent - Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company - which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

23.     Defendant Industrial Scientific Corporation ("Industrial") is a foreign-for-profit corporation doing business in the State of Texas.  This Defendant may be served through its

Certified Document Number: 91152099 - Page 4 of 25

registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## II.
### JURISDICTION

### A. SUBJECT MATTER JURISDICTION

24.     Plaintiffs are citizens of the State of Texas at all times relevant to this case.

25.     Defendants Watson Valve and Watson Grinding (collectively "Watson Defendants"), KMHJ, Ltd., KMHJ Management Company, LLC (collectively "KMHJ Defendants"), Western, Firestone, ARC, TRCC, Detcon, Teledyne, Automation Plus, Inc., and Automation Process, Inc. (collectively "Automation Defendants"), are incorporated in Texas and their principal places of business are in Texas.

26.     Defendant Matheson is incorporated in Delaware and its principal place of business is in Texas.

27.     DataOnline, 3M and Industrial are foreign entities.  Defendant DataOnline is incorporated New Jersey and its principal place of business is in New Jersey.  Defendant 3M is a Delaware Corporation with its principal place of business in Minnesota.  Defendant Industrial is a Pennsylvania Corporation with its principal place of business in Pennsylvania.

28.     The amount in controversy is in excess of $75,000 and there is a lack of diversity between the parties.  Therefore, removal on the basis of diversity jurisdiction would be improper.

### PERSONAL JURISDICTION

29.     Defendants purposefully availed themselves to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendants' purposeful availment of the benefit and protection of the laws of Texas is sufficient to support the proper exercise of personal jurisdiction over Defendants.

Certified Document Number: 91152099 - Page 5 of 25

30.     The Watson Defendants, the KMHJ Defendants, Western, Firestone, ARC, TRCC, Detcon, Teledyne, the Automation defendants, and Matheson purposefully availed themselves to Texas because they are incorporated in and/or their principal places of business are located in Texas. Further, because these Defendants' actions related to this explosion occurred in Texas, personal jurisdiction over them is appropriate and Constitutional.

31.     Defendants DataOnline, 3M and Industrial purposefully availed themselves to Texas.  3M owned defendant Detcon at all relevant times to this lawsuit.   Detcon employees in Texas used 3M email addresses while interacting with the Watson Defendants regarding the service, maintenance and repair of the sensors for the propylene system at the Watson Defendants' facility located in Houston, Texas.  As part of this work, 3M designed and manufactured products that were shipped to Texas and sold to Watson, through Detcon, for installation at the Watson Defendants' facility.  As a result 3M purposefully availed itself to Texas because it derived profits from servicing and maintaining the sensors to the propylene system at Watson, it shipped and sold products to Texas for the service, maintenance and repair of the propylene system  at the Watson Defendants' facility and as a result, a nexus exists between 3M's actions and the explosion.

32.     DataOnline purposefully availed itself to Texas because it sells its telemetry equipment in the State of Texas and provides monitoring services of tank levels in Texas.  Further it was paid to perform these very services for the propylene tank and system at the premises where the subject explosion occurred.  A nexus exists between DataOnline's contacts with Texas and the explosion because evidence exists that the propylene levels in the tank decreased significantly between January 23, 2020, and January 24, 2020, such that warnings and alarms should have issued and sounded, but none did and DataOnline was responsible for monitoring the propylene levels in the tank.

Certified Document Number: 91152099 - Page 6 of 25

33.     Industrial purposefully availed itself to Texas because it targets the Texas market for the sale and use of its gas monitors.  To do so, Industrial advertises, markets, sells, ships and installs its gas monitors to Texas.  This includes the gas monitors that were present at the premises where the subject explosion occurred.  A nexus exists between Industrial's contacts with Texas and the explosion because gas monitors it shipped and sold to Texas caused and/or contributed to causing the subject explosion, as described below, because they failed to identify the propylene leak and to send an alarm that a potentially catastrophic condition existed and needed to be immediately addressed.

34.     Consequently, subject matter jurisdiction exists over 3M, DataOnline and Industrial.

### III.
### VENUE

35.     Venue is proper in Harris County pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) and (a)(3), because it is the county where a substantial part of the events giving rise to this case occurred and because the principal place of business for the Watson Defendants, the KMHJ Defendants, Firestone, and ARC are all located in Harris County. Additionally, under Texas Civil Practice and Remedies Code section 15.005, because venue is proper as to one Defendant it is proper for all Defendants.

### IV.
### FACTUAL BACKGROUND

36.     The Watson Defendants' facility was located at 4525 Gessner Road in Houston. The property was owned and managed by the KMHJ Defendants.

37.     The facility was comprised of a number of structures and was constructed between Gessner Road and Seffani Lane.  *See* **Exhibit 1**.  Pertinent to the issues in this case, located on the property was a storage tank that stored propylene.  *See* **Exhibit 1**.  The propylene tank supplied propylene to the "Coating Building" through a piping system.  *See* **Exhibit 1**.

Certified Document Number: 91152099 - Page 7 of 25

38.     Without warning, a massive explosion rocked the city of Houston awake in the early morning hours of Friday, January 24, 2020.  *See* **Exhibit 2**.

39.     Propylene was quickly identified as the chemical involved in the explosion because telemetry readings from the propylene tank indicated a significant loss of propylene from January 23, 2020, to January 24, 2020.  Propylene is an extremely flammable gas that can become explosive when mixed with air.  Despite the dangerous condition created by the leaking propylene, no evidence exists that any alarms sounded before the explosion to warn anyone of the leaking propylene.

40.     Western and Matheson had an exclusive agreement to provide propylene to Watson Grinding.  Under the terms of the agreement, they were required to install a bulk storage system, including any safety and control apparatus, telemetry systems and to conduct an annual safety inspection of the system.  Western/Matheson were contractually bound to ensure a safety program for its customer, the Watson Defendants.  The propylene that was the combustible gas involved in this explosion was stored in a 2000-gallon tank that was owned, serviced and maintained by Western/Matheson.  Western/Matheson exercised control over the bulk storage system **including the telemetry system**.  Additionally, Western/Matheson perform a "Safety/Site Inspection" of Watson Grinding on March 26, 2019.

41.     Western/Matheson delivered 1,067 gallons of propylene to their tank on January 20, 2020 and filled the tank to 85% capacity from 28% capacity.

42.     Western/Matheson had monitoring equipment on the propylene tank.  However, the monitoring equipment was being severely underutilized for its capabilities.

43.     Prior to replenishing the tank with propylene on January 20, 2020, the tank level had dropped to 30% and a warning signal was sent to Western/Matheson.  Western/Matheson were

Certified Document Number: 91152099 - Page 8 of 25

aware of the average daily usage of the customer and were aware of the average tank levels in their tank due to normal consumption.

44.     During the 24-hour cycle beginning on January 23, 2020 at 00:53:54, the tank experienced a precipitous drop in levels from 67% to 38% at the time of the next reading on 00:53:54 on January 24, 2020.  The next warning code was at a tank level reading of 20% at 4:26:39 on January 24, 2020.

45.     A 2,000-gallon tank of propylene gas at the premises was connected to a piping system that supplied propylene to spray rooms where it was used in the Watson Defendants' manufacturing processes.  *See* **Exhibit 3**.  Following the explosion, investigators found corrosion in the 1.5" piping that supplied propylene to the thermal spray equipment.      Upon information and belief, the insulation material used in the piping was susceptible to retaining moisture which can cause corrosion and leaks.

46.     A number of safeguards should have prevented or warned about the uncontrolled and unregulated leak of propylene.  Each of the above-named Defendants were involved in the failure of these safeguards, which caused and/or contributed to causing the explosion and its widespread destruction.  These include, but are not limited to, the design and installation of the propylene system, the inspection, maintenance, service and repair of the system and its sensors and the failure of the monitors and alarms to warn of the leak once it existed.

47.     The Automation Defendants designed and installed the propylene system and its sensors.  They also serviced and maintained the system over the years after it was initially installed.  Defendant Firestone installed and tested the piping for the propylene system at the premises.

48.     The Coating Building, the seat of this explosion, was to be equipped with a number of iTrans sensors to monitor and detect flammable gas leaks.  *See* **Exhibit 2 and Exhibit 3**.  The

Certified Document Number: 91152099 - Page 9 of 25

9

sensors were placed at least four feet above the floor of the spray room at a height that is usually designed to detect a flammable gas that is lighter than air, such as hydrogen. Propylene is heavier than air. Upon detection of a leak in the spray room, a properly designed and maintained system is supposed to do, at a minimum, two things: (1) sound an audible alarm that would alert not only human beings present at 4525 Gessner Road, but also in the surrounding community; and (2) automatically cut off the supply of propylene to the piping system by way of the shut off valve at a location upstream of the spray room. *See* **Exhibit 3.**

49.     Defendants Detcon, Teledyne and 3M performed inspection, maintenance, testing and repair work on the propylene system and sensors in the spray room that are supposed to sound an alarm in the event oxygen levels are too low or combustible levels of gas are too high. These Defendants worked on the system within six (6) months of the explosion and knew there were no sensors in spray rooms three (3) and five (5). *See* **Exhibit 3**. The gas monitors in question that failed to identify the propylene leak and to issue an alarm were designed and manufactured by Defendants 3M and Industrial. Additionally, Defendants 3M and Industrial targeted Texas for the sale of these gas monitors by advertising, marketing, selling and shipping the gas monitors to Texas and Watson. Defendant ARC serviced and maintained the control panels in the spray rooms, which are part of the warning system that failed to function properly on the date of the incident. Defendant TRCC and its principal, Nader Salim, was the Watson Defendants' safety, environmental and quality consultant at the time of the incident.

50.     Wesroc, which is a division of Defendant RadarOnline, manufactured and sold the telemetry equipment for the propylene tank and was hired to monitor the propylene levels in the tank.

## V.
## <u>CAUSES OF ACTION AGAINST WATSON DEFENDANTS</u>

### A. NEGLIGENCE

51.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Watson Defendants committed acts and omissions, which collectively and separately constituted negligence. The Watson Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Watson Defendants breached that duty in one or more of the following ways:

  a.   Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

  b.   Other acts or omissions deemed negligent.

52.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

### C. GROSS NEGLIGENCE

53.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Watson Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. The Watson Defendants' acts and/or omissions, when viewed objectively from the Watson Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Watson Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

Certified Document Number: 91152099 - Page 11 of 25

# VI.
## <u>CAUSES OF ACTION AGAINST KMHJ DEFENDANTS</u>

### A. NEGLIGENCE

54.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the KMHJ Defendants committed acts and omissions, which collectively and separately constituted negligence. The KMHJ Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The KMHJ Defendants breached that duty in one or more of the following ways:

c.   Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

d.   Other acts or omissions deemed negligent.

55.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

### B. GROSS NEGLIGENCE

56.     Incorporating by reference the above paragraphs,  Plaintiffs allege that all acts, conduct, and/or omissions on the part of the KMHJ Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. The KMHJ Defendants' acts and/or omissions, when viewed objectively from the KMHJ Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The KMHJ Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

Certified Document Number: 91152099 - Page 12 of 25

## VII.
### CAUSES OF ACTION AGAINST DEFENDANTS WESTERN AND MATHESON

**A. NEGLIGENCE**

57.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Defendants Western and Matheson committed acts and omissions, which collectively and separately constituted negligence. Defendants Western and Matheson had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. Defendants Western and Matheson breached that duty in one or more of the following ways:

    a.   Failing to have properly functioning monitors and alarms on the tank to identify and shut down the flow of propylene in the event of a leak in the system;

    b.   Failing to properly maintain, inspect and service the propylene tanks and piping on site to identify and prevent leaks;

    c.   Failing to warn of a known hazard and dangerous condition;

    d.   Violating governmental regulations and standards;

    e.   Failing to recognize and remediate hazards with an extreme degree of risk; and

    f.   Other acts or omissions deemed negligent.

58.    Additionally, Defendants Western and Matheson are negligent for breaching their product stewardship duties, which involve making products safer and means that whoever designs, produces, sells, or uses a product takes responsibility for minimizing the product's impact throughout all stages of the products' life cycle, including end of life management.   Product stewardship calls on those in the product life cycle to share responsibility for the impacts of products to make products safer for people and the environment, from design to disposal.   Here, Western and Matheson were negligent in their product stewardship in relation to the propylene

Certified Document Number: 91152099 - Page 13 of 25

because they failed to provide adequate customer support, maintenance services, inspection and site visits, warnings about the propylene, its tank and/or piping. The failure to do so contributed to causing the release of propylene and subsequent explosion.

59.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

### B. GROSS NEGLIGENCE

60.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendants Western and Matheson, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. Defendants Western and Matheson's acts and/or omissions, when viewed objectively from Defendants Western and Matheson's standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants Western and Matheson had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

### VIII.
### CAUSES OF ACTION AGAINST THE AUTOMATION DEFENDANTS

### A. NEGLIGENCE

61.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Automation Defendants committed acts and omissions, which collectively and separately constituted negligence. The Automation Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the

Certified Document Number: 91152099 - Page 14 of 25

same or similar circumstances. The Automation Defendants breached that duty in one or more of the following ways:

    a.   Failing to properly design and install the propylene system, including its monitors and sensors;

    b.   Failing to properly service, inspect, maintain, and repair the propylene system, sensors and its piping, to prevent, identify, and warn about leaks;

    c.   Failing to recognize and remediate hazards with an extreme degree of risk; and

    d.   Other acts or omissions deemed negligent.

## B. GROSS NEGLIGENCE

62.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Automation Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Automation Defendants' acts and/or omissions, when viewed objectively from the Automation Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Automation Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## IX.
## CAUSES OF ACTION AGAINST FIRESTONE

## A. NEGLIGENCE

63.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, Firestone committed acts and omissions, which collectively and separately constituted negligence. Firestone had a duty to exercise ordinary care, meaning the degree of care that would

Certified Document Number: 91152099 - Page 15 of 25

be used by any entity of ordinary prudence under the same or similar circumstances. Firestone breached that duty in one or more of the following ways:

    a.  Failing to properly install the piping for the propylene system, including its insulation;

    b.  Failing to properly service, inspect, maintain, and repair the piping for the propylene system to prevent leaks;

    c.  Failing to recognize and remediate hazards with an extreme degree of risk; and

    d.  Other acts or omissions deemed negligent.

## B. GROSS NEGLIGENCE

64.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Firestone constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Firestone's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Firestone had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## X.
## CAUSES OF ACTION AGAINST DETCON, TELEDYNE AND 3M

## A. NEGLIGENCE

65.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendants Detcon, Teledyne and 3M committed acts and omissions, which collectively and separately constituted negligence. These Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same

or similar circumstances. These Defendants breached that duty in one or more of the following ways:

> a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;
>
> b. Failing to recognize and remediate hazards with an extreme degree of risk; and
>
> c. Other acts or omissions deemed negligent.

**B. PRODUCTS LIABILITY—DESIGN DEFECT**

66. Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, sold, installed and maintained by Defendants Detcon, Teledyne and 3M. At the time the monitors were sold, these Defendants were in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

67. At the time the subject monitors were designed, manufactured and sold by Defendants, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

68. The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility. Specifically, Defendant could have designed the monitors so that the alarm could not be turned off and disabled.

Certified Document Number: 91152099 - Page 17 of 25

69.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

70.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

71.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

72.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

**C. Gross Negligence**

73.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendants Detcon, Teledyne and 3M constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendants ARC, Detcon, Teledyne and 3M's acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants ARC, Detcon, Teledyne and

Certified Document Number: 91152099 - Page 18 of 25

3M had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XI.
## CAUSES OF ACTION AGAINST INDUSTRIAL

### D.  PRODUCTS LIABILITY—DESIGN DEFECT

74.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured and sold by Defendant Industrial. At the time the monitors were sold, Industrial was in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

75.     At the time the subject monitors were designed, manufactured and sold by Industrial, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

76.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.   Specifically, Defendant could have designed the monitors so that the alarm could not be turned off and disabled.

77.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

Certified Document Number: 91152099 - Page 19 of 25

78.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

79.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

80.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

**E.  GROSS NEGLIGENCE**

81.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant Industrial constitute gross negligence and is the proximate cause of Plaintiffs' injuries and damages. Industrial's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant Industrial had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XII.
## CAUSES OF ACTION AGAINST ARC

### A. NEGLIGENCE

82.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant ARC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

    a.   Failing to properly service, inspect, maintain, test and repair the control panels propylene system to prevent leaks, identify leaks and in the event of a leak to shut the system down and issue warnings;

    b.   Failing to recognize and remediate hazards with an extreme degree of risk; and

    c.   Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

83.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of ARC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. ARC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. ARC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

Certified Document Number: 91152099 - Page 21 of 25

## XIII.
## CAUSES OF ACTION AGAINST TRCC

### A. NEGLIGENCE

84.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant TRCC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

   a.   Failing to recognize and ensure remediation of hazards with an extreme degree of risk;

   b.   Failure to design and implement an adequate risk management plan;

   c.   Failing to read, understand, and follow published safe work policies and procedures; and

   d.   Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

85.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of TRCC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. TRCC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. TRCC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

Certified Document Number: 91152099 - Page 22 of 25

## XIV.
## CAUSES OF ACTION AGAINST DATAONLINE

### A. NEGLIGENCE

86.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant DataOnline committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

　　　　a.  Failing to properly monitor telemetry readings from the subject tank;

　　　　b.  Failure to properly identify, notify and warn others regarding the propylene leak; and

　　　　c.  Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

87.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of DataOnline constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. DataOnline's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. DataOnline had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

88.     The explosion resulted in widespread destruction and caused fatalities, countless injuries, and numerous homes that were destroyed and hundreds of homes that sustained significant

damage.  The explosion was so violent that the Houston Chief of Police, Art Acevedo, labeled the site and surrounding areas a "disaster area."  *See* **Exhibit 2**.

**XV.**
**<u>DAMAGES</u>**

89.     As a result of Defendants' actions and/or inactions, Plaintiffs bring this lawsuit for the following damages:

      a.     Past and future physical pain and suffering;

      b.     Past and future mental anguish;

      c.     Past and future medical expenses;

      d.     Past and future lost wages and loss of earning capacity;

      e.     Property damage;

      f.     Court costs;

      g.     Exemplary damages; and

      h.     Any and all other damages, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

90.     Plaintiffs also seek both prejudgment and post judgment interest as allowed by law, for all costs of court, actual damages, and all other relief, both at law and in equity, to which Plaintiffs may be entitled.

**<u>PRAYER</u>**

For the foregoing reasons, Plaintiffs pray that upon final trial by a jury, which was previously demanded, Plaintiffs are entitled to have judgment against Defendants and request that the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Certified Document Number: 91152099 - Page 24 of 25

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO, AZIZ & STOGNER**

*/s/ Muhammad S. Aziz*
MUHAMMAD S. AZIZ
State Bar No. 24043538
KARL P. LONG
State Bar No. 24070162
800 Commerce Street
Houston, Texas 77002
(713) 222-7211
(713) 225-0827 – Facsimile
maziz@awtxlaw.com
klong@awtxlaw.com

-AND-

**HOLLINGSWORTH LAW FIRM, PLLC**

*/s/ Steve Hollingsworth*
STEVE HOLLINGSWORTH
State Bar No. 24041115
2200 North Loop West, Suite 123
Houston, TX 77018
(713) 637-4560 – Telephone
(713) 474-9017 – Facsimile
steveh@hollingsworthlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 91152099 - Page 25 of 25



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 7, 2020

Certified Document Number:        91152099 Total Pages:  25

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



EXHIBIT 1



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 7, 2020

Certified Document Number:        91152100 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Certified Document Number: 91152101 - Page 1 of 1



EXHIBIT 2



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 7, 2020

Certified Document Number:        91152101 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Certified Document Number: 91152102 - Page 1 of 1




CLAYTON & ASSOCIATES
CONSULTANTS

EXHIBIT 3



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 7, 2020

Certified Document Number:        91152102 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**