IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WATSON GRINDING &** | § | **CASE NO. 20-39968** |
| **MANUFACTURING CO.,** | § | |
| | § | **(Chapter 11)** |
| | § | |
| Debtor. | § | |

---

| | | |
|---|---|---|
| **MELISSA ALVAREZ, MARIA GILES,** | § | |
| **MARCO MURILLO, ELIZABETH** | § | |
| **SALAZAR, JAVIER SALAZAR, AND** | § | |
| **MARIA VIERA,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **ADVERSARY NO. _____** |
| | § | |
| v. | § | |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | |
| **WATSON GRINDING AND** | § | |
| **MANUFACTURING CO., KMHJ,** | § | |
| **LTD., KMHJ MANAGEMENT** | § | |
| **COMPANY, LLC, MATHESON TRI-** | § | |
| **GAS INC., WESTERN** | § | |
| **INTERNATIONAL GAS &** | § | |
| **CYLINDERS, INC., ARC** | § | |
| **SPECIALTIES, INC., AUTOMATION** | § | |
| **PLUS, INC., AUTOMATION** | § | |
| **PROCESS, INC., FIRESTONE** | § | |
| **CRYOGENICS, INC., FIRESTONE** | § | |
| **CRYOGENIC EQUIPMENT, INC.,** | § | |
| **TELEDYNE TECHNOLOGIES, INC.** | § | |
| **F/K/A DETCON INC., TELEDYNE** | § | |
| **EXPLORATION COMPANY,** | § | |
| **DETCON, INC. D/B/A OLDHAM,** | § | |
| **TELEDYNE DETCON, INC., 3M** | § | |
| **COMPANY, TRCC, LLC,** | § | |
| **DATAONLINE, LLC, AND** | § | |
| **INDUSTRIAL SCIENTIFIC** | § | |
| **CORPORATION,** | § | |
| | § | |
| Defendants. | § | |

1

## NOTICE OF REMOVAL

Watson Grinding & Manufacturing Co. (the "Debtor") files this Notice of Removal of the state court action styled *Melissa Alvarez, Maria Giles, Marco Murillo, Elizabeth Salazar, Javier Salazar, and Maria Viera vs. Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Matheson Tri-Gas Inc., Western International Gas & Cylinders, Inc., Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenics, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc. f/k/a Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3m Company, TRCC, LLC, Dataonline, LLC, and Industrial Scientific Corporation,* Cause No. 2020-39968, pending in the 189th Judicial District Court of Harris County, Texas (the "State Court Action").

### I.      Procedural Background and Nature of Suit

1.      On July 6, 2020, Melissa Alvarez, Maria Giles, Marco Murillo, Elizabeth Salazar, Javier Salazar, and Maria Viera (collectively, the "Plaintiffs") filed an Original Petition (the "Original Petition") against Watson Valve Services, INC., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Matheson Tri-Gas Inc., Western International Gas & Cylinders, Inc., Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenics, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc. F/K/A Detcon Inc., Teledyne Exploration Company, Detcon, Inc. D/B/A Oldham, Teledyne Detcon, Inc., 3m Company, TRCC, LLC, Dataonline, LLC, and Industrial Scientific Corporation (collectively, the "Defendants").  In their Original Petition, the Plaintiffs assert claims of negligence, gross negligence, and/or products liability - design defect against the Defendants.

2.      On July 8, 2020, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc.'s Crossclaims Against Watson Grinding and Manufacturing Co. and Watson Valve Services, Inc. was filed.

3.      On July 9, 2020, KMHJ, Ltd. and KMHJ Management Company, LLC, filed their Original Answer.

4.      On February 6, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case captioned *In re Watson Grinding & Manufacturing Co.*, Case No. 20-30967, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Chapter 11 Bankruptcy Case").

## II.      Basis for Removal

5.      This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rules 9027-1, 9027-2, 9027-3, and the *General Order of Reference* entered by the District Court of this District on March 10, 2005.

6.      The State Court Action was initiated after the commencement of the Chapter 11 Case. This Notice of Removal has been timely filed pursuant to Bankruptcy Rule 9027(a)(2). *In re R.E. Loans, LLC*, No. 11-35865, 2012 WL 3262767, at *2 (Bankr. S.D. Tex. Aug. 8, 2012).

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

8.      Cases subject to jurisdiction are removable under the authority of 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title"). The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court. The State Court Action is not a civil action by a government unit to enforce such government unit's police or regulatory power.

9.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) (federal district courts have "original jurisdiction of all civil proceedings…arising in or related to cases under

title 11"). The State Court Action "arises in" or, alternatively, is "related to" a Title 11 case, *i.e.* the Debtor's Chapter 11 Bankruptcy Case. In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis added); *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

10.     The resolution of this State Court Action will have a direct impact on the bankruptcy estate of the Debtor. The State Court Action is related to the Debtor's Chapter 11 Bankruptcy Case because the outcome of State Court Action could conceivably change the Debtor's rights, liabilities, or options in a way that would have an effect upon the handling and administration of the bankruptcy estate.

11.     Thus, the claims asserted in the State Court Action are claims that arise in or are otherwise related to the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334(b), and removal to this Court is proper pursuant to 28 U.S.C. § 1452(a).

### III.     Core or Non-Core Bankruptcy Jurisdiction

12.     This action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(A)(B)(C) and (O). The claims and causes of action in the State Court Action have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

13.     Upon removal of the State Court Action, the Debtor consents to the entry of final orders or judgment by the bankruptcy judge.

### IV.     Parties and Notice

14.     Pursuant to 28 U.S.C. § 1452(a), Federal Bankruptcy Rule 9027(b), and Local Rule 9027-1, all adverse parties are being provided with a copy of this Notice of Removal and a copy of

this Notice of Removal is being filed with the clerk of the 189th Judicial District Court of Harris County, Texas.

16.     In accordance with Local Rule 9027-1(a), the names and addresses of the parties and counsel in the State Court Action, who have or will be served with the notice, are as follows:

16.     counsel in the State Court Action, who have or will be served with the notice, are as follows:

| | |
|---|---|
| McMillan Firm, P.L.L.C<br>Chance A. McMillan<br>440 Louisiana Street, Suite 1200<br>Houston, Texas 77002-1691<br><br>**ATTORNEYS FOR PLAINTIFFS** | McCoy Leavitt Laskey LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**ATTORNEYS FOR WATSON GRINDING & MANUFACTURING CO.**<br><br>Gieger, Laborde & Laperouse L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**ATTORNEYS FOR WATSON VALVE SERVICES, INC.** |
| Greenberg Traurig, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002<br><br>Greenberg Traurig, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR WESTERN INTERNATIONAL GAS & CYLINDER, INC. & MATHESON TRI-GAS, INC.** | Jackson Walker L.L.P.<br>Bruce J. Ruzinsky<br>1401 McKinney, Suite 1900<br>Houston, Texas  77010<br><br>The Silvera Firm<br>Robert C. Turner<br>17070 Dallas Parkway, Suite 100<br>Dallas, Texas 75248<br><br>**ATTORNEYS FOR KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC** |

## V.  Process and Pleadings

17.     Pursuant to Bankruptcy Rule 9027(a)(1) and Local Bankruptcy Rule 9027-1(b), true and correct copies of all process and pleadings filed in the State Court Action (as set forth in the attached Exhibit "A") have been provided to this Court.

18.     In the State Court Action, citations were issued on July 7, 2020.  No citations of service have been returned.

19.     In accordance with Bankruptcy Rule 9027(c), the Debtor will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

WHEREFORE, the Debtor notifies the United States Bankruptcy Court for the Southern District of Texas, Houston Division, that the State Court Action is hereby removed in its entirety to this Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

Dated:  July 10, 2020.

Respectfully submitted,

**JONES MURRAY & BEATTY, LLP**

By: */s/ Ruth Van Meter*
Erin E. Jones
Texas Bar No. 24032478
Ruth Van Meter
Texas Bar No. 20661570
4119 Montrose Blvd,  Suite 230
Houston, Texas 77006
Phone: 832-529-1999
Fax: 832-529-5513
erin@jmbllp.com
ruth@jmbllp.com

**PROPOSED SPECIAL COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

AND

**HUGHESWATTERSASKANASE, LLP**

By: _/s/ Wayne Kitchens_
Wayne Kitchens
Texas Bar No. 11541110
Heather McIntyre
Texas State Bar No. 24041076
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:  (713) 759-6834
wkitchens@hwa.com
hmcintyre@hwa.com

**PROPOSED COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

AND

**McCOY LEAVITT LASKEY LLC**

By:  _/s/ Michael I. Ramirez_
Michael I. Ramirez
Texas Bar No. 24008604
20726 Stone Oak Parkway, Suite 116
San Antonio, TX  78258
Telephone (210) 446-2828
Fax (262) 522-7020
mramirez@mlllaw.com

**COUNSEL FOR WATSON GRINDING & MANUFACTURING CO.**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2020, a true and correct copy of the foregoing Notice was served via ECF/PACER to all parties registered to receive such service and on July 13, 2020, via first class mail (without attachments) to the following:

| | |
|---|---|
| McMillan Firm, P.L.L.C<br>Chance A. McMillan<br>440 Louisiana Street, Suite 1200<br>Houston, Texas 77002-1691<br><br>**ATTORNEYS FOR PLAINTIFFS** | McCoy Leavitt Laskey LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**ATTORNEYS FOR WATSON GRINDING & MANUFACTURING CO.**<br><br>Gieger, Laborde & Laperouse L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**ATTORNEYS FOR WATSON VALVE SERVICES, INC.** |
| Greenberg Traurig, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002<br><br>Greenberg Traurig, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR MATHESON TRI-GAS, INC. & WESTERN INTERNATIONAL GAS & CYLINDER, INC.** | Jackson Walker L.L.P.<br>Bruce J. Ruzinsky<br>1401 McKinney, Suite 1900<br>Houston, Texas  77010<br><br>The Silvera Firm<br>Robert C. Turner<br>17070 Dallas Parkway, Suite 100<br>Dallas, Texas 75248<br><br>**ATTORNEYS FOR KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC** |

*/s/ Ruth Van Meter*
Ruth Van Meter

**EXHIBIT A**

# 2020-39968

**COURT:**  189th

**FILED DATE:**  7/6/2020

**CASE TYPE:**  Other Injury or Damage



### ALVAREZ, MELISSA

Attorney: MCMILLAN, CHANCE ALLEN

### vs.

### WATSON VALVE SERVICES INC

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |

7/6/2020 11:50 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44290244
By: Monica Jackson
Filed: 7/6/2020 11:50 PM

CAUSE NO. _____

| | | |
|---|---|---|
| MELISSA ALVAREZ, MARIA GILES, MARCO MURILLO, ELIZABETH SALAZAR, JAVIER SALAZAR, AND MARIA VIERA | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| WATSON VALVE SERVICES, INC., WATSON GRINDING AND MANUFACTURING CO., KMHJ, LTD., KMHJ MANAGEMENT COMPANY, LLC, MATHESON TRI-GAS, INC., WESTERN INTERNATIONAL GAS & CYLINDERS, INC., ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENICS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TELEDYNE TECHNOLOGIES, INC. F/K/A DETCON INC., TELEDYNE EXPLORATION COMPANY, DETCON, INC. D/B/A OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, TRCC, LLC, DATAONLINE, LLC, AND INDUSTRIAL SCIENTIFIC CORPORATION | § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND RULE 193.7 NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Melissa Alvarez, Maria Giles, Marco Murillo, Elizabeth Salazar, Javier Salazar, and Maria Viera (collectively "Plaintiffs"), and file this Original Petition, Request for Disclosure, and Rule 193.7 Notice against, Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, LTD., KMHJ Management Company,

LLC., Matheson Tri-Gas, Inc., Western International Gas & Cylinders, Inc., ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc. f/k/a Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company, TRCC, LLC, DataOnline, LLC, and Industrial Scientific Corporation (collectively "Defendants"), and would respectfully show this Court the following:

## I.
## DISCOVERY LEVEL

1.　　Plaintiffs intend to conduct discovery under Level II of the Texas Rules of Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2.　　Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request Defendants to disclose, within 50 days of the service of this request, the information and materials described in Rule 194.2 of the Texas Rules of Civil Procedure. Plaintiffs specifically request the responding party to produce responsive documents at the undersigned law office within 50 days of the service of this request.

## III.
## PARTIES

3.　　Plaintiffs are residents of Harris County, Texas.

4.　　Defendant Watson Valve Services, Inc. ("Watson Valve" and collectively with Watson Grinding and Manufacturing Co. as the "Watson Defendants") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its

registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, and/or wherever he may be found.

5.      Defendant Watson Grinding and Manufacturing Co. ("Watson Grinding" and collectively with Watson Valve Services, Inc. as the "Watson Defendants") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, and/or wherever he may be found.

6.      Defendant KMHJ, Ltd. (collectively with Defendant KMHJ Management Company, LLC as the "KMHJ Defendants"), is a domestic limited partnership doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: KMHJ Management Company, LLC at 1400 McKinney Street, Suite 1212, Houston, Texas 77010.

7.      Defendant KMHJ Management Company, LLC (collectively with Defendant KMHJ, Ltd. as the "KMHJ Defendants"), is a domestic limited liability company doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: Kelly Lee Watson at 1400 McKinney Street, Suite 1212, Houston, Texas 77010, and/or wherever she may be found.

8.      Defendant Western International Gas & Cylinders, Inc. ("Western") is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Irving, Texas.  This Defendant may be served through its registered agent, Denise C. Haugen, at 7173 Highway 159 E., Bellville, Texas 77418, and/or wherever she may be found.

Certified Document Number: 91192029 - Page 3 of 28

9.      Defendant Matheson Tri-Gas, Inc. ("Matheson") is a foreign for-profit corporation doing business in the state of Texas with its principal place of business in Basking Ridge, New Jersey. This Defendant may be served through its registered agent, CT Corporation at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

10.     Defendant ARC Specialties, Inc. ("ARC") is domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent - L. Don Knight – at 8100 Washington, Suite 1000, Houston, Texas 77007, and/or wherever he may be found.

11.     Defendant Automation Plus, Inc. ("Automation Plus") (collectively referred to as the "Automation Defendants" with Automation Process, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Frank Lomelo - at 8930 Lawndale St., Suite E, Houston, Texas 77012, and/or wherever he may be found.

12.     Defendant Automation Process, Inc. ("Automation Process") (collectively referred to as the "Automation Defendants" with Automation Plus, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Business Filings, Inc. – which is located at 701 Brazos St., Ste. 720, Austin, Texas 78701.

13.     Defendant Firestone Cryogenics, Inc. ("Firestone") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenic Equipment, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in

Certified Document Number: 91192029 - Page 4 of 28

Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

14. Defendant Firestone Cryogenic Equipment, Inc. ("Firestone Equipment") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenics, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

15. Defendant Teledyne Technologies, Inc. f/k/a Detcon, Inc. ("Teledyne Technologies") (referred to as the "Teledyne Defendants" with Teledyne Exploration Company and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Thousand Oaks, California. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

16. Defendant Teledyne Exploration Company ("Teledyne") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Pittsburgh, Pennsylvania. This defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

17. Defendant Teledyne Detcon, Inc. ("Teledyne Detcon") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne

Certified Document Number: 91192029 - Page 5 of 28

Exploration Company) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc.  - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

18.     Defendant Detcon, Inc. d/b/a Oldham ("Detcon") is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

19.     Defendant TRCC, LLC ("TRCC") is a domestic limited liability corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Nader Salim - at 3303 Falling Brook Court, Sugar Land, Texas 77479, and/or wherever he may be found.

20.     Defendant DataOnline, LLC ("DataOnline") is a foreign limited liability company doing business in the State of Texas with its principal place of business in New Jersey. This defendant may be served through its registered agent – Lloyd M. Eddings - at 3142 Waldrop Dr., Dallas, Texas 75229, and/or wherever he may be found.

21.     Defendant 3M Company ("3M") is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Minnesota. This Defendant may be served through its registered agent - Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company - which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

22.     Defendant Industrial Scientific Corporation ("Industrial") is a foreign-for-profit corporation doing business in the State of Texas with its principal place of business in

Pennsylvania.  This Defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## IV.
## JURISDICTION & VENUE

23.    This Court has personal jurisdiction over Defendants because Defendants have in the past and continue to do busines in the State of Texas, have continuing contacts with the State, and are amenable to service in the State. The amount in controversy is in excess of $75,000.00. This Court has personal jurisdiction over all parties as set out in the following paragraphs.

24.    Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) and (a)(3), because it is the county where a substantial part of the events giving rise to this case occurred and because it is the principal place of business and location of the Firestone Defendants and Defendant ARC.

## V.
## THE INCIDENT

25.    The Watson Defendants are local companies with their facilities located at 4525 Gessner Road, Houston, Harris County, Texas 77041 ("Watson Facility"). The Watson Defendants manufacture and services valves and pump components for the chemical, offshore, and aerospace industries.

26.    The Watson Facility was comprised of several structures and was constructed between Gessner Road and Seffani Lane. Pertinent to the issues in this case, located on the property was a 2000 gallon storage tank that housed propylene.  The propylene tank supplied propylene to the "Coating Building" at Watson Facility through a piping system. Propylene is an extremely flammable gas that becomes explosive when mixed with air.

27.     The Coating Building, the seat of this explosion, should have been equipped with several iTrans sensors to monitor and detect flammable gas leaks.   Unfortunately, the sensors in the Coating Building were installed at least four feet above the floor of the spray rooms at a height that is usually designed to detect a flammable gas that is lighter than air, such as hydrogen.   Propylene is heavier than air.   Upon detection of a leak in a spray room, a properly designed and maintained system is supposed to do, at a minimum, two things: (1) sound an audible alarm that would alert not only individuals present at Watson Facility, but also in the surrounding community; and (2) automatically cut off the supply of propylene to the piping system by way of the shut off valve at a location upstream of a spray room.   Neither of these things happen and tragedy followed.

28.     In the early morning hours of January 24, 2020, without warning, a massive explosion rocked the city of Houston. The explosion was so violent that the Houston Chief of Police, Art Acevedo, labeled the site and surrounding areas a "disaster area."   The explosion damaged hundreds of nearby commercial buildings and residential homes and resulted in Plaintiffs' personal injuries and property damages.

## VI.
## FAILED AND/OR ABSENT SAFEGUARDS

29.     Propylene was quickly identified as the chemical involved in the explosion because telemetry readings from the propylene tank at issue indicated a significant loss of propylene, suggestive of a leak, from January 23, 2020 to January 24, 2020. During the 24-hour cycle beginning on January 23, 2020 at 00:53:54, the tank experienced a precipitous drop in levels from 67% to 38% at the time of the next reading on 00:53:54 on January 24, 2020. The next warning code showed a tank level reading of 20% at 4:26:39 on January 24, 2020. The explosion soon followed without any warning whatsoever.

30.     The 2,000-gallon tank of propylene gas was connected to a piping system that supplied propylene to spray rooms where it was used in the Watson Defendants' manufacturing processes. Following the explosion, investigators found corrosion in the 1.5" piping that supplied propylene to the thermal spray equipment. Upon information and belief, the insulation material used in the piping was susceptible to retaining moisture which can cause corrosion and leaks.

31.     Safeguards should have prevented and/or warned about the uncontrolled and unregulated leak of propylene at the Watson Facility. Each of the Defendants listed in this lawsuit were involved in the failure of these safeguards, which caused and/or contributed to the explosion and its widespread destruction. These include, but are not limited to, the design and installation of the propylene system, the inspection, maintenance, service and repair of the system and its sensors and the failure of the monitors and alarms to warn of the leak once it existed.

32.     Defendants, Western and Matheson, had an exclusive agreement to provide propylene to Watson Grinding. Under the terms of the agreement, they were required to install a bulk storage system, including any safety and control apparatus, telemetry systems and to conduct an annual safety inspection of the system. Defendants, Western/Matheson, were contractually bound to ensure a safety program for its customer, the Watson Defendants. The propylene that was the combustible gas involved in this explosion was stored in a 2000-gallon tank that was owned, serviced, and maintained by Defendants, Western/Matheson. Defendants, Western/Matheson, exercised control over the bulk storage system including the telemetry system. Defendants, Western/Matheson,

Certified Document Number: 91192029 - Page 9 of 28

knew or should have known of the decreased levels of propylene indicative of a lead on January 24, 2020.

33.     The Automation Defendants designed and installed the propylene system and its sensors.  They also serviced and maintained the system over the years after it was initially installed.

34.     The Firestone Defendants installed and tested the piping for the propylene system at the Watson Facility.

35.     The Teledyne Defendants, Defendant Detcon, and Defendant 3M performed inspection, maintenance, testing and repair work on the propylene system and sensors in the spray rooms that are were supposed to sound an alarm in the event oxygen levels are too low or combustible levels of gas are too high.  Evidence suggests that these Defendants worked on the system within six (6) months of the explosion and knew there were no sensors in certain spray rooms relevant to this lawsuit. The gas monitors in question that failed to identify the propylene leak and to issue an alarm were designed and manufactured by Defendant 3M and Defendant Industrial. Additionally, Defendant 3M and Defendant Industrial targeted Texas for the sale of these gas monitors by advertising, marketing, selling, and shipping the gas monitors to Texas and Watson.

36.     Defendant ARC serviced and maintained the control panels in the spray rooms, which were part of the warning system that failed to function properly on the date of the incident. Defendant TRCC and its principal, Nader Salim, were the Watson safety, environmental and quality consultant at the time of the incident. Wesroc, which is a division of Defendant DataOnline, manufactured and sold the telemetry equipment for the propylene tank and was hired to monitor the propylene levels in the tank.

Certified Document Number: 91192029 - Page 10 of 28

**VII.**
**CAUSES OF ACTION AGAINST THE**
**WATSON DEFENDANTS**

### A. NEGLIGENCE

37.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Watson Defendants committed acts and omissions, which collectively and separately constituted negligence. The Watson Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Watson Defendants breached that duty in one or more of the following ways:

  a. Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

  b. Other acts or omissions deemed negligent.

38.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

### B. GROSS NEGLIGENCE

39.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Watson Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. The Watson Defendants' acts and/or omissions, when viewed objectively from the Watson Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Watson Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and

welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

### VIII.
### CAUSES OF ACTION AGAINST THE
### KMHJ DEFENDANTS

### A.  NEGLIGENCE

40.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, the KMHJ Defendants committed acts and omissions, which collectively and separately constituted negligence. The KMHJ Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The KMHJ Defendants breached that duty in one or more of the following ways:

       a.  Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

       b.  Other acts or omissions deemed negligent.

41.    These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

### B.  GROSS NEGLIGENCE

42.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the KMHJ Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. The KMHJ Defendants' acts and/or omissions, when viewed objectively from the KMHJ Defendants' standpoint at the time such acts and/or omissions

Certified Document Number: 91192029 - Page 12 of 28

occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The KMHJ Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## IX.
## CAUSES OF ACTION AGAINST
## DEFENDANTS WESTERN AND MATHESON

### A. NEGLIGENCE

43.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Defendants, Western and Matheson, committed acts and omissions, which collectively and separately constituted negligence. Defendants, Western and Matheson, had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. Defendants, Western and Matheson, breached that duty in one or more of the following ways:

   a. Failing to have properly functioning monitors and alarms on the tank to identify and shut down the flow of propylene in the event of a leak in the system;

   b. Failing to properly maintain, inspect and service the propylene tanks and piping on site to identify and prevent leaks;

   c. Failing to warn of a known hazard and dangerous condition;

   d. Violating governmental regulations and standards;

   e. Failing to recognize and remediate hazards with an extreme degree of risk; and

Certified Document Number: 91192029 - Page 13 of 28

      f.   Other acts or omissions deemed negligent.

44.    Additionally, Defendants, Western and Matheson, are negligent for breaching their product stewardship duties, which involve making products safer and means that whoever designs, produces, sells, or uses a product takes responsibility for minimizing the product's impact throughout all stages of the products' life cycle, including end of life management.  Product stewardship calls on those in the product life cycle to share responsibility for the impacts of products to make products safer for people and the environment, from design to disposal.  Here, Western and Matheson were negligent in their product stewardship in relation to the propylene because they failed to provide adequate customer support, maintenance services, inspection and site visits, warnings about the propylene, its tank and/or piping.  The failure to do so contributed to causing the release of propylene and subsequent explosion.

45.    These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

**B. GROSS NEGLIGENCE**

46.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendants Western and Matheson, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs' injuries and damages. Defendants Western and Matheson's acts and/or omissions, when viewed objectively from Defendants Western and Matheson's standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

Certified Document Number: 91192029 - Page 14 of 28

Defendants Western and Matheson had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

**X.**
**CAUSES OF ACTION AGAINST THE**
**AUTOMATION DEFENDANTS**

**A.   NEGLIGENCE**

47.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Automation Defendants committed acts and omissions, which collectively and separately constituted negligence. The Automation Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Automation Defendants breached that duty in one or more of the following ways:

    a. Failing to properly design and install the propylene system, including its monitors and sensors;

    b. Failing to properly service, inspect, maintain, and repair the propylene system, sensors and its piping, to prevent, identify, and warn about leaks;

    c. Failing to recognize and remediate hazards with an extreme degree of risk; and

    d. Other acts or omissions deemed negligent.

**B.   GROSS NEGLIGENCE**

48.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Automation Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The

Certified Document Number: 91192029 - Page 15 of 28

Automation Defendants' acts and/or omissions, when viewed objectively from the Automation Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Automation Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XI.
## CAUSES OF ACTION AGAINST THE
## FIRESTONE DEFENDANTS

### A. NEGLIGENCE

49.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Firestone Defendants committed acts and omissions, which collectively and separately constituted negligence. The Firestone Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Firestone Defendants breached that duty in one or more of the following ways:

  a. Failing to properly install the piping for the propylene system, including its insulation;

  b. Failing to properly service, inspect, maintain, and repair the piping for the propylene system to prevent leaks;

  c. Failing to recognize and remediate hazards with an extreme degree of risk; and

  d. Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

Certified Document Number: 91192029 - Page 16 of 28

50.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Firestone Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Firestone Defendant's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Firestone Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

**XII.**
**CAUSES OF ACTION AGAINST THE**
**THE TELEDYNE DEFENDANTS, DEFENDANT DETCON AND 3M**

**A. NEGLIGENCE**

51.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Teledyne Defendants, Defendant Detcon, and Defendant 3M committed acts and omissions, which collectively and separately constituted negligence. These Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. These Defendants breached that duty in one or more of the following ways:

a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

b. Failing to recognize and remediate hazards with an extreme degree of risk; and

c. Other acts or omissions deemed negligent.

### B. PRODUCTS LIABILITY—DESIGN DEFECT

52.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, sold, installed and maintained by the Teledyne Defendants, Defendant Detcon, and Defendant 3M. At the time the monitors were sold, these Defendants were in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

53.     At the time the subject monitors were designed, manufactured and sold by Defendants, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

54.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak.  Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.  Specifically, Defendants could have designed the monitors so that the alarm could not be turned off and disabled.

55.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

Certified Document Number: 91192029 - Page 18 of 28

56.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

57.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

58.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

### C. GROSS NEGLIGENCE

59.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Teledyne Defendants, Defendant Detcon, and Defendant 3M constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Teledyne Defendants, Defendants ARC, Defendant Detcon, and Defendant 3M's acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants

Certified Document Number: 91192029 - Page 19 of 28

had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XIII.
## CAUSES OF ACTION AGAINST
## DEFENDANT INDUSTRIAL

### A. PRODUCTS LIABILITY—DESIGN DEFECT

60.   Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, and sold by Defendant Industrial. At the time the monitors were sold, Defendant Industrial was in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

61.   At the time the subject monitors were designed, manufactured, and sold by Defendant Industrial, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

62.   The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak.  Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.  Specifically, Defendant Industrial could have designed the monitors so that the alarm could not be turned off and disabled.

63. Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

64. At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendant Industrial's control and were placed into the stream of commerce.

65. No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendant Industrial attempts, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendant Industrial withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

66. As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

**B. GROSS NEGLIGENCE**

67. Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant Industrial constitute gross negligence and is the proximate cause of Plaintiffs' injuries and damages. Defendant Industrial's acts

Certified Document Number: 91192029 - Page 21 of 28

21

and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant Industrial had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XIV.
## CAUSES OF ACTION AGAINST
## DEFENDANT ARC

### A.   NEGLIGENCE

68.   Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant ARC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

    a.   Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

    b.   Failing to recognize and remediate hazards with an extreme degree of risk; and

    c.   Other acts or omissions deemed negligent.

### B.  GROSS NEGLIGENCE

69.   Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant ARC constitute gross negligence and

Certified Document Number: 91192029 - Page 22 of 28

are the proximate cause of Plaintiffs' injuries and damages. Defendant ARC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant ARC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XV.
## CAUSES OF ACTION AGAINST
## DEFENDANT TRCC

### A. NEGLIGENCE

70.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant TRCC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

    a.  Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

    b.  Failing to recognize and remediate hazards with an extreme degree of risk; and

    c.  Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

71.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant TRCC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendant TRCC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant TRCC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

**XVI.**
**CAUSES OF ACTION AGAINST**
**DEFENDANT DATAONLINE**

### A. NEGLIGENCE

72.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant DataOnline committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

     a.  Failing to properly monitor telemetry readings from the subject tank;

     b.  Failure to properly identify, notify and warn others regarding the propylene leak; and

     c.  Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

Certified Document Number: 91192029 - Page 24 of 28

73.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant DataOnline constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendant DataOnline's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant DataOnline had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XVII.
## RESPONDEAT SUPERIOR

74.     Defendants are liable for the torts committed by its employees during the course and scope of their employment. At all times relevant, Defendants' employees were acting with Defendants' permission and were in the course and scope of their employment for Defendants.  Defendants' employees while acting within the course and scope of their employment, in furtherance of Defendants' businesses, and had a general duty to exercise reasonable care in performing their work. Defendants' employee, however, failed to exercise the requisite standard of care, were negligent, and were grossly negligent under the circumstances. As a result, Defendants are liable for injuries sustained by Plaintiffs.

## XVIII.
## EXEMPLARY DAMAGES

75.     Plaintiffs incorporate all prior paragraphs in this pleading. Defendants had a duty and responsibility to act (or not act) in ways that involve an extreme degree of risk,

Certified Document Number: 91192029 - Page 25 of 28

considering the probability and magnitude of the potential harm to others and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or wellbeing of others. Tex. Civ. Prac. Rem. Code §41.001(11). Thus, Plaintiffs seek exemplary damages.

## XIX.
## PLAINTIFFS' DAMAGES

76.     As a result of Defendants' actions and/or inactions, Plaintiffs, individually, bring this lawsuit for the following damages:

   a.  Past and future physical pain and suffering;

   b.  Past and future mental anguish;

   c.  Past and future medical expenses;

   d.  Past and future lost wages and loss of earning capacity;

   e.  Property damage;

   f.  Court costs;

   g.  Exemplary damages; and

   h.  Any and all other damages, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

77.     Plaintiffs also seek both prejudgment and post judgment interest as allowed by law, for all costs of court, actual damages, and all other relief, both at law and in equity, to which Plaintiffs may be entitled.

## XX.
## PRESERVATION OF EVIDENCE

78.     Plaintiffs hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident that made the basis of this lawsuit, including but not limited to any type of recordings; photographs; videotapes;

Certified Document Number: 91192029 - Page 26 of 28

audiotapes; business and medical records; estimates; invoices; checks; measurements; correspondence; memoranda; files; facsimiles; email; voice mail; text messages; cellular telephone records; calendar entries; and any electronic images, data, or information related to Defendants, the referenced incident, or any damages resulting therefrom. Failure to maintain such items will constitute spoliation of the evidence.

## XXI.
## RULE 193.7 NOTICE

79.     Pursuant to 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby give actual notice to Defendants that any and all documents produced may be used against the Defendants producing the documents at any pretrial proceedings and/or trial of this matter without the necessity of authenticating documents.

## XXII.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that upon final trial by a jury, which was previously demanded, Plaintiffs are entitled to have judgment against Defendants, jointly and severally, and requests the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Certified Document Number: 91192029 - Page 27 of 28

Respectfully submitted,

**McMillan Firm, P.L.L.C.**

By: _____
Chance A. McMillan
Bar No. 24078981
cam@mcmillanfirm.com
Wayne D. Collins
Bar No.: 00796384
wdc@mcmillanfirm.com
Mathew Mendoza
Bar No.: 24109548
mem@mcmillanfirm.com
440 Louisiana Street, Suite 1200
Houston, Texas 77002-1691
Tel: (281) 888-2131
Fax: (832) 831-2175
Email: filing@mcmillanfirm.com

*ATTORNEYS FOR PLAINTIFFS*



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 10, 2020

Certified Document Number:        91192029 Total Pages:  28

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

7/8/2020 11:41 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44344477
By: Iris Collins
Filed: 7/8/2020 11:41 AM

CAUSE NO. 2020-39968

| | | |
|---|---|---|
| MELISSA ALVAREZ, MARIA GILES, MARCO MURILLO, ELIZABETH SALAZAR, JAVIER SALAZAR, AND MARIA VIERA | § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| WATSON VALVE SERVICES, INC., WATSON GRINDING AND MANUFACTURING CO., KMHJ. LTD., KMHJ MANAGEMENT COMPANY, LLC, MATHESON TRI-GAS, INC., WESTERN INTERNATIONAL GAS & CYLINDERS, INC., ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENICS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TELEDYNE TECHNOLOGIES INC. F/K/A DETCON INC., TELEDYNE EXPLORATION COMPANY, DETCON INC. D/B/A OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, TRCC, LLC, DATAONLINE, LLC, AND INDUSTRIAL SCIENTIFIC CORPORATION, | § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | _____189th JUDICIAL DISTRICT |

## WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S CROSSCLAIMS AGAINST WATSON GRINDING AND MANUFACTURING CO. AND WATSON VALVE SERVICES, INC.

Defendants / Cross-Claimants, Western International Gas & Cylinders, Inc. ("Western")

and Matheson Tri-Gas, Inc. ("Matheson" and collectively with Western the "Cross-Claimants"),

hereby file their Crossclaims against Watson Grinding and Manufacturing Co. ("Watson

Certified Document Number: 91219603 - Page 1 of 6

Grinding") and Watson Valve Services, Inc. ("Watson Valve", and collectively with Watson Grinding, the "Crossclaim Defendants") as follows:

## I.    FACTUAL BACKGROUND

1.    This litigation arises out of a fire and explosion that occurred in the early-morning on Friday, January 24, 2020 at the Watson Grinding and Watson Valve facilities (collectively, the "Watson Facilities") located in Houston, Texas.  The cause of the fire and explosion is currently unknown.

2.    Matheson, through its wholly owned subsidiary, Western, supplied polymer grade propylene to Watson Grinding.

3.    Plaintiffs' claims against Matheson and Western arise from and relate to the January 24 fire and explosion that occurred at the Watson Facilities.

4.    Pursuant to Texas statutory and common law, as well as a June 22, 2017 Product Supply Agreement between Matheson and Watson Grinding, Cross-Claimants are entitled to comparative liability, contribution, defense, and indemnity from Watson Grinding and Watson Valve as set forth below.

## II.    CROSSCLAIMS

### A.  Comparative Liability and Contribution

5.    Cross-Claimants deny any and all liability in this litigation and deny Plaintiffs' allegations.  To the degree Cross-Claimants are found liable to Plaintiffs or others for damages caused in whole or in part by any acts or omissions of Watson Grinding relating to the explosion and fire at the Watson Facilities on January 24, 2020, Matheson and Western are entitled to contribution from Watson Grinding pursuant to Chapter 33 of the Texas Civil Practice &

Certified Document Number: 91219603 - Page 2 of 6

Remedies Code, or as otherwise permitted by Texas statutory and common law, for any percentage of liability assigned to Cross-Claimants.

6.     The explosion and fire that is the basis for Plaintiffs' claims in this litigation occurred at the Watson Facilities.  Watson Grinding is or may be liable to Cross-Claimants or Plaintiffs for all or part of Plaintiffs' claims.

7.     Cross-Claimants deny any and all liability in this litigation and deny Plaintiffs' allegations.  To the degree Cross-Claimants are found liable to Plaintiffs or others for damages caused in whole or in part by any acts or omissions of Watson Valve relating to the explosion and fire at the Watson Facilities on January 24, 2020, Matheson and Western are entitled to contribution from Watson Valve pursuant to Chapter 33 of the Texas Civil Practice & Remedies Code, or as otherwise permitted by Texas statutory and common law, for any percentage of liability assigned to Cross-Claimants.

8.     The explosion and fire that is the basis for Plaintiffs' claims in this litigation occurred at the Watson Facilities.  Watson Valve is or may be liable to Cross-Claimants or Plaintiffs for all or part of Plaintiffs' claims.

**B.  Indemnity**

9.     Cross-Claimants deny any and all liability in this litigation and deny Plaintiffs' allegations.  To the degree Cross-Claimants are found liable to Plaintiffs or others for damages caused in whole or in part by any acts or omissions of Watson Grinding relating to the explosion and fire at the Watson Facilities on January 24, 2020, Cross-Claimants are entitled to defense, indemnity, and to be held harmless by and from Watson Grinding pursuant to the June 22, 2017 Product Supply Agreement, or as otherwise permitted by Texas statutory and common law.

Certified Document Number: 91219603 - Page 3 of 6

10.     Cross-Claimants deny any and all liability in this litigation and deny Plaintiffs' allegations.  To the degree Cross-Claimants are found liable to Plaintiffs or others for damages caused in whole or in part by any acts or omissions of Watson Valve relating to the explosion and fire at the Watson Facilities on January 24, 2020, Cross-Claimants are entitled to defense, indemnity, and to be held harmless by and from Watson Valve pursuant to the June 22, 2017 Product Supply Agreement, or as otherwise permitted by Texas statutory and common law.

### III.   **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Cross-Claimants Matheson and Western pray that: (1) Watson Grinding's negligence or comparative fault be submitted to the trier of fact for consideration for contribution, (2) Watson Valve's negligence or comparative fault be submitted to the trier of fact for consideration for contribution, (3) Watson Grinding be held to defend and indemnify Cross-Claimants for any liability caused by Watson Grinding, (4) Watson Valve be held to defend and indemnify Cross-Claimants for any liability caused by Watson Valve and (5) for such other and further relief to which Cross-Claimants may be justly entitled.

*[Remainder of the Page Intentionally Left Blank]*

**WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S CROSSCLAIMS AGAINST WATSON GRINDING AND MANUFACTURING CO. AND WATSON VALVE SERVICES, INC.** - Page 4
*ACTIVE 51337087v1*

Date: July 8, 2020

Respectfully submitted,

Mary-Olga Lovett
  State Bar No. 00789289
  lovettm@gtlaw.com
Karl D. Burrer
  State Bar No. 24043584
  burrerk@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, TX 77002
Telephone:  713-374-3500
Facsimile:  713-374-3505

/s/ Christopher M. LaVigne
Christopher M. LaVigne
  State Bar No. 24026984
  lavignec@gtlaw.com
Daniel P. Elms
  State Bar No. 24002049
  elmsd@gtlaw.com
Samuel G. Davison
  State Bar No. 24084280
  davisons@gtlaw.com
Sarah-Michelle Stearns
  State Bar No. 24099029
  stearnssa@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  214-665-3600
Facsimile:  214-665-3601

**Attorneys for Western International Gas &
Cylinders, Inc. and Matheson Tri-Gas, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a true and correct copy of the foregoing document was served on all parties on July 8, 2020 via the Court's emailing system to all counsel of record.

<u>/s/ Christopher M. LaVigne  </u>
Christopher M. LaVigne

I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 10, 2020


Certified Document Number:        91219603 Total Pages:  6


Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

7/9/2020 12:19 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44383698
By: Ozuqui Quintanilla
Filed: 7/9/2020 12:19 PM

**CAUSE NO. 2020-39968**

| | | |
|---|---|---|
| **MELISSA ALVAREZ, MARIA GILES,** | § | **IN THE DISTRICT COURT OF** |
| **MARCO MURILLO, ELIZABETH** | § | |
| **SALAZAR, JAVIER SALAZAR AND** | § | |
| **MARIA VIERA** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | |
| **WATSON GRINDING AND** | § | |
| **MANUFACTURING CO., KMHJ, LTD.,** | § | |
| **KMHJ MANAGEMENT COMPANY,** | § | |
| **LLC, MATHESON TRI-GAS,** | § | **HARRIS COUNTY, TEXAS** |
| **INC.,WESTERN INTERNATIONAL** | § | |
| **GAS & CYLINDERS, INC., ARC** | § | |
| **SPECIALTIES, INC., AUTOMATION** | § | |
| **PLUS, INC., AUTOMATION PROCESS,** | § | |
| **INC., FIRESTONE CRYOGENICS,** | § | |
| **INC.; FIRESTONE CRYOGENIC** | § | |
| **EQUIPMENT, INC., TELEDYNE** | § | |
| **TECHNOLOGIES INC., f/k/a DETCON,** | § | |
| **INC., TELEDYNE EXPLORATION** | § | |
| **COMPANY, DETCON, INC. D/B/A** | § | |
| **OLDHAM, 3M COMPANY, TRCC, LLC,** | § | |
| **DATAONLINE, LLC, and INDUSTRIAL** | § | |
| **SCIENTIFIC CORPORATION,** | § | |
| **Defendants.** | § | **189th JUDICIAL DISTRCT** |

<u>**ORIGINAL ANSWER OF DEFENDANTS**</u>
<u>**KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KMHJ, LTD and KMHJ MANAGEMENT COMPANY, LLC, and subject to Watson Valve Services, Inc.'s and Watson Grinding and Manufacturing Co.'s bankruptcy proceedings and Motions to Stay, and any pending Temporary Restraining Orders or Temporary Injunctions, and files this, their Original Answer to Plaintiffs' Original Petition and would respectfully show the court and the parties as follows:

Certified Document Number: 91236176 - Page 1 of 5

# I.

## GENERAL DENIAL

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC generally deny each and every, all and singular, the material allegations in Plaintiffs' petition and demand strict proof thereof by a preponderance of the evidence. Defendants hereby enter a General Denial.

## II.

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC assert there is a defect of parties. Defendants did not operate nor manage a manufacturing business or facility in Houston, Harris County, Texas. Defendants did not own nor operate a business utilizing propylene or other such chemicals.

## III.

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC assert that Defendants are not liable in the capacity in which they have been sued. Defendants did not operate nor manage a manufacturing business or facility in Houston, Harris County, Texas. Defendants did not own nor operate a business utilizing propylene or other such chemicals.

## IV.

Further pleading, Defendants allege the action in question and any resulting damages were as a result of the acts or omissions of other named parties or entities and Defendants invoke the provisions of Texas Civil Practice Remedies Code, including but not limited to Chapter 33 and §33.001; §33.002; §33.003; §33.004; §33.011; §33.012 and §33.013.

## V.

Further pleading, if necessary, Defendants allege and hereby invoke the privileges of Chapter 41 of the Texas Civil Practice Remedies Code, including but not limited to §41.001;

Certified Document Number: 91236176 - Page 2 of 5

§41.002; §41.002(a)(b)(c) and (d); §41.003; §41.004; §41.006; §41.007; §41.008; §41.009; §41.010; §41.011; §41.012 and §41.013.

**VI.**

Further pleading, if necessary, in the alternative, Defendants allege that they did not breach any duty owed to Plaintiffs or any other party and any alleged acts or omissions of Defendants, KMHJ, Ltd. and KMHJ Management Company, LLC and were not a proximate cause of the alleged accident in question and the resulting damages.

**VII.**

Further pleading, if necessary, in the alternative, Defendants assert all available defenses under §41.0105 of the Texas Civil Practice Remedies Code; in addition to any other limitation or law, recovery of medical or healthcare expenses incurred is limited to the amount actually paid or incurred by or on behalf of Plaintiffs.

**VIII.**

Further pleading, Defendants submit Plaintiffs' claims for punitive damages, exemplary damages, if any, are limited under the Texas Civil Practice and Remedies Code §41.008 with the amount of recovery of exemplary or punitive damages not to exceed two times the amount of economic damages, plus, an amount equal to any non-economic damages found by the jury, not to exceed the sum of $150,000; or $200,000.  *See* Texas Civil Practice Remedies Code §41.008. Plaintiffs further may not recover any interests from any award of punitive or exemplary damages. *See* Texas Civil Practice Remedies Code §41.007.

**IX.**

Further pleading, Defendants argue any award of punitive or exemplary damages is unconstitutional and that the award of such damages constitutes punishment and violation of the

Certified Document Number: 91236176 - Page 3 of 5

Eighth Amendment of the United States Constitution.  Plaintiffs' claims for punitive or exemplary damages violates both the U.S. and Texas Constitutions guaranteeing the right to due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution, in addition to Article One, Section Nineteen of the Texas Constitution.

## X.

Further pleading, punitive and exemplary damages violate the double jeopardy clause of the Fifth Amendment to the United States Constitution.  Plaintiffs' claim for punitive or exemplary damages also violates Defendants' right to protection from being subjected to excessive fines, as provided in Article One, Section Thirteen of the Texas Constitution.  Claims for punitive damages should be separated from compensatory damages in a bifurcated trial.  Otherwise, evidence admissible on the question of punitive damages may inflame and destroy a jury's assessment of compensatory damage liability.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs recover nothing of and from Defendants, and Defendants be discharged to go hence without delay and recover their cost, that Plaintiffs' claims and/or causes of action be dismissed, and for such other and further relief to which Defendants, KMHJ, Ltd. and KMHJ Management Company, LLC may be justly entitled.

**ORIGINAL ANSWER OF DEFENDANTS**
**KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC**                    **Page 4**
**RCT/CJR**

Respectfully submitted,

THE SILVERA FIRM
A Professional Corporation

BY:   */s/ Robert C. Turner*
          Robert C. Turner
          State Bar No. 00791831
          17070 Dallas Parkway, Suite 100
          Dallas, Texas 75248
          Telephone (972) 715-1750
          Facsimile (972) 715-1759
          robertturner@silveralaw.com
          notice@silveralaw.com

ATTORNEYS FOR DEFENDANTS
KMHJ, LTD., and KMHJ MANAGEMENT
COMPANY, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Texas Rules of Civil Procedure on this the 9th day of July 2020.

| | |
|---|---|
| Chance A. McMillan | Mary-Olga    Lovett  lovettm@gtlaw.com |
| cam@mcmillanfirm.com | Karl D. Burrer        burrerk@gtlaw.com |
| Matthew Mendoza | Greenberg Traurig, LLP |
| mem@mcmillanfirm.com | 1000 Louisiana, Suite 1700 |
| filing@mcmillanfirm.com | Houston, TX 77002 |
| McMillan Law Firm | |
| 440 Louisiana Street # 1200 | Christopher M. LaVigne lavignec@gtlaw.com |
| Houston, Texas 77002 | Daniel P. Elms elmsd@gtlaw.com |
| *Counsel for Plaintiffs* | Samuel G. Davison davisons@gtlaw.com |
| | Sarah-Michelle Stearns stearnssa@gtlaw.com |
| | Greenberg Traurig LLP |
| | 2200 Ross Avenue, Suite 5200 |
| | Dallas, Texas 75201 |
| | *Counsel for Western Cylinder and Matheson Tri-Gas* |

          */s/ Robert C. Turner*
          Robert C. Turner

**ORIGINAL ANSWER OF DEFENDANTS**
**KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC**                                  **Page 5**
RCT/CJR

Certified Document Number: 91236176 - Page 5 of 5



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 10, 2020

Certified Document Number:        91236176 Total Pages:  5

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**