**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **WATSON GRINDING &** | § | **CASE NO. 20-30967** |
| **MANUFACTURING CO.,** | § | |
| | § | **(Chapter 11)** |
| Debtor. | § | |

| | | |
|---|---|---|
| **FELIPE REVUELTA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | **ADVERSARY NO. _____** |
| **WATSON GRINDING AND** | § | |
| **MANUFACTURING CO., KMHJ,** | § | |
| **LTD., KMHJ MANAGEMENT** | § | |
| **COMPANY, LLC, WESTERN** | § | |
| **INTERNATIONAL GAS &** | § | |
| **CYLINDERS, INC., MATHESON** | § | |
| **TRI-GAS, INC., ARC SPECIALTIES,** | § | |
| **INC., AUTOMATION PLUS, INC.,** | § | |
| **AUTOMATION PROCESS, INC.,** | § | |
| **FIRESTONE CRYOGENIC** | § | |
| **EQUIPMENT, INC., TRCC, LLC,** | § | |
| **DETCON, INC. D/B/A OLDHAM,** | § | |
| **TELEDYNE DETCON, INC., 3M** | § | |
| **COMPANY, DATAONLINE, LLC and** | § | |
| **INDUSTRIAL SCIENTIFIC** | § | |
| **CORPORATION,** | § | |
| | § | |
| Defendants. | § | |

**<u>NOTICE OF REMOVAL</u>**

Janet S. Northrup, Chapter 11 Trustee (the "Trustee") of the Estate of Watson Grinding &

Manufacturing Co. (the "Debtor"), files this Notice of Removal of the state court action styled *Felipe*

1

*Revuelta vs. Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Western International Gas & Cylinders, Inc., Matheson Tri-Gas, Inc., Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic Equipment, Inc., TRCC, LLC, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company, DataOnline, LLC, and Industrial Scientific Corporation,* Cause No. 2020-40660, pending in the 152nd Judicial District Court of Harris County, Texas (the "State Court Action").

## I.      Procedural Background and Nature of Suit

1.      On July 8, 2020, Felipe Revuelta (the "Plaintiff") filed an Original Petition (the "Original Petition") against Watson Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd., KMHJ Management Company, LLC, Western International Gas & Cylinders, Inc., Matheson Tri-Gas, Inc., Arc Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic Equipment, Inc., TRCC, LLC, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company, DataOnline, LLC, and Industrial Scientific Corporation (collectively, the "Defendants").  In his Original Petition, the Plaintiff asserts claims of negligence, gross negligence, and/or products liability - design defect against the Defendants.

2.      On July 16, 2020, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. filed their Original Answer.

3.      On July 17, 2020, KMHJ, Ltd. and KMHJ Management Company, LLC filed their Original Answer.

4.      On February 6, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case captioned *In re Watson Grinding & Manufacturing Co.*, Case No. 20-30967, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Chapter 11 Bankruptcy Case").

2

## II.   Basis for Removal

5.      This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rules 9027-1, 9027-2, 9027-3, and the *General Order of Reference* entered by the District Court of this District on March 10, 2005.

6.      The State Court Action was initiated after the commencement of the Chapter 11 Case. This Notice of Removal has been timely filed pursuant to Bankruptcy Rule 9027(a)(2). *In re R.E. Loans, LLC*, No. 11-35865, 2012 WL 3262767, at *2 (Bankr. S.D. Tex. Aug. 8, 2012).

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

8.      Cases subject to jurisdiction are removable under the authority of 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title").  The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court.  The State Court Action is not a civil action by a government unit to enforce such government unit's police or regulatory power.

9.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) (federal district courts have "original jurisdiction of all civil proceedings…arising in or related to cases under title 11").  The State Court Action "arises in" or, alternatively, is "related to" a Title 11 case, *i.e.* the Debtor's Chapter 11 Bankruptcy Case.  In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis added); *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

10.     The resolution of this State Court Action will have a direct impact on the bankruptcy estate of the Debtor.  The State Court Action is related to the Debtor's Chapter 11 Bankruptcy Case because the outcome of State Court Action could conceivably change the Debtor's rights, liabilities,

or options in a way that would have an effect upon the handling and administration of the bankruptcy estate.

11.    Thus, the claims asserted in the State Court Action are claims that arise in or are otherwise related to the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334(b), and removal to this Court is proper pursuant to 28 U.S.C. § 1452(a).

### III.    Core or Non-Core Bankruptcy Jurisdiction

12.    This action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(A)(B)(C) and (O).  The claims and causes of action in the State Court Action have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

13.    Upon removal of the State Court Action, the Trustee consents to the entry of final orders or judgment by the bankruptcy judge.

### IV.    Parties and Notice

14.    Pursuant to 28 U.S.C. § 1452(a), Federal Bankruptcy Rule 9027(b), and Local Rule 9027-1, all adverse parties are being provided with a copy of this Notice of Removal and a copy of this Notice of Removal is being filed with the clerk of the 152nd Judicial District Court of Harris County, Texas.

15.    In accordance with Local Rule 9027-1(a), the names and addresses of the parties and counsel in the State Court Action, who have or will be served with the notice, are as follows:

| | |
|---|---|
| Potts Law Firm, LLP<br>Michael J. Bins<br>3737 Buffalo Speedway, Suite 1900<br>Houston, Texas 77098<br><br>**ATTORNEYS FOR PLAINTIFF** | McCoy Leavitt Laskey LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**ATTORNEYS FOR WATSON GRINDING &<br>MANUFACTURING CO.**<br><br>Gieger, Laborde & Laperouse L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**ATTORNEYS FOR WATSON VALVE SERVICES,<br>INC.** |
| Greenberg Traurig, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002<br><br>Greenberg Traurig, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR MATHESON TRI-GAS, INC.<br>AND WESTERN INTERNATIONAL GAS &<br>CYLINDER, INC.** | Jackson Walker L.L.P.<br>Bruce J. Ruzinsky<br>1401 McKinney, Suite 1900<br>Houston, Texas  77010<br><br>The Silvera Firm<br>Robert C. Turner<br>17070 Dallas Parkway, Suite 100<br>Dallas, Texas 75248<br><br>**ATTORNEYS FOR KMHJ, LTD. AND KMHJ<br>MANAGEMENT COMPANY, LLC** |

## V.     Process and Pleadings

16.     Pursuant to Bankruptcy Rule 9027(a)(1) and Local Bankruptcy Rule 9027-1(b), true and correct copies of all process and pleadings filed in the State Court Action (as set forth in the attached Exhibit "A") have been provided to this Court.

17.     In the State Court Action, no citations of service have been issued.

18.     In accordance with Bankruptcy Rule 9027(c), the Trustee will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

WHEREFORE, the Trustee notifies the United States Bankruptcy Court for the Southern District of Texas, Houston Division, that the State Court Action is hereby removed in its entirety to this Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

Dated:  July 29, 2020.

Respectfully submitted,

**JONES MURRAY & BEATTY, LLP**

By: */s/ Ruth Van Meter*
Erin E. Jones
Texas Bar No. 24032478
Ruth Van Meter
Texas Bar No. 20661570
4119 Montrose Blvd,  Suite 230
Houston, Texas 77006
Phone: 832-529-1999
Fax: 832-529-5513
erin@jmbllp.com
ruth@jmbllp.com

**SPECIAL COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

**HughesWattersAskanase, LLP**

By: */s/ Wayne Kitchens*
Wayne Kitchens
Texas Bar No. 11541110
Heather McIntyre
Texas State Bar No. 24041076
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:  (713) 759-6834
wkitchens@hwa.com
hmcintyre@hwa.com

**COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

6

AND

**McCOY LEAVITT LASKEY LLC**

By:  _/s/ *Michael I. Ramirez*_____
Michael I. Ramirez
Texas Bar No. 24008604
20726 Stone Oak Parkway, Suite 116
San Antonio, TX  78258
Telephone (210) 446-2828
Fax (262) 522-7020
mramirez@mlllaw.com

**COUNSEL FOR WATSON GRINDING & MANUFACTURING CO.**

## CERTIFICATE OF SERVICE

I certify that on July 29, 2020, a true and correct copy of the foregoing Notice was served via ECF/PACER to all parties registered to receive such service and via first class mail (without attachments) on a date to be supplemented to the following:

| | |
|---|---|
| Potts Law Firm, LLP<br>Michael J. Bins<br>3737 Buffalo Speedway, Suite 1900<br>Houston, Texas 77098<br><br>**ATTORNEYS FOR PLAINTIFF** | McCoy Leavitt Laskey LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**ATTORNEYS FOR WATSON GRINDING & MANUFACTURING CO.**<br><br>Gieger, Laborde & Laperouse L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**ATTORNEYS FOR WATSON VALVE SERVICES, INC.** |
| Greenberg Traurig, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002<br><br>Greenberg Traurig, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR MATHESON TRI-GAS, INC. & WESTERN INTERNATIONAL GAS & CYLINDER, INC.** | Jackson Walker L.L.P.<br>Bruce J. Ruzinsky<br>1401 McKinney, Suite 1900<br>Houston, Texas  77010<br><br>The Silvera Firm<br>Robert C. Turner<br>17070 Dallas Parkway, Suite 100<br>Dallas, Texas 75248<br><br>**ATTORNEYS FOR KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC** |

*/s/ Ruth Van Meter*
Ruth Van Meter

# EXHIBIT A

**Harris County Docket Sheet**

# 2020-40660

**COURT:**   152nd

**FILED DATE:**   7/8/2020

**CASE TYPE:**   Other Injury or Damage



### REVUELTA, FELIPE

Attorney: BINS, MICHAEL JOHN

### vs.

### WATSON VALVE SERVICES, INC.

| Docket Sheet Entries | |
|---|---|
| Date | Comment |

7/8/2020 7:49 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44369511
By: Brittany Hall
Filed: 7/8/2020 7:49 PM

CAUSE NO. _____

| | | |
|---|---|---|
| FELIPE REVUELTA | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| WATSON VALVE SERVICES, INC., | § | |
| WATSON GRINDING AND | § | |
| MANUFACTURING CO., KMHJ, LTD., | § | |
| KMHJ MANAGEMENT COMPANY, LLC, | § | |
| WESTERN INTERNATIONAL GAS & | § | |
| CYLINDERS, INC., MATHESON TRI-GAS, | § | |
| INC., ARC SPECIALTIES, INC., | § | |
| AUTOMATION PLUS, INC., | § | |
| AUTOMATION PROCESS, INC., | § | |
| FIRESTONE CRYOGENIC EQUIPMENT, | § | |
| INC., TRCC, LLC, DETCON, INC. D/B/A | § | |
| OLDHAM, TELEDYNE DETCON, INC., | § | |
| 3M COMPANY, DATAONLINE, LLC and | | |
| INDUSTRIAL SCIENTIFIC | | |
| CORPORATION | | |
| | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## <u>PLAINTIFF'S ORIGINAL PETITION</u>

COME NOW, Felipe Revuelta ("Plaintiff"), and files this Original Petition against Watson

Valve Services, Inc., Watson Grinding and Manufacturing Co., KMHJ, Ltd. and KMHJ

Management Company, LLC, Western International Gas & Cylinders, Inc. Matheson Tri-Gas,

Inc., ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Teledyne Detcon,

Inc., Detcon, Inc. d/b/a Oldham, 3M Company, Firestone Cryogenic Equipment, Inc. TRCC, LLC,

DataOnline, LLC and Industrial Scientific Corporation (collectively "Defendants"), and would

respectfully show this Honorable Court the following:

I.

**PARTIES**

1.      Plaintiff Felipe Revuelta is a citizen and resident of Harris County, Texas.

2.      Defendant, Watson Valve Services, Inc. ("Watson Valve") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, or wherever he may be found.

3.      Defendant, Watson Grinding and Manufacturing Co. ("Watson Grinding") is a domestic for-profit corporation doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401, or wherever he may be found.

4.      Defendant, KMHJ, Ltd. ("KMHJ"), is a domestic limited partnership doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: KMHJ Management Company, LLC at 1400 McKinney Street, Suite 1212, Houston, Texas 77010.

5.      Defendant, KMHJ Management Company, LLC ("KMHJ"), is a domestic limited liability company doing business in the State of Texas. Defendant's principal place of business is located in Harris County, Texas. Defendant may be served through its registered agent: Kelly Lee Watson at 1400 McKinney Street, Suite 1212, Houston, Texas 77010, or wherever she may be found.

6.      Defendant Western International Gas & Cylinders, Inc. ("Western") is a domestic for-profit corporation doing business in the state of Texas.  This Defendant may be served through its registered agent, Denise C. Haugen, at 7173 Highway 159 E., Bellville, Texas 77418, or wherever she may be found.

2

7.      Defendant Matheson Tri-Gas, Inc. ("Matheson") is a foreign for-profit corporation doing business in the state of Texas.   This Defendant may be served through its registered agent, CT Corporation at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

8.      Defendant ARC Specialties, Inc. ("ARC") is domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - L. Don Knight - at 8100 Washington, Suite 1000, Houston, Texas 77007, or wherever he may be found.

9.      Defendant Automation Plus, Inc. ("Automation Plus") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - Frank Lomelo - at 8930 Lawndale St., Suite E, Houston, Texas 77012, or wherever he may be found.

10.      Defendant Automation Process, Inc. ("Automation Process") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - Business Filings, Inc. - at 701 Brazos St., Ste. 720, Austin, Texas 78701.

11.      Defendant Detcon, Inc. d/b/a Oldham ("Detcon") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

12.      Defendant Teledyne Detcon, Inc. ("Teledyne Detcon") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - Cogency Global, Inc.  - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

13.      Defendant Firestone Cryogenic Equipment, Inc. ("Firestone") is a domestic for-profit corporation doing business in the State of Texas. This defendant may be served through its registered agent - Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, or wherever she may be found.

14.     Defendant TRCC, LLC ("TRCC") is a domestic limited liability corporation doing business in the State of Texas. This defendant may be served through its registered agent - Nader Salim - at 3303 Falling Brook Court, Sugar Land, Texas 77479, or wherever he may be found.

15.     Defendant DataOnline, LLC ("DataOnline") is a foreign limited liability company doing business in the State of Texas. This defendant may be served through its registered agent - Lloyd M. Eddings - at 3142 Waldrop Dr., Dallas, Texas 75229.

16.     Defendant 3M Company ("3M") is a foreign for-profit corporation doing business in the State of Texas. This Defendant may be served through its registered agent - Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company - which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

17.     Defendant Industrial Scientific Corporation ("Industrial") is a foreign-for-profit corporation doing business in the State of Texas.  This Defendant may be served through its registered agent - CT Corp. System - which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## II.
### JURISDICTION

### A.  SUBJECT MATTER JURISDICTION

18.     Plaintiff is a citizen of the State of Texas at all times relevant to this case.

19.     Defendants Watson Valve and Watson Grinding (collectively "Watson Defendants"), KMHJ, Ltd., KMHJ Management Company, LLC (collectively "KMHJ Defendants"), Western, Firestone, ARC, TRCC, Detcon, Teledyne, Automation Plus, Inc., and Automation Process, Inc. (collectively "Automation Defendants"), are incorporated in Texas and their principal places of business are in Texas.

20.     Defendant Matheson is incorporated in Delaware and its principal place of business is in Texas.

21.     DataOnline, 3M and Industrial are foreign entities.  Defendant DataOnline is incorporated New Jersey and its principal place of business is in New Jersey.  Defendant 3M is a Delaware Corporation with its principal place of business in Minnesota.  Defendant Industrial is a Pennsylvania Corporation with its principal place of business in Pennsylvania.

22.     The amount in controversy is in excess of $75,000 and there is a lack of diversity between the parties.  Therefore, removal on the basis of diversity jurisdiction would be improper.

**PERSONAL JURISDICTION**

23.     Defendants purposefully availed themselves to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendants' purposeful availment of the benefit and protection of the laws of Texas is sufficient to support the proper exercise of personal jurisdiction over Defendants.

24.     The Watson Defendants, the KMHJ Defendants, Western, Firestone, ARC, TRCC, Detcon, Teledyne, the Automation defendants, and Matheson purposefully availed themselves to Texas because they are incorporated in and/or their principal places of business are located in Texas. Further, because these Defendants' actions related to this explosion occurred in Texas, personal jurisdiction over them is appropriate and Constitutional.

25.     Defendants DataOnline, 3M and Industrial purposefully availed themselves to Texas.  3M owned defendant Detcon at all relevant times to this lawsuit.   Detcon employees in Texas used 3M email addresses while interacting with the Watson Defendants regarding the service, maintenance and repair of the sensors for the propylene system at the Watson Defendants' facility located in Houston, Texas.  As part of this work, 3M designed and manufactured products that

were shipped to Texas and sold to Watson, through Detcon, for installation at the Watson Defendants' facility. As a result 3M purposefully availed itself to Texas because it derived profits from servicing and maintaining the sensors to the propylene system at Watson, it shipped and sold products to Texas for the service, maintenance and repair of the propylene system at the Watson Defendants' facility and as a result, a nexus exists between 3M's actions and the explosion.

26.     DataOnline purposefully availed itself to Texas because it sells its telemetry equipment in the State of Texas and provides monitoring services of tank levels in Texas. Further it was paid to perform these very services for the propylene tank and system at the premises where the subject explosion occurred. A nexus exists between DataOnline's contacts with Texas and the explosion because evidence exists that the propylene levels in the tank decreased significantly between January 23, 2020, and January 24, 2020, such that warnings and alarms should have issued and sounded, but none did and DataOnline was responsible for monitoring the propylene levels in the tank.

27.     Industrial purposefully availed itself to Texas because it targets the Texas market for the sale and use of its gas monitors. To do so, Industrial advertises, markets, sells, ships and installs its gas monitors to Texas. This includes the gas monitors that were present at the premises where the subject explosion occurred. A nexus exists between Industrial's contacts with Texas and the explosion because gas monitors it shipped and sold to Texas caused and/or contributed to causing the subject explosion, as described below, because they failed to identify the propylene leak and to send an alarm that a potentially catastrophic condition existed and needed to be immediately addressed.

28.     Consequently, subject matter jurisdiction exists over 3M, DataOnline and Industrial.

### III.
### VENUE

29.     Venue is proper in Harris County pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(l) and (a)(3), because it is the county where a substantial part of the events giving rise to this case occurred and because the principal place of business for the Watson Defendants, the KMHJ Defendants, Firestone, and ARC are all located in Harris County. Additionally, under Texas Civil Practice and Remedies Code section 15.005, because venue is proper as to one Defendant it is proper for all Defendants.

## IV.
### FACTUAL BACKGROUND

30.     The Watson Defendants' facility was located at 4525 Gessner Road in Houston. The property was owned and managed by the KMHJ Defendants.

31.     The facility was comprised of a number of structures and was constructed between Gessner Road and Seffani Lane. *See* **Exhibit 1.** Pertinent to the issues in this case, located on the property was a storage tank that stored propylene. *See* **Exhibit 1.** The propylene tank supplied propylene to the "Coating Building" through a piping system. *See* **Exhibit** 1.

32.     Without warning, a massive explosion rocked the city of Houston awake in the early morning hours of Friday, January 24, 2020. *See* **Exhibit 2.**

33.     Propylene was quickly identified as the chemical involved in the explosion because telemetry readings from the propylene tank indicated a significant loss of propylene from January 23, 2020, to January 24, 2020. Propylene is an extremely flammable gas that can become explosive when mixed with air. Despite the dangerous condition created by the leaking propylene, no evidence exists that any alarms sounded before the explosion to warn anyone of the leaking propylene.

34.     Western and Matheson had an exclusive agreement to provide propylene to Watson Grinding. Under the terms of the agreement, they were required to install a bulk storage system,

including any safety and control apparatus, telemetry systems and to conduct an annual safety inspection of the system. Western/Matheson were contractually bound to ensure a safety program for its customer, the Watson Defendants. The propylene that was the combustible gas involved in this explosion was stored in a 2000-gallon tank that was owned, serviced and maintained by Western/Matheson. Western/Matheson exercised control over the bulk storage system **including the telemetry system.** Additionally, Western/Matheson perform a "Safety/Site Inspection" of Watson Grinding on March 26, 2019.

35.     Western/Matheson delivered 1,067 gallons of propylene to their tank on January 20, 2020 and filled the tank to 85% capacity from 28% capacity.

36.     Western/Matheson had monitoring equipment on the propylene tank. However, the monitoring equipment was being severely underutilized for its capabilities.

37.     Prior to replenishing the tank with propylene on January 20, 2020, the tank level had dropped to 30% and a warning signal was sent to Western/Matheson. Western/Matheson were aware of the average daily usage of the customer and were aware of the average tank levels in their tank due to normal consumption.

38.     During the 24-hour cycle beginning on January 23, 2020 at 00:53 :54, the tank experienced a precipitous drop in levels from 67% to 38% at the time of the next reading on 00:53 :54 on January 24, 2020. The next warning code was at a tank level reading of 20% at 4:26:39 on January 24, 2020.

39.     A 2,000-gallon tank of propylene gas at the premises was connected to a piping system that supplied propylene to spray rooms where it was used in the Watson Defendants' manufacturing processes. *See* **Exhibit 3.** Following the explosion, investigators found corrosion in the I.5" piping that supplied propylene to the thermal spray equipment.     Upon information and belief,

the insulation material used in the piping was susceptible to retaining moisture which can cause corrosion and leaks.

40.     A number of safeguards should have prevented or warned about the uncontrolled and unregulated leak of propylene.  Each of the above-named Defendants were involved in the failure of these safeguards, which caused and/or contributed to causing the explosion and its widespread destruction.  These include, but are not limited to, the design and installation of the propylene system, the inspection, maintenance, service and repair of the system and its sensors and the failure of the monitors and alarms to warn of the leak once it existed.

41.     The Automation Defendants designed and installed the propylene system and its sensors. They also serviced and maintained the system over the years after it was initially installed. Defendant Firestone installed and tested the piping for the propylene system at the premises.

42.     The Coating Building, the seat of this explosion, was to be equipped with a number of iTrans sensors to monitor and detect flammable gas leaks.  *See* **Exhibit 2 and Exhibit 3**.  The sensors were placed at least four feet above the floor of the spray room at a height that is usually designed to detect a flammable gas that is lighter than air, such as hydrogen.  Propylene is heavier than air.  Upon detection of a leak in the spray room, a properly designed and maintained system is supposed to do, at a minimum, two things: (1) sound an audible alarm that would alert not only human beings present at 4525 Gessner Road, but also in the surrounding community; and (2) automatically cut off the supply of propylene to the piping system by way of the shut off valve at a location upstream of the spray room.  *See* **Exhibit** 3.

43.     Defendants Detcon, Teledyne and 3M performed inspection, maintenance, testing and repair work on the propylene system and sensors in the spray room that are supposed to sound an alarm in the event oxygen levels are too low or combustible levels of gas are too high.  These

9

Defendants worked on the system within six (6) months of the explosion and knew there were no sensors in spray rooms three (3) and five (5). *See* **Exhibit 3**. The gas monitors in question that failed to identify the propylene leak and to issue an alarm were designed and manufactured by Defendants 3M and Industrial. Additionally, Defendants 3M and Industrial targeted Texas for the sale of these gas monitors by advertising, marketing, selling and shipping the gas monitors to Texas and Watson. Defendant ARC serviced and maintained the control panels in the spray rooms, which are part of the warning system that failed to function properly on the date of the incident. Defendant TRCC and its principal, Nader Salim, was the Watson Defendants' safety, environmental and quality consultant at the time of the incident.

44.     Wesroc, which is a division of Defendant RadarOnline, manufactured and sold the telemetry equipment for the propylene tank and was hired to monitor the propylene levels in the tank.

45.     The explosion severely damaged Felipe Revuelta's home located at 4702 Talina Way, Houston, Texas 77041.

## V.
### CAUSES OF ACTION AGAINST WATSON DEFENDANTS

**A. NEGLIGENCE**

46.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Watson Defendants committed acts and omissions, which collectively and separately constituted negligence. The Watson Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Watson Defendants breached that duty in one or more of the following ways:

        a.   Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

       b.   Other acts or omissions deemed negligent.

47.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiff.

**C. GROSS NEGLIGENCE**

48.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of the Watson Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiff's injuries and damages. The Watson Defendants' acts and/or omissions, when viewed objectively from the Watson Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Watson Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## VI.
### CAUSES OF ACTION AGAINST KMHJ DEFENDANTS

**A. NEGLIGENCE**

49.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the **KMHJ** Defendants committed acts and omissions, which collectively and separately constituted negligence. The **KMHJ** Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The **KMHJ** Defendants breached that duty in one or more of the following ways:

       c.   Failing to manage the uncontrolled and unregulated release of propylene originating from the Western and Matheson tanks;

11

d   Other acts or omissions deemed negligent.

50.     These breaches, among others, constituted negligence.  Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiff herein.

**B.  GROSS NEGLIGENCE**

51.     Incorporating by reference the above paragraphs,  Plaintiff alleges that all acts, conduct, and/or omissions on the part of the **KMHJ** Defendants, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiffs injuries and damages. The **KMHJ** Defendants' acts and/or omissions, when viewed objectively from the **KMHJ** Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The **KMHJ** Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**VII.**
**CAUSES OF ACTION AGAINST DEFENDANTS WESTERN AND MATHESON**

**A.  NEGLIGENCE**

52.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Defendants Western and Matheson committed acts and omissions, which collectively and separately constituted negligence. Defendants Western and Matheson had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. Defendants Western and Matheson breached that duty in one or more of the following ways:

a. Failing to have properly functioning monitors and alarms on the tank to identify and shut down the flow of propylene in the event of a leak in the system;

b. Failing to properly maintain, inspect and service the propylene tanks and piping on site to identify and prevent leaks;

c. Failing to warn of a known hazard and dangerous condition;

d. Violating governmental regulations and standards;

e. Failing to recognize and remediate hazards with an extreme degree of risk; and

f. Other acts or omissions deemed negligent.

53.     Additionally, Defendants Western and Matheson are negligent for breaching their product stewardship duties, which involve making products safer and means that whoever designs, produces, sells, or uses a product takes responsibility for minimizing the product's impact throughout all stages of the products' life cycle, including end of life management.  Product stewardship calls on those in the product life cycle to share responsibility for the impacts of products to make products safer for people and the environment, from design to disposal.  Here, Western and Matheson were negligent in their product stewardship in relation to the propylene because they failed to provide adequate customer support, maintenance services, inspection and site visits, warnings about the propylene, its tank and/or piping.  The failure to do so contributed to causing the release of propylene and subsequent explosion.

54.     These breaches, among others, constituted negligence.  Such negligence was a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiff.

**B.  GROSS NEGLIGENCE**

55.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendants Western and Matheson, taken singularly or in

combination, constitute gross negligence and were the proximate cause of Plaintiff's injuries and damages. Defendants Western and Matheson's acts and/or omissions, when viewed objectively from Defendants Western and Matheson's standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants Western and Matheson had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## VIII.
### CAUSES OF ACTION AGAINST THE AUTOMATION DEFENDANTS

**A. NEGLIGENCE**

56. Incorporating by reference the above paragraphs, at the time and on the occas10n im question, the Automation Defendants committed acts and om1ss10ns, which collectively and separately constituted negligence. The Automation Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Automation Defendants breached that duty in one or more of the following ways:

    a. Failing to properly design and install the propylene system, including its monitors and sensors;

    b. Failing to properly service, inspect, maintain, and repair the propylene system, sensors and its piping, to prevent, identify, and warn about leaks;

    c. Failing to recognize and remediate hazards with an extreme degree of risk; and

    d. Other acts or omissions deemed negligent.

**B. GROSS NEGLIGENCE**

57.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of the Automation Defendants constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. The Automation Defendants' acts and/or omissions, when viewed objectively from the Automation Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Automation Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

### IX.
### CAUSES OF ACTION AGAINST FIRESTONE,

**A.  NEGLIGENCE**

58.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Firestone committed acts and omissions, which collectively and separately constituted negligence. Firestone had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. Firestone breached that duty in one or more of the following ways:

  a.  Failing to properly install the piping for the propylene system, including its insulation;

  b.  Failing to properly service, inspect, maintain, and repair the piping for the propylene system to prevent leaks;

  c.  Failing to recognize and remediate hazards with an extreme degree of risk; and

  d.  Other acts or omissions deemed negligent.

**B.  GROSS NEGLIGENCE**

59.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Firestone constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. Firestone's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Firestone had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## X.
### CAUSES OF ACTION AGAINST DETCON, TELEDYNE AND 3 M

**A. NEGLIGENCE**

60.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendants Detcon, Teledyne and 3M committed acts and omissions, which collectively and separately constituted negligence. These Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. These Defendants breached that duty in one or more of the following ways:

       a.  Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

       b.  Failing to recognize and remediate hazards with an extreme degree of risk; and

       c.  Other acts or omissions deemed negligent.

**B. PRODUCTS LIABILITY-DESIGN DEFECT**

61.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, sold, installed and maintained by Defendants Detcon, Teledyne and 3M. At the time the monitors were sold, these Defendants were in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

62.     At the time the subject monitors were designed, manufactured, and sold by Defendants, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiff.

63.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.   Specifically, Defendant could have designed the monitors so that the alarm could not be turned off and disabled.

64.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

65.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

66.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or

injuries to Plaintiff. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

67.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiff suffered severe and damages.

**C.  GROSS NEGLIGENCE**

68.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendants Detcon, Teledyne and 3M constitute gross negligence and are the proximate cause of Plaintiff's damages. Defendants ARC, Detcon, Teledyne and 3M's acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants ARC, Detcon, Teledyne and 3M had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**XI.**
**CAUSES OF ACTION AGAINST INDUSTRIAL**

**D.  PRODUCTS LIABILITY-DESIGN DEFECT**

69.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured and sold by Defendant Industrial. At the time the monitors were sold, Industrial was in the business of designing,

manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

70.     At the time the subject monitors were designed, manufactured and sold by Industrial, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiff.

71.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.   Specifically, Defendant could have designed the monitors so that the alarm could not be turned off and disabled.

72.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

73.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

74.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiff. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that

occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

75.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiff suffered damages.

**E.  GROSS NEGLIGENCE**

76.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendant Industrial constitute gross negligence and is the proximate cause of Plaintiff's injuries and damages.  Industrial's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Defendant Industrial had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind.  Such gross negligence was a proximate cause of the occurrence and Plaintiff damages.  Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## XII.
### CAUSES OF ACTION AGAINST A R C

**A.  NEGLIGENCE**

77.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant ARC committed acts and omissions, which collectively and separately constituted negligence.  This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances.  This Defendant breached that duty in one or more of the following ways:

    a.  Failing to properly service, inspect, maintain, test and repair the control panels propylene system to prevent leaks, identify leaks and in the event of a leak to shut the system down and issue warnings;

b.  Failing to recognize and remediate hazards with an extreme degree of risk; and

c.  Other acts or omissions deemed negligent.

**B.  GROSS NEGLIGENCE**

78.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of ARC constitute gross negligence and are the proximate cause of Plaintiff's damages. ARC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. ARC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**XIII.**
**CAUSES OF ACTION AGAINST T R C C**

**A.  NEGLIGENCE**

79.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant TRCC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

a.  Failing to recognize and ensure remediation of hazards with an extreme degree of risk;

b.  Failure to design and implement an adequate risk management plan;

c.  Failing to read, understand, and follow published safe work policies and procedures; and

21

d.   Other acts or omissions deemed negligent.

**B.  GROSS NEGLIGENCE**

80.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of TRCC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages.  TRCC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  TRCC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff with an intentional state of mind.  Such gross negligence was a proximate cause of the occurrence and Plaintiff's damages.  Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**XIV.**
**CAUSES OF ACTION AGAINST DATAONLINE**

**A.  NEGLIGENCE**

81.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant DataOnline committed acts and omissions, which collectively and separately constituted negligence.  This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances.  This Defendant breached that duty in one or more of the following ways:

a.   Failing to properly monitor telemetry readings from the subject tank;

b.   Failure to properly identify, notify and warn others regarding the propylene leak; and

c.   Other acts or omissions deemed negligent.

**B.  GROSS NEGLIGENCE**

82.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of DataOnline constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. DataOnline's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. DataOnline had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiff's with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

83.     The explosion resulted in widespread destruction and caused fatalities, countless injuries, and numerous homes that were destroyed and hundreds of homes that sustained significant damage. The explosion was so violent that the Houston Chief of Police, Art Acevedo, labeled the site and surrounding areas a "disaster area." *See* **Exhibit 2.**

## XV.
### DAMAGES

84.     As a result of Defendants' actions and/or inactions, Plaintiff brings this lawsuit for the following damages:

     a.     Past and future mental anguish;

     b.     Property damage;

     c.     Court costs;

     d.     Exemplary damages; and

     e.     Any and all other damages, both general and special, at law and in equity, to which Plaintiff may be justly entitled.

85.    Plaintiff also seeks both prejudgment and post judgment interest as allowed by law, for all costs of court, actual damages, and all other relief, both at law and in equity, to which Plaintiff may be entitled.

## **PRAYER**

For the foregoing reasons, Plaintiff prays that upon final trial by a jury, which was previously demanded, Plaintiffs are entitled to have judgment against Defendants and request that the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Respectfully submitted,

**POTTS LAW FIRM, LLP**

By: *Isl Michael J. Bins*
Michael J. Bins
Texas Bar No: 24080792
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
(713) 963-8881 Phone
(713) 583-5388 Fax
mbins@potts-law.com



# EXHIBIT 1



EXHIBIT 2





**EXHIBIT 3**

7/16/2020 3:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44588798
By: Kimberly Garza
Filed: 7/16/2020 3:30 PM

## CAUSE NO. 2020-40660

| | | |
|---|---|---|
| FELIPE REVUELTA, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | |
| | § | |
| WATSON VALVE SERVICES, INC., | § | HARRIS COUNTY, TEXAS |
| WATSON GRINDING AND | § | |
| MANUFACTURING CO., KMHJ, LTD., | § | |
| KMHJ MANAGEMENT COMPANY, | § | |
| LLC, WESTERN INTERNATIONAL GAS | § | |
| & CYLINDERS, INC., MATHESON TRI- | § | |
| GAS, INC, ARC SPECIALISTS, INC. | § | |
| AUTOMATION PLUS, INC., | § | |
| AUTOMATION PROCESS, INC., | § | |
| FIRESTONE CRYOGENIC EQUIPMENT, | § | |
| INC., TRCC, LLC, DETCON, INC., D/B/A | § | |
| OLDHAM, TELEDYNE DECON, INC., 3M | § | |
| COMPANY, DATAONLINE, LLC and | § | |
| INDUSTRIAL SCIENTIFIC | § | |
| CORPORATION | § | |
| | § | |
| **Defendants.** | § | **152nd JUDICIAL DISTRICT** |

---

### WESTERN INTERNATIONAL GAS & CYLINDERS, INC AND MATHESON TRI-GAS, INC.'S ORIGINAL ANSWER

---

Defendants, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. (collectively, "Defendants"), hereby file their Original Answer as follows:

### I.   <u>GENERAL DENIAL</u>

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every claim and cause of action asserted by Plaintiffs and demand strict proof thereof.

## II.    REQUEST FOR RELIEF

WHEREFORE, Defendants Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. respectfully request that Plaintiffs take nothing by reason of their suit against Defendants, and that the Court grant such other and further relief, at law or in equity, to which Defendants are justly entitled.

Dated: July 16, 2020

Respectfully submitted,

Mary-Olga Lovett
  State Bar No. 00789289
  lovettm@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, TX 77002
Telephone:  713-374-3500
Facsimile:  713-374-3505

*/s/* Christopher M. LaVigne
Christopher M. LaVigne
  State Bar No. 24026984
  lavignec@gtlaw.com
P. William Stark
  State Bar No. 24046902
  starkb@gtlaw.com
Samuel G. Davison
  State Bar No. 24084280
  davisons@gtlaw.com
Sarah-Michelle Stearns
  State Bar No. 24099029
  stearnssa@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  214-665-3600
Facsimile:  214-665-3601

**Attorneys for Defendants Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all parties on July 16, 2020 via the Court's emailing system to all counsel of record.


*/s/ Christopher M. LaVigne*
Christopher M. LaVigne

7/17/2020 1:28 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44617729
By: Kimberly Garza
Filed: 7/17/2020 1:28 PM

## CAUSE NO. 2020-40660

| | | |
|---|---|---|
| **FELIPE REVULETA,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | |
| **WATSON GRINDING AND** | § | |
| **MANUFACTURING CO., MATHESON** | § | |
| **TRI-GAS, INC., WESTERN** | § | |
| **INTERNATIONAL GAS &** | § | |
| **CYLINDERS, INC., KMHJ, LTD.,** | § | |
| **KMHJ MANAGEMENT COMPANY,** | § | |
| **LLC, 3M COMPANY, FIRESTONE** | § | **HARRIS COUNTY, TEXAS** |
| **CRYOGENICS, INC., FIRESTONE** | § | |
| **CRYOGENIC EQUIPMENT, INC.,** | § | |
| **TELEDYNE TECHNOLOGIES, INC.** | § | |
| **F/K/A DETCON, INC., DETCON, INC.** | § | |
| **D/B/A OLDHAM, ARC SPECIALTIES,** | § | |
| **INC., AUTOMATION PLUS, INC.,** | § | |
| **AUTOMATION PROCESS, INC., TRCC,** | § | |
| **LLC, DATAONLINE, LLC, and** | § | |
| **INDUSTRIAL SCIENTIFIC** | § | |
| **CORPORATION,** | § | |
| **Defendants.** | § | **152ND JUDICIAL DISTRCT** |

## ORIGINAL ANSWER OF DEFENDANTS
## KMHJ, LTD. AND KMHJ MANAGEMENT COMPANY, LLC

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KMHJ, LTD and KMHJ MANAGEMENT COMPANY, LLC, and subject to Watson Valve Services, Inc.'s and Watson Grinding and Manufacturing Co.'s bankruptcy proceedings and Motions to Stay, and any pending Temporary Restraining Orders or Temporary Injunctions, and files this, their Original Answer to Plaintiff's Original Petition and would respectfully show the court and the parties as follows:

# I.

## GENERAL DENIAL

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC generally deny each and every, all and singular, the material allegations in Plaintiff's petition and demand strict proof thereof by a preponderance of the evidence.  Defendants hereby enter a General Denial.

## II.

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC assert there is a defect of parties.  Defendants did not operate nor manage a manufacturing business or facility in Houston, Harris County, Texas.  Defendants did not own nor operate a business utilizing propylene or other such chemicals.

## III.

Defendants KMHJ, Ltd. and KMHJ Management Company, LLC assert that Defendants are not liable in the capacity in which they have been sued.  Defendants did not operate nor manage a manufacturing business or facility in Houston, Harris County, Texas.  Defendants did not own nor operate a business utilizing propylene or other such chemicals.

## IV.

Further pleading, Defendants allege the action in question and any resulting damages were as a result of the acts or omissions of other named parties or entities and Defendants invoke the provisions of Texas Civil Practice Remedies Code, including but not limited to Chapter 33 and §33.001; §33.002; §33.003; §33.004; §33.011; §33.012 and §33.013.

## V.

Further pleading, if necessary, Defendants allege and hereby invoke the privileges of Chapter 41 of the Texas Civil Practice Remedies Code, including but not limited to §41.001;

§41.002; §41.002(a)(b)(c) and (d); §41.003; §41.004; §41.006; §41.007; §41.008; §41.009; §41.010; §41.011; §41.012 and §41.013.

## VI.

Further pleading, if necessary, in the alternative, Defendants allege that they did not breach any duty owed to Plaintiff or any other party and any alleged acts or omissions of Defendants, KMHJ, Ltd. and KMHJ Management Company, LLC and were not a proximate cause of the alleged accident in question and the resulting damages.

## VII.

Further pleading, if necessary, in the alternative, Defendants assert all available defenses under §41.0105 of the Texas Civil Practice Remedies Code; in addition to any other limitation or law, recovery of medical or healthcare expenses incurred is limited to the amount actually paid or incurred by or on behalf of Plaintiff.

## VIII.

Further pleading, Defendants submit Plaintiff's claims for punitive damages, exemplary damages, if any, are limited under the Texas Civil Practice and Remedies Code §41.008 with the amount of recovery of exemplary or punitive damages not to exceed two times the amount of economic damages, plus, an amount equal to any non-economic damages found by the jury, not to exceed the sum of $150,000; or $200,000.  *See* Texas Civil Practice Remedies Code §41.008. Plaintiff further may not recover any interests from any award of punitive or exemplary damages. *See* Texas Civil Practice Remedies Code §41.007.

## IX.

Further pleading, Defendants argue any award of punitive or exemplary damages is unconstitutional and that the award of such damages constitutes punishment and violation of the

Eighth Amendment of the United States Constitution. Plaintiff's claims for punitive or exemplary damages violates both the U.S. and Texas Constitutions guaranteeing the right to due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution, in addition to Article One, Section Nineteen of the Texas Constitution.

## X.

Further pleading, punitive and exemplary damages violate the double jeopardy clause of the Fifth Amendment to the United States Constitution. Plaintiff's claim for punitive or exemplary damages also violates Defendants' right to protection from being subjected to excessive fines, as provided in Article One, Section Thirteen of the Texas Constitution. Claims for punitive damages should be separated from compensatory damages in a bifurcated trial. Otherwise, evidence admissible on the question of punitive damages may inflame and destroy a jury's assessment of compensatory damage liability.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiff recover nothing of and from Defendants, and Defendants be discharged to go hence without delay and recover their cost, that Plaintiff's claims and/or causes of action be dismissed, and for such other and further relief to which Defendants, KMHJ, Ltd. and KMHJ Management Company, LLC may be justly entitled.

Respectfully submitted,

THE SILVERA FIRM
A Professional Corporation

BY:   */s/ Robert C. Turner*
      Robert C. Turner
      State Bar No. 00791831
      17070 Dallas Parkway, Suite 100
      Dallas, Texas 75248
      Telephone (972) 715-1750
      Facsimile (972) 715-1759
      robertturner@silveralaw.com
      kmhjnotice@silveralaw.com

ATTORNEYS FOR DEFENDANTS
KMHJ, LTD., and KMHJ MANAGEMENT
COMPANY, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Texas Rules of Civil Procedure on this the 17TH day of July 2020.

Michael J. Bins    mbins@potts-law.com
Potts Law Firm, LLP
3737 Buffalo Speedway, Suite 1900
Houston, TX 77098
*Counsel for Plaintiff*

Mary-Olga    Lovett  lovettm@gtlaw.com
Karl D. Burrer    burrerk@gtlaw.com
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, TX 77002

Christopher M. LaVigne lavignec@gtlaw.com
P. William Stark  starkb@gtlaw.com
Samuel G. Davison davisons@gtlaw.com
Sarah-Michelle Stearns stearnssa@gtlaw.com
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
*Counsel for Western Cylinder and Matheson Tri-Gas*

      */s/ Robert C. Turner*
      Robert C. Turner