**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WATSON GRINDING &** | § | **CASE NO. 20-30967** |
| **MANUFACTURING CO.,** | § | |
| | § | **(Chapter 11)** |
| Debtor. | § | |

| | | |
|---|---|---|
| **CASCATA PARTNERS, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ARC SPECIALTIES, INC.,** | § | **ADVERSARY NO. _____** |
| **AUTOMATION PLUS, INC.,** | § | |
| **AUTOMATION PROCESS,** | § | |
| **INC., FIRESTONE CRYOGENICS,** | § | |
| **INC., FIRESTONE CRYOGENIC** | § | |
| **EQUIPMENT, INC., TELEDYNE** | § | |
| **TECHNOLOGIES, INC. F/K/A** | § | |
| **DETCON, INC., TELEDYNE** | § | |
| **EXPLORATION COMPANY,** | § | |
| **TELEDYNE DETCON, INC.,** | § | |
| **DETCON, INC. D/B/A OLDHAM,** | § | |
| **TRCC, LLC, DATAONLINE, LLC, 3M** | § | |
| **COMPANY, INDUSTRIAL** | § | |
| **SCIENTIFIC CORPORATION,** | § | |
| **WESTERN INTERNATIONAL GAS** | § | |
| **& CYLINDERS, INC. AND** | § | |
| **MATHESON TRI-GAS, INC.,** | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF REMOVAL

Janet S. Northrup, Chapter 11 Trustee (the "Trustee") of the Estate of Watson Grinding &

Manufacturing Co. (the "Debtor"), files this Notice of Removal of the state court action styled *Cascata*

1

*Partners, LLC vs. ARC Specialties, Inc., et al.,* Cause No. 2020-58768, pending in the 270th Judicial District Court of Harris County, Texas (the "State Court Action").

## I.     Procedural Background and Nature of Suit

1.     On September 21, 2020, Cascata Partners, LLC (the "Plaintiff") filed an Original Petition (the "Original Petition") against the above-styled Defendants (collectively, the "Defendants"). In the Original Petition, the Plaintiff asserts claims of negligence, gross negligence, and/or product liability – design defect against the Defendants.

2.     On October 8, 2020, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. filed their Original Answer.

3.     On October 8, 2020, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. filed their Third-Party Petition Against the Debtor and Watson Valve Services, Inc.

4.     On February 6, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case captioned *In re Watson Grinding & Manufacturing Co.*, Case No. 20-30967, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Chapter 11 Bankruptcy Case").

## II.     Basis for Removal

5.     This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rules 9027, and the *General Order of Reference* entered by the District Court of this District on March 10, 2005.

6.     The State Court Action was initiated after the commencement of the Chapter 11 Case. This Notice of Removal has been timely filed pursuant to Order of this Court and Bankruptcy Rule 9027. *In re R.E. Loans, LLC*, No. 11-35865, 2012 WL 3262767, at *2 (Bankr. S.D. Tex. Aug. 8, 2012).

7.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

8.      Cases subject to jurisdiction are removable under the authority of 28 U.S.C. § 1452 ("A party may remove any claim or cause of action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title").  The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court.  The State Court Action is not a civil action by a government unit to enforce such government unit's police or regulatory power.

9.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) (federal district courts have "original jurisdiction of all civil proceedings…arising in or related to cases under title 11").  The State Court Action "arises in" or, alternatively, is "related to" a Title 11 case, *i.e.* the Debtor's Chapter 11 Bankruptcy Case.  In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis added); *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

10.     The resolution of this State Court Action will have a direct impact on the bankruptcy estate of the Debtor.  The State Court Action is related to the Debtor's Chapter 11 Bankruptcy Case because the outcome of State Court Action could conceivably change the Debtor's rights, liabilities, or options in a way that would have an effect upon the handling and administration of the bankruptcy estate.

11.     Thus, the claims asserted in the State Court Action are claims that arise in or are otherwise related to the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334(b), and removal to this Court is proper pursuant to 28 U.S.C. § 1452.

### III.    Core or Non-Core Bankruptcy Jurisdiction

12.     This action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under

28 U.S.C. § 157(b)(2)(A)(B) and (C). The claims and causes of action in the State Court Action have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

13.     Upon removal of the State Court Action, the Trustee consents to the entry of final orders or judgment by the bankruptcy judge.

## IV.     Parties and Notice

14.     Pursuant to 28 U.S.C. § 1452(a), Federal Bankruptcy Rule 9027(b), and Local Rule 9027-1, all adverse parties are being provided with a copy of this Notice of Removal and a copy of this Notice of Removal is being filed with the clerk of the 270th Judicial District Court of Harris County, Texas.

15.     In accordance with Local Rule 9027-1(a), the names and addresses of the parties and counsel in the State Court Action, who have or will be served with the notice, are as follows:

| | |
|---|---|
| MCMILLAN FIRM PLLC<br>Chance A. McMillan<br>Mathew Mendoza<br>Wayne Collins<br>440 Louisiana Street, Ste 1200<br>Houston, TX 77002-1691<br><br>**ATTORNEYS FOR PLAINTIFF** | MCCOY LEAVITT LASKEY LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**ATTORNEYS FOR WATSON GRINDING &<br>MANUFACTURING CO.**<br><br>GIEGER, LABORDE & LAPEROUSE L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**ATTORNEYS FOR WATSON VALVE SERVICES,<br>INC.** |
| GREENBERG TRAURIG, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002 | |

4

| GREENBERG TRAURIG, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR MATHESON TRI-GAS, INC.<br>AND WESTERN INTERNATIONAL GAS &<br>CYLINDER, INC.** | |
| --- | --- |

### V.      Process and Pleadings

16.      Pursuant to Bankruptcy Rule 9027(a)(1) and Local Bankruptcy Rule 9027-1(b), true and correct copies of all process and pleadings filed in the State Court Action (as set forth in the attached Exhibit "A") have been provided to this Court.

17.      In the State Court Action, citations of service were issued on September 24, 2020.  No return of citation has been filed.

18.      In accordance with Bankruptcy Rule 9027(c), the Trustee will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

WHEREFORE, the Trustee notifies the United States Bankruptcy Court for the Southern District of Texas, Houston Division, that the State Court Action is hereby removed in its entirety to this Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

Dated:  October 13, 2020.

Respectfully submitted,

**JONES MURRAY & BEATTY, LLP**

By: */s/ Ruth Van Meter*
Erin E. Jones
Texas Bar No. 24032478
Ruth Van Meter
Texas Bar No. 20661570
Jacqueline Q. Pham
Texas Bar. No. 24116899
4119 Montrose Blvd,  Suite 230
Houston, Texas 77006
Phone: 832-529-1999
Fax: 832-529-5513
erin@jmbllp.com
ruth@jmbllp.com
jackie@jmbllp.com

**SPECIAL COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

AND

**HUGHESWATTERSASKANASE, LLP**

By: */s/ Wayne Kitchens*
Wayne Kitchens
Texas Bar No. 11541110
Heather McIntyre
Texas State Bar No. 24041076
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:  (713) 759-6834
wkitchens@hwa.com
hmcintyre@hwa.com

**COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

6

AND

**MᴄCᴏʏ Lᴇᴀᴠɪᴛᴛ Lᴀsᴋᴇʏ, LLC**

By:  _/s/ Michael I. Ramirez_
Michael I. Ramirez
Texas Bar No. 24008604
20726 Stone Oak Parkway, Suite 116
San Antonio, TX  78258
Telephone (210) 446-2828
Fax (262) 522-7020
mramirez@mlllaw.com

**Cᴏᴜɴsᴇʟ ғᴏʀ Wᴀᴛsᴏɴ Gʀɪɴᴅɪɴɢ & Mᴀɴᴜғᴀᴄᴛᴜʀɪɴɢ Cᴏ.**

## CERTIFICATE OF SERVICE

I certify that on October 13, 2020, a true and correct copy of the foregoing Notice was served via ECF/PACER to all parties registered to receive such service and via first class mail (without attachments) on October 14, 2020:

| | |
|---|---|
| MᴄMɪʟʟᴀɴ Fɪʀᴍ PLLC<br>Chance A. McMillan<br>Mathew Mendoza<br>Wayne Collins<br>440 Louisiana Street, Ste 1200<br>Houston, TX 77002-1691<br><br>**Aᴛᴛᴏʀɴᴇʏs ғᴏʀ Pʟᴀɪɴᴛɪғғ** | MᴄCᴏʏ Lᴇᴀᴠɪᴛᴛ Lᴀsᴋᴇʏ LLC<br>John V. McCoy<br>Michael I. Ramirez<br>N19 W24200 Riverwood Dr., Suite 125<br>Waukesha, WI 53188<br><br>**Aᴛᴛᴏʀɴᴇʏs ғᴏʀ Wᴀᴛsᴏɴ Gʀɪɴᴅɪɴɢ & Mᴀɴᴜғᴀᴄᴛᴜʀɪɴɢ Cᴏ.**<br><br>Gɪᴇɢᴇʀ, Lᴀʙᴏʀᴅᴇ & Lᴀᴘᴇʀᴏᴜsᴇ L.L.C.<br>Ernest P. Gieger, Jr.<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139<br><br>**Aᴛᴛᴏʀɴᴇʏs ғᴏʀ Wᴀᴛsᴏɴ Vᴀʟᴠᴇ Sᴇʀᴠɪᴄᴇs, Iɴᴄ.** |
| Gʀᴇᴇɴʙᴇʀɢ Tʀᴀᴜʀɪɢ, LLP<br>Mary-Olga Lovett<br>1000 Louisiana St., Suite 1700<br>Houston, Texas 77002 | Tʜᴇ Sɪʟᴠᴇʀᴀ Fɪʀᴍ<br>Robert C. Turner<br>17070 Dallas Parkway, Suite 100<br>Dallas, Texas 75248 |

| | |
|---|---|
| GREENBERG TRAURIG, LLP<br>Christopher M. LaVigne<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>**ATTORNEYS FOR MATHESON TRI-GAS, INC. AND WESTERN INTERNATIONAL GAS & CYLINDER, INC.** | |

*/s/ Ruth Van Meter*
Ruth Van Meter

**EXHIBIT A**

**Harris County Docket Sheet**

# 2020-58768

**COURT:**  270th

**FILED DATE:**  9/21/2020

**CASE TYPE:**  Other Injury or Damage



### CASCATA PARTNERS LLC

**Attorney: MCMILLAN, CHANCE ALLEN**

### vs.

### ARC SPECIALTIES INC

| Docket Sheet Entries | |
|---|---|
| Date | Comment |

9/21/2020 4:58 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 46432953
By: D Burton
Filed: 9/21/2020 4:58 PM

CAUSE NO. _____

| | | |
|---|---|---|
| CASCATA PARTNERS, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ARC SPECIALTIES, INC., AUTOMATION | § | |
| PLUS, INC., AUTOMATION PROCESS, | § | |
| INC., FIRESTONE CRYOGENICS, INC., | § | |
| FIRESTONE CRYOGENIC EQUIPMENT, | § | |
| INC., TELEDYNE TECHNOLOGIES, INC. | § | |
| F/K/A DETCON INC., TELEDYNE | § | |
| EXPLORATION COMPANY, DETCON, | § | |
| INC. D/B/A OLDHAM, TELEDYNE | § | |
| DETCON, INC., 3M COMPANY, TRCC, | § | |
| LLC, DATAONLINE, LLC, INDUSTRIAL | § | |
| SCIENTIFIC CORPORATION, | § | |
| WESTERN INTERNATIONAL GAS & | § | |
| CYLINDERS, INC., AND MATHESON | § | |
| TRI-GAS, INC. | § | |
| | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND RULE 193.7 NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Cascata Partners, LLC ("Plaintiff"), and files this Original Petition

against, ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone

Cryogenic, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc. f/k/a

Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a Oldham, Teledyne

Detcon, Inc., 3M Company, TRCC, LLC, DataOnline, LLC and Industrial Scientific

Corporation, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc.

(collectively "Defendants"), and would respectfully show this Court the following:

## I.
## DISCOVERY LEVEL

1.      Plaintiffs intend to conduct discovery under Level II of the Texas Rules of Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2.      Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff requests Defendants to disclose, within 50 days of the service of this request, the information and materials described in Rule 194.2 of the Texas Rules of Civil Procedure. Plaintiff specifically requests the responding party to produce responsive documents at the undersigned law office within 50 days of the service of this request.

## III.
## PARTIES

3.      Plaintiff is a resident of Harris County, Texas.

4.      Defendant ARC Specialties, Inc. ("ARC") is domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent - L. Don Knight – at 8100 Washington, Suite 1000, Houston, Texas 77007, and/or wherever he may be found.

5.      Defendant Automation Plus, Inc. ("Automation Plus") (collectively referred to as the "Automation Defendants" with Automation Process, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Frank Lomelo - at 8930 Lawndale St., Suite E, Houston, Texas 77012, and/or wherever he may be found.

6.     Defendant Automation Process, Inc. ("Automation Process") (collectively referred to as the "Automation Defendants" with Automation Plus, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Business Filings, Inc. – which is located at 701 Brazos St., Ste. 720, Austin, Texas 78701.

7.     Defendant Firestone Cryogenics, Inc. ("Firestone") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenic Equipment, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

8.     Defendant Firestone Cryogenic Equipment, Inc. ("Firestone Equipment") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenics, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

9.     Defendant Teledyne Technologies, Inc. f/k/a Detcon, Inc. ("Teledyne Technologies") (referred to as the "Teledyne Defendants" with Teledyne Exploration Company and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Thousand Oaks, California. This

defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

10. Defendant Teledyne Exploration Company ("Teledyne") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Pittsburgh, Pennsylvania. This defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

11. Defendant Teledyne Detcon, Inc. ("Teledyne Detcon") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne Exploration Company) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc.  - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

12. Defendant Detcon, Inc. d/b/a Oldham ("Detcon") is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

13. Defendant TRCC, LLC ("TRCC") is a domestic limited liability corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Nader Salim - at 3303 Falling Brook Court, Sugar Land, Texas 77479, and/or wherever he may be found.

4

14.     Defendant DataOnline, LLC ("DataOnline") is a foreign limited liability company doing business in the State of Texas with its principal place of business in New Jersey. This defendant may be served through its registered agent – Lloyd M. Eddings - at 3142 Waldrop Dr., Dallas, Texas 75229, and/or wherever he may be found.

15.     Defendant 3M Company ("3M") is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Minnesota. This Defendant may be served through its registered agent - Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company - which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

16.     Defendant Industrial Scientific Corporation ("Industrial") is a foreign-for-profit corporation doing business in the State of Texas with its principal place of business in Pennsylvania.  This Defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

17.     Defendant Western International Gas & Cylinders, Inc. ("Defendant Western") is a domestic for-profit corporation incorporated under the laws of the State of Texas with its principal place of business in Houston, Harris County, Texas. Defendant may be served through its registered agent, Ms. Denise C. Haugen, at 7173 Highway 159 East, Bellville, Texas 77418 or wherever she may be found.

18.     Defendant Matheson Tri-Gas, Inc. ("Defendant Matheson") is a domestic for-profit corporation incorporated under the laws of the State of Texas and operating in Texas. Defendant may be served through its registered agent, CT Corporation Services, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

# IV.
## JURISDICTION & VENUE

19.     This Court has personal jurisdiction over Defendants because Defendants have in the past and continue to do busines in the State of Texas, have continuing contacts with the State, and are amenable to service in the State. The amount in controversy is in excess of $1,000,000.00. This Court has personal jurisdiction over all parties as set out in the following paragraphs.

20.     Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) and (a)(3), because it is the county where a substantial part of the events giving rise to this case occurred and because it is the principal place of business and location of the Firestone Defendants and Defendant ARC.

# V.
## THE INCIDENT

21.     Watson Grinding and Manufacturing Co. and Watson Valve Services, Inc. ("Watson") are local companies with their facilities located at 4525 Gessner Road, Houston, Harris County, Texas 77041 ("Watson Facility"). Watson manufactures and services valves and pump components for the chemical, offshore, and aerospace industries.

22.     The Watson Facility was comprised of several structures and was constructed between Gessner Road and Seffani Lane. Pertinent to the issues in this case, located on the property was a 2000 gallon storage tank that housed propylene.  The propylene tank supplied propylene to the "Coating Building" at Watson Facility through a piping system. Propylene is an extremely flammable gas that becomes explosive when mixed with air.

23.     The Coating Building, the seat of this explosion, should have been equipped with several iTrans sensors to monitor and detect flammable gas leaks.  Unfortunately, the sensors in the Coating Building were installed at least four feet above the floor of the spray rooms at a height that is usually designed to detect a flammable gas that is lighter than air, such as hydrogen.  Propylene is heavier than air.  Upon detection of a leak in a spray room, a properly designed and maintained system is supposed to do, at a minimum, two things: (1) sound an audible alarm that would alert not only individuals present at Watson Facility, but also in the surrounding community; and (2) automatically cut off the supply of propylene to the piping system by way of the shut off valve at a location upstream of a spray room.  Neither of these things happen and tragedy followed.

24.     In the early morning hours of January 24, 2020, without warning, a massive explosion rocked the city of Houston. The explosion was so violent that the Houston Chief of Police, Art Acevedo, labeled the site and surrounding areas a "disaster area."  The explosion damaged hundreds of nearby commercial buildings and residential homes and resulted in Plaintiff's property damage.

## VI.
## FAILED AND/OR ABSENT SAFEGUARDS

25.     Propylene was quickly identified as the chemical involved in the explosion because telemetry readings from the propylene tank at issue indicated a significant loss of propylene, suggestive of a leak, from January 23, 2020 to January 24, 2020. During the 24-hour cycle beginning on January 23, 2020 at 00:53:54, the tank experienced a precipitous drop in levels from 67% to 38% at the time of the next reading on 00:53:54 on January 24, 2020. The next warning code showed a tank level reading of 20% at 4:26:39 on January 24, 2020. Despite the dangerous condition created by the leaking propylene,

no evidence exists that any alarms sounded before the explosion to warn anyone of the leak.

26.     Safeguards should have prevented and/or warned about the uncontrolled and unregulated leak of propylene at the Watson Facility. Each of the Defendants listed in this lawsuit were involved in the failure of these safeguards, which caused and/or contributed to the explosion and its widespread destruction. These include, but are not limited to, the design and installation of the propylene system, the inspection, maintenance, service and repair of the system and its sensors and the failure of the monitors and alarms to warn of the leak once it existed.

27.     The Automation Defendants designed and installed the propylene system and its sensors.  They also serviced and maintained the system over the years after it was initially installed.

28.     The Firestone Defendants installed and tested the piping for the propylene system at the Watson Facility.

29.     The Teledyne Defendants, Defendant Detcon, and Defendant 3M performed inspection, maintenance, testing and repair work on the propylene system and sensors in the spray rooms that are were supposed to sound an alarm in the event oxygen levels are too low or combustible levels of gas are too high. Evidence suggests that these Defendants worked on the system within six (6) months of the explosion and knew there were no sensors in certain spray rooms relevant to this lawsuit. The gas monitors in question that failed to identify the propylene leak and to issue an alarm were designed and manufactured by Defendant 3M and Defendant Industrial. Additionally, Defendant

3M and Defendant Industrial targeted Texas for the sale of these gas monitors by advertising, marketing, selling, and shipping the gas monitors to Texas and Watson.

30.    Defendant ARC serviced and maintained the control panels in the spray rooms, which were part of the warning system that failed to function properly on the date of the incident. Defendant TRCC and its principal, Nader Salim, were the Watson safety, environmental and quality consultant at the time of the incident. Wesroc, which is a division of Defendant DataOnline, manufactured and sold the telemetry equipment for the propylene tank and was hired to monitor the propylene levels in the tank.

### VII.
### CAUSES OF ACTION AGAINST THE AUTOMATION DEFENDANTS

#### A. NEGLIGENCE

31.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Automation Defendants committed acts and omissions, which collectively and separately constituted negligence. The Automation Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Automation Defendants breached that duty in one or more of the following ways:

    a.  Failing to properly design and install the propylene system, including its monitors and sensors;

    b.  Failing to properly service, inspect, maintain, and repair the propylene system, sensors and its piping, to prevent, identify, and warn about leaks;

    c.  Failing to recognize and remediate hazards with an extreme degree of risk; and

    d.  Other acts or omissions deemed negligent.

#### B. GROSS NEGLIGENCE

32.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of the Automation Defendants constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. The Automation Defendants' acts and/or omissions, when viewed objectively from the Automation Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Automation Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**VIII.**
**CAUSES OF ACTION AGAINST THE**
**FIRESTONE DEFENDANTS**

**A. NEGLIGENCE**

33.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Firestone Defendants committed acts and omissions, which collectively and separately constituted negligence. The Firestone Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Firestone Defendants breached that duty in one or more of the following ways:

    a. Failing to properly install the piping for the propylene system, including its insulation;

    b. Failing to properly service, inspect, maintain, and repair the piping for the propylene system to prevent leaks;

     c. Failing to recognize and remediate hazards with an extreme degree of risk; and

     d. Other acts or omissions deemed negligent.

**B. GROSS NEGLIGENCE**

34. Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of the Firestone Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Firestone Defendant's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Firestone Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**IX.**
**CAUSES OF ACTION AGAINST THE**
**THE TELEDYNE DEFENDANTS, DEFENDANT DETCON AND 3M**

**A. NEGLIGENCE**

35. Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Teledyne Defendants, Defendant Detcon, and Defendant 3M committed acts and omissions, which collectively and separately constituted negligence. These Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. These Defendants breached that duty in one or more of the following ways:

a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

b. Failing to recognize and remediate hazards with an extreme degree of risk; and

c. Other acts or omissions deemed negligent.

### B. PRODUCTS LIABILITY—DESIGN DEFECT

36. Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, sold, installed and maintained by the Teledyne Defendants, Defendant Detcon, and Defendant 3M. At the time the monitors were sold, these Defendants were in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

37. At the time the subject monitors were designed, manufactured, and sold by Defendants, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiff.

38. The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak.  Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.  Specifically, Defendants could have designed the monitors so that the alarm could not be turned off and disabled.

39.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

40.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants' control and were placed into the stream of commerce.

41.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiff. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

42.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiff suffered severe personal injuries and damages.

### C. GROSS NEGLIGENCE

43.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of the Teledyne Defendants, Defendant Detcon, and Defendant 3M constitute gross negligence and are the proximate cause of Plaintiff's

injuries and damages. The Teledyne Defendants, Defendants ARC, Defendant Detcon, and Defendant 3M's acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## X.
## CAUSES OF ACTION AGAINST
## DEFENDANT INDUSTRIAL

### A. PRODUCTS LIABILITY—DESIGN DEFECT

44.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, and sold by Defendant Industrial. At the time the monitors were sold, Defendant Industrial was in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

45.     At the time the subject monitors were designed, manufactured, and sold by Defendant Industrial, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiff.

46.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak.  Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly

reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.  Specifically, Defendant Industrial could have designed the monitors so that the alarm could not be turned off and disabled.

47.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

48.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendant Industrial's control and were placed into the stream of commerce.

49.     No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiff. To the extent Defendant Industrial attempts, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendant Industrial withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

50.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiff suffered severe personal injuries and damages.

### B. GROSS NEGLIGENCE

51.     Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendant Industrial constitute gross negligence and is the proximate cause of Plaintiff's injuries and damages. Defendant Industrial's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant Industrial had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## XI.
## CAUSES OF ACTION AGAINST
## DEFENDANT ARC

### A.  NEGLIGENCE

52.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant ARC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

> a.  Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;
>
> b.  Failing to recognize and remediate hazards with an extreme degree of risk; and
>
> c.  Other acts or omissions deemed negligent.

**B. GROSS NEGLIGENCE**

53. Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendant ARC constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. Defendant ARC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant ARC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

**XII.**
**CAUSES OF ACTION AGAINST**
**DEFENDANT TRCC**

**A. NEGLIGENCE**

54. Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant TRCC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

      a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

b. Failing to recognize and remediate hazards with an extreme degree of risk; and

c. Other acts or omissions deemed negligent.

## B. GROSS NEGLIGENCE

55.    Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendant TRCC constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. Defendant TRCC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant TRCC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

## XIII.
## CAUSES OF ACTION AGAINST
## DEFENDANT DATAONLINE

### A. NEGLIGENCE

56.    Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant DataOnline committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

a. Failing to properly monitor telemetry readings from the subject tank;

     b.  Failure to properly identify, notify and warn others regarding the propylene leak; and

     c.  Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

57.    Incorporating by reference the above paragraphs, Plaintiff alleges that all acts, conduct, and/or omissions on the part of Defendant DataOnline constitute gross negligence and are the proximate cause of Plaintiff's injuries and damages. Defendant DataOnline's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant DataOnline had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

### XIV.
### RESPONDEAT SUPERIOR

58.    Defendants are liable for the torts committed by its employees during the course and scope of their employment. At all times relevant, Defendants' employees were acting with Defendants' permission and were in the course and scope of their employment for Defendants. Defendants' employees while acting within the course and scope of their employment, in furtherance of Defendants' businesses, and had a general duty to exercise reasonable care in performing their work. Defendants' employee, however, failed to exercise the requisite standard of care, were negligent, and were grossly negligent

under the circumstances. As a result, Defendants are liable for injuries sustained by Plaintiffs.

## XV.
## EXEMPLARY DAMAGES

59.     Plaintiff incorporates all prior paragraphs in this pleading. Defendants had a duty and responsibility to act (or not act) in ways that involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or wellbeing of others. Tex. Civ. Prac. Rem. Code §41.001(11). Thus, Plaintiff seeks exemplary damages.

## XVI.
## PLAINTIFF'S DAMAGES

60.     As a result of Defendants' actions and/or inactions, Plaintiff, individually, bring this lawsuit for the following damages:

        a.  Past and future lost economic loss;

        b.  Property damage;

        c.  Court costs;

        d.  Exemplary damages; and

        e.  Any and all other damages, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

61.     Plaintiff also seek both prejudgment and post judgment interest as allowed by law, for all costs of court, actual damages, and all other relief, both at law and in equity, to which Plaintiff may be entitled.

## XVII.
## PRESERVATION OF EVIDENCE

62.     Plaintiff hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident that made the basis of this lawsuit, including but not limited to any type of recordings; photographs; videotapes; audiotapes; business and medical records; estimates; invoices; checks; measurements; correspondence; memoranda; files; facsimiles; email; voice mail; text messages; cellular telephone records; calendar entries; and any electronic images, data, or information related to Defendants, the referenced incident, or any damages resulting therefrom. Failure to maintain such items will constitute spoliation of the evidence.

## XVIII.
## RULE 193.7 NOTICE

63.     Pursuant to 193.7 of the Texas Rules of Civil Procedure, Plaintiff hereby give actual notice to Defendants that any and all documents produced may be used against the Defendants producing the documents at any pretrial proceedings and/or trial of this matter without the necessity of authenticating documents.

## XIX.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that upon final trial by a jury, which was previously demanded, Plaintiff is entitled to have judgment against Defendants, jointly and severally, and requests the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Respectfully submitted,

MᴄMɪʟʟᴀɴ Fɪʀᴍ, P.L.L.C.

By: _____
Chance A. McMillan
Bar No. 24078981
cam@mcmillanfirm.com
Wayne D. Collins
Bar No.: 00796384
wdc@mcmillanfirm.com
Mathew Mendoza
Bar No.: 24109548
mem@mcmillanfirm.com
440 Louisiana Street, Suite 1200
Houston, Texas 77002-1691
Tel: (281) 888-2131
Fax: (832) 831-2175
Email: filing@mcmillanfirm.com

*ATTORNEY FOR PLAINTIFF*

10/8/2020 4:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 47026298
By: Kevin Childs
Filed: 10/8/2020 4:03 PM

## CAUSE NO. 2020-58768

| | | |
|---|---|---|
| CASCATA PARTNERS, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ARC SPECIALTIES, INC., AUTOMATION | § | |
| PLUS, INC., AUTOMATION PROCESS, | § | |
| INC., FIRESTONE CYROGENICS, INC., | § | |
| FIRESTONE CRYOGENIC EQUIPMENT, | § | |
| INC., TELEDYNE TECHNOLOGIES, INC. | § | |
| F/K/A DETCON, INC., TELEDYNE | § | |
| EXPLORATION COMPANY, DETCON, | § | |
| INC. D/B/A OLDHAM, TELEDYNE | § | |
| DETCON, INC., 3M COMPANY, TRCC, | § | |
| LLC, DATAONLINE, LLC, INDUSTRIAL | § | |
| SCIENTIFIC CORPORATION, WESTERN | § | |
| INTERNATIONAL GAS & CYLINDERS, | § | |
| INC. AND MATHESON TRI-GAS, INC. | § | 270TH JUDICIAL DISTRICT |

**Defendants.**

### WESTERN INTERNATIONAL GAS & CYLINDERS, INC.
### AND MATHESON TRI-GAS INC.'S THIRD-PARTY PETITION

Defendants/Third-Party Plaintiffs Western International Gas & Cylinders, Inc. ("Western") and Matheson Tri-Gas, Inc. ("Matheson" and collectively with Western the "Third-Party Plaintiffs"), hereby file their Third-Party Petition against Watson Grinding and Manufacturing Co. ("Watson Grinding") and Watson Valve Services, Inc. ("Watson Valve", and collectively with Watson Grinding, the "Third-Party Defendants") as follows:

## I.     PARTIES

1.      Third-Party Plaintiff Matheson Tri-Gas, Inc. is a supplier of industrial gases and gas handling equipment.  It operates throughout Texas, and has more than 300 retail, plant, and warehouse locations throughout the United States.

2.      Third-Party Plaintiff Western International Gas & Cylinders, Inc. is a wholly owned subsidiary of Matheson Tri-Gas, Inc. that sells industrial gases such as acetylene and propylene. It is headquartered in Bellville, Texas.

3.      Third-Party Defendant Watson Grinding and Manufacturing Co. is a specialty grinding and thermal spray coating company.  It is headquartered at 4525 Gessner Rd., Houston, Texas 77041.  Watson Grinding and Manufacturing Co. may be served with citation by serving its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401 or wherever he may be found.  **CITATION BUT NOT SERVICE IS REQUESTED AT THIS TIME.**

4.      Third-Party Defendant Watson Valve Services, Inc. is a corporation that manufactures customized valve products.  It is also headquartered at 4525 Gessner Rd., Houston, Texas 77041.  Watson Valve Services, Inc. may be served with citation by serving its registered agent: John M. Watson at 4525 Gessner Road, Houston, Texas 77401 or wherever he may be found.  **CITATION BUT NOT SERVICE IS REQUESTED AT THIS TIME.**

## II.      JURISDICTION AND VENUE

5.      The Court has jurisdiction over the subject matter of this lawsuit and the amount in controversy is above the minimum jurisdictional limits of this Court.

6.      Pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1), Harris County is the proper venue because it is the county where a substantial part of the events giving rise to this litigation occurred.

## III.      FACTUAL BACKGROUND

*The Watson Facilities*

7.      Watson Grinding is a self-proclaimed specialty grinding and thermal spray coating company.  Upon information and belief, Watson Grinding was founded by James Watson in 1960.

**WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S THIRD-PARTY PETITION – 2**
*ACTIVE 53046914v1*

8.      Upon information and belief, Watson Valve was founded to meet the needs of the service valve industry and purports to manufacture customized valve products.

9.      Upon information and belief, both Watson Grinding and Watson Valve operated their businesses out of a group of buildings located at and around 4525 Gessner Road, Houston, Texas, in an area between Gessner Road and Steffani Lane (the "Watson Facilities"). The Watson Facilities included a spray coating facility that contained eight separate spray coating "bays." Each bay was sequentially numbered, and the bays were arranged in an "L" shape beginning on the southwest corner of the property closest to Steffani Lane (the closest bay to the road was number 1). The bays included orange spray coating robots.

10.     Upon information and belief, the spray coating process requires the use of various gas products. Accordingly, bays 3-10 were piped to receive propylene, oxygen, nitrogen, helium, and argon gases.

11.     Upon information and belief, both Watson Grinding and Watson Valve are located and headquartered at 4525 Gessner Road, Houston, Texas 77041. Watson Grinding's website overtly lists 4525 Gessner Road, Houston, Texas 77041 as its address. Although Watson Valve's website lists its address as 4512 Steffani Lane, Houston, Texas 77041—a location directly adjacent to 4525 Gessner Road, Houston, Texas 77041—upon information and belief, Watson Valve also used 4525 Gessner Road, Houston, Texas 77041 as its address. By way of example only, Watson Valve provided 4525 Gessner Road, Houston, Texas 77041 to the Texas Comptroller of Public Accounts as Watson Valve's "mailing address." Additionally, both Watson Grinding and Watson Valve have the same Registered Agent, John M. Watson, whose address is 4525 Gessner Road, Houston, Texas 77041.

*The Product Supply Agreement*

12.     On or about June 22, 2017, Matheson entered into an exclusive Product Supply Agreement with Watson Grinding, which covered the purchase and sale of various gas products (including propylene) (the "PSA").   The PSA contemplated deliveries of gas products to the facilities located at 4525 Gessner Road, Houston, Texas 77041.   Western owned a 2,000-gallon storage tank that was located at the Watson Facilities and used to store propylene, which Western serviced, filled, and maintained.

13.     Bob White, then a Vice President of Watson Grinding, signed the Product Supply Agreement on behalf of Watson Grinding.

14.     Although not disclosed to Third-Party Plaintiffs, Third-Party Plaintiffs have come to learn that, at the time he signed the PSA, Bob White was a "Vice President" of *both* Watson Grinding and Watson Valve.   Third-Party Plaintiffs have additionally come to learn that Bob White later became the "Chief Operating Officer" of both Watson Grinding and Watson Valve.

15.     Further, Watson Grinding and Watson Valve's websites reveal that each entity has or had a nearly identical "team" of employees prior to the explosion and fire.   Specifically, every single member of the Watson Grinding "team" listed on Watson Grinding's website was also listed as a member of the Watson Valve "team" on Watson Valve's website.   By way of example only, upon information and belief, John Watson has served as both the President and Chief Executive Officer of Watson Valve *and* as the President and Chief Executive Officer of Watson Grinding since 2002.   Further upon information and belief, several employees of Watson Grinding listed their roles for both Watson Grinding and Watson Valve in their email signatures, and vice versa, without distinguishing between the two entities.

16.     Upon information and belief, Nader Salim, a key employee for Watson Valve, was in charge of controlling the propylene-related safety measures at the Watson Facilities.  This same employee provided instructions to Watson Grinding employees on the use of such safety measures.

17.     Upon information and belief, the ownership of Watson Grinding and Watson Valve is also nearly identical.  Specifically, John Watson (the son of founder James Watson) owns 63.778% of Watson Grinding and 70% of Watson Valve.  The remaining equity of each entity is held by Bob White (who has worked for Watson Grinding since 1977) and members of Bob White's family.

18.     Although never disclosed to Third-Party Plaintiffs, Third-Party Plaintiffs have come to learn that, upon information and belief, Watson Grinding entered into the PSA and acquired certain gas products (including propylene) on its own behalf <u>and</u> for and on behalf of Watson Valve.

***Third-Party Defendants' Use of the Watson Facilities and the Propylene***

19.     Although never disclosed to Third-Party Plaintiffs, Third-Party Plaintiffs have come to learn that, upon information and belief, both Watson Grinding and Watson Valve used the Watson Facilities, including the spray coating facility and the machinery housed within it. Indeed, among other things, Watson Valve's website states that:

- its valves are "unique" because Watson Valve uses "over 50 years of proven coatings technology of Watson Grinding & Manufacturing."[1]

- Watson Valve is "uniquely suited" to service the valve market because "few companies provide machining, grinding, and coatings *in house*."[2]

- "Our ISO compliant *campus includes a fully-automated thermal spray facility* …."[3]

---

[1] *See* History, available at: http://watsonvalve.com/company/history.
[2] *See* History, available at: http://watsonvalve.com/company/history (emphasis added).
[3] *See* History, available at: http://watsonvalve.com/company/history (emphasis added).

20.     Watson Valve advertises on its website that Watson Valve "utilize[s]" the "proven coatings technology of [its] *sister company*, Watson Grinding & Manufacturing."[4]  Watson Valve further advertises that it coats its products "in-house" at the spray coating facility, which Watson Valve describes as "*our* robotic HVOF & Plasma Thermal Spray Coatings facility."[5]  After Watson Valve coats its products, the coatings are then "tested and approved" by Watson Valve's "*on-site* metallurgical laboratory."[6]

21.     Further, Watson Grinding and Watson Valve both represented on their respective websites (in both 2017 and in early 2020) that each owned the same "Coating & Welding Equipment,"[7] which included "Thermal Spray Booths with Programmable Turning Devices" and a "Colmonoy J3 Spray Metal Rig," among other pieces of shared equipment.

22.     Additionally, although never disclosed to Third-Party Plaintiffs, Third-Party Plaintiffs have come to learn, upon information and belief, that both Watson Grinding and Watson Valve used the propylene sold and delivered by Third-Party Plaintiffs in their businesses and operations.  Specifically, Watson Valve had policies and procedures in place to manage the risks

---

[4] *See* "Watson Grinding & Mfg. and Watson Valve Services, Inc. Announces Ribbon Cutting to be Held for New Valve Manufacture & Repair Facility," available at: http://watsonvalve.com/press-releases/watson-grinding-mfg-and-watson-valve-services-inc-announces-ribbon-cutting-to-be-held-for-new-valve-manufacture-repair-facility/ (emphasis added).
[5] *See* "Watson Grinding & Mfg. and Watson Valve Services, Inc. Announces Ribbon Cutting to be Held for New Valve Manufacture & Repair Facility," available at: http://watsonvalve.com/press-releases/watson-grinding-mfg-and-watson-valve-services-inc-announces-ribbon-cutting-to-be-held-for-new-valve-manufacture-repair-facility/ (emphasis added).
[6] *See* "Watson Grinding & Mfg. and Watson Valve Services, Inc. Announces Ribbon Cutting to be Held for New Valve Manufacture & Repair Facility," available at: http://watsonvalve.com/press-releases/watson-grinding-mfg-and-watson-valve-services-inc-announces-ribbon-cutting-to-be-held-for-new-valve-manufacture-repair-facility/ (emphasis added).
[7] *Compare* https://web.archive.org/web/20200223021738/http://watsonvalve.com/resources/equipment-list/ *with* https://web.archive.org/web/20200117122145/http://www.watsongrinding.com/resources/equipment-list/.

**WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S THIRD-PARTY PETITION – 6**
*ACTIVE 53046914v1*

associated with propylene and regarding the safe handling of flammable gases (including propylene).

23.     Upon information and belief, the use of propylene was an integral part of Watson Valve's operations.  In fact, Watson Valve maintained "internal specifications" for its products that relied on the use of propylene.

24.     Upon information and belief, Watson Valve and Watson Grinding shared the responsibility of ensuring the safety of the Watson Facilities, including the spray coating facility. Specifically, Watson Valve received maintenance requests pertaining to equipment inside the spray coatings facility.  Upon information and belief, in 2016 and 2018, Watson Valve received maintenance requests related to a "valve leaking propylene" in "spray booth #4" and a "gas leak" in "spray booth #9," respectively.

***This Litigation***

25.     This litigation arises out of an explosion and fire that occurred in the early-morning on Friday, January 24, 2020 at the Watson Facilities.  The cause of the fire and explosion is currently unknown, but the center of the explosion appears to have been the spray coating facility at the Watson Facilities.

26.     On February 6, 2020, approximately two weeks after the explosion and fire, Watson Grinding and Watson Valve both filed voluntary petitions for Bankruptcy under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

27.     On September 21, 2020, Plaintiff filed its Original Petition against, *inter alia*, Matheson and Western, however failing to assert any specific claims against Matheson or Western.

The claims asserted in Plaintiff's original petition relate to the January 24, 2020 fire and explosion at the Watson Facilities.

28.     Matheson and Western obtained relief from the automatic stay to assert the claims in this Third-Party Petition against Watson Grinding and Watson Valve.

29.     Watson Grinding is or may be liable to Third-Party Plaintiffs and/or Plaintiff for all or part of Plaintiff's claims.

30.     Similarly, Watson Valve is or may be liable to Third-Party Plaintiffs and/or Plaintiff for all or part of Plaintiff's claims.

31.     Pursuant to Texas statutory and/or common law, as well as the PSA, Third-Party Plaintiffs are entitled to comparative liability, contribution, defense, and indemnity from Watson Grinding and Watson Valve.

## IV.     COMPARATIVE LIABILITY AND CONTRIBUTION

32.     Third-Party Plaintiffs adopt the preceding paragraphs as if fully set forth herein.

33.     Third-Party Plaintiffs deny any and all liability in this litigation and deny Plaintiff's allegations.  To the degree Third-Party Plaintiffs are found liable to Plaintiff or others for damages caused in whole or in part by any acts or omissions of Watson Grinding relating to the explosion and fire at the Watson Facilities on January 24, 2020, Third-Party Plaintiffs are entitled to contribution from Watson Grinding pursuant to Chapter 33 of the Texas Civil Practice & Remedies Code, for any percentage of liability assigned to Third-Party Plaintiffs.  *See* TEX. CIV. PRAC. & REM. CODE §§ 33.015, 33.016.

34.     The explosion and fire that is the basis for Plaintiff's claims in this litigation occurred at the Watson Facilities.  While the cause of the explosion and fire is still unknown, the acts or omissions of Watson Grinding may have caused and/or contributed to the explosion and

fire.  Accordingly, Watson Grinding is or may be liable to Third-Party Plaintiffs or Plaintiff for all or part of Plaintiff's claims.

35.     Third-Party Plaintiffs deny any and all liability in this litigation and deny Plaintiff's allegations.  To the degree Third-Party Plaintiffs are found liable to Plaintiff or others for damages caused in whole or in part by any acts or omissions of Watson Valve relating to the explosion and fire at the Watson Facilities on January 24, 2020, Third-Party Plaintiffs are entitled to contribution from Watson Valve pursuant to Chapter 33 of the Texas Civil Practice & Remedies Code, for any percentage of liability assigned to Third-Party Plaintiffs.  *See* TEX. CIV. PRAC. & REM. CODE §§ 33.015, 33.016.

36.     The explosion and fire that is the basis for Plaintiff's claims in this litigation occurred at the Watson Facilities.  While the cause of the explosion and fire is still unknown, the acts or omissions of Watson Valve may have caused and/or contributed to the explosion and fire. Accordingly, Watson Valve is or may be liable to Third-Party Plaintiffs or Plaintiff for all or part of Plaintiff's claims.

## V.     INDEMNITY

37.     Third-Party Plaintiffs adopt the preceding paragraphs as if fully set forth herein.

38.     Third-Party Plaintiffs deny any and all liability in this litigation and deny Plaintiff's allegations.  To the degree Third-Party Plaintiffs are found liable to Plaintiff or others for damages caused in whole or in part by any acts or omissions of Watson Grinding relating to the explosion and fire at the Watson Facilities on January 24, 2020, Third-Party Plaintiffs are entitled to defense, indemnity, and to be held harmless by and from Watson Grinding pursuant to Section 9 of the June 22, 2017 Product Supply Agreement.

39.     In signing the PSA, Watson Grinding acted on its own behalf and is bound to the terms of the PSA, including, but not limited to the indemnity provisions therein (including but not limited to Section 9).  Watson Grinding procured the gas products, including the propylene, for itself and then used and benefitted from those products.

40.     Third-Party Plaintiffs deny any and all liability in this litigation and deny Plaintiff's allegations.  To the degree Third-Party Plaintiffs are found liable to Plaintiff or others for damages caused in whole or in part by any acts or omissions of Watson Valve relating to the explosion and fire at the Watson Facilities on January 24, 2020, Third-Party Plaintiffs are entitled to defense, indemnity, and to be held harmless by and from Watson Valve—also pursuant to the June 22, 2017 Product Supply Agreement.

41.     In signing the PSA, Watson Grinding also acted as an agent for its undisclosed principal, Watson Valve, thus binding *both* Watson Grinding and Watson Valve to the terms of the PSA, including, but not limited to the indemnity provisions therein (including but not limited to Section 9).  Watson Grinding procured the gas products, including the propylene, for Watson Valve, which, upon information and belief, Watson Valve then used.

42.     Watson Grinding and Watson Valve must also each indemnify Third-Party Plaintiffs based on Texas common law.  Specifically, Third-Party Plaintiffs' alleged liability may potentially be vicarious if the factfinder ultimately concludes that Watson Grinding and/or Watson Valve are exclusively liable.

## VI.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Third-Party Plaintiffs Matheson and Western pray that: (1) Watson Grinding's negligence or comparative fault be submitted to the trier of fact for consideration for contribution, (2) Watson Valve's negligence or comparative fault be

**WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S THIRD-PARTY PETITION – 10**
ACTIVE 53046914v1

submitted to the trier of fact for consideration for contribution, (3) Watson Grinding be held to defend and indemnify Third-Party Plaintiffs for any liability caused by Watson Grinding, (4) Watson Valve be held to defend and indemnify Third-Party Plaintiffs for any liability caused by Watson Valve, and (5) for such other and further relief to which Third-Party Plaintiffs may be justly entitled.

Date: October 8, 2020

Respectfully submitted,

Mary-Olga Lovett
  State Bar No. 00789289
  lovettm@gtlaw.com
Karl D. Burrer
  State Bar No. 24043584
  burrerk@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone:  713-374-3500
Facsimile:  713-374-3505

*/s/ Christopher M. LaVigne*
Christopher M. LaVigne
  State Bar No. 24026984
  lavignec@gtlaw.com
P. William Stark
  State Bar No. 24046902
  starkb@gtlaw.com
Samuel G. Davison
  State Bar No. 24084280
  davisons@gtlaw.com
Sarah-Michelle Stearns
  State Bar No. 24099029
  stearnssa@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  214-665-3600
Facsimile:  214-665-3601

**Attorneys for Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all parties on October 8, 2020 via the Court's emailing system to all counsel of record.

*/s/ Christopher M. LaVigne*
Christopher M. LaVigne

**WESTERN INTERNATIONAL GAS & CYLINDERS, INC. AND MATHESON TRI-GAS, INC.'S THIRD-PARTY PETITION – 12**
*ACTIVE 53046914v1*

10/8/2020 4:01 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 47025713
By: Mercedes Ramey
Filed: 10/8/2020 4:01 PM

## CAUSE NO. 2020-58768

| | | |
|---|---|---|
| **CASCATA PARTNERS, LLC** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ARC SPECIALTIES, INC., AUTOMATION** | § | |
| **PLUS, INC., AUTOMATION PROCESS,** | § | |
| **INC., FIRESTONE CYROGENICS, INC.,** | § | |
| **FIRESTONE CRYOGENIC EQUIPMENT,** | § | |
| **INC., TELEDYNE TECHNOLOGIES, INC.** | § | |
| **F/K/A DETCON, INC., TELEDYNE** | § | |
| **EXPLORATION COMPANY, DETCON,** | § | |
| **INC. D/B/A OLDHAM, TELEDYNE** | § | |
| **DETCON, INC., 3M COMPANY, TRCC,** | § | |
| **LLC, DATAONLINE, LLC, INDUSTRIAL** | § | |
| **SCIENTIFIC CORPORATION, WESTERN** | § | |
| **INTERNATIONAL GAS & CYLINDERS,** | § | |
| **INC. AND MATHESON TRI-GAS, INC.** | § | **270TH JUDICIAL DISTRICT** |
| | | |
| **Defendants.** | | |

---

## WESTERN INTERNATIONAL GAS & CYLINDERS, INC AND MATHESON TRI-GAS, INC.'S ORIGINAL ANSWER

---

Defendants, Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. (collectively, "Defendants"), hereby file their Original Answer as follows:

### I.    GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every claim and cause of action asserted by Plaintiff and demand strict proof thereof.

## II.     REQUEST FOR RELIEF

WHEREFORE, Defendants Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. respectfully request that Plaintiff takes nothing by reason of its suit against Defendants, and that the Court grant such other and further relief, at law or in equity, to which Defendants are justly entitled.

Dated:  October 8, 2020                    Respectfully submitted,

Mary-Olga Lovett
  State Bar No. 00789289
  lovettm@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, TX 77002
Telephone:  713-374-3500
Facsimile:  713-374-3505

/s/ Christopher M. LaVigne
Christopher M. LaVigne
  State Bar No. 24026984
  lavignec@gtlaw.com
P. William Stark
  State Bar No. 24046902
  starkb@gtlaw.com
Samuel G. Davison
  State Bar No. 24084280
  davisons@gtlaw.com
Sarah-Michelle Stearns
  State Bar No. 24099029
  stearnssa@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  214-665-3600
Facsimile:  214-665-3601

**Attorneys for Defendants Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all parties on October 8, 2020 via the Court's emailing system to all counsel of record.


<u>*/s/ Christopher M. LaVigne*</u>
Christopher M. LaVigne