

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/30/2020

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **WATSON GRINDING &** | § | **Case No. 20-30967** |
| **MANUFACTURING CO.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | **Case No. 20-30968** |
| | § | |
| Debtor. | § | |
| | § | |

**ORDER CONFIRMING FIRST AMENDED COMBINED DISCLOSURE STATEMENT**
**AND JOINT PLAN OF LIQUIDATION OF WATSON GRINDING &**
**MANUFACTURING CO. AND WATSON VALVE SERVICES, INC. UNDER CHAPTER**
**11 OF THE BANKRUPTCY CODE**
(Relates to Case No. 20-30967, Doc. No. 971; Case No. 20-30968, Doc. No. 443)

On February 6, 2020 (the "Petition Date"), the Debtors filed voluntary chapter 11

petitions in the Bankruptcy Court which initiated these Chapter 11 cases (the "Chapter 11

Cases").

On December 3, 2020, the Official Committee of January 24 Claimants (the

"Committee") filed its First Amended Combined Disclosure Statement and Joint Plan of

Liquidation of Watson Grinding & Manufacturing Co. and Watson Valve Services, Inc. Under

Chapter 11 of the Bankruptcy Code (Case No. 20-30967, Doc. No. 971; Case No. 20-30968,

Doc. No. 443) (as applicable, the "Plan" and "Disclosure Statement").[1]  A copy of the Plan and

Disclosure Statement is attached hereto as **Exhibit A**.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

1

On December 18, 2020, the Committee filed its Notice of Filing of Plan Supplement (Case No. 20-30967, Doc. No. 1000; Case No. 20-30968, Doc. No. 451) (the "Plan Supplement").

The Court has

a.    entered its *Order (1) Conditionally Approving Disclosure Statement; (2) Scheduling Plan Confirmation Hearing; (3) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation; (4) Temporarily Allowing Certain Claims for Voting Purposes Only; (5) Approving Form of Ballots; (6) Establishing Solicitation and Tabulation Procedures; and (7) Reducing Notice Period Pursuant to Rules 2002(b) and 9006(c)* (Doc. No. 974) (the "Disclosure Statement Order"), which granted conditional approval of the Disclosure Statement, approved the solicitation procedures, vote tabulation procedures, and forms of ballots, and set approval of the Disclosure Statement and Plan for a combined hearing on December 30, 2020 (the "Combined Hearing");

b.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.    held the Combined Hearing;

a.    heard the statements, arguments, and objections made by counsel in respect of Confirmation;

b.    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

d.    overruled any and all objections to the Plan or Disclosure Statement and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein.

The Court finds that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan. The Court further finds that the transactions contemplated under the Plan, the legal and factual bases set forth in the documents filed in support of Confirmation, the evidence proffered or adduced by counsel at the Combined Hearing, and the entire record of the

2

Chapter 11 Cases establish just cause for the relief granted herein. After due deliberation and finding good cause to grant the relief in this Order, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

a.    <u>Jurisdiction and Core Proceeding</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

b.    <u>Retention of Jurisdiction</u>.  The Court finds and concludes that the Court's retention of jurisdiction as set forth in Article XVIII of the Plan comports with 28 U.S.C. § 1334. The Court further finds that the Debtors are proper debtors under Bankruptcy Code § 109.

### Notice, Solicitation and Acceptance

c.    <u>Adequate Notice of Combined Hearing</u>.  The Court finds and concludes that (a) proper, timely and adequate notice of the Disclosure Statement, Plan, Plan Supplement, and time for filing objections to the Disclosure Statement and Plan, together with all deadlines for voting to accept or reject the Plan, was provided, and (b) proper, timely and adequate notice of the Combined Hearing was provided to all holders of Claims and Equity Interests.  No other or further notice of approval of the Disclosure Statement, Confirmation of the Plan or the Combined Hearing is necessary or required.

d.    <u>Adequate Information</u>.    The Disclosure Statement contains "adequate information" (as such term is defined in Bankruptcy Code § 1125(a) and used in Bankruptcy

3

Code § 1126(b)(2)) with respect to the Debtors, the Plan, and the transactions contemplated therein.

      e.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Court finds and concludes that the Committee has solicited acceptances of the Plan in good faith, in compliance with the Bankruptcy Code and in accordance with the Disclosure Statement Order.  The Committee and each of its members, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are therefore entitled to the protections afforded by 11 U.S.C. § 1125(e) and are not, and shall not be, on account of such issuance or solicitation, liable at any time for the violation of any law, rule, or regulation governing the solicitation of acceptances of the Plan or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, and any and all related documents.  The Committee has complied with the Disclosure Statement Order.

      f.    <u>Voting</u>.  As evidenced by the certificate of service of solicitation materials and the *Certification of Stretto Regarding the Tabulation of Votes* (Doc. No. 1023), votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

<u>**Compliance with Bankruptcy Code § 1129**</u>

      g.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitations, sections 1122 and 1123 of the Bankruptcy Code.

             (i)    <u>Proper Classification—Sections 1122 and 1123</u>.  In accordance with Bankruptcy Code §§ 1122(a) and 1123(a), the Court finds and concludes that the Plan: (a) in addition to Administrative Claims, Priority Tax

4

Claims, and Professional Fee Claims, which need not be classified, classifies fourteen Classes of Claims and Equity Interests for the Debtors. The Claims and Equity Interests allocated to each Class are substantially similar to other Claims and Equity Interests, as applicable, in each such Class, and such Classes do not unfairly discriminate among holders of Claims and Equity Interests; (b) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (d) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agreed to less favorable treatment of its respective Claim or Equity Interest; (e) provides for adequate means for the Plan's implementation; and (f) does not provide for the issuance of non-voting equity securities. Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code §§ 1122(a) and 1123(a).

(ii)     Compliance with 11 U.S.C. § 1123(b).  As permitted by Bankruptcy Code § 1123(b), the Plan: (a) impairs the rights of the holders of certain Classes of Claims and Equity Interests; (b) with the exception of insurance policies which are being assumed, provides for rejection of all Executory Contracts and Unexpired Leases not assumed as of the Effective Date; (c) provides for the settlement or adjustment of Claims or Equity Interests belonging to the Debtors or their Estates; (d) incorporates procedures for resolving disputed, contingent and unliquidated Claims; (e) contains procedures for making distributions to Allowed Claims and establishing reserves for Claims that have not become Allowed Claims; (f) enjoins certain acts by holders of Claims or Equity Interests; (g) exculpates the certain parties from certain Claims and Causes of Action; and (h) includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code.  The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates.  Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code § 1123(b).

h.     Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  In accordance with Bankruptcy Code § 1129(a)(2), the Court finds and concludes that the Committee has complied with the applicable provisions of the Bankruptcy Code.  The Committee has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

10859433v3

i.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.   In accordance with Bankruptcy Code § 1129(a)(3), the Court finds and concludes that the Committee has proposed the Plan in good faith and not by any means forbidden by law, and the Committee and their respective members, advisors and professionals, have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan.  The Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation and solicitation of the Plan.  Furthermore, the Plan is in the best interests of the Debtors' Estates and holders of Claims and Equity Interests.

j.      <u>Exculpations and Injunctions</u>.   The exculpations and injunction provisions set forth in Article XVI of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such provisions (a) are within the jurisdiction of the Court; (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are integral elements of the Plan and the resolution of the Chapter 11 Cases, such that the failure to effect such provision would seriously impair the Committee's ability to confirm the Plan; (c) confer material benefits on, and are in the best interests, of the Debtors, the Debtors' Estates, and Holders of Claims and Interests; (e) are, inter alia, supported by consideration; (f) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g) are consistent with sections 105, 1123, 1129, and other applicable sections of the Bankruptcy Code.

k.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   In accordance with Bankruptcy Code § 1129(a)(4), the Court finds and concludes that all payments

6

made or to be made by the Estates for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to approval of, the Court as reasonable, unless otherwise ordered by the Court. The Court retains jurisdiction to hear and determine all applications for Professional Fees incurred on or before the Effective Date.

l.    Identity of Trustee (11 U.S.C. § 1129(a)(5)). In accordance with § 1129(a)(5), the Court finds and concludes that the Committee has disclosed the identity of Ron Bankston as the Liquidating Trustee, Eva Engelhart as the Watson Valve Trustee, and their respective compensation. The Debtors will have no officers or directors following the Effective Date.

m.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). In accordance with Bankruptcy Code § 1129(a)(7), based on the Liquidation Analysis and the justification for the global compromises regarding remand of the Removed Lawsuits set forth in the Declaration of Robert S. Kwok in Support of Final Approval and Confirmation of the First Amended Combined Disclosure Statement and Joint Plan of Liquidation of Watson Grinding & Manufacturing Co. and Watson Valve Services, Inc. Under Chapter 11 of the Bankruptcy Code, the Court finds and concludes that with respect to Impaired Classes of Claims and Interests each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

n.    Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)). In accordance with Bankruptcy Code § 1129(a)(8), the Court finds and concludes that: (1) Classes

7

1, 2, 8 and 9 are unimpaired and deemed to accept the Plan, and (2) Classes 3, 4, 5, 6, 7, 10, 11, 12, 13, and 14 have voted to accept the Plan.

o.     <u>Treatment of Administrative and Priority Claims (11 § U.S.C. § 1129(a)(9))</u>.  The Court finds and concludes that the Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

p.     <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  In accordance with Bankruptcy Code § 1129(a)(10), the Court finds and concludes that at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

q.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan contemplates the liquidation of the Debtors' assets for distribution in accordance with the Plan.  The Plan provides sufficient measures for the funding of distributions to be made under the Plan and the administration of the Liquidating Trust and the Watson Valve Liquidating Trust.  Confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors.  Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

r.     <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  In accordance with Bankruptcy Code § 1129(a)(12), the Court finds and concludes that, to the extent that fees payable to the U.S. Trustee under 28 U.S.C. § 1930 have not been paid, the Plan provides for the payment of all such fees on the Effective Date and as they come due after the Effective Date.

s.     <u>Other Provisions of 11 U.S.C. 1129(a)</u>.  The Court finds and concludes that the provisions of 11 U.S.C. §§ 1129(a)(6), (a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Debtors.

10859433v3

t.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>.   The Plan is the only plan that was approved for solicitation in these Chapter 11 Cases, and accordingly, the Court finds and concludes that Bankruptcy Code § 1129(c) is inapplicable to these Chapter 11 Cases.

u.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.   The Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.

v.     Based on the foregoing, the Committee, as proponents of the Plan, has met its burden of proving the elements of Bankruptcy Code § 1129.

### **Modifications to the Plan**

w.     The Court finds and concludes that all modifications made to the Plan, if any, after solicitation of votes on the Plan had commenced, as reflected in this Order, as set forth on the record at the Combined Hearing, or as reflected in the Plan, satisfy the requirements of Bankruptcy Code § 1127(a) and Bankruptcy Rule 3019, are not material or do not adversely affect the treatment and rights of the holders of any Claims or Interests under the Plan who have not otherwise accepted such modifications.  Accordingly, the Debtors have satisfied Bankruptcy Code § 1127(c) and Bankruptcy Rule 3019 with respect to the Plan, as modified, and holders of Claims or Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

### **Exemptions**

x.     <u>Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a))</u>. The Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), any

transfers from the Debtors to the Liquidating Trust or the Watson Valve Liquidating Trust or any other Person or Entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment. The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

**Transactions Pursuant to the Plan**

y.      <u>Rule 9019 Settlement; Releases and Discharges</u>.  The Court finds and concludes that pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Impaired Claims against and Interests in the Debtors.  Such compromises and settlements are made in exchange for consideration and are in the best interests of the holders of Impaired Claims and Interests, are within the range of possible litigation outcomes, are fair, equitable, reasonable, and are integral elements of the resolution of these Chapter 11 Cases in accordance with the Plan.

z.      The Court finds and concludes that the compromise between Matheson, Watson Grinding and Watson Valve regarding the allowance  certain claims by Watson Grinding against Watson Valve, and Watson Grinding's agreement to limit its potential recovery from remaining amounts of the Valve Cash, and Matheson's contractual indemnity claim constitutes a good faith compromise following arms' length negotiations and represents a sound exercise of the business judgment of the Debtors and the Committee.  This proposed compromise is in the best interests of the Estates and their Creditors, in part, because it resolves the contested motions to remand the Removed Lawsuits.

10

10859433v3

aa.     Exculpation.  The failure to effect the exculpation provisions of the Plan would impair the Committee's ability to confirm the Plan.  Accordingly, the compromises and settlements embodied in the exculpation provisions described in Article XVI of the Plan are approved and incorporated by reference into and as an integral part of this Order.

bb.     Plan Provisions Valid and Binding.  The Court finds and concludes that, upon entry of this Order, each term and provision of the Plan and the Plan Supplement is valid, binding, and enforceable pursuant to its terms.

cc.     Plan Documents Valid and Binding.  The Court finds and concludes that all documents reasonably necessary to implement the Plan shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements.  The Court further finds and concludes that all documents reasonably necessary to implement the Plan are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arm's length.

dd.     Executory Contracts and Unexpired Leases.  The Court finds and concludes that the Committee has exercised reasonable business judgment in determining to reject Executory Contracts and Unexpired Leases, other than insurance policies, pursuant to Article XII of the Plan.  To the extent that any or all insurance policies are considered to be Executory Contracts, the Plan shall be considered a motion to assume such insurance policies, and subject to the occurrence of the Effective Date, this Confirmation Order approves such assumption pursuant to §§ 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code.  The Court finds that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in these Chapter 11 cases.

11

ee.     The Court finds that the requirements of 11 U.S.C § 365 have been satisfied for the assumption and assignment of all the Debtors' insurance policies to the Liquidating Trust or the Watson Valve Liquidating Trust, as applicable.

ff.     <u>Compliance with Bankruptcy Rule 3016</u>.  In accordance with Bankruptcy Rule 3016(a), the Court finds and concludes that the Plan is dated and the entities that submitted it, and filed it, are identified.

<u>**Miscellaneous Provisions**</u>

gg.     The Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, holders of Claims and Interests, and all other parties in interest.

hh.     All findings of fact and conclusions of law announced by this Court on the record in connection with the Confirmation of the Plan or otherwise at the Combined Hearing are incorporated herein by reference.

ii.     All findings of fact that are conclusions of law shall be deemed to be conclusions of law, and all conclusions of law which are findings of fact shall be deemed to be findings of fact.

<u>**ORDER**</u>

Based on the foregoing Findings of Fact and Conclusions of Law, it is **ORDERED AS FOLLOWS**:

1.     <u>Disclosure Statement</u>.  The Disclosure Statement contains adequate information within the meaning of Bankruptcy Code § 1125 and is **APPROVED** on a final basis, and all objections, statements, and reservations of rights with respect to the Disclosure Statement are overruled.

2.     <u>Confirmation</u>.  The Plan, as attached to this Order and with the modifications and clarifications embodied in this Order, is hereby **CONFIRMED**. The terms of this Order are

12

controlling if any inconsistency exists between the Plan, the Disclosure Statement, and this Order.  All objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled are overruled on the merits.  The failure specifically to include or to refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

3.     <u>Binding Effect</u>.  The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtors and any Creditor or equity security holder of the Debtors, whether or not the Claim or Interest of such Creditor or equity security holder is Impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

4.     <u>Plan Classification Controlling</u>.  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors, the Liquidating Trustee, the Watson Valve Trustee, or Holders of Claims or Interests except for voting purposes.

5.     <u>Post-Confirmation Trustees and the Plan Agent</u>.  The appointment of Ron Bankston as the Liquidating Trustee is hereby approved.  The appointment of Eva Engelhart as

13

the Watson Valve Trustee is hereby approved.  The appointment of Janet S. Northrup as the Plan Agent is hereby approved.  Ms. Northrup is authorized to retain the firms of Hughes Watters Askansase LLP and Jones Murray Beatty LLP to represent her in her capacity as the Plan Agent. The Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan and as provided in this Order.  Matters relating to the appointment, removal and resignation of the Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent and the appointment of any successors are set forth in the Plan and the Plan Supplement.

6.      The proposed compensation for the Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent is hereby approved.  All implementing actions required or contemplated by the Plan, including but not limited to the appointment of the Liquidating Trustee, the Watson Valve Trustee and the Plan Agent and the vesting of Assets in the Liquidating Trust and Watson Valve Liquidating Trust, are hereby authorized and approved in all respects.  The Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent shall be authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibits or supplement thereto, without further order of the Court except as specifically required.

7.      <u>Authority to Pursue, Settle, or Abandon Retained Causes of Action</u>.  From and after the Effective Date, prosecution and settlement of all of Watson Grinding's Retained Causes of Action shall be the sole responsibility of the Liquidating Trustee and Watson Valve's Claims and Retained Causes of Action shall be the sole responsibility of the Watson Valve Trustee. From and after the Effective Date, the Liquidating Trustee shall have the exclusive rights,

14

powers, and interests of the Watson Grinding Estate to pursue, settle, or abandon Watson Grinding's Retained Causes of Action as the sole representative of the Watson Grinding estate pursuant to section 1123(b)(3) of the Bankruptcy Code and the Watson Valve Trustee shall have the exclusive rights, powers, and interests of the Watson Valve Estate to pursue, settle, or abandon Watson Valve's Claims and Retained Causes of Action as the sole representative of the Watson Valve estate pursuant to section 1123(b)(3) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against Watson Grinding and the Watson Valve Trustee shall be substituted as a party of record in all pending litigation brought by or against Watson Valve. The Liquidating Trustee and the Watson Valve Trustee reserve and retain any and all claims and rights against any and all third parties to enforce the Watson Grinding and Watson Valve Retained Causes of Action, respectively, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, or the Effective Date.

8.    Plan Distributions.  The Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent shall make payments and distributions pursuant to the procedures established by Article XIII of the Plan.  Any payments or distributions to be made to Claimants as required by the Plan shall be made only to the holders of Allowed Claims.  Any payments or distributions to be made pursuant to the Plan shall be made as soon as practicable, except as otherwise provided for in the Plan.  Any payment, delivery or distribution pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.

15

10859433v3

No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  The Liquidating Trustee, the Watson Valve Trustee, and the Plan Agent in their discretion may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.

9.      The Liquidating Trust shall be funded with $1,000,000 from Valve Cash by the Watson Valve Chapter 11 Trustee on or prior to the Effective Date.  The Watson Valve Trustee shall pay or establish sufficient reserves to pay all Administrative Claims, including Professional Fee Claims, Priority Tax Claims and all Claims in Classes 8, 9, 11 and 12, all of the foregoing in the amounts set forth on Exhibit B; provided that, if there are any Professional Fee Claims or Administrative Claims filed on or before the bar date for Professional Fee Claims set forth in Article VIII.B. of the Plan  (the "Professional Fee Claims Bar Date") and the Administrative Claims Bar Date, respectively, and the reserves set forth on Exhibit B are not sufficient to cover the asserted claims, then the reserves set forth on Exhibit B shall be increased in the amount to cover the deficiency between the asserted Professional Fee Claims and/or the Administrative Claims, and their respective Reserves as set forth on Exhibit B.  In the event of an increase in the Reserves for Professional Fee Claims and Administrative Claims, such increase shall not reduce any of the existing Reserves. On a date that is no later than seven days following the later of the Professional Fee Claims Bar Date and the Administrative Bar Date, the Watson Valve Trustee shall distribute all remaining Valve Cash that is not reserved in the amounts set forth on Exhibit B as may be adjusted under this paragraph to the holders of Interests in Watson Valve on a Pro Rata basis based on ownership percentages.

10859433v3

10.      The Valve Trustee will take every effort to have any payments from the Valve Insurance Recovery or the proceeds of the Valve Claims and Retained Causes of Action made directly to the Holders of such Claims whenever possible.  In the event that there are United States Trustee fees due as a result of the distribution of proceeds from the Valve Insurance Recovery or the Valve Claims and Retained Causes of Action, the Valve Trustee is authorized to withhold the amounts necessary to pay the resulting United States Trustee fees prior to making such distribution.

11.      If there is an objection to a Claim pending on the Initial Distribution Date, then the distribution to the Holder of such Claim shall only occur after resolution of the Claim objection.

12.      <u>Exculpation and Injunction</u>.  The terms and conditions of the exculpation and injunction set forth in Article XVI of the Plan are approved as reasonable, fair, and equitable and in the best interests of the Estates and are authorized in their entirety.  However, nothing in this Order, the Plan or related documents shall discharge, release, impair, enjoin, or otherwise preclude or diminish any liability to the United States or any State of any non-Debtor.

13.      <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to Article XII of the Plan, all Executory Contracts and Unexpired Leases, other than the Debtors' insurance policies, shall be deemed automatically rejected as of the Effective Date.  Entry of this Order shall constitute a Court order approving the rejections.  On the Effective Date, Watson Grinding's insurance policies shall be assigned to the Liquidating Trust and Watson Valve's insurance policies shall be assigned to the Watson Valve Liquidating Trust.

14.      <u>Disputed, Contingent and Unliquidated Claims</u>.  Any Disputed, contingent or unliquidated Claim shall be resolved in accordance with the procedures set forth in the Plan.

10859433v3

15.    <u>Allowance and Disallowance of Claims</u>.   Pursuant to Article XIV.B. of the Plan, as part of the global compromise embodied in the Plan, (i) the proof of claim filed by John Watson against Watson Grinding (Claim No. 7) shall be allowed in the face amount of $1,199,258.00, and (ii) the rejection damage claims filed by Robert and Judy White and Betty Sue Watson (Claim Nos. 403 and 404) shall be disallowed.

16.    <u>U.S. Trustee Reporting and Payment of Fees</u>.   The Chapter 11 Trustees shall continue to file with the Court separate monthly operating reports through the Effective Date. Following the Effective Date, the Liquidating Trustee and the Watson Valve Trustee shall be responsible for filing with the Court quarterly financial reports for each quarter (or portion thereof) that the Watson Grinding or Watson Valve cases, respectively, remain open, in a format prescribed by the U.S. Trustee.  All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in Cash by the Chapter 11 Trustees (before the Effective Date) or the Liquidating Trustee and Watson Valve Trustee (on and after the Effective Date) for each quarter (including any fraction therein) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

17.    <u>Transfers; Vesting of Assets</u>.  All transfers of property of the Estates, including, without limitation, the vesting of the Debtors' Assets in the Liquidating Trust and the Watson Valve Liquidating Trust, (a) are legal, valid and effective transfers of property, (b) vest the transferee with good title to such property free and clear of all Claims, Liens, interests, charges or other encumbrances, except as expressly provided in the Plan or this Order, (c) do not and will not constitute voidable transfers under the Bankruptcy Code or applicable law, (d) do not and will not subject the Liquidating Trustee, Watson Valve Trustee, or Plan Agent to any liability by reason of such transfer under the Bankruptcy Code or under applicable law, including without

18

limitation, any laws affecting successor, transferee, or stamp or recording tax liability, and (e) are for good consideration and value.  Provided, however, all Watson Valve Assets turned over to the Liquidating Trust, the Plan Agent or the Valve Liquidating Trustee by the  Valve Chapter 11 Trustee shall constitute "moneys disbursed or turned over in the case by the trustee to parties in interest" as used in 11 U.S.C. § 326 (a) for purposes of calculating the compensation due to the Valve Chapter 11 Trustee.

18.     <u>Term of Stays</u>.  Except as otherwise provided in the Plan, all injunctions and the stay pursuant to Bankruptcy Code § 362, shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

19.     <u>Setoffs</u>.  Pursuant to Article XVI.E of the Plan, each Debtor, Estate, the Watson Valve Trustee, and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that the Debtors and/or the Estates, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, Estates, Watson Valve Trustee, or Liquidating Trustee of any such Retained Causes of Action that the Debtors, Estates, Watson Valve Trustee, or Liquidating Trustee may possess against such

19

Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

20.     <u>Recoupment</u>.  Pursuant to Article XVI.F of the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any asset or Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Grinding Chapter 11 Trustee or Valve Chapter 11 Trustee on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

21.     <u>Police and Regulatory Powers</u>.  Nothing in the Plan or this Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit arising from or related to the enforcement of any applicable police or regulatory law or regulation (including but not limited to those of the Texas Commission on Environmental Quality ("<u>TCEQ</u>") to which any entity (including the non-Debtor owners of the Debtors' former facilities) would be subject to as the owner or operator of property from and after the effective date of the Plan. Nothing in this Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police and regulatory law.  Nothing in the Plan or this Order obligates the Liquidating Trustee or the Watson Valve Trustee to defend legal actions regarding real property which was formerly leased or owned by the Debtors but is not property of the Liquidating Trust or the Watson Valve Liquidating Trust.  For clarity, the Liquidating Trustee

and the Watson Valve Liquidating Trustee may negotiate with TCEQ in order to liquidating TCEQ's proof of claim for violations that occurred prior to the Effective Date.

22. <u>Modifications to the Plan</u>.  The Plan is hereby modified as follows:

(i)     The definition of "Grinding Insurance Recovery" in Article I(45) shall be replaced with the following language:

a.     "*Grinding Insurance Recovery*" means the proceeds payable to Watson Grinding based on any claims under (i) the $1 million general liability policy issued by United Fire Insurance (Policy Number 85319121), (ii) the $5 million excess liability coverage issued by Navigators Insurance Company, (iii) the $20 million excess liability policy issued by RSUI, (iv) the $1 million general liability policy issued by Indian Harbor Insurance Company (Policy Number US00087635LI19A) under which Watson Grinding asserts it is an additional insured, (v) the $10 million excess liability policy issued by Indian Harbor Insurance Company (Policy Number US00087637LI19A) under which Watson Grinding asserts it is an additional insured, and (vi) the $15 million excess liability policy issued by RSUI (Policy Number NHA088211) under which Watson Grinding asserts it is an additional insured.

(ii)    The definition of "January 24 Claim" in Article I(55) shall be replaced with the following language:

a.     "*January 24 Claim*" means a Claim, including, but not limited to, Claims based on subrogation, arising out of or related to the Explosion and for which the Debtors did not have any liability prior to the Explosion.  For the avoidance of doubt, an Indemnity Claim is not a January 24 Claim.

(iii)   The definition of "Valve Insurance Recovery" in Article I(96) shall be replaced with the following language:

a.     "*Valve Insurance Recovery*" means the proceeds payable to Watson Valve based on any claims under (i) the $1 million general liability policy issued by Indian Harbor Insurance Company (Policy Number US00087635LI19A), (ii) the $10 million excess liability policy issued by Indian Harbor Insurance Company (Policy Number US00087637LI19A), and (iii) the $15 million

21

excess liability policy issued by RSUI (Policy Number NHA088211).

(iv)    The deadline to filed Professional Fee Claims in Article VIII.B shall be sixty (60) days instead of thirty (30) days for Watson Grinding, and shall remain thirty (30) days for Watson Valve.

(v)    The final paragraph of Article XI.C shall be replaced with the following language:

    a.    The Liquidating Trust shall be funded with $1,000,000 from Valve Cash by the Watson Valve Chapter 11 Trustee on or prior to the Effective Date in full and final satisfaction of the right of Grinding or the Liquidating Trust to recover from the Valve Cash in existence on the Effective Date. This compromise does not release or settle any Claims that Watson Grinding or the Liquidating Trust may assert against the Valve Insurance Recovery or Claim No. 66 filed by Watson Grinding against Watson Valve.

(vi)    In Article XII.A (Treatment of Executory Contract and Unexpired Leases), the phrase "other and insurance policies" is hereby replaced with the phrase "other than insurance policies."

(vii)    Article XII.B (Assignment of Insurance Policies to the Liquidating Trust) shall be replaced with the following language:

    a.    As of the Effective Date, all insurance policies to which Watson Grinding or Watson Valve are a party shall, to the extent they constitute an Executory Contract, be assumed and assigned to the Liquidating Trust or the Watson Valve Liquidating Trust, as applicable.

(viii)    Article XIV.D (Deadline to Objection to Claims shall be replaced with the following language:

    a.    Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee, the Plan Agent and Watson Valve Trustee (or John Watson on the limited basis set forth in the preceding paragraph) shall File all objections to Claims in Classes 1, 2, 5, 8, 9, and 12 by

10859433v3

no later than 120 days after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Liquidating Trustee, the Watson Valve Trustee or John Watson determines that an extension of time is warranted, they may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to seek additional extensions from the Bankruptcy Court.

(ix)   In Article XV.C (Waiver of Conditions), the word "Debtors" shall be replaced with the word "Committee."

(x)   Article XVI.C (Injunction) shall be replaced with the following language:

a.   Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Valve Chapter 11 Trustee, the Grinding Chapter 11 Trustee, the Exculpated Parties, the Liquidating Trust, Liquidating Trustee, and the Watson Valve Trustee, except for the Removed Lawsuits and Adversary Proceeding No. 20-3415 filed by Indian Harbor Insurance Company: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to this Plan, which for the avoidance of doubt includes the Exculpated Claims set forth

23

herein but expressly does not include the Removed Lawsuits; provided, however, that the injunctions set forth in this paragraph shall not apply to any actions or legal proceedings against the Exculpated Parties based on conduct which is not covered by the Exculpation, and this injunction does not act as a release of the Exculpated Parties of any acts which are not covered by the Exculpation.

23.    <u>Insurance Provisions</u>.

(i)    All rights of the Debtors under any insurance policies under which either Debtor is an insured shall automatically become vested in the Liquidating Trust or the Watson Valve Liquidating Trust, as applicable, without the necessity for further approvals or orders.

(ii)    Each applicable insurer is prohibited and enjoined from denying, refusing, altering or delaying coverage on any basis regarding or related to the proceedings in these Chapter 11 Cases, the provisions of the Plan, any provision of the Plan or this Order, including that the Plan provides for certain treatment or means of liquidation as set forth in the Plan and Plan Supplement documents for any insured Claims or Causes of Action. Each applicable insurer retains all of its right and defenses under its respective policy or policies.

(iii)    Upon the Effective Date, the Liquidating Trust and the Watson Valve Liquidating Trust shall each assume responsibility for, and be bound by, such obligations of the policyholder under the applicable insurance policies assigned to each Trust.

(iv)    To the extent any insurance policy is not considered an Executory Contract, such policy shall continue in force in accordance with its terms,

such that each of the parties' contractual, legal, and equitable rights under each such policy shall remain unaltered. In such case, the respective Liquidating Trust or Watson Valve Liquidating Trust, as successor to the policyholder's interests under the contract, shall assume responsibility for, and be bound by, such obligations of the policyholder under the insurance policies.

24.     Motions to Remand.  Upon entry of this Order, all objections to the motions to remand the Removed Lawsuits shall be deemed withdrawn.  The Court will separately enter an omnibus order remanding all 126 Removed Lawsuits on the dockets of each adversary proceeding.

25.     State Court Proceedings.  The Plan requires the filing of the Motion to Transfer and the Case Management Order, substantially in the form included in the Plan Supplement. However, this Order should not be interpreted as requiring or compelling any state court to grant any specific relief form of relief following remand of the Removed Lawsuits.

26.     Order Effective and Enforceable Immediately.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

27.     Substantial Consummation.  The Plan shall be deemed to be substantially consummated on the Effective Date.

28.     Notice of the Effective Date.  On or before fourteen (14) days after occurrence of each Effective Date, the Plan Agent and the Watson Valve Trustee, respectively, shall file with the Court and mail or cause to be mailed to all Holders of Claims and Interests a notice that informs such holders of: (i) entry of this Order; (ii) the occurrence of the Effective Date; (iii) the

25

Administrative Claims Bar Date and the bar date for filing rejection damages claims; and (iv) such other matters as the Plan Agent and the Watson Valve Trustee deem to be appropriate; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any Person hereunder.  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

29.    <u>Order Nonseverable</u>.  The provisions of this Order are nonseverable and mutually dependent.

30.    <u>Captions and Headings</u>.    Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

31.    <u>Final Order</u>. This Confirmation Order is a Final Order.

32.    <u>Conflict</u>.  In the event of any conflict between the Plan, this Order, and the Plan Supplement documents, including the Liquidating Trust Agreements, the terms of this Order shall control.

33.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of each such agreement shall control); <u>provided</u>, <u>however</u>, that corporate governance matters relating to the Debtors shall be governed by the laws of their respective jurisdictions of incorporation.

Signed: December 30, 2020

Marvin Isgur
United States Bankruptcy Judge

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WATSON GRINDING &** | § | **Case No. 20-30967** |
| **MANUFACTURING CO.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | **Case No. 20-30968** |
| | § | |
| Debtor. | § | |
| | § | |

## FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF LIQUIDATION OF WATSON GRINDING & MANUFACTURING CO. AND WATSON VALVE SERVICES, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FILED BY THE JANUARY 24 CLAIMANTS COMMITTEE

---

**PORTER HEDGES LLP**
Joshua W. Wolfshohl
Aaron J. Power
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:    (713) 226-6000
Facsimile:    (713) 226-13331
Email:    jwolfshohl@porterhedges.com
         apower@porterhedges.com

*Counsel to the January 24 Claimants Committee*

Dated: December 3, 2020

THIS SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN SUFFICIENT ACCEPTANCES OF THE PLAN (AS DEFINED HEREIN) UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. FOLLOWING THE SOLICITATION OF VOTES, THE PLAN PROPONENT EXPECTS TO PROMPTLY SEEK AN ORDER CONFIRMING THE PLAN.

> THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS DECEMBER 28, 2020 AT 5:00 P.M. CENTRAL STANDARD TIME, UNLESS EXTENDED BY THE PLAN PROPONENT. THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS OR INTERESTS MAY VOTE ON THE PLAN IS DECEMBER 18, 2020 (THE "VOTING RECORD DATE").

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE VOTING ON THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

IN PREPARING THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS, MONTHLY OPERATING REPORTS, BOOKS AND RECORDS, AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' ASSETS AND LIABILITIES. WHILE THE PLAN PROPONENT BELIEVES THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES, ASSETS AND LIABILITIES. THE PLAN PROPONENT EXPRESSLY CAUTIONS READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD LOOKING STATEMENTS CONTAINED HEREIN.

10834324v7

# TABLE OF CONTENTS

**Page**

ARTICLE I.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW .................................. 9

    A.    Defined Terms ........................................................................... 9
    B.    Rules of Interpretation ............................................................. 20
    C.    Computation of Time ............................................................... 21
    D.    Governing Law ......................................................................... 21
    E.    Reference to Monetary Figures ................................................ 21
    F.    Controlling Document .............................................................. 21

ARTICLE II.    BACKGROUND .................................................................... 22

    A.    Overview of the Debtors' Operations Prior to the Petition Date ...................... 22
    B.    The Debtors' Prepetition Capital Structure .............................. 22
    C.    The Explosion Leading to the Commencement of the Chapter 11 Cases .......... 22
    D.    The Debtors' Insurance Policies ............................................... 23
    E.    Material Events During the Chapter 11 Cases .......................... 23

ARTICLE III.    TAX CONSEQUENCES .......................................................... 26

    A.    Introduction ............................................................................. 26
    B.    Tax Consequences to the Debtors and Equity Interest Holders ......................... 27
    C.    Tax Consequences to Creditors. .............................................. 27
    D.    Information Reporting and Backup Withholding. ..................... 28
    E.    Importance of Obtaining Professional Assistance. ................... 28

ARTICLE IV.    CERTAIN RISK FACTORS TO BE CONSIDERED ..................... 29

    A.    Certain Bankruptcy Law Considerations ................................ 29
    B.    The Plan Proponent could withdraw the Plan .......................... 30
    C.    The Plan Proponent has no duty to update ............................... 30
    D.    No representations outside this disclosure statement are authorized ................ 30
    E.    No legal or tax advice is provided by this disclosure statement ....................... 31
    F.    No admission made .................................................................. 31

ARTICLE V.    VOTING PROCEDURES AND REQUIREMENTS ....................... 31

    A.    The Plan Must Satisfy the Confirmation Requirements for Separate Plans for Watson Grinding and Watson Valve ................................................. 31
    B.    Parties Entitled To Vote ........................................................... 31
    C.    Voting Deadline ....................................................................... 32
    D.    Voting Procedures ................................................................... 33
    E.    Waivers of Defects, Irregularities, etc. .................................... 34

ARTICLE VI.     Confirmation of the Plan........................................................................ 34

    A.     Confirmation Hearing ................................................................. 34
    B.     Requirements for Confirmation of the Plan................................ 34

ARTICLE VII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION
                OF THE PLAN .............................................................................. 37

    A.     Alternative Plan ......................................................................... 37
    B.     Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law ................. 37

ARTICLE VIII.   ADMINISTRATIVE CLAIMS and PRIORITY CLAIMS............................... 38

    A.     Administrative Claims ................................................................ 38
    B.     Professional Compensation........................................................ 39
    C.     Priority Tax Claims.................................................................... 39
    D.     Statutory Fees............................................................................. 39

ARTICLE IX.     CLASSIFICATION AND TREATMENT OF CLAIMS AND
                INTERESTS ................................................................................. 40

    A.     Introduction................................................................................ 40
    B.     Summary of Classification.......................................................... 40
    C.     Treatment of Claims Against and Interests................................. 41
    D.     Provision Governing Unimpaired Claims.................................... 46

ARTICLE X.      ACCEPTANCE REQUIREMENTS ............................................... 47

    A.     Acceptance or Rejection of this Plan.......................................... 47
    B.     Confirmation of This Plan Pursuant to Section 1129(b) of the
        Bankruptcy Code ....................................................................... 47
    C.     Controversy Concerning Impairment ......................................... 47

ARTICLE XI.     MEANS FOR IMPLEMENTATION OF THE PLAN...................................... 48

    A.     Liquidation of January 24 Claims Following Remand ...................... 48
    B.     Transactions Effective as of the Effective Date.............................. 51
    C.     The Liquidating Trust ................................................................ 51
    D.     The Liquidating Trustee............................................................. 51
    E.     The Watson Valve Liquidating Trust ......................................... 52
    F.     The Watson Valve Trustee......................................................... 52
    G.     Federal Income Tax Treatment of the Liquidating Trust for the
        Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations .......... 53
    H.     Authority to Pursue, Settle, or Abandon Retained Causes of Action ............... 55
    I.     Filing of Monthly and Quarterly Reports .......................................... 56
    J.     Directors and Officers of the Debtors ......................................... 56
    K.     Books and Records .................................................................... 57
    L.     Effectuating Documents and Further Transactions..................... 57

10834324v7

M.   Employee Agreements ...................................................................... 57

N.   Exemption from Certain Taxes and Fees........................................... 57

O.   Duration of the Liquidating Trust and Watson Valve Liquidating Trust ......... 58

P.   Wind Down of Liquidating Trust and Watson Valve Liquidating Trust........... 58

ARTICLE XII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................................................................. 58

A.   Treatment of Executory Contracts and Unexpired Leases (Other than Insurance Policies).......................................................................... 58

B.   Assignment of Insurance Policies to the Liquidating Trust................ 59

C.   Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases....................................................................... 59

D.   Rejection Damages Claim................................................................. 59

E.   Reservation of Rights....................................................................... 59

ARTICLE XIII.   PROVISIONS GOVERNING DISTRIBUTIONS ............................... 59

A.   Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions.................................................................................. 59

B.   Liquidating Trustee and Watson Valve Trustee to make Distributions............. 61

C.   No De Minimis Distributions Required .............................................. 61

D.   Distributions on Account of Claims Allowed After the Effective Date ........... 61

E.   Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 62

F.   Compliance with Tax Requirements/Allocations ............................... 63

G.   Claims Paid or Payable by Third Parties ........................................... 63

H.   Claims Already Satisfied ................................................................... 64

I.   Allocation of Plan Distributions between Principal and Interest........... 64

J.   No Postpetition Interest on Claims .................................................... 64

ARTICLE XIV.   PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ............................. 65

A.   Allowance and Disallowance of Claims ............................................ 65

B.   Prosecution of Objections to Claims................................................. 65

C.   Deadline to Object to Claims............................................................ 66

D.   Estimation of Claims........................................................................ 66

E.   Amendments to Claims..................................................................... 67

F.   Distributions After Allowance .......................................................... 67

ARTICLE XV.   CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ...................................................... 67

A.   Conditions Precedent to Confirmation.............................................. 67

B.   Conditions Precedent to the Effective Date ...................................... 68

C.   Waiver of Conditions....................................................................... 68

D.   Effect of Nonoccurrence of Conditions ............................................ 68

iii

ARTICLE XVI.  SETTLEMENT, RELEASE, INJUNCTION AND RELATED
PROVISIONS ................................................................... 69

    A.    Compromise and Settlement of Claims, Interests, and Controversies ............... 69
    B.    Exculpation ................................................................................ 69
    C.    Injunction .................................................................................. 70
    D.    Term of Injunctions or Stays ......................................................... 71
    E.    Setoffs ...................................................................................... 71
    F.    Recoupment ............................................................................... 71
    G.    Insurance Neutrality .................................................................... 71

ARTICLE XVII.  BINDING NATURE OF PLAN .................................................. 72

ARTICLE XVIII.  RETENTION OF JURISDICTION ............................................. 72

ARTICLE XIX.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THE
PLAN .............................................................................. 74

    A.    Modifications and Amendments ..................................................... 74
    B.    Effect of Confirmation on Modifications ......................................... 74
    C.    Revocation or Withdrawal of the Plan ............................................. 74
    D.    Substantial Consummation of the Plan ............................................ 75

ARTICLE XX.  MISCELLANEOUS PROVISIONS ............................................... 75

    A.    Successors and Assigns ................................................................ 75
    B.    Reservation of Rights ................................................................... 75
    C.    Nonseverability of Plan Provisions ................................................. 75
    D.    Return of Security Deposits .......................................................... 75
    E.    Entire Agreement ....................................................................... 76
    F.    Exhibits .................................................................................... 76
    G.    Votes Solicited in Good Faith ........................................................ 76
    H.    Filing of Additional Documents ..................................................... 76

## INTRODUCTION

The January 24 Claimants' Committee (the "Committee"), an official committee appointed in the Watson Grinding Chapter 11 Case to represent the interests of parties holding Claims arising out of the January 24, 2020 explosion at the Watson Grinding facility, proposes the following disclosure statement and joint plan of liquidation under Chapter 11 of the Bankruptcy Code for Watson Grinding and Watson Valve. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof.

Although the Plan is referred to in the singular and is being solicited jointly by the Plan Proponent, the Plan constitutes two separate plans for Watson Grinding and Watson Valve. The Plan Proponent will satisfy the burden of establishing the requirements for confirmation of a Plan required under section 1129 of the Bankruptcy Code for each Debtor based on the classification of Claims against and Interests in each Debtor.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

Following the Effective Date, Watson Grinding's assets will be transferred to the Liquidating Trust, and Watson Grinding will cease to operate in any capacity. The Liquidating Trust will be managed by the Liquidating Trustee following the Effective Date. The Liquidating Trustee will be responsible for taking the necessary and appropriate actions to liquidate Watson Grinding's remaining assets (including insurance claims arising out of the Explosion), object to Claims against Watson Grinding (other than Claims which are part of the Removed Lawsuits), make all distributions to Classes 1 through 7, and to proceed with an orderly, expeditious, and efficient wind-down of the Watson Grinding Estate in accordance with the terms of the Plan.

Following the Effective Date, all of Watson Valve's assets, including the Valve Claims and Retained Causes of Action, will be transferred to the Watson Valve Liquidating Trust, and Watson Valve will cease to operate in any capacity. The Watson Valve Liquidating Trust will be managed by the Watson Valve Trustee. The Watson Valve Trustee will be responsible for taking the necessary and appropriate actions to liquidate Watson Valve's remaining assets (including the Valve Claims and Retained Causes of Action), object to Claims against Watson Valve[1] (other than Claims which are part of the Removed Lawsuits), make all distributions to Classes 8 through 14, and to proceed with an orderly, expeditious, and efficient wind-down of the Watson Valve Estate in accordance with the terms of the Plan.

On October 22, 2020, the Court began a hearing on the motions to remand filed in the Removed Lawsuits. During the hearing, the parties agreed to participate in mediation regarding the motions to remand and the terms of a plan of liquidation. On November 10, 2020, the

---

[1] John Watson will have concurrent authority to object to claims against Watson Valve.

Honorable David Jones, Chief Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas, conducted a mediation with the major constituents in this case.  No resolution was achieved at the mediation, but the parties and Judge Jones continued discussion for the next two weeks.  The terms of this Plan represent a compromise between the Committee, the Valve Trustee, the Grinding Trustee, the Debtor's equity holders, and Western and Matheson.[2]  The Committee is the sole proponent of this Plan, but as part of the compromise each of the Valve Trustee, the Grinding Trustee, the Debtor's equity holders and Western and Matheson have agreed to support confirmation of this Plan.

If the Plan is confirmed, all objections to the motions to remand will be withdrawn and the Removed Lawsuits will be remanded.  Following remand, the parties will file the Motion to Transfer all of the Removed Lawsuits to the MDL Panel with a recommendation of three potential judges which were negotiated and agreed upon as part of the mediation and subsequent settlement discussions.  The members of the Oversight Committee will also seek the appointment of a special master in the consolidated state court proceeding who will be responsible for determining the Allowed amount of consenting January 24 Claims which are not liquidated to a final judgment.

The Plan Proponent believes that confirmation and consummation of the Plan, is in the best interests of all Holders of Claims and Interests.

**THE PLAN PROPONENT RECOMMENDS THAT ALL HOLDERS OF CLAIMS ENTITLED TO VOTE SHOULD VOTE TO ACCEPT THE PLAN.**

Under the Bankruptcy Code, only Holders of Claims in certain "impaired" Classes are entitled to vote on the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under the Plan unless (a) the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (b) notwithstanding any legal right to an accelerated payment of such claim or interest, the Plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

The following table summarizes (a) the treatment of Claims and Interests under the Plan, (b) which Classes are impaired by the Plan, (c) which Classes are entitled to vote on the Plan, and (d) the estimated recoveries for holders of Claims and Interests. The table is qualified in its entirety by reference to the full text of the Plan.

---

[2] Western International Gas & Cylinders, Inc. and Matheson Tri-Gas, Inc. are non-debtor defendants in the Removed Lawsuits.

10834324v7

**SUMMARY OF TREATMENT OF CLAIMS AGAINST AND INTERESTS IN
WATSON GRINDING**

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Est. Total Claims in Class | Est. Recovery |
|---|---|---|---|---|---|
| 1 | Secured Claims against Watson Grinding | Except to the extent that a Holder of an Allowed Secured Claim against Watson Grinding and the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Secured Claim, each such Holder shall receive payment from the Liquidating Trust Cash on the Initial Distribution Date in an amount equal to the proceeds of the collateral securing such Holder's Allowed Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Secured Claim plus interest at the greater of the rate provided by applicable law or the Plan Rate, up to the amount of the Allowed Secured Claim. | Unimpaired (Deemed to accept; not entitled to vote) | $27,000.00 | 100% |
| 2 | Other Priority Claims against Watson Grinding | Except to the extent that a Holder of an Allowed Other Priority Claim against Watson Grinding and the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment from the Liquidating Trust Cash on the Initial Distribution Date equal to the unpaid portion of the Allowed Other Priority Claim. | Unimpaired (Deemed to accept; not entitled to vote) | $261,163.55 | 100% |
| 3 | January 24 Claims against Watson | Each Holder of an Allowed January 24 Claim shall receive their Pro Rata distribution of (i) the Grinding Insurance Recovery, and (ii) the Liquidating Trust Cash remaining on the Final Distribution Date; provided, however, that any January 24 Claim that was asserted against both Watson Grinding and Watson | Impaired (Entitled to vote) | $250 million - $500 million | 1% - 22.8% (depending on insurance recovery and Final Allowed amount of |

3

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Est. Total Claims in Class | Est. Recovery |
|---|---|---|---|---|---|
| | Grinding | Valve shall be permitted only a single recovery based on the Allowed amount of such January 24 Claim.<br><br>For purposes of calculating the Pro Rata distribution of the Liquidating Trust Cash on the Final Distribution Date, the Allowed Amount of the Class 3 January 24 Claims shall first be reduced by the amount of the Grinding Insurance Recovery and Valve Insurance Recovery received by January 24 Claimants. | | | Class 3 Claims) |
| 4 | Minor Damage Claims against Watson Grinding | In full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Minor Damage Claim, each Holder of an Allowed Minor Damage Claim against Watson Grinding will receive payment from the Liquidating Trust Cash equal to the lesser of (a) the face amount of such Claim, or (b) $2,000.00; provided, however, that any Minor Damage Claim that was asserted against both Watson Grinding and Watson Valve shall be permitted only a single recovery based on the Allowed amount of their Minor Damage Claim. | Impaired<br><br>(Entitled to vote) | $500,000 | 40% to 100% (depending on amount of individual claim) |
| 5 | General Unsecured Claims against Watson Grinding | The Holders of Class 5 Claims, including the Allowed Matheson Contractual Indemnity Claim but excluding the General Unsecured Claim asserted by Valve against Grinding, shall be paid, in full, without interest, on the Initial Distribution Date.<br><br>If the Holder of the Allowed Matheson Contractual Indemnity Claim obtains a Final judgment from a court of competent jurisdiction declaring that such Claim entitles it to directly assert a right to the Grinding Insurance Recovery, then the Holder of such | Impaired<br><br>(Entitled to vote) | $4,811,000 | 100% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Est. Total Claims in Class | Est. Recovery |
|-------|--------------------------|-----------|------------------------|----------------------------|---------------|
| | | claim shall additionally receive a Pro Rata share, with Class 3, of the Grinding Insurance Recovery; provided, further, that any such Claim that was asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Claim. | | | |
| 6 | Indemnity Claims against Watson Grinding | Each Holder of an Indemnity Claim against Watson Grinding, other than the Allowed Matheson Contractual Indemnity Claim, will receive a Pro Rata share, along with Class 3 Claimants, of the Liquidating Trust Cash remaining on the Final Distribution Date; provided that if a Holder of an Indemnity Claim against Watson Grinding obtains a Final judgment from a court of competent jurisdiction declaring that its Indemnity Claim entitles it to directly assert a right to the Grinding Insurance Recovery prior to the Final Distribution Date, then the Holder of such an Indemnity Claim shall additionally receive a Pro Rata share, with Class 3, of the Grinding Insurance Recovery; provided, further, that any Grinding Indemnity Claim that was asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Indemnity Claim.<br><br>Matheson shall have an allowed Class 6 Claim in the amount of $5,000,000 solely for voting purposes.<br><br>For all other purposes (including distribution), Matheson's Class 6 Indemnity Claims, as well as all other Indemnity Claims, shall be liquidated in the remanded state court proceeding.  However, Matheson shall receive no further distribution on account of its Class | Impaired<br><br>(Entitled to vote) | Unknown | 1% to 100% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Est. Total Claims in Class | Est. Recovery |
|---|---|---|---|---|---|
| | | 6 Claim from Liquidating Trust Cash, and its only source of recovery on its Class 6 Claim shall be against the Grinding Insurance Recovery. | | | |
| 7 | Interests in Watson Grinding | Following the payment in full of all Allowed Claims in Classes 1, 2, 3, 4, 5, and 6, the Holders of Interests in Watson Grinding will receive their Pro Rata share of any remaining Liquidating Trust Cash on the Final Distribution Date. | Impaired (Entitled to vote) | n/a | n/a |

### SUMMARY OF TREATMENT OF CLAIMS AGAINST AND INTERESTS IN WATSON VALVE

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Est. Total Claims in Class | Est. Recovery |
|---|---|---|---|---|---|
| 8 | Secured Claims against Watson Valve | Except to the extent that a Holder of an Allowed Secured Claim against Watson Valve and the Watson Valve Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Secured Claim, each such Holder shall receive a payment from the Valve Cash on the Initial Distribution Date in an amount equal to the proceeds of the collateral securing such Holder's Allowed Secured Claim, plus interest at the greater of the rate provided by applicable law or the Plan Rate, up to the amount of the Allowed Secured Claim. | Unimpaired (Deemed to accept; not entitled to vote) | $8,165.97 | 100% |
| 9 | Other Priority Claims against Watson Valve | Except to the extent that a Holder of an Allowed Other Priority Claim and the Watson Valve Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive a payment from the Valve Cash on the Initial | Unimpaired (Deemed to accept; not entitled to vote) | $50,000 | 100% |

10834324v7

| | | | | | |
|---|---|---|---|---|---|
| | | Distribution Date equal to the unpaid portion of the Allowed Other Priority Claim. | | | |
| 10 | January 24 Claims against Watson Valve | Each Holder of an Allowed January 24 Claim shall receive their Pro Rata distribution of (i) the Valve Insurance Recovery, and (ii) the proceeds of any Valve Claims and Retained Causes of Action; provided, however, that any January 24 Claim that was asserted against both Watson Grinding and Watson Valve shall be permitted only a single recovery based on the Allowed amount of such January 24 Claim.<br><br>If there is a Final judicial determination (including the exhaustion of all appellate rights) that Watson Valve is not liable for the Explosion as to any Claimant, there will be no Allowed January 24 Claim as to that Claimant and that Claimant will receive no further distribution on account of their Class 10 Claim.<br><br>For purposes of calculating the Pro Rata distribution of the Valve Cash on the Final Distribution Date, the Allowed Amount of the Class 10 January 24 Claims shall first be reduced by the amount of the Valve Insurance Recovery and Grinding Insurance Recovery received by January 24 Claimants. | Impaired<br><br>(Entitled to vote) | $250 million - $500 million | 1% - 22.8% (depending on insurance recovery and liquidated amount of claims) |
| 11 | Minor Damage Claims against Watson Valve | In full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Minor Damage Claim, each Holder of an Allowed Minor Damage Claim against Watson Valve will receive the same treatment as Class 4 Minor Damage Claims against Watson Grinding which will be paid from Liquidating Trust Cash. | Impaired<br><br>(Entitled to vote) | $500,000 | 40% to 100% (depending on amount of claim) |

7

| 12 | General Unsecured Claims against Watson Valve | The Holders of Class 12 General Unsecured Claims against Watson Valve shall be paid, in full, without interest, on the Initial Distribution Date from Valve Cash. | Impaired<br><br>(Entitled to vote) | $1,318,010 | 100% |
|---|---|---|---|---|---|
| 13 | Indemnity Claims against Watson Valve | Each Holder of an Indemnity Claim against Watson Valve shall receive a Pro Rata share of the proceeds of any Valve Claims and Retained Causes of Action on the Final Distribution Date; provided that if a Holder of an Indemnity Claim against Watson Valve obtains a Final judgment from a court of competent jurisdiction declaring that its Indemnity Claim entitles it to directly assert a right to the Valve Insurance Recovery prior to the Final Distribution Date, then the Holder of such an Indemnity Claim shall additionally receive a Pro Rata share, with Class 10 Claim, of the Valve Insurance Recovery; provided, further, that any Indemnity Claim asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Indemnity Claim.<br><br>Matheson shall have an allowed Class 13 Claim in the amount of $5,000,000 solely for voting purposes.<br><br>For all other purposes (including distribution), Matheson's Class 13 Indemnity Claim, as well as all other Indemnity Claims, shall be liquidated in the remanded state court proceeding.  However, Matheson shall receive no further distribution on account of its Class 13 Claim from the proceeds of any Valve Claims and Retained Causes of Action, and its only source of recovery on its Class 13 Claim shall be solely against the Valve | Impaired<br><br>(Entitled to vote) | Unknown | 1% to 100% |

8

| | | | | | |
|---|---|---|---|---|---|
| | | Insurance Recovery.<br><br>Matheson shall have an allowed Class 13 Claim in the amount of $5,000,000 solely for voting purposes. | | | |
| 14 | Interests in Watson Valve | After payment of, or reserves established for, Allowed Claims in Classes 8, 9, 11 and 12, and Watson Valve's funding of the Valve Liquidating Trust and the $1,000,000 transfer to the Grinding Liquidating Trust, the remaining Valve Cash shall be distributed to the holders of Interests in Watson Valve on a Pro Rata basis based on ownership percentages on the Effective Date.  In the event Classes 10 and 13 are fully satisfied or there are no Allowed Claims in Classes 10 and 13, remaining proceeds from Valve Claims and Retained Causes of Action (if any) shall be distributed to the holders of Interests in Watson Valve on a Pro Rata basis based on ownership percentages on the Effective Date. | Impaired<br><br>(Entitled to vote) | n/a | n/a |

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

A.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all

fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code to the extent such request is granted by the Bankruptcy Court. With respect to Administrative Claims that are allowed pursuant to sections 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claims Bar Date.

2.    "*Administrative Claims Bar Date*" means (other than for (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims), (a) for claims against Watson Grinding arising prior to June 4, 2020, September 11, 2020, and (b) for claims against Watson Grinding arising on or after June 4, 2020, and claims against Watson Valve at any time, the 30th day after the Effective Date unless otherwise established by a Final Order.

3.    "*Allowed*" means, with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, either before or after the Effective Date; (c) any Claim or Interest expressly deemed Allowed by the Plan; or (d) any Claim or Interest affirmatively Allowed by the Debtors, or following the Effective Date, by the Liquidating Trustee or Watson Valve Trustee, as applicable.

4.    "*Allowed Matheson Contractual Indemnity Claim*" means the Claim asserted by Matheson against Watson Grinding for contractual indemnity pursuant to a June 22, 2017 Product Supply Agreement with Watson Grinding in Proof of Claim No. 348, in the Allowed amount of $1,000,000.00 for distribution purposes; provided that the Allowed Matheson Contractual Indemnity Claim shall not include any other Claims by Matheson (including any non-contractual Indemnity Claims which shall be classified as Class 6 and 13 Claims, against Watson Grinding and Watson Valve, respectively, and temporarily allowed in the amount of $5,000,000 solely for the purposes of voting on this Plan).

5.    "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of an interest in property or an obligation incurred by the Debtors, the Debtors in Possession, the Estates, or other appropriate party arising under Chapter 5 of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, or 547 through 553, or under similar or related state or federal statutes and/or common law, including without limitation, fraudulent transfer laws, and including without limitation, Claims or Causes of Action to recover preferences and fraudulent transfers from any entity that received cash or other property from the Debtors as identified in the Plan, Disclosure Statement, any schedule or exhibit thereto, the Debtors' Statement of Financial Affairs or as identified in the Debtors' accounts payable system.

6. "*Ballots*" means the ballots approved by the Bankruptcy Court in the Disclosure Statement Order upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Committee on or before the Voting Deadline.

7. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended, and as applicable to the Chapter 11 Cases.

8. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

10. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

12. "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or federal law fraudulent transfer claim.

13. "*Chapter 11 Case*" means, as applicable, the chapter 11 case pending for Watson Grinding or Watson Valve in the Bankruptcy Court.

14. "*Chapter 11 Cases*" means, collectively, Watson Grinding's Chapter 11 Case and Watson Valve's Chapter 11 Case.

11

15. "*Claim*" means any claim against the Debtors as defined in section 101(5) of the Bankruptcy Code.

16. "*Claims Bar Date*" means July 8, 2020 for all non-governmental units and September 11, 2020 for governmental units.

17. "*Class*" means a category of Holders of Claims or Interests as set forth in Article IX hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

18. "*CMO*" means the case management order, in form and substance acceptable to Matheson, the Committee, the Watson Valve Chapter 11 Trustee, and the Watson Grinding Chapter 11 Trustee to be included in the Plan Supplement.

19. "*Committee*" means the official January 24 Claimants Committee appointed by the Bankruptcy Court and the United States Trustee.

20. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article XV.A hereof having been: (a) satisfied; or (b) waived pursuant to Article XV.C hereof.

21. "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

22. "*Confirmation Hearing*" means the hearing or hearings held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Plan Proponent's sole discretion.

23. "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24. "*Consummation*" means the occurrence of the Effective Date.

25. "*Debtors*" or "*Debtors in Possession*" means, collectively, Watson Grinding and Watson Valve.

26. "*Disallowed*" means, with reference to any Claim, a finding or determination of the Bankruptcy Court in a Final Order, including the Bar Date Order, or a provision of the Plan, providing that a Claim shall not be Allowed, or as to which the Bankruptcy Court has otherwise ruled or ordered that such Claim should be temporarily disallowed pursuant to section 502(d) of the Bankruptcy Code.

27. "*Disclosure Statement*" means the Disclosure Statement portion of this First Amended Combined Disclosure Statement and Joint Plan of Liquidation Watson Grinding & Manufacturing Co. and Watson Valve Services, Inc. Under Chapter 11 of the Bankruptcy Code, dated as of December 3, 2020, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the

Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

28.     "*Disclosure Statement Order*" means the Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling Plan Confirmation Hearing; (III) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation; (IV) Temporarily Allowing Certain Claims for Voting Purposes Only; (V) Approving Form of Ballots; and (VI) Establishing Solicitation and Tabulation Procedures [Docket No. [__]].

29.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

30.     "*Disputed Claims Reserve*" means a reserve to be established by the Liquidating Trustee in accordance with Article XIII.

31.     "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan, the Confirmation Order, and, if applicable, the Liquidating Trust Agreement.

32.     "*Distribution Date*" means (a) the Initial Distribution Date or (b) the Final Distribution Date.

33.     "*Distribution Record Date*" means the date on which the Confirmation Order is entered or such other date that is designated by the Liquidating Trustee or the Watson Valve Trustee, as applicable, following the Effective Date.

34.     "*Effective Date*" means the date declared by the Watson Valve Trustee, the Liquidating Trustee and the Committee on which the Confirmation Order becomes a Final Order and all of the conditions specified in Article XV.B hereof have been satisfied or waived pursuant to Article XV.C hereof.

35.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

36.     "*Estate*" means, as applicable, the estate created for Watson Grinding or Watson Valve in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

37.     "*Exculpated Party*" means each of (a) the Valve Chapter 11 Trustee, (b) the Grinding Chapter 11 Trustee, (c) John Watson, (d) Bob White, (e) Jason White (f) each member of the Committee, (g) each member of the Oversight Committee, and (h) with respect to each of the foregoing, such Entity's current subsidiaries, and its and their officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals in any such persons' capacity as such.

38.     "*Executory Contract*" means a contract to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

39.     "*Explosion*" means the explosion which occurred in the morning of January 24, 2020 at the Watson Grinding facility.

13

40. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in or in connection with the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or proof of Interest, the Bankruptcy Court through the PACER or CM/ECF website.

41. "*Final Distribution Date*" means, as applicable, the date upon which the Liquidating Trustee makes the final distributions under the Plan from the Liquidating Trust and the date upon which the Watson Valve Trustee makes the final distributions under the Plan from the Watson Valve Liquidating Trust.

42. "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in the Chapter 11 Cases (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be Filed with respect to such order and shall not cause such order not to be a Final Order.

43. "*General Unsecured Claim*" means any Claim, whether arising before or after the Explosion, which arises based on a contractual, statutory or other non-tort basis, specifically excluding January 24 Claims, Minor Damage Claims, Indemnity Claims, Secured Claims, Priority Claims, Priority Tax Claims, Administrative Claims and Professional Fee Claims, but specifically including the Allowed Matheson Contractual Indemnity Claim.

44. "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

45. "*Grinding Insurance Recovery*" means the proceeds payable to Watson Grinding based on any claims under (i) the $1 million general liability policy issued by United First Insurance (Policy Number 85319121), (ii) the $5 million excess liability coverage issued by Navigators Insurance, (iii) the $20 million excess liability policy issued by RSUI, (iv) the $1 million general liability policy issued by Indian Harbor Insurance Company (Policy Number US00087635LI19A), (v) the $10 million excess liability coverage under the same policy, and (vi) the $15 million excess liability policy issued by RSUI (Policy Number NHA088211).

46. "*Grinding Chapter 11 Trustee*" means Janet S. Northrup, in her capacity as the duly-appointed chapter 11 trustee in the Chapter 11 Case.

14

47.     "*Holder*" means any Entity holding a Claim or an Interest.

48.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

49.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

50.     "*Indemnity Claim*" means a Claim against either Debtor based on a contractual, statutory and/or common law right to indemnification, reimbursement and/or contribution from Watson Grinding or Watson Valve.  The Allowed Matheson Contractual Indemnity Claim shall not be an Indemnity Claim under the Plan.  For the avoidance of doubt, an Indemnity Claim includes any amounts owed under any applicable duty to defend or duty to indemnify, including a claim for reimbursement of attorneys' fees and defense costs associated with defending any lawsuit, claim, or demand arising out of the Explosion.

51.     "*Initial Distribution Date*" means a date, no later than 90 days from the Effective Date, selected by the Watson Valve Trustee and the Liquidating Trustee, as applicable, to make the initial distributions to certain claimants under the terms of this Plan.

52.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests in the Debtors, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire any common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in the Debtors (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing, or to a Final Order providing for the recharacterization thereof.

53.     "*Interim Compensation Order*" means the Order Establishing Interim Professional Compensation Procedures [Docket No. 267 in the Watson Grinding Chapter 11 Case; Docket No. 120 in the Watson Valve Chapter 11 Case].

54.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

55.     "*January 24 Claim*" means a tort Claim arising out of the Explosion and for which the Debtors did not have any liability prior to the Explosion.  For the avoidance of doubt, an Indemnity Claim is not a January 24 Claim.

56.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

57.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

58.     "*Liquidating Trust*" means the liquidating trust created from the Watson Grinding Estate to be established under the Plan pursuant to the Liquidating Trust Agreement.

15

59.    "*Liquidating Trust Agreement*" means the agreement creating the Liquidating Trust to be Filed as part of the Plan Supplement. It does not include the Watson Valve Liquidating Trust Agreement.

60.    "*Liquidating Trust Assets*" means (i) all of the assets of Watson Grinding and its Estate on the Effective Date and the proceeds from such assets, including, but not limited to, the Liquidating Trust Cash, the Disputed Claims Reserve, and Watson Grinding's Retained Causes of Action, and (ii) $1,000,000 to be funded from the Valve Cash.

61.    "*Liquidating Trust Beneficiaries*" means the Holders of Allowed Claims and Interests entitled to distribution from the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement.

62.    "*Liquidating Trust Cash*" means (i) any Cash held by the Liquidating Trustee, net of the Liquidating Trust Operating Reserve, and (ii) any amounts remaining in the Disputed Claims Reserve following the payment of amounts reserved therein on account of Disputed Claims.  Liquidating Trust Cash shall be segregated into a separate bank account from any cash proceeds from the Grinding Insurance Recovery.

63.    "*Liquidating Trust Operating Reserve*" means the reserve maintained by the Liquidating Trustee from the Liquidating Trust Assets for the reasonable costs and expenses of administering the Liquidating Trust, including the reasonable costs and expenses incurred by the Liquidating Trustee, and the Liquidating Trustee Professionals.

64.    "*Liquidating Trustee*" means Ron Bankston, in his capacity as the Liquidating Trustee following confirmation of this Plan, or any successor trustee of the Liquidating Trust duly appointed pursuant to the Liquidating Trust Agreement, to act as the administrator of the Plan, to make or facilitate Distributions pursuant to the Plan, and to serve as the trustee of the Liquidating Trust.

65.    "*Liquidating Trustee Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee (in their capacities as such).

66.    "*Matheson*" means Matheson Tri-Gas, Inc.

67.    "*Minor Damage Claim*" means a January 24 Claim which (a) was Filed in an amount of $5,000.00 or less, or (b) the Holder of such January 24 Claim has elected in its Ballot to be treated as a Minor Damage Claim.

68.    "*Motion to Transfer*" means the motion to transfer, in form and substance acceptable to Matheson, the Committee, the Watson Grinding Chapter 11 Trustee, and the Watson Valve Chapter 11 Trustee to be included in the Plan Supplement.  The Motion to Transfer shall include a mutually acceptable provision for "related cases" and a stay of all other state court cases pursuant to Rule 13.4 of the Texas Rules of Judicial Administration.

69.    "*Oversight Committee*" means the committee to be appointed in accordance with, and to exercise the duties set forth in the Liquidating Trust Agreement.  On the Effective Date,

the initial members of the Oversight Committee shall be all members of the Committee as of the Effective Date.

70.     "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim or (b) a Priority Tax Claim.

71.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

72.     "*Petition Date*" means February 6, 2020.

73.     "*Plan*" means this *First Amended Joint Plan of Liquidation of Watson Grinding & Manufacturing Co. and Watson Valve Services, Inc. Under Chapter 11 of the Bankruptcy Code*, dated December 3, 2020, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

74.     "*Plan Proponent*" means the Committee.

75.     "*Plan Rate*" means interest at the rate of five-percent per annum.

76.     "*Plan Supplement*" means the supplemental appendix to this Plan, Filed with the Bankruptcy Court no later than fourteen (14) calendar days prior to the Voting Deadline, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, the Watson Valve Liquidating Trust Agreement, the Motion to Transfer, the CMO, the Schedule of Retained Causes of Action, and any schedules, lists, or documents contemplated by this Plan that are identified as part of the Plan Supplement.

77.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

78.     "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

79.     "*Professional*" means an Entity employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

80.     "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the

17

preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

81.    "*Professional Fees*" means all fees, costs and expenses incurred in these Chapter 11 Cases by any Professional and awarded by Final Order of the Bankruptcy Court pursuant to sections 328, 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

82.    "*Proof of Claim*" means a proof of Claim or Interest Filed against the Debtor in the Chapter 11 Case.

83.    "*Removed Lawsuits*" means all lawsuits against the Debtors which were originally filed in state court and then removed by any party to the Bankruptcy Court.  For the avoidance of doubt, *Indian Harbor Insurance Company v. Watson Grinding & Manufacturing Co.,* Adversary Proceeding No. 20-3415, which was originally filed in the Bankruptcy Court, is not included in the definition of Removed Lawsuits.

84.    "*Reserves*" means, collectively, the Liquidating Trust Operating Reserve and the Disputed Claims Reserve.

85.    "*Retained Causes of Action*" means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Schedule of Retained Causes of Action, against any third parties, investors, or individuals that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether prepetition or postpetition, including, without limitation, litigation claims, whether such Causes of Action arise from contract, tort theories of liability, insurance claims, statutory claims, common law claims, equitable claims or other claims, objections to Claims, adversary proceedings, Avoidance Actions against any Entity identified in the Statement of Financial Affairs as a recipient of a payment made or property transferred by or on behalf of the Debtors prior to the Petition Date, and all Causes of Action, claims, demands and rights, in each case, that have not been released, exculpated, waived, settled, or barred pursuant to this Plan.

86.    "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action to be retained by the Estates and contributed to the Liquidating Trust and the Watson Valve Liquidating Trust, which shall be included in the Plan Supplement.

87.    "*Secured*" means: when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

88.     "*Statement of Financial Affairs*" means the Statement of Financial Affairs Filed by Watson Grinding on March 23, 2020 [Docket No. 149] and by Watson Valve on April 29, 2020 [Docket No. 159].

89.     "*Third Party Coverage Claims*" has the meaning set forth in section XIII.G.3 of this Plan.

90.     "*Unexpired Lease*" means a lease to which the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

91.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

92.     "*Unsecured*" means not Secured.

93.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

94.     "*Valve Cash*" means all Cash held by the Valve Chapter 11 Trustee on behalf of the Watson Valve Estate as of the Effective Date or the Watson Valve Trustee on behalf of the Watson Valve Liquidating Trust following the Effective Date.  Valve Cash shall be segregated into a separate bank account from any cash proceeds from the Valve Insurance Recovery.

95.     "*Valve Claims and Retained Causes of Action*" means (i) all Claims asserted in the proof of claim filed by Watson Valve against Watson Grinding (Claim No. 349), (ii) any and all Causes of Action, now owned by Watson Valve or the Watson Valve Estate that are or may be pending or on or have accrued prior to the Effective Date against any Person or Entity, based in law or equity, whether asserted or unasserted as of the Effective Date arising from or related to the Explosion.

96.     "*Valve Insurance Recovery*" means the proceeds payable to Watson Valve based on any claims under (i) the $1 million general liability policy issued by Indian Harbor Insurance Company (Policy Number US00087635LI19A), (ii) the $10 million excess liability coverage under the same policy, and (iii) the $15 million excess liability policy issued by RSUI (Policy Number NHA088211).

97.     "*Valve Chapter 11 Trustee*" means Robert E. Ogle, in his capacity as the duly appointed chapter 11 trustee of Watson Valve.

98.     "*Voting Deadline*" means December 28, 2020 at 5:00 p.m. Central Standard Time, the deadline for submitting votes to accept or reject the Plan as set by the Bankruptcy Court.

99.     "*Watson Grinding*" means Watson Grinding & Manufacturing Co.

100.     "*Watson Valve*" means Watson Valve Services, Inc.

10834324v7

101.   "*Watson Valve Liquidating Trust*" means the liquidating trust created from the Watson Valve Estate to be established under the Plan pursuant to the Liquidating Trust Agreement.

102.   "*Watson Valve Liquidating Trust Agreement*" means the agreement creating the Watson Valve Liquidating Trust to be Filed as part of the Plan Supplement.

103.   "*Watson Valve Liquidating Trust Assets*" means all of the assets of Watson Valve and its Estate on the Effective Date and the proceeds from such assets, except for the $1,000,000 in Cash to be transferred to the Liquidating Trust.

104.   "*Watson Valve Liquidating Trust Beneficiaries*" means the Holders of Allowed Claims and Interests entitled to distributions from the Watson Valve Liquidating Trust pursuant to this Plan and the Watson Valve Liquidating Trust Agreement.

105.   "*Watson Valve Trustee*" means Robert E. Ogle, in his capacity as the Watson Valve Trustee following confirmation of this Plan, such other trustee selected from the chapter 7 trustee panel in the Southern District of Texas by the Plan Proponent prior to the Confirmation Hearing or any successor trustee of the Watson Valve Liquidating Trust duly appointed pursuant to the Watson Valve Liquidating Trust Agreement, to act as the administrator of the Plan, to make or facilitate Distributions pursuant to the Plan, and to serve as the trustee of the Watson Valve Liquidating Trust.

106.   "*Watson Valve Liquidating Trustee Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Watson Valve Trustee (in their capacities as such).

107.   "*Western*" means Western International Gas & Cylinders, Inc.

B.   *Rules of Interpretation*

For purposes of this Plan, unless otherwise specified herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of

20

reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Watson Valve Trustee or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.     *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

E.     *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## BACKGROUND

A.   *Overview of the Debtors' Operations Prior to the Petition Date*

Watson Grinding was founded as a specialty grinding shop by James Watson in 1960. Over the years, Watson Grinding grew to include a full-scale machine shop.   As Watson Grinding continued to grow, it shifted its operations to the manufacturing and service of valve and pump components.   Watson Grinding also specialized in turning and milling alloys, hard metals, and large parts.   Watson Grinding began thermal spray coating during the 1980s.

The Debtors operated out of a collection of buildings between Steffani Lane and Gessner Road in Houston, Texas.   John Watson, the son of founder James Watson, owns 63.778% of Watson Grinding and 70% of Watson Valve and the remaining equity is held by Robert White, who worked for Watson Grinding since 1977, and members of his family.

Watson Valve was formed in 2002. Watson Valve specialized in manufacturing severe service ball valves.

B.   *The Debtors' Prepetition Capital Structure*

On the Petition Date, the Debtors owed Texas Capital Bank approximately $3 million on a fully drawn line of credit.   Texas Capital Bank held a lien on the Debtors' cash, accounts receivable, inventory, equipment and other assets.   Texas Capital Bank's claim was satisfied from escrowed insurance proceeds pursuant to the *Order Granting Joint Motion for Approval to Pay Texas Capital Bank, National Association, in Full* (Doc. No. 429).[3]   Other than ad valorem property taxes, the Debtors have no other secured creditors.

C.   *The Explosion Leading to the Commencement of the Chapter 11 Cases*

In the early morning of January 24, 2020, a tragic explosion occurred at Watson Grinding's facility.   The Bureau of Alcohol, Tobacco and Firearms' investigation concluded that the Explosion was caused by a leak of propylene, which is an extremely flammable gas that can become explosive when mixed with air.

The Explosion caused massive damage to the Debtors' property and equipment as well as hundreds of surrounding homes and businesses.   The Explosion also resulted in multiple deaths and numerous injuries.

In the immediate wake of the Explosion, victims began filing lawsuits against the Debtors. In total, more than 100 lawsuits were filed in state court arising out of the Explosion.

The Explosion caused the Debtors to immediately cease operations and focus on preserving evidence, insurance claims, and any remaining value in its work in progress.

---

[3] Unless otherwise noted, all references to docket numbers are to the docket in the Watson Grinding Chapter 11 Case.

D.     *The Debtors' Insurance Policies*

The Watson Grinding Estate is anticipated to collect prior to the Confirmation Hearing, the following insurance proceeds: (i) $3 million in business personal property insurance which was used to satisfy the claim of Texas Capital Bank, (ii) approximately $1.5 million in business interruption insurance, (iii) approximately $1.75 million additional in business personal property insurance, and (iv) approximately $1.65 million in real property insurance.

Additionally, Watson Grinding has a total of approximately $26 million in non-eroding general liability and excess liability insurance which has not been collected apart from expenditures for defense costs.  The insurers of these policies dispute Watson Grinding's liability for the Explosion.

Watson Valve has a corresponding set of insurance policies with another $26 million of general liability and excess liability coverage.  Watson Grinding asserts that it is also directly covered under these insurance policies as an additional insured.  The insurers have denied that Watson Grinding is an insured party under the Watson Valve policies for general liability coverage and dispute that Watson Valve has any liability for the Explosion.  On September 16, 2020, Indian Harbor Insurance Company filed an adversary proceeding seeking a declaration that Grinding is not an additional insured under the Watson Valve general liability policy.  *See* Adv. Pro. No. 20-3415.[4]

The Valve Claims and Retained Causes of Action will be assigned to the Watson Valve Liquidating Trustee for the benefit of January 24 Claimants and other beneficiaries of the Watson Valve Liquidating Trust under the Plan.

E.     *Material Events During the Chapter 11 Cases*

1.     Commencement of the Chapter 11 Cases and First Day Motions

On February 6, 2020, the day before a hearing was scheduled in state court to consolidate all of the pending lawsuits, the Debtors filed voluntary chapter 11 petitions in the Bankruptcy Court which initiated the Chapter 11 Cases.  On February 10, 2020, the Bankruptcy Court held a hearing on certain "first day motions."  The Court denied the Debtors' request to pay off Texas Capital Bank at the first day hearing without notice to creditors and a review of the bank's liens by a committee.

2.     Appointment of the Committee

On February 10, 2020, the Court ordered the United States Trustee to appoint "an official committee to represent the interests of all persons and governmental units with monetary claims arising out of the January 24, 2020 explosion" (Doc. No. 25).

---

[4] To the extent that Watson Grinding prevails in this adversary proceeding and also recovers from Indian Harbor, such proceeds would be part of the Grinding Insurance Recovery notwithstanding the description of those policies as Watson Valve policies.

23

On February 21, 2020, the United States Trustee appointed the following members of the Committee: (i) Travis Horton, (ii) Massiel Nunez, (iii) Houston Corvette Service, (iv) Margarita Flores, (v) Phillip Burnam, (vi) Janette Thomas, and (vii) Gerardo Castorena, Jr. (Doc. No. 89).

The Committee was only appointed in the Watson Grinding Chapter 11 Case.

3.      Cash Collateral

On February 18, 19, and 27, 2020, Watson Grinding obtained interim approval to use the cash collateral of Texas Capital Bank (Doc. Nos. 75, 79, and 102).  On April 6, 2020, the Court entered a final order approving the use of cash collateral (Doc. No. 191).   Thereafter, as discussed above, Texas Capital Bank's claim was satisfied from escrowed insurance proceeds pursuant to the *Order Granting Joint Motion for Approval to Pay Texas Capital Bank, National Association, in Full* (Doc. No. 429).

The Debtors were able to conduct limited operations and functions during the Chapter 11 Case without needing to incur post-petition financing.

4.      Retention of Professionals

Throughout this case, the Debtors, the Committee, and the Grinding and Valve Chapter 11 Trustees have utilized various Professionals to assist them in their prosecution of the Chapter 11 Cases.

On April 1, 2020, the Court entered orders approving employment of (i) Jones Murray & Beatty LLP as general bankruptcy counsel to Watson Grinding (Doc. No. 168), (ii) McDowell Hetherington LLP as general bankruptcy counsel for Watson Valve (Watson Valve, Doc. No. 91), (iii) McCoy Leavitt Laskey as special counsel to represent Watson Grinding in the state court litigation arising out of the Explosion (Doc. No. 169), and (iv) Sheehy Ware Pappas as special counsel to both Debtors defend employer liability claims related to certain employee claims arising out of the Explosion (Watson Grinding Doc. No. 170; Watson Valve Doc. No. 104).  Special counsel is being compensated by insurers rather than the Estates.

On May 6, 2020, the Court entered an order authorizing the employment of Cummings & Houston, LLP as accountants to the Debtors (Watson Grinding Doc. No. 273; Watson Valve Doc. No. 166).  On July 7, 2020, the Court entered an order authorizing the employment of MACCO Restructuring Group LLC as the financial advisor to the Debtors (Watson Grinding, Doc. No. 397; Watson Valve Doc. No. 137).

On April 21, 2020, the Court authorized the employment of Porter Hedges LLP as general bankruptcy counsel to the Committee (Doc. No. 227).  On July 27, 2020, the Court authorized the employment of Burns Bowen Bair LLP as special insurance counsel to the Committee (Doc. No. 481).

On July 6, 2020, the Court entered an order authorizing the employment of McDowell Hetherington, LLP on a limited basis nunc pro tunc, and the law firm of Chamberlain, Hrdlicka, White, Williams & Aughtry P.C. as special counsel to the Valve Chapter 11Trustee (Watson Valve, Doc. No. 291).

10834324v7

On July 28, 2020, the Court entered orders authorizing the employment of Hughes Watters Askanase LLP as bankruptcy counsel to the Grinding Chapter 11 Trustee (Doc. No. 499) and the employment of Jones Murray & Beatty LLP as special counsel to the Grinding Chapter 11 Trustee (Doc. No. 500).

On July 31, 2020, the Court entered an order authorizing the employment of Okin Adams LLP as bankruptcy court to the Valve Chapter 11 Trustee (Watson Valve, Doc. No. 279).

    5.       Bar Date and Claims

July 8, 2020 was that last day for non-governmental creditors to file proofs of claim.  The last day for governmental units to file proofs of claim is September 11, 2020.

On May 28, 2020, the Court entered an Order Approving Form and Manner of Notice of Bar Date to Potential January 24 Claimants (Doc. No. 309).  Pursuant to this Order, the Committee did a mass mailing of a notice of the bar date to all addresses within a 1.75 mile radius of the Explosion site and published a notice of the bar date in the Houston Chronicle.

On May 28, 2020, the Court entered an Order Recognizing Pending Litigation Complaints as Proofs of Claim (Watson Grinding, Doc. No. 310; Watson Valve, Doc. No. 200). Pursuant to this Order, the individual plaintiffs in the greater than 120 pending lawsuits against the Debtors were not required to file separate proofs of claim.

On August 24, 2020, the Court entered an Order Establishing Administrative Expense Bar Date for Claims Arising Prior to June 4, 2020 (Doc. No. 654), which set a deadline of September 11, 2020 for parties to assert administrative expenses arising prior to June 4, 2020 in the Watson Grinding Chapter 11 Case.

    6.       KMHJ Dispute

The Debtors leased several buildings from affiliated entities, one of which was KMHJ, Ltd. ("KMHJ").  KMHJ is owned by the adult children of John Watson.  On March 26, 2020, KMHJ filed an Emergency Motion for Order Directing Property Damage Insurance Carrier to Issue Check Solely to KMHJ Ltd. for Property Damage to Watson Campus Buildings 1 and 3 which are Solely Owned by KMHJ Ltd. (Doc. No. 160).  The Committee opposed this relief primarily on the basis that KMHJ, despite being the owner of these buildings, was not listed as the loss payee on the Watson Grinding's insurance policy and was first added as a loss payee just two days before the Petition Date.  The Committee conducted significant written discovery and took several depositions in connection with this dispute.  Following a mediation before the Honorable Eduardo V. Rodriguez, the dispute with KMHJ was resolved by Watson Grinding receiving $868,000 of the insurance proceeds for KMHJ's buildings, which amounted to approximately one-third of the total available insurance proceeds and KMHJ waived its claims against the estate (Doc. No. 441).

    7.       Appointment of the Trustees

On May 29, 2020, shortly after the Court ordered the United States Trustee to investigate whether a trustee should be appointed, the Committee filed its Emergency Motion for

25

Appointment of Chapter 11 Trustees (Doc. No. 311), which sought the appointment of separate chapter 11 trustees for the Watson Grinding and Watson Valve. Among other things, the Committee alleged that John Watson terminated Bob White, the Debtors' chief operating officer and the individual who signed the Debtors' schedules and financial affairs and was acting as the Debtors' corporate representative, as retaliation for Bob White's submission of a bid with his son to acquire the assets of Watson Valve. Unlike the alternative bid being considered by Watson Valve, the Whites' bid did not include a consulting agreement or a non-compete agreement for John Watson. The Bankruptcy Court ultimately approved the alternative bid as the highest and best bid. The Bankruptcy Court did not make any findings that John Watson engaged in any wrongdoing.

Instead, the board of each Debtor consented to the appointment of chapter 11 trustees in each case. On June 4, 2020, the Court entered an order approving the appointment of the Grinding Chapter 11 Trustee (Watson Grinding, Doc. No. 331) and the Valve Chapter 11 Trustee (Watson Valve, Doc. No. 221).

Since their appointment, the Grinding and Valve Chapter 11 Trustees have continued to collect and liquidate the Debtors' remaining assets.

## ARTICLE III.
## TAX CONSEQUENCES

A. *Introduction.*

The following discussion summarizes certain federal income tax consequences of the transactions described herein and in the Plan. This discussion is for informational purposes only and does not constitute tax advice. This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice as of the date of this Disclosure Statement and will not be updated for subsequent tax or factual developments. Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law are discussed. Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, insurance companies, mutual funds, regulated investment companies, real estate investment trusts, trusts, S corporations, dealers and traders in securities and currencies, partnerships and other entities classified as partnerships for federal tax purposes and tax-exempt organizations. Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties including subsequent legislative and other tax changes. No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained. **HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

10834324v7

B.     *Tax Consequences to the Debtors and Equity Interest Holders.*

Watson Grinding will realize cancellation of indebtedness ("COI") income in respect of each Claim generally in an amount equal to the excess, if any, of (i) the portion of the Claim (including accrued and previously deducted but unpaid interest) from which Watson Grinding is (or is deemed to be) discharged; over (ii) the sum of any cash or the "issue price," under the Internal Revenue Code of 1986 (the "Internal Revenue Code") §§ 1273(b) and 1274, of any debt obligations distributed under the Plan in discharge of such Claims. The exact amount of COI income realized upon consummation of the Plan has not been finally determined. Under the Internal Revenue Code, a taxpayer is generally required to include COI income in gross income. COI income is not includable in gross income, however, if it occurs in a case under the Bankruptcy Code, provided the taxpayer is under the jurisdiction of a Court in such case and the cancellation of indebtedness is granted by the Court or is pursuant to a plan approved by the Court. Watson Grinding's COI income, if any, resulting from the Plan should satisfy these requirements, and, therefore, should not result in recognition of gross income to Watson Grinding. COI income that is excluded from gross income will reduce certain tax attributes of the taxpayer, including net operating losses (hereinafter "NOLs"), NOL carryovers, capital loss carryovers and the tax basis of assets, in a specified order of priority beginning with the NOLs and NOL carryovers, unless the taxpayer elects to have the reduction applied first to the tax basis of depreciable assets. The reduction of tax basis is limited to the excess of (i) the aggregate of the tax bases of the taxpayer's property (determined immediately after the discharge); and (ii) the aggregate liabilities of the taxpayer (determined immediately after the discharge). The exclusion for COI is deemed to occur immediately following the end of Watson Grinding's tax year, and not during the tax year.

The Debtors will recognize gain or loss on the sale of assets to third parties equal to the sales price of such assets less the Debtors' adjusted tax basis in such properties. The sales price includes all indebtedness assumed by a buyer as well as all other consideration received by the Debtors. The amount and tax character of such gain and loss will depend on the applicable facts and circumstances.

Holders will generally recognize no COI income or attribute reduction with respect to the transactions described herein, but a Holder should recognize a loss in connection with the cancellation and discharge of its Interests equal to its adjusted basis in such Interests, which loss will be a capital loss if such Interests were a capital asset in the hands of such Holder.

C.     *Tax Consequences to Creditors.*

**In General**. The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant utilizes the accrual or cash method of accounting for tax purposes, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

27

**Gain or Loss on Exchange**.  Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of his Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange.

The tax treatment of an Allowed Claim for accrued unpaid interest will depend on the Claimant's tax basis in such Claim, which primarily depends on whether the Claimant has previously recognized income for the accrual of such interest and/or recognized a loss with respect to same.  Any such holders should consult with their tax advisors regarding the tax treatment of any such accrued unpaid interest.

Any loss recognized by a holder of an Allowed Claim will be a capital loss if the Claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

D.      *Information Reporting and Backup Withholding*.

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies various items under penalties of perjury, including that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income.  Any amount withheld under these rules will be credited against the holder's federal income tax liability.  Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

E.      *Importance of Obtaining Professional Assistance*.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN.  ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT, THE PLAN OR ANY RELATED MATERIALS, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED. ANY SUCH DISCUSSIONS ARE BEING USED ONLY IN CONNECTION WITH SATISFYING THE**

10834324v7

REQUIREMENTS IMPOSED UNDER THE BANKRUPTCY CODE FOR DISCLOSURE
STATEMENTS. YOU SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX
ADVISOR WITH RESPECT TO YOUR FEDERAL, STATE, LOCAL AND FOREIGN
TAX CONSEQUENCES BASED ON YOUR PARTICULAR CIRCUMSTANCES.

## ARTICLE IV.
## CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, holders of Claims should read and carefully
consider the risk factors set forth below, in addition to the information set forth in this Disclosure
Statement together with any attachments, exhibits, or documents incorporated by reference
hereto. The factors below should not be regarded as the only risks associated with the Plan or its
implementation.

A.    *Certain Bankruptcy Law Considerations*

1.    Risk of Non-Confirmation of the Plan

Although the Plan Proponent believes that the Plan will satisfy all requirements necessary
for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court
will reach the same conclusion or that modifications to the Plan will not be required for
confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover,
the Plan Proponent can make no assurances that it will receive the requisite acceptances to
confirm the Plan, and even if all Voting Classes voted in favor of the Plan or the requirements
for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court,
which may exercise substantial discretion as a court of equity, may choose not to confirm the
Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests
ultimately would receive with respect to their Claims or Interests in a subsequent plan or other
proceeding.

2.    Risk of Non-Occurrence of the Effective Date

Although the Plan Proponent believes that the Effective Date will occur within 60
calendar days after the Confirmation Date, there can be no assurance as to the timing of the
Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not
occurred or have not been waived, then the Confirmation Order may be vacated, in which event
no distributions would be made under the Plan, the Debtors and all holders of Claims or Interests
would be restored to the status quo as of the day immediately preceding the Confirmation Date,
and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

3.    Conversion to Chapter 7 Cases

If no chapter 11 plan can be confirmed, or if the Bankruptcy Court otherwise finds that it
would be in the best interests of holders of Claims and Interests, the Chapter 11 Cases may be
converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which chapter 7 trustees
would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with
the priorities established by the Bankruptcy Code. A Liquidation Analysis showing the effects

that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests is attached as an exhibit to this Disclosure Statement.

4.      Additional Factors Affecting Recoveries

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the assumptions underlying the projected recoveries discussed in this Disclosure Statement, and the variation may be material.

There can be no assurance that any specific amount will be recovered from the Debtors' insurance policies.  The Debtors have not admitted any liability for the Explosion, and the insurance carrier has retained counsel to dispute liability.  On July 21, 2020, the Occupational Safety and Health Administration ("OSHA") sent counsel for the Grinding Chapter 11 Trustee a Citation and Notification of Penalty related to the Explosion.  Following its investigation, OSHA determined that Watson Grinding's employees were not provided effective information and training on hazardous chemicals in their work area. OSHA also made a finding of willfulness against Watson Grinding in its failure to keep the employees' place of employment free from hazards that were likely to cause death or serious physical harm.  The Grinding Chapter 11 Trustee has retained counsel to dispute the finding of willfulness because such a finding could impair the ability to seek coverage under certain insurance policies.

B.      *The Plan Proponent could withdraw the Plan*

The Plan Proponent may revoke or withdraw the Plan prior to the Confirmation Date.

C.      *The Plan Proponent has no duty to update*

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Plan Proponent has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

D.      *No representations outside this disclosure statement are authorized*

No representations concerning or related to the Debtors, the Committee, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

E.      *No legal or tax advice is provided by this disclosure statement*

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or Interest should consult its own legal counsel and accountant as to legal, tax, and other matters concerning its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

F.      *No admission made*

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors, the Liquidating Trust, the Liquidating Trustee, the Watson Valve Liquidating Trust, the Watson Valve Trustee, or Holders of Claims or Interests.

## ARTICLE V.
## VOTING PROCEDURES AND REQUIREMENTS

A.      *The Plan Must Satisfy the Confirmation Requirements for Separate Plans for Watson Grinding and Watson Valve*

Although the Plan is referred to in the singular and is being solicited jointly by the Plan Proponent, the Plan constitutes two separate plans for Watson Grinding and Watson Valve.  The Plan Proponent must satisfy the burden of establishing the requirements for confirmation of a Plan for each Debtor based on the classification of Claims against and Interests in each Debtor.

B.      *Parties Entitled To Vote*

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code conclusively presumes the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the plan; and (ii) interests as acceptance by interest holders in that class that hold at least two-thirds (2/3) in dollar amount of the interests that cast ballots for acceptance or rejection of the plan.

Classes 3, 4, 5, 6, 7, 10, 11, 12, 13, and 14 are Impaired under the Plan and entitled to vote to accept or reject the Plan.

C.      *Voting Deadline*

Before voting to accept or reject the Plan, each holder of a Claim entitled to vote (an "Eligible Holder") should carefully review the Plan

Ballots will be provided for holders of voting Claims as of the Voting Record Date (*i.e.*, December 18, 2020) to vote to accept or reject the Plan.

Each Ballot contains detailed voting instructions and sets forth in detail, among other things, the deadlines, procedures, and instructions for voting to accept or reject the Plan, the Voting Record Date for voting purposes, and the applicable standards for tabulating Ballots. The Committee has engaged Stretto as their solicitation agent (the "Solicitation Agent") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.

FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE SOLICITATION AGENT AT THE ADDRESS SET FORTH BELOW ON OR BEFORE THE VOTING DEADLINE OF DECEMBER 28, 2020 AT 5:00 P.M. CENTRAL STANDARD TIME, UNLESS EXTENDED BY THE PLAN PROPONENT.

A Ballot may be delivered via the Solicitation Agent's online portal at cases.stretto.com/watson. Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot. You will need the unique password printed on the cover sheet to the ballot in order to retrieve and submit your customized electronic Ballot. Each Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted. Creditors who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a hardcopy Ballot.

If you vote by mail, your Ballot must be returned by the Voting Deadline with an original signed copy, by first class mail, overnight courier, or personal delivery, to:

10834324v7

> **BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**
> WATSON BALLOT PROCESSING
> C/O STRETTO
> 8269 E 23RD AVE, STE 275
> DENVER, CO 80238

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT NO LATER THAN THE VOTING DEADLINE. ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. THE COMMITTEE MAY REQUEST THAT THE SOLICITATION AGENT ATTEMPT TO CONTACT SUCH VOTERS TO CURE ANY SUCH DEFECTS IN THE BALLOTS. THE FAILURE TO VOTE DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN. AN OBJECTION TO THE CONFIRMATION OF THE PLAN, EVEN IF TIMELY SERVED, DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.

D.      *Voting Procedures*

The Committee is providing copies of this Plan and Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot (collectively, a "Solicitation Package") to each Eligible Holder.

Except as provided below, unless the Ballot is timely submitted to the Solicitation Agent before the Voting Deadline, together with any other documents required by such Ballot, the Committee may reject such Ballot as invalid, and therefore decline to utilize it in connection with seeking confirmation of the Plan.

The delivery of an accepting Ballot pursuant to the procedures set forth above will constitute the agreement of the creditor with respect to such Ballot to accept (i) all of the terms of, and conditions to, this Solicitation; and (ii) the terms of the Plan including the injunction and exculpations set forth therein. All parties in interest that do not vote to accept the Plan retain their right to object to confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.

The Plan Supplement, once filed, will be made available for review on the website of the Solicitation Agent at cases.stretto.com/watson.  The Plan Proponent reserves the right to modify, amend, supplement, restate or withdraw the Plan Supplement after it is filed. The Committee will file and make available on the Solicitation Agent's website site any modified, amended, supplemented or restated Plan Supplement as promptly as possible.

10834324v7

E.      *Waivers of Defects, Irregularities, etc.*

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Solicitation Agent and/or the Committee, as applicable. The Committee reserves the right to reject any Ballot submitted by any of the creditors not in proper form, the acceptance of which would, in the opinion of the Committee or their counsel, as applicable, be unlawful. The Committee further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of the creditors. The interpretation (including the Ballot and the respective instructions thereto) by the Committee unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Committee (or the Bankruptcy Court) determines. Neither the Committee nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

## ARTICLE VI.
## CONFIRMATION OF THE PLAN

A.      *Confirmation Hearing*

A hearing is scheduled for December 30, 2020 at 9:00 a.m. (prevailing Central time) to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>").

B.      *Requirements for Confirmation of the Plan*

1.      Requirements of Section 1129(a) of the Bankruptcy Code

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

(a)      All provisions, terms and conditions hereof are approved in the Confirmation Order.

(b)      the Plan complies with the applicable provisions of the Bankruptcy Code;

(c)      the Plan Proponent has complied with the applicable provisions of the Bankruptcy Code;

(d)      the Plan has been proposed in good faith and not by any means forbidden by law;

(e)    any payment made or promised by the Plan Proponent, the Grinding Chapter 11 Trustee, the Valve Chapter 11 Trustee, the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(f)    with respect to each Class of Claims or Interests, each Holder of an impaired Claim or impaired Interest has either accepted the Plan or will receive or retain under the Plan, on account of such Holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtor was liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code;

(g)    except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan;

(h)    except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims;

(i)    at least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class; and

(j)    all fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

2.    **Best Interests Test**

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

35

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The attached Liquidation Analysis reflects that under the Plan all Holders of Impaired Claims and Interests will receive property with a value equal to or in excess of the value such Holder would receive in a liquidation under chapter 7 of the Bankruptcy Code.

Any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Plan Proponent. The Liquidation Analysis is solely for the purpose of disclosing to Holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that the Bankruptcy Court will accept the Committee's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

3.    Feasibility

Also as noted above, section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Plan Proponent has analyzed the Liquidating Trustee's and Watson Valve Trustee's ability to meet the obligations under the Plan. The Plan provides for appropriate reserves for payment of Secured Claims and Administrative and Priority Claims and mechanisms for consummation of distributions to all Holders of Claims entitled to them. Thus, the Plan Proponent believes that, following consummation of the Plan, there will be no need for further liquidation or reorganization.

4.    Non-Consensual Confirmation

The Bankruptcy Court may still confirm the Plan at the request of the Plan Proponent if, as to each impaired Class that rejects or is presumed to reject the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

(a)    Unfair Discrimination Test

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially

similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Plan Proponent believes the Plan satisfies the "unfair discrimination" test. Claims of equal priority are receiving comparable treatment.

      (b)     Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. As to dissenting classes, the test sets different standards depending on the type of claims in such class. The Plan Proponent submits that if the Plan Proponent "crams down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it satisfies the "fair and equitable" requirement.

The Plan Proponent believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for nonconsensual Confirmation of the Plan.

## ARTICLE VII.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponent has concluded that the Plan is the best available alternative and will maximize recoveries to parties in interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are (i) the preparation and presentation of an alternative plan of reorganization or liquidation, or (ii) a liquidation under chapter 7 of the Bankruptcy Code.

    A.    *Alternative Plan*

If the Plan is not confirmed, the Plan Proponent (or the Grinding Chapter 11 Trustee, Valve Chapter 11 Trustee, John Watson, or any other party in interest) could attempt to formulate a different plan. Such a plan would likely be an orderly liquidation of the Debtors' remaining assets which is already occurring under the Plan. The Plan Proponent, however, submits that the Plan, as described herein, enables creditors to realize the most value under the circumstances.

    B.    *Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law*

If no plan can be confirmed, the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code in which chapter 7 trustees would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. The effect a chapter 7 liquidation would have on the

recovery of holders of allowed Claims and Interests is set forth in the Liquidation Analysis attached hereto.

The Plan Proponent believes that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because of the delay resulting from the conversion of the cases and the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals who would be required to become familiar with the many legal and factual issues in the Debtors' Chapter 11 Cases.

**ARTICLE VIII.**
**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IX.

A.    *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim against Watson Grinding and the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim against Watson Grinding shall be paid in full from Liquidating Trust Cash on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim against Watson Valve and the Watson Valve Trustee agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim against Watson Valve shall be paid in full from Valve Cash on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in this Article VIII.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims against Watson Grinding arising between June 4, 2020 and the Effective Date, or against Watson Valve prior to the Effective Date, must be Filed and served on the Liquidating Trustee or Watson Valve Trustee, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or

38

property of the Estates and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

B.    *Professional Compensation*

Each Holder of a Professional Fee Claim against Watson Grinding shall be paid in respect of such Professional Fee Claim from Liquidating Trust Cash, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within thirty (30) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules.

Each Holder of a Professional Fee Claim against Watson Valve shall be paid in respect of such Professional Fee Claim from Valve Cash, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within thirty (30) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Liquidating Trustee agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as a Secured Claim if such Claim is not otherwise paid in full.

Allowed Priority Tax Claims against Watson Grinding shall be paid from Liquidating Trust Cash.  Allowed Priority Tax Claims against Watson Valve shall be paid from Valve Cash.

D.    *Statutory Fees*

All fees due and payable by Watson Grinding pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Grinding Chapter 11 Trustee on the Effective Date or as soon as reasonably practicable thereafter by the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Liquidating Trust Cash. The Liquidating Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Liquidating Trustee during the applicable period, attested to by an authorized representative of the Liquidating Trustee.

All fees due and payable by Watson Valve pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Valve Chapter 11 Trustee on the Effective Date or as soon as reasonably practicable thereafter by the Watson Valve Trustee. After the Effective Date, the Watson Valve Trustee shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Valve Cash. The Watson Valve Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Watson Valve Trustee shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Watson Valve Trustee during the applicable period, attested to by an authorized representative of the Watson Valve Trustee.

## ARTICLE IX.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.    *Summary of Classification*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claim/Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 1 | Secured Claims Against Watson Grinding | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims Against Watson Grinding | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | January 24 Claims Against Watson Grinding | Impaired | Entitled to Vote |
| 4 | Minor Damage Claims Against Watson Grinding | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims Against Watson Grinding | Impaired | Entitled to Vote |
| 6 | Indemnity Claims Against Watson Grinding | Impaired | Entitled to Vote |
| 7 | Interests in Watson Grinding | Impaired | Entitled to Vote |

40

| Class | Claim/Interest | Status | Voting Rights |
|:---:|---|:---:|:---:|
| 8 | Secured Claims Against Watson Valve | Unimpaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Other Priority Claims Against Watson Valve | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 10 | January 24 Claims Against Watson Valve | Impaired | Entitled to Vote |
| 11 | Minor Damage Claims Against Watson Valve | Impaired | Entitled to Vote |
| 12 | General Unsecured Claims Against Watson Valve | Impaired | Entitled to Vote |
| 13 | Indemnity Claims Against Watson Valve | Impaired | Entitled to Vote |
| 14 | Interests in Watson Valve | Impaired | Entitled to Vote |

C.    *Treatment of Claims Against and Interests*

1.    Class 1: Secured Claims Against Watson Grinding

(a)    *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against Watson Grinding and the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Secured Claim, each such Holder shall receive payment from the Liquidating Trust Cash on the Initial Distribution Date in an amount equal to the proceeds of the collateral securing such Holder's Allowed Secured Claim after satisfaction in full of all superior liens up to the amount of the Allowed Secured Claim.

(b)    *Voting*: Class 1 Claims are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2: Other Priority Claims Against Watson Grinding

(a)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim against Watson Grinding and the Liquidating Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment from the Liquidating Trust Cash on the Initial Distribution Date equal to the unpaid portion of the Allowed Other Priority Claim.

(b)    *Voting*: Class 2 Claims are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the

10834324v7

Bankruptcy Code and, therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.   Class 3: January 24 Claims Against Watson Grinding

   (a)   *Treatment*: Each Holder of an Allowed January 24 Claim shall receive their Pro Rata distribution of (i) the Grinding Insurance Recovery, and (ii) the Liquidating Trust Cash remaining on the Final Distribution Date; provided, however, that any January 24 Claim that was asserted against both Watson Grinding and Watson Valve shall be permitted only a single recovery based on the Allowed amount of such January 24 Claim.

   For purposes of calculating the Pro Rata distribution of the Liquidating Trust Cash on the Final Distribution Date, the Allowed Amount of the Class 3 January 24 Claims shall first be reduced by the amount of the Grinding Insurance Recovery and Valve Insurance Recovery received by January 24 Claimants.

   (b)   *Voting*: Class 3 Claims are Impaired. The Holders of January 24 Claims against Watson Grinding are entitled to vote to accept or reject the Plan.

4.   Class 4: Minor Damage Claims Against Watson Grinding

   (a)   *Treatment*: In full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Minor Damage Claim, each Holder of an Allowed Minor Damage Claim against Watson Grinding will receive payment from the Liquidating Trust Cash equal to the lesser of (a) the face amount of such Claim, or (b) $2,000.00; provided, however, that any Minor Damage Claim that was asserted against both Watson Grinding and Watson Valve shall be permitted only a single recovery based on the Allowed amount of their Minor Damage Claim.

   (b)   *Voting*: Class 4 Minor Damage Claims against Watson Grinding are Impaired. The Holders of Minor Damage Claims against Watson Grinding are entitled to vote to accept or reject the Plan.

5.   Class 5: General Unsecured Claims Against Watson Grinding

   (a)   *Treatment*:  The Holders of Class 5 Claims, including the Allowed Matheson Contractual Indemnity Claim but excluding the General Unsecured Claim asserted by Valve against Grinding, shall be paid, in full, without interest, on the Initial Distribution Date.

   If the Holder of the Allowed Matheson Contractual Indemnity Claim obtains a Final judgment from a court of competent jurisdiction

42

declaring that such Claim entitles it to directly assert a right to the Grinding Insurance Recovery, then the Holder of such claim shall additionally receive a Pro Rata share, with Class 3, of the Grinding Insurance Recovery; provided, further, that any such Claim that was asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Claim.

(b)   *Voting*: Class 5 Claims are Impaired.   The Holders of General Unsecured Claims against Watson Grinding are entitled to vote to accept or reject the Plan.

6.   Class 6: Indemnity Claims Against Watson Grinding

(a)   *Treatment*:   Each Holder of an Indemnity Claim against Watson Grinding, other than the Allowed Matheson Indemnity Claim, will receive a Pro Rata share of the Liquidating Trust Cash remaining on the Final Distribution Date; provided that if a Holder of an Indemnity Claim against Watson Grinding obtains a Final judgment from a court of competent jurisdiction declaring that its Indemnity Claim entitles it to directly assert a right to the Grinding Insurance Recovery prior to the Final Distribution Date, then the Holder of such an Indemnity Claim shall additionally receive a Pro Rata share, with Class 3, of the Grinding Insurance Recovery; provided, further, that any Grinding Indemnity Claim that was asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Indemnity Claim.

Matheson shall have an allowed Class 6 Claim in the amount of $5,000,000 solely for voting purposes.  For all other purposes, all Class 6 Indemnity Claims, including Matheson's Class 6 Indemnity Claim, shall be liquidated in the remanded state court proceeding. However, Matheson shall receive no further distribution on account of its Class 6 Claim from Liquidating Trust Cash, and its only source of recovery on its Class 6 Claim shall be against the Grinding Insurance Recovery.

(b)   *Voting*:   Class 6 Indemnity Claims against Watson Grinding are Impaired.  The Holders of Indemnity Claims against Watson Grinding are entitled to vote to accept or reject the Plan.

7.   Class 7: Interests in Watson Grinding

(a)   *Treatment*: Following the payment in full of all Allowed Claims in Classes 1, 2, 3, 4, 5, and 6, the Holders of Interests in Watson Grinding will receive their Pro Rata share of any remaining Liquidating Trust Cash on the Final Distribution Date.

43

10834324v7

(b) *Voting*: Class 7 is Impaired. Holders of Interests in Watson Grinding are entitled to vote to accept or reject the Plan.

8. Class 8: Secured Claims Against Watson Valve

(a) *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim against Watson Valve and the Watson Valve Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Secured Claim, each such Holder shall receive a payment from the Valve Cash on the Initial Distribution Date in an amount equal to the proceeds of the collateral securing such Holder's Allowed Secured Claim, plus interest at the greater of the rate provided by applicable law or the Plan Rate, up to the amount of the Allowed Secured Claim.

(b) *Voting*: Class 8 Claims are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Secured Claims against Watson Valve are not entitled to vote to accept or reject the Plan.

9. Class 9: Other Priority Claims Against Watson Valve

(a) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Watson Valve Trustee agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive a payment from the Valve Cash on the Initial Distribution Date equal to the unpaid portion of the Allowed Other Priority Claim, plus interest at the greater of the rate provided by applicable law or the Plan Rate.

(b) *Voting*: Class 9 Claims are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Other Priority Claims against Watson Valve are not entitled to vote to accept or reject the Plan.

10. Class 10: January 24 Claims Against Watson Valve

(a) *Treatment*: Each Holder of an Allowed January 24 Claim shall receive their Pro Rata distribution of (i) the Valve Insurance Recovery, and (ii) the proceeds of any Valve Claims and Retained Causes of Action; provided, however, that any January 24 Claim that was asserted against both Watson Grinding and Watson Valve shall be permitted only a single recovery based on the Allowed amount of such January 24 Claim.

44

For purposes of calculating the Pro Rata distribution of the Valve Cash on the Final Distribution Date, the Allowed Amount of the Class 10 January 24 Claims shall first be reduced by the amount of the Valve Insurance Recovery and Grinding Insurance Recovery received by January 24 Claimants.

(b)     *Voting*:  Class 10 is Impaired. Holders of January 24 Claims Against Watson Valve are entitled to vote to accept or reject the Plan.

11.     Class 11:  Minor Damage Claims Against Watson Valve

(a)     *Treatment*:  In full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Minor Damage Claim, each Holder of an Allowed Minor Damage Claim against Watson Valve will receive the same treatment as Class 4 Minor Damage Claims against Watson Grinding which will be paid from Liquidating Trust Cash.

(b)     *Voting*:  Class 11 is Impaired. Holders of Minor Damage Claims against Watson Valve are entitled to vote to accept or reject the Plan.

12.     Class 12:  General Unsecured Claims Against Watson Valve

(a)     *Treatment*:  The Holders of Class 12 General Unsecured Claims against Watson Valve shall be paid, in full, without interest, on the Initial Distribution Date from Valve Cash.

(b)     *Voting*:  Class 12 is Impaired. Holders of General Unsecured Claims against Watson Valve are entitled to vote to accept or reject the Plan.

13.     Class 13:  Indemnity Claims Against Watson Valve

(a)     *Treatment*:  Each Holder of an Indemnity Claim against Watson Valve shall receive a Pro Rata share of the proceeds of any Valve Claims and Retained Causes of Action on the Final Distribution Date; provided that if a Holder of an Indemnity Claim against Watson Valve obtains a Final judgment from a court of competent jurisdiction declaring that its Indemnity Claim entitles it to directly assert a right to the Valve Insurance Recovery prior to the Final Distribution Date, then the Holder of such an Indemnity Claim shall additionally receive a Pro Rata share, with Class 10 Claim, of the Valve Insurance Recovery; provided, further, that any Indemnity Claim asserted against both Grinding and Valve shall be permitted only a single recovery based on the Allowed amount of such Indemnity Claim.

Matheson shall have an allowed Class 13 Claim in the amount of $5,000,000 solely for voting purposes. For all other purpose (including distribution), all Class 13 Indemnity Claim, including Matheson's

45

Class 13 Indemnity Claim, shall be liquidated in the remanded state court proceeding. However, Matheson shall receive no further distribution on account of its Class 13 Claim from the proceeds of any Valve Claims and Retained Causes of Action, and its only source of recovery on its Class 13 Claim shall be solely against the Valve Insurance Recovery.

(b)   *Voting*: Class 13 is Impaired. Holders of Indemnity Claims against Watson Valve are entitled to vote to accept or reject the Plan.

14.   Class 14: Interests in Watson Valve

(a)   *Treatment*: After payment of, or reserves established for, Allowed Claims in Classes 8, 9, 11 and 12, and Watson Valve's funding of the Valve Liquidating Trust and the $1,000,000 transfer to the Grinding Liquidating Trust, the remaining Valve Cash shall be distributed to the holders of Interests in Watson Valve on a Pro Rata basis based on ownership percentages on the Effective Date. In the event Classes 10 and 13 are fully satisfied In the event Classes 10 and 13 are fully satisfied or there are no Allowed Claims in Classes 10 and 13, remaining proceeds from Valve Claims and Retained Causes of Action (if any) shall be distributed to the holders of Interests in Watson Valve on a Pro Rata basis based on ownership percentages on the Effective Date.

(b)   *Voting*: Class 14 is Impaired. Holders of Interests in Watson Valve are entitled to vote to accept or reject the Plan.

D.   *Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors', Estates', the Liquidating Trustee's, or the Watson Valve Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

46

## ARTICLE X.
## ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.     *Acceptance or Rejection of this Plan*

1.     Deemed Acceptance of the Plan

Classes 1, 2, 8, and 9 are Unimpaired under the Plan. Therefore, Classes 1, 2, 8, and 9 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.     Voting Classes

Classes 3, 4, 5, 6, 7, 10, 11, 12, 13, and 14 are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

3.     Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

4.     Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of Confirmation shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

B.     *Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponent reserves the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

C.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

## ARTICLE XI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A.    *Liquidation of January 24 Claims Following Remand*[5]

On May 8, 2020, the Court entered the Order (I) Modifying the Automatic Stay, (II) Setting the Deadline for Filing Notices of Removal, (III) Setting the Deadline for Filing Motions to Remand, and (IV) Scheduling Omnibus Hearing on Motions to Remand (Doc. No. 279) (the "Removal Procedures Order").  Pursuant to the Removal Procedures Order, all parties were permitted to file suit or amend pending petitions against the Debtor until July 8, 2020.  The Debtor was permitted to file notices of removal until August 7, 2020.  Leave was subsequently granted by the Court to remove claims and add the Debtor as a party to additional cases.

In total, there are over 120 Removed Lawsuits pending in adversary proceedings before this Court.  Under the Removal Procedures Order, plaintiffs had until August 31, 2020 to file motions to remand or motions to withdraw the reference.  The Bankruptcy Court began an omnibus hearing on all motions to remand on October 22, 2020, which was continued to allow for mediation.

If the Plan is confirmed, all objections to the motions to remand will be withdrawn and the Bankruptcy Court will grant the motions to remand as unopposed.  Following remand, the Oversight Committee, the Liquidating Trustee, the Watson Valve Trustee, and Western/Matheson will file the Motion to Transfer seeking to transfer all pending state court cases against the Debtors and third parties arising out of the Explosion to a single pretrial judge pursuant to Rule 13 of the Texas Rules of Judicial Administration.  All costs associated with filing the Motion to Transfer shall be paid by the Liquidating Trust.

The Motion to Transfer shall be accompanied by a recommendation to the MDL Panel that a judge be selected from the following list: (i) Tad Halbach, (ii) Lauren Reeder, and (iii) Erin Lunceford the ("MDL Recommendation").  The MDL Recommendation shall not be subject to revision or renegotiation following confirmation of the Plan.  The Plan Proponent recognizes that the MDL Panel is not bound to select a pretrial judge from the MDL Recommendation.

If the MDL Panel grants the Motion to Transfer, the Oversight Committee, the Liquidating Trustee, the Watson Valve Trustee, and Western/Matheson shall file the CMO.  The Plan Proponent recognizes that the pretrial judge appointed by the MDL Panel is not bound to adopt the CMO.

In the event that the state court denies the Motion to Transfer, the Oversight Committee, the Liquidating Trustee, the Watson Valve Trustee and Western/Matheson shall file an agreed motion to create a special docket consisting of the pending remanded case pursuant to Harris

---

[5] The means for liquidation of January 24 Claims is qualified entirely by the possibility that the state court maintains full authority to grant or deny any relief that is to be requested by the parties, and the Plan does not bind the state court to grant specific relief following remand.

County Local Rule 3.2.3(c) for discovery and pretrial purposes in the state court case pending before Judge Donna Roth.

While neither the Plan nor the Bankruptcy Court may dictate what actions the state court may take once the Removed Lawsuits are remanded, the Plan Proponent asserts that a consolidated state court proceeding will provide an organized, fair and timely method for parties to adjudicate the Debtors' liability for damages related to the Explosion and liquidate their Claims.

The Castorena/Ayala, Flores wrongful death plaintiffs irrevocably waive their claims, if any, for recovery against Watson Grinding under Tex. Lab. Code Sec. 408.001(b), in consideration for Watson Grinding's and Texas Mutual Insurance Company's agreement not to contest their right to recover scheduled workers compensation death benefits based on whether the respective Decedents were in the course and scope of their employment with Watson Grinding at the time of the accident. Further, a plaintiff's acceptance or alleged acceptance of Workers' Compensation benefits will not constitute a basis for excluding that plaintiff from sharing in distributions of any Grinding Insurance Recovery or Valve Insurance Recovery, or any other distribution under the Plan. Moreover, with respect to these Recoveries and distributions, no objection or argument will be raised contending that plaintiffs were in the course and scope of their employment by Watson Grinding as a basis to exclude the plaintiff's participation. Likewise, nothing in the Term Sheet, Disclosure Statement or Plan shall be interpreted as a waiver of Texas Mutual Insurance Company's right to subrogation under the Texas Labor Code in these cases once remanded.

1. *Motion to Appoint a Special Master in Consolidated State Court Proceeding to Liquidate January 24 Claims Asserted in Removed Lawsuits*

The members of the Oversight Committee will file a joint motion to have the state court appoint Alice Oliver-Parrot as a Special Master for the purpose of determining the Allowed amount of January 24 Claims (Alice Oliver-Parrot, in her capacity as the state court appointed Special Master, such other person as the state court deems appropriate to appoint as the Special Master, shall be referred to herein as the "Special Master").

The proposed scope of the Special Master's authority will include all January 24 Claims which are asserted in each of the Removed Lawsuits; provided, however, that each Holder of a January 24 Claim may elect whether to (i) consent to have the Allowed amount of their Claim against the Debtor determined by the Special Master, or (ii) adjudicate their Claim to a final judgment in state court which will determine the Allowed amount of their Claim against the Debtor.

The January 24 Claims which are asserted in the Removed Lawsuits will only become Allowed through (i) a final determination by the Special Master, or (ii) a final judgment by a court of competent jurisdiction.

Additionally, the Special Master will not have the authority to determine (i) the liability of the Debtors, (ii) the liability or extent of damages that may be owed by any non-Debtor

defendants, or (iii) the causation issues related to the Explosion. In the event of remand, the determination of liability will be made by a state court of competent jurisdiction. The Special Master will only be appointed when there are insurance proceeds to be distributed, whether through a final judgment or a settlement with an insurer. Therefore, the Special Master shall only have the authority to review and determine the quantum of damages in arriving at the Allowed amount of the January 24 Claims, and will not determine any party's proportional liability for the Explosion.

In the event the Removed Lawsuits are remanded, any agreed dismissal of a Removed Lawsuit pursuant to a settlement prior to a trial of the settled Removed Lawsuit(s) must be effectuated by a motion to compromise under Bankruptcy Rule 9019 filed with the Bankruptcy Court. The Liquidating Trustee or the Watson Valve Trustee shall seek to set the motion for hearing, and shall promptly cause a copy of such motion to dismiss or non-suit and notice of hearing to be served upon any unrepresented Holders of January 24 Claims or an ad litem appointed to appear on their behalf.

Nothing in this Plan shall be deemed to require the state court to appoint the Special Master or prejudice any party's right to object to the appointment of the Special Master. Absent consent of any other defendant in the state court proceeding: (i) the Special Master shall not be entitled to determine a claim against any non-consenting defendant, and (ii) the Special Master's determination of any Allowed Claim against the Debtor shall not have a preclusive effect on any non-consenting defendant.

2.  *Objections to January 24 Claims and Indemnity Claims Asserted Solely in Proofs of Claim*

The Liquidating Trustee shall have the authority to file an objection to any January 24 Claim or Indemnity Claim which is asserted solely in a proof of claim (i.e., the Holder of such January 24 Claim or Indemnity Claim is not a party to one of the Removed Lawsuits or any other state court proceeding against the Debtor based on claims arising out of the Explosion). Nothing in this Plan shall prohibit a court of competent jurisdiction from appointing an attorney ad litem to represent the interests of Holders of January 24 Claims who are not represented in the Removed Lawsuits for the purpose of reviewing and objecting to the reasonableness of any proposed settlement.

3.  *Defense of Matheson and Western in State Court*

The Debtors (i) acknowledge they do not object to Greenburg Traurig LLP representing Matheson and Western; and (ii) waive any right for tender of the defense based on conflicting positions of liability between, on the one hand, Matheson and Western, and, on the other, Grinding and Valve, as to any obligation to indemnify for costs of defense, provided, however, that nothing contained herein shall prevent Debtors from disputing any other basis of liability under the indemnity agreement, including coverage or the reasonableness of any fees or expenses incurred by Matheson and Western.

50

B.      *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Grinding Chapter 11 Trustee or Valve Chapter 11 Trustee.

C.      *The Liquidating Trust*

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the applicable Liquidating Trust Beneficiaries, the Liquidating Trust Assets, including but not limited to (a) all tangible and intangible assets of Watson Grinding and its Estate, (b) all Liquidating Trust Cash, (c) the Watson Grinding Retained Causes of Action, (d) the Reserves, and (e) any other assets vested in the Liquidating Trust pursuant to the terms of this Plan and the Liquidating Trust Agreement. As of the Effective Date, the Liquidating Trust Assets shall be vested in the Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan or the Confirmation Order.

On the Effective Date, the Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidating Trust shall be established for the primary purpose of reasonably maximizing the proceeds from liquidation of its assets (as applicable) for the benefit of Liquidating Trust Beneficiaries, and for making Distributions in accordance with the Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

The Liquidating Trustee shall segregate into separate bank accounts the Liquidating Trust Cash and any funds attributable to the Grinding Insurance Recovery.

The Liquidating Trust shall be funded with $1,000,000 from Valve Cash on the Effective Date in full and final satisfaction of all Claims Grinding or the Liquidating Trust may assert against Valve's non-insurance assets.

D.      *The Liquidating Trustee*

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement.

Pursuant to 11 U.S.C. §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Liquidating Trustee shall be the successor to Watson Grinding for all purposes.  The Liquidating Trustee shall have the sole authority to prosecute, defend and settle all of Watson Grinding's Retained Causes of Action arising out of the Explosion, including but not limited to claims against insurance policies related to the Explosion and any claims which the Debtors may have to recovery against third parties for their liability related to the Explosion or the insurance coverage of any such third party.

Compensation of the Liquidating Trustee shall be $850 per hour, and such compensation and the actual costs and expenses of the Liquidating Trustee and the Liquidating Trust (including without limitation, the actual fees and expenses of the Liquidating Trustee Professionals) shall be paid from Liquidating Trust Cash. The Liquidating Trustee shall be compensated in the manner set forth in the Liquidating Trust Agreement.

Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to exercise all powers and duties as set forth in the Liquidating Trust Agreement, including, but not limited to retaining professionals and advisors, attorneys and accountants, as the Liquidating Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

E.    *The Watson Valve Liquidating Trust*

On the Effective Date, the Watson Valve Trustee shall sign the Watson Valve Liquidating Trust Agreement and cause the Watson Valve Liquidating Trust to accept, on behalf of the applicable Watson Valve Liquidating Trust Beneficiaries, the Watson Valve Liquidating Trust Assets.  For avoidance of doubt, the Watson Valve Liquidating Trust Assets include the Valve Claims and Retained Causes of Action. As of the Effective Date, the Watson Valve Liquidating Trust Assets shall be vested in the Watson Valve Liquidating Trust free and clear of all Liens, Claims, Interests and encumbrances to the fullest extent possible under applicable law, except as otherwise specifically provided in the Plan or the Confirmation Order.

On the Effective Date, the Watson Valve Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Watson Valve Liquidating Trust shall be established for the primary purpose of prosecuting the Valve Claims and Retained Causes of Action, and for making Distributions in accordance with the Plan and the Watson Valve Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Watson Valve Liquidating Trust.

The Watson Valve Trustee shall segregate into separate bank accounts the Valve Cash, any funds attributable to the Valve Insurance Recovery and any proceeds from the Valve Claims and Retained Causes of Action.

F.    *The Watson Valve Trustee*

 The appointment of the Watson Valve Trustee shall be effective as of the Effective Date. Any successor Watson Valve Trustee shall be appointed as set forth in the Watson Valve Liquidating Trust Agreement.

Pursuant to 11 U.S.C. §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Watson Valve Trustee shall be the successor to Watson Valve for all purposes.

Compensation of the Watson Valve Trustee shall be at his standard hourly rate, and such compensation and the actual costs and expenses of the Watson Valve Trustee and the Watson Valve Liquidating Trust (including without limitation, the actual fees and expenses of the

10834324v7

Watson Valve Liquidating Trustee Professionals) shall be paid from Valve Cash. The Watson Valve Trustee shall be compensated in the manner set forth in the Watson Valve Liquidating Trust Agreement.

Subject to the provisions of the Watson Valve Liquidating Trust Agreement, the Watson Valve Trustee shall be entitled to exercise all powers and duties as set forth in the Watson Valve Liquidating Trust Agreement, including, but not limited to retaining professionals and advisors, attorneys and accountants, as the Watson Valve Trustee deems appropriate and advisable, and to pay such professionals as professionals and expenses of administration of the Watson Valve Liquidating Trust, without the need for Bankruptcy Court approval or authorization.

G.   *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Liquidating Trust and the Watson Valve Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust and Watson Valve Liquidating Trust be treated as if they had received a Distribution from the Estates of an undivided interest in each of the assets of the Liquidating Trust and Watson Valve Liquidating Trust (to the extent of the value of their respective shares therein) and then contributed such interests to the Liquidating Trust.

1.   *Trust Assets Treated as Owned by Beneficiaries of Trusts*

For all U.S. federal income tax purposes, all parties shall treat the transfer of assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective shares in the assets of the Liquidating Trust), followed by (b) the transfer of the assets of the Liquidating Trust (net of any applicable liabilities) by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective share in the assets of the Liquidating Trust) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and the owners of the assets thereof.  The provisions of this paragraph apply with equal force to the transfer of the Watson Valve Liquidating Trust Assets to the Watson Valve Liquidating Trust for the benefit of the Watson Vale Liquidating Trust Beneficiaries.

2.   *Tax Reporting*

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of Watson Grinding, for Watson Grinding and the Liquidating Trust.

The Liquidating Trustee shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article XI. Within a reasonable time following the end of the taxable year, the Liquidating Trustee shall

10834324v7

send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns. The Liquidating Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidating Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a beneficial interest to the extent required by the IRC and applicable law.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority.

The Liquidating Trustee may request an expedited determination of the tax obligations of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Watson Valve Trustee shall have all responsibilities set forth in this paragraph for Watson Valve and the Watson Valve Liquidating Trust.

3.      *Payment of Taxes*

The Liquidating Trustee shall be responsible for payments of all Allowed tax obligations of Watson Grinding including Priority Tax Claims, Secured Claims and Administrative Claims, in addition to any taxes imposed on the Liquidating Trust or its assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve associated with the Liquidating Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

The Watson Valve Trustee shall be responsible for payments of all Allowed tax obligations of Watson Valve including Priority Tax Claims, Secured Claims and Administrative Claims, in addition to any taxes imposed on the Watson Valve Liquidating Trust or its assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve associated with the Watson Valve Liquidating Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of the Watson

54

Valve Liquidating Trust allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Watson Valve Liquidating Trust as a result of the resolutions of such Disputed Claims.

H.  *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

From and after the Effective Date, (i) the Liquidating Trustee shall be solely responsible for prosecution and settlement of all of Watson Grinding's Retained Causes of Action pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, and (ii) the Liquidating Trustee shall have the rights, powers, and interests of the Watson Grinding Estate to pursue, settle, or abandon such Retained Causes of Action as the representative of the Watson Grinding Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

From and after the Effective Date, (i) the Watson Valve Trustee shall be solely responsible for prosecution and settlement of the Valve Claims and Retained Causes of Action pursuant to the Plan, Confirmation Order, and Watson Valve Liquidating Trust Agreement, and (ii) the Watson Valve Trustee shall have the rights, powers, and interests of the Watson Valve Estate to pursue, settle, or abandon such Claims and Retained Causes of Action as the representative of the Watson Valve Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action.

Any settlement of a Retained Cause of Action that would result in Grinding Insurance Recovery or Valve Insurance Recovery, or that would require disbursements to be made from Liquidating Trust Cash or Valve Cash, must be approved by the Bankruptcy Court pursuant to the standards of Bankruptcy Rule 9019 on at least 14 days' notice to all affected creditors and equity interest holders.

**The Debtors, the Estates, the Liquidating Trust, the Watson Valve Liquidating Trust, the Liquidating Trustee, and the Watson Valve Trustee reserve and retain, for the benefit of the Liquidating Trust and the Liquidating Trust Beneficiaries and the Watson Valve Liquidating Trust and the Watson Valve Liquidating Trust Beneficiaries, respectively, any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Debtors, the Estates, the Liquidating Trust, the Watson Valve Liquidating Trust, the Liquidating Trustee and the Watson Valve Trustee, respectively, may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors'**

insurers; and (ii) any recipient of a transfer identified in the Debtors' Statement of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE LIQUIDATING TRUSTEE OR THE WATSON VALVE TRUSTEE RELATING TO RETAINED CAUSES OF ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.

The Schedule of Retained Causes of Action, listing Causes of Action to be retained by the Liquidating Trust and the Watson Valve Liquidating Trust will be included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, the Liquidating Trustee or the Watson Valve Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee and the Watson Valve Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

I.   *Filing of Monthly and Quarterly Reports*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports in the Watson Grinding Chapter 11 Case shall be the responsibility of the Liquidating Trustee until such time as the Liquidating Trust terminates.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports in the Watson Valve Chapter 11 Case shall be the responsibility of the Watson Valve Trustee until such time as the Watson Valve Chapter 11 Case is closed.

The Watson Valve Trustee and the Liquidating Trustee shall each cause a quarterly administration report to be prepared and filed illustrating (i) receipts and disbursements during the prior quarter, (ii) a schedule of all asset dispositions, if any, (iii) a schedule of Distributions made, (iv) a schedule of the status objections to Claims, (v) a schedule of any settlements of Causes of Action, and (vi) a list of payments made to all fiduciaries and professionals.

J.   *Directors and Officers of the Debtors*

On and after the Effective Date, the board of managers or directors of the Debtors shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors.

K.      *Books and Records*

Upon the Effective Date, the Grinding Chapter 11 Trustee shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of Watson Grinding. Any such books and records transferred by Watson Grinding shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred under the Plan for the duration of the Liquidating Trust, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. For purposes of this paragraph, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of Watson Grinding maintained by or in possession of third parties and all the claims and rights of Watson Grinding in and to its books and records, wherever located.

After the Effective Date, the Watson Valve Trustee shall provide the Liquidating Trustee with full access to the books and records of Watson Valve. Any such books and records provided by the Watson Valve Trustee shall be protected by the attorney-client privilege. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records obtained under the Plan for the duration of the Liquidating Trust, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. For purposes of this paragraph, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of Watson Valve maintained by or in possession of third parties and all the claims and rights of Watson Valve in and to its books and records, wherever located.

L.      *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Grinding Chapter 11 Trustee and Valve Chapter 11 Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidating Trustee and Watson Valve Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

M.      *Employee Agreements*

All employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place with the Debtors' employees that have not been previously terminated shall be terminated as of the Effective Date.

N.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee,

57

intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

O.   *Duration of the Liquidating Trust and Watson Valve Liquidating Trust*

The Liquidating Trust shall have an initial term of five (5) years from the Effective Date, *provided*, *however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Liquidating Trust or Watson Valve Liquidating Trust is necessary to accomplish the purpose of the Liquidating Trust, the Liquidating Trustee shall be authorized, on two or more successive occasions, to extend the Liquidating Trust for six (6) months or longer *provided* that such extension is formally requested by motion before the Bankruptcy Court prior to the beginning of such requested, extended term. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement.  The provisions of this paragraph apply with equal force to the Watson Valve Liquidating Trust and the Watson Valve Trustee.

P.   *Wind Down of Liquidating Trust and Watson Valve Liquidating Trust*

After the termination of the Liquidating Trust and for the purpose of liquidating and winding down the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until its duties have been fully performed. Upon termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of one year the books, records, lists of the Liquidating Trust Beneficiaries, the registry of claims and Liquidating Trust Beneficiaries, and other documents and files that have been delivered to or created by the Liquidating Trustee. Except as otherwise specifically provided herein, upon the termination of the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust's professionals and agents shall have no further duties or obligations hereunder.  The provisions of this paragraph apply with equal force to the Watson Valve Liquidating Trust and the Watson Valve Trustee.

## ARTICLE XII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.   *Treatment of Executory Contracts and Unexpired Leases (Other than Insurance Policies)*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts, other and insurance policies, and Unexpired Leases that (1) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, and (2) have not expired under their own terms prior to the Effective Date.

10834324v7

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.    *Assignment of Insurance Policies to the Liquidating Trust*

As of the Effective Date, all insurance policies to which Watson Valve or Watson Grinding are a party shall, to the extent they constitute an Executory Contract, be assumed and assigned to the Liquidating Trust.

C.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

D.    *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee or Watson Valve Trustee, as applicable, within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 5 General Unsecured Claim if filed against Watson Grinding and a Class 12 General Unsecured Claim if filed against Watson Valve. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Trust, without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity.**

E.    *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Grinding Chapter 11 Trustee, Valve Chapter 11 Trustee, Committee or the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or Estates have any liability thereunder.

# ARTICLE XIII.
# PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, and only after the funding of the Reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are

Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan and the Liquidating Trust Agreement and Watson Valve Liquidating Trust, as applicable. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Debtors' schedules of liabilities as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; (iii) is the subject of a pending and unresolved claim objection; or (iv) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

Absent agreement from Western and Matheson, no distributions from the Grinding Insurance Recovery or the Valve Insurance Recovery shall be made prior to the earlier of: (i) the entry of a non-appealable order of a final judgment that fully resolves Western's and Matheson's liability for the Explosion and their indemnity rights in at least one of the Removed Cases; or (ii) the entry of a non-appealable order holding that neither Western nor Matheson is entitled to recover against the Watson entities' insurance proceeds (the "Precedent Event"). Following the Precedent Event, or in the event that all of the Removed Cases are resolved as to Western and Matheson without a Final judgment regarding Western and Matheson's liability for the Explosion and indemnity rights, the Liquidating Trustee or the Watson Valve Trustee shall obtain approval from the Bankruptcy Court for any distributions from the Grinding Insurance Recovery or the Valve Insurance Recovery through a motion to compromise pursuant to Bankruptcy Rule 9019. Western and Matheson reserve all rights to object to any proposed motion to compromise to allow a distribution. Solely in the event that the insurers for either Grinding or Valve tender all policy proceeds for distribution, and a final judgment regarding Western's and Matheson's liability for the Explosion and their indemnity rights has been entered in a court of competent jurisdiction, Western and Matheson consent to the Bankruptcy Court adjudicating their legal right to distributions from the Grinding Insurance Recovery and the Valve Insurance Recovery.

The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries, and the Watson Valve Trustee shall make Distributions to the Watson Valve Liquidating Trust Beneficiaries, consistent with the requirements of this Plan and the Liquidating Trust Agreement and Watson Valve Liquidating Trust Agreement, as applicable. In connection with each Distribution to each class of Claims, the Liquidating Trustee and Watson Valve Trustee shall withhold from property that would otherwise be distributed to Claims in that class, the Disputed Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed in their Disputed Claim Amount. The Liquidating Trustee or Watson Valve Trustee may request, if necessary, estimation for any Disputed Claim, other than a January 24 Claim, that is contingent or unliquidated, and shall withhold the applicable portion of the Disputed Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

The Plan Supplement shall include a schedule of the Reserves to be established and the Allowed Claims to be paid by the Watson Valve Trustee on the Effective Date which shall be  in a form mutually acceptable to John Watson and the Valve Chapter 11 Trustee.

2.    Entitlement to Distributions

On and after the Effective Date, the Liquidating Trustee and the Watson Valve Trustee shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date and the plaintiffs (including any third party plaintiffs) in the Removed Lawsuits. Accordingly, the Liquidating Trustee and Watson Valve Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B.    *Liquidating Trustee and Watson Valve Trustee to make Distributions*

All Distributions under the Plan shall be made by the Liquidating Trustee and Watson Valve Trustee in accordance with this Plan. The Liquidating Trustee and Watson Valve Trustee shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

C.    *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If, as of the date of the final Distribution, the Liquidating Trustee or Watson Valve Trustee is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article XIII.E.2 of this Plan.

D.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Liquidating Trustee or Watson Valve Trustee, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim

becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

3.     Distributions to Counsel for Holders of Certain January 24 Claims

The Liquidating Trustee shall make distributions to Holders of Class 4 January 24 Claims only after all such claims have been liquidated either through the Special Master or entry of a final judgment in a court of competent jurisdiction.  In making distributions to January 24 Claims asserted in the Removed Lawsuits, the Liquidating Trustee shall make distributions to plaintiffs' counsel in each lawsuit based on the Allowed amount of January 24 Claims asserted in that lawsuit.  It will then be the obligation of plaintiffs' counsel to make the appropriate distributions to the Holders of January 24 Claims that they represent.

E.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors, the Watson Valve Trustee or Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Liquidating Trustee and Watson Valve Trustee have not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtors, the Watson Valve Trustee, or the Liquidating Trustee at the time of the Distribution.

2.     Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee or Watson Valve Trustee has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trustee or Watson Valve Trustee, as applicable (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

3.     Failure to Present Checks

Checks issued by the Liquidating Trustee or Watson Valve Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Trustee or Watson Valve Trustee by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check

that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors and the Estates, the Liquidating Trustee, the Liquidating Trust, the Watson Valve Trustee and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Trust, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Liquidating Trustee or Watson Valve Trustee to attempt to locate any Holder of an Allowed Claim.

F.      *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Liquidating Trustee and Watson Valve Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee and Watson Valve Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee and Watson Valve Trustee reserve the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Liquidating Trustee and Watson Valve Trustee shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

G.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Watson Valve Trustee or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not either of the liquidating trusts. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not either of the liquidating trusts, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Liquidating Trustee or Watson Valve Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the Allowed amount of such Claim.

2.      Applicability and Preservation of Insurance Policies

Nothing contained in this Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including

10834324v7

insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

3. Third Party Coverage Claims

Nothing contained in this Plan shall constitute or be deemed a waiver of any third party coverage claims any Entity may become entitled to assert, including a claim in any court of competent jurisdiction seeking a determination of coverage under the Debtors' insurance policies, including but not limited to a suit seeking a declaration that a Final Judgment against the Debtors from a court of competent jurisdiction entitles such party to directly assert a right to the Grinding Insurance Recovery or the Valve Insurance Recovery (the "Third Party Coverage Claims"). To the extent necessary, such suit asserting Third Party Coverage Claims shall name the Debtors as a party as required by law. For the avoidance of doubt, such suit asserting Third Party Coverage Claims shall not be subject to the Claims Bar Date.

H. *Claims Already Satisfied*

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Liquidating Trustee is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to update the official claims register maintained in the Chapter 11 Cases in accordance with any Claims satisfied or reduced pursuant to the Plan.

I. *Allocation of Plan Distributions between Principal and Interest*

Each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion.

J. *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

# ARTICLE XIV.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code; provided, however, that January 24 Claims which are asserted in the Removed Lawsuits shall only be Allowed based on a (i) a final determination by the Special Master, (ii) a final adjudication by a court of competent jurisdiction, or (iii) any other process approved by a court of competent jurisdiction.  For the avoidance of doubt, the Bankruptcy Court does not retain jurisdiction to determine the Allowed amount of any January 24 Claim or Indemnity Claim that is asserted in one of the Removed Lawsuits.

Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Liquidating Trust and the Watson Valve Liquidating Trust after Consummation will have and retain any and all rights, objections, and defenses the Debtors or their Estates had with respect to any Claim as of the Petition Date.

**Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order or by agreement of the Liquidating Trustee or Watson Valve Trustee.**

B.      *Compromise regarding Allowance and Disallowance of Certain Claims*

As part of the global compromise embodied in this plan, (i) the proof of claim filed by John Watson against Watson Grinding (Claim No. 7) shall be allowed in the face amount of $1,199,258.00, and (ii) the rejection damage claims filed by Robert and Judy White and Betty Sue Watson (Claim Nos. 403 and 404) shall be disallowed.

C.      *Limited Appointment of Grinding Plan Agent and Prosecution of Objections to Claims*

On the Effective Date, the Grinding Chapter 11 Trustee shall be appointed as a plan agent (the "Plan Agent") for the limited purpose of prosecuting objections to claims as set forth below and making disbursements to Holders of Claims in Classes 1, 2, and 5. Following the payment of all Allowed Claims in Class 1, 2, and 5, the Plan Agent shall disburse all Cash in her possession to the Liquidating Trust and such Cash shall become Liquidating Trust Cash.  After she has disbursed all remaining Cash in her possession to the Liquidating Trust, the Plan Agent shall have no further duties or obligations under this Plan.

The Plan Agent, Liquidating Trustee and the Oversight Committee shall have the authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Class 1, 2, 4, 5, and 6 Claims as permitted under this Plan. Additionally, the Liquidating Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Class 3 Claims which were not asserted in one of the Removed Lawsuits. From and after the Effective Date and subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any such Disputed Claim.

The Watson Valve Trustee shall have the authority to File, settle, compromise, withdraw or litigate to judgment any objections to Class 8, 9, 11, 12 and 13 Claims. Additionally, the Watson Valve Trustee shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Class 10 Claims which were not also asserted in one or more of the Removed Lawsuits.

John Watson will have concurrent authority with the Watson Valve Trustee to file objections to General Unsecured Claims against Watson Valve. Any savings achieved by John Watson during the claims adjudication process over the reserved face value of any claim shall be distributed (i) first, to reimburse John Watson for the actual costs incurred in objecting to such claim (such reimbursement amount subject to notice and opportunity for hearing); and (ii) second to holders of Interests in Valve on a Pro Rata basis based on ownership percentages (disbursement to equity holders subject to notice and opportunity for hearing). John Watson shall have 120 days following the Effective Date to file objections to Valve General Unsecured Claims, or such other deadline as may be established by the Bankruptcy Court. Any claims not objected to within such deadline or any claims, or part thereof, resolved in favor of the claim holder shall receive a prompt distribution on account of such Claim.

D.    *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee and Watson Valve Trustee (of John Watson on the limited basis set forth in the preceding paragraph) shall File all objections to Claims by no later than 120 days after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Liquidating Trustee shall have until 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Liquidating Trustee, the Watson Valve Trustee or John Watson determines that an extension of time is warranted, they may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to seek additional extensions from the Bankruptcy Court.

E.    *Estimation of Claims*

Except for January 24 Claims and Indemnity Claims which are asserted in a Removed Lawsuit, the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and, subject to the limitations of 28 U.S.C. § 157(b)(2)(B) and (O), the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of

66

any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.  Nothing in this Plan shall be deemed to limit or impair the Holder of a Claim from challenging any estimation proceeding, including on the basis that the Bankruptcy Court does not have jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

F.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

G.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Trust in the Liquidating Trustee's discretion, the Liquidating Trustee or Watson Valve Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date.

## ARTICLE XV.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.      All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.      A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Committee.

3.      The Confirmation Order shall provide that, among other things, the Liquidating Trustee and the Watson Valve Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

10834324v7

4.     All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.     All required consents, approvals, and authorizations, if any, have been obtained.

B.     *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article XV.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.     The Grinding Chapter 11 Trustee shall have fully funded the Reserves.

2.     The Court shall have entered a Final order on the motions to remand.

3.     The Confirmation Order shall be a Final Order in form and substance acceptable to the Plan Proponent. The Confirmation Order shall provide that, among other things, the Watson Valve Trustee and the Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.     The Liquidating Trust Agreement and the Watson Valve Liquidating Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

5.     All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.     *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article XV may be waived with the consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.     *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur within six months from the date the Plan was Filed, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Estates, any Holders or any other Entity in any respect.

68

# ARTICLE XVI.
# SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.  *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123(a)(5) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim.

Additionally, the Plan constitutes a motion to compromise, pursuant to Bankruptcy Rule 9019, all objections to the motions to remand filed by the Debtors and Western/Matheson and the motion to estimate claims and competing plan filed by John Watson.

In consideration for the Debtors and Western/Matheson agreeing to withdrawal their opposition to remand, the Committee has agreed that the Oversight Committee will consent to consolidation in an MDL proceeding and to recommend the MDL panel selection one of three specified judges.  The form of the Motion to Transfer, the MDL Recommendation, the case management order, and the Liquidating Trust Agreement all shall be reasonably acceptable, in both form and substance, to each of the Committee (or Oversight Committee as applicable), the Liquidating Trustee, the Watson Valve Trustee, and Western/Matheson, and each such parties shall use reasonable efforts to support approval of those documents by the relevant court.

In full and final satisfaction of Watson Grinding's and the January 24 Claimants' rights to recover against the Valve Cash, the Valve Chapter 11 Trustee shall transfer $1,000,000 of Valve Cash to the Liquidating Trust on the Effective Date; provided, however, that (i) Watson Grinding shall retain all rights of setoff, recoupment and counterclaims against the Valve Claims and Retained Causes of Action, and (ii) this compromise shall not impair the rights that Watson Grinding and the January 24 Claimants under any applicable insurance policies.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, the Estate and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided herein and in the Liquidating Trust Agreement, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

B.  *Exculpation*

**Notwithstanding anything contained in this Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Plan**

69

Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, the Disclosure Statement, or the Chapter 11 Cases, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtor, the Chapter 11 Case, or the confirmation or consummation of this Plan, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary), the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this Plan; or (ii) any Distribution made pursuant to this Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with this Plan. Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Liquidating Trustee or Watson Valve Trustee to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, or (iii) prevent or limit the ability of the Liquidating Trustee or Watson Valve Trustee to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party.

C.    *Injunction*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Valve Chapter 11 Trustee, the Grinding Chapter 11 Trustee, the Exculpated Parties, the Liquidating Trust, Liquidating Trustee, and the Watson Valve Trustee: (1) except for the Removed Lawsuits and Adversary Proceeding No. 20-3415 filed by Indian Harbor Insurance Company, commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to this Plan, which for the avoidance of doubt includes the Exculpated Claims set forth herein but expressly does not include the Removed Lawsuits.

70

D.      *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

E.      *Setoffs*

Except as otherwise expressly provided for in the Plan, the Debtors, Estates, the Watson Valve Trustee and the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that the Debtors and/or the Estates, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, Estates, Watson Valve Trustee, or Liquidating Trustee of any such Retained Causes of Action that the Debtors, Estates, Watson Valve Trustee, or Liquidating Trustee may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

F.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Grinding Chapter 11 Trustee or Valve Chapter 11 Trustee on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

G.      *Insurance Neutrality*

Nothing contained in this Plan, the Confirmation Order, or the Plan Supplement, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impair any insurers' legal, equitable or contractual rights or obligations in any respect. The rights of insurers shall be determined under their applicable policies.

## ARTICLE XVII.
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS OR THE ESTATES TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XVIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Estates, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests; provided, however, that the Bankruptcy Court shall have no jurisdiction to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any January 24 Claim that is asserted in one of the Removed Lawsuits, even if such Claimant also filed a proof of claim based on the Removed Lawsuit;

2.      adjudicate, decide, or resolve any disputes brought against an insurance carrier based on a failure to pay or wrongful denial of coverage following the determination of liability in the Removed Lawsuits;

3.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

4.      resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

5.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.      adjudicate, decide, or resolve any motions, applications or other contested matters involving the Debtors that may be pending on the Effective Date;

72

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Trust, and the Watson Valve Liquidating Trust and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan; provided, however, that the Bankruptcy Court shall have no jurisdiction over the Removed Lawsuits;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article XVI and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.      enter an order or final decree concluding or closing the Chapter 11 Cases;

14.      consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

15.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

16.      review and approve any settlements involving the Grinding Insurance Recovery, the Valve Insurance Recovery or a settlement that involves disbursement from the Liquidating Trust Cash or the Valve Cash.

17.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.      hear and determine matters concerning the conduct of the Oversight Committee, the Liquidating Trustee and the Watson Valve Trustee;

20.      enforce all orders previously entered by the Bankruptcy Court;

73

21.     determine whether causes exists for the removal of the Watson Valve Trustee or the Liquidating Trustee and to approve the Oversight Committee's selection of a replacement; and

22.     adjudicate all other matters over which the Bankruptcy Court has jurisdiction.

## ARTICLE XIX.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.     *Modifications and Amendments*

Subject to the limitations contained herein, the Plan Proponent reserves the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly reserves the right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Liquidating Trustee or Watson Valve Trustee.

B.     *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of the Plan*

The Plan Proponent reserves the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Plan Proponent revokes or withdraws this Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors, Estates or any other Entity; (y) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, or any other Entity.

D.       *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

# ARTICLE XX.
# MISCELLANEOUS PROVISIONS

A.       *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B.       *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Plan Proponent with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, the Estates, the Committee or its members with respect to the Holders of Claims or Interests before the Effective Date.

C.       *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponent; *provided*, *further*, that the Plan Proponent may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the Effective Date without the Debtors' consent, or after the Effective Date without the Liquidating Trustee's consent; and (3) nonseverable and mutually dependent.

D.       *Return of Security Deposits*

Unless the Liquidating Trustee or Watson Valve Trustee has agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits

provided by the Debtors to any Entity at any time after the Petition Date shall be returned to the Liquidating Trustee or Watson Valve Trustee within twenty-one (21) days after the Effective Date, without deduction or offset of any kind.

E.   *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

F.   *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

G.   *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponent will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponent and each of their members and their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

H.   *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponent may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

[Remainder of Page Left Intentionally Blank]

76

Dated: December 3, 2020.

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF JANUARY 24 CLAIMANTS**


By: */s/ Muhammad S. Aziz*

      Muhammad S. Aziz
      Committee Co-Chair

By: */s/ Robert S. Kwok*

      Robert S. Kwok
      Committee Co-Chair

**EXHIBIT**

**LIQUIDATION ANALYSIS**

**Watson Grinding Hypothetical Liquidation Analysis**

|  | Chapter 7 | Chapter 11 |  |
|---|---|---|---|
| **Estimated Liquidating Trust Cash at the Effective Date** | $ 6,910,704.48 | $ 6,910,704.48 | See note 1 |
|  |  |  |  |
| Chapter 7 Trustee Fee (3%) | $ (987,321.13) | $ - | See note 2 |
| Chapter 7 Trustee Professional Fees | $ (400,000.00) | $ - |  |
| Liquidating Trustee Fees | $ - | $ (200,000.00) |  |
| Liquidating Trustee Professionals | $ - | $ (200,000.00) |  |
| Chapter 11 Administrative Claims | $ (1,591,079.99) | $ (1,591,079.99) |  |
| Priority Tax Claims | $ - | $ - |  |
| Class 1 - Secured Claims | $ (27,000.00) | $ (27,000.00) |  |
| Class 2 - Other Priority Claims | $ (261,163.55) | $ (261,163.55) |  |
| Receipt of Settlement From Valve Estate | $ - | $ 1,000,000.00 |  |
| **Net Proceeds Available from Non-Insurance Assets** | $ 3,644,139.81 | $ 5,631,460.94 |  |

|  | Chapter 7 | Chapter 11 |
|---|---|---|
| Recovery on insurance proceeds | $ 26,000,000.00 | $ 26,000,000.00 |
| Special Master Fees | $ - | $ (50,000.00) |
| **Proceeds Available from Insurance Assets** | $ 26,000,000.00 | $ 25,950,000.00 |

| **Estimated Recovery Under Chapter 11 Plan** | Estimated Claims | Dollar Recovery | % Recovery |  |
|---|---|---|---|---|
| Class 3 - January 24 Claims Recovery | $ 375,000,000.00 | $ 26,270,460.40 | 7.01% | See note 3 |
| Class 4 - Minor Damage Claims | $ 500,000.00 | $ 500,000.00 | 40% to 100% |  |
| Class 5 - General Unsecured Claims | $ 4,811,000.54 | $ 4,811,000.54 | 100.00% |  |
| Class 6 - Indemnity Claims | $ - | $ - |  | See note 4 |

| **Estimated Recovery in Hypothetical Chapter 7** | Estimated Claims | Dollar Recovery | % Recovery |
|---|---|---|---|
| Class 3 - January 24 Claims Recovery | $ 375,000,000.00 | $ 29,603,677.94 | 7.89% |
| Class 4 - Minor Damage Claims | $ 500,000.00 | $ 5,162.86 | 1.03% |
| Class 5 - General Unsecured Claims | $ 3,418,550.00 | $ 35,299.01 | 1.03% |
| Class 6 - Indemnity Claims | $ - | $ - |  |

Note 1 - Estimate based on Watson Grinding Chapter 11 Trustee best current estimate.
Note 2 - Assumes $26 million of insurance proceeds will pass through chapter 7 estate.
    This liquidation analysis is not an admission that the trustee fee would apply to the insurance proceeds in a chapter 7.
    The Committee and all creditors reserve all objections in the event of conversion.
Note 3 - January 24 Claims amount is the mid-point between estimated damages of $250 million to $500 million
Note 4 - The amount of indemnity claims are unknown at this time.
    If Indemnity Claims can establish right to participate in insurance recovery, their perecentage recovery will be the same as Class 3.
    The Committee and all creditors reserve all objections to the allowance and amount of Indemnity Claims.

**Watson Valve Hypothetical Liquidation Analysis**

| | | Chapter 7 | Chapter 11 | |
|---|---|---|---|---|
| Estimated Liquidating Trust Cash at the Effective Date | | $    5,828,944.00 | $    5,828,944.00 | See note 1 |
| | | | | |
| Chapter 7 Trustee Fee (3%) | | $    (954,868.32) | $                  - | See note 2 |
| Chapter 7 Trustee Professional Fees | | $      (85,000.00) | $                  - | |
| Watson Valve Chapter 11 Trustee Fees | | $    (254,044.00) | $    (254,044.00) | |
| Watson Valve Chapter 11 Trustee Professionals | | $    (281,452.00) | $    (366,452.00) | |
| Watson Valve Liquidating Trustee Reserve | | | $      (50,000.00) | |
| Chapter 11 Administrative Claims | | $    (575,158.00) | $    (575,158.00) | |
| Class 8 - Secured Claims | | $        (8,165.97) | $        (8,165.97) | |
| Class 9 - Other Priority Claims | | $      (50,000.00) | $      (50,000.00) | |
| Estimated 2020 Income Taxes | | $  (1,200,000.00) | $  (1,200,000.00) | |
| Settlement of Matheson Indemnity Claim | | $                  - | $  (1,000,000.00) | |
| Net Proceeds Available from Non-Insurance Assets | | $    2,420,255.71 | $    2,325,124.03 | |

| | | Chapter 7 | Chapter 11 | |
|---|---|---|---|---|
| Recovery on insurance proceeds | | $  26,000,000.00 | $  26,000,000.00 | |
| Special Master Fees | | $                  - | $      (50,000.00) | |
| Proceeds Available from Insurance Assets | | $  26,000,000.00 | $  25,950,000.00 | |

| Estimated Recovery Under Chapter 11 Plan | Estimated Claims | Dollar Recovery | % Recovery | |
|---|---|---|---|---|
| Class 10 - January 24 Claims Recovery | $  375,000,000.00 | $  25,950,000.00 | 6.92% | See note 3 |
| Class 11 - Minor Damage Claims | $      500,000.00 | $                  - | 40% to 100% | |
| Class 12 - General Unsecured Claims | $    1,318,010.00 | $    1,318,010.00 | 100.00% | |
| Class 13 - Indemnity Claims | - | $                  - | - | See note 4 |
| Class 14 - Equity Interests | n/a | $    1,007,114.03 | n/a | |

| Estimated Recovery in Hypothetical Chapter 7 | Estimated Claims | Dollar Recovery | % Recovery | |
|---|---|---|---|---|
| Class 10 - January 24 Claims Recovery | $  375,000,000.00 | $  28,407,715.24 | 7.58% | |
| Class 11 - Minor Damage Claims | $      500,000.00 | $        3,448.95 | 0.69% | |
| Class 12 - General Unsecured Claims | $    1,318,010.00 | $        9,091.51 | 0.69% | |
| Class 13 - Indemnity Claims | | $                  - | | |
| Class 14 - Equity Interests | n/a | $                  - | n/a | |

Note 1 - Estimate based on Watson Valve Chapter 11 Trustee best current estimate.
Note 2 - Assumes $13 million of insurance proceeds will pass through chapter 7 estate.
        This liquidation analysis is not an admission that the trustee fee would apply to the insurance proceeds in a chapter 7.
        The Committee and all creditors reserve all objections in the event of conversion.
Note 3 - Estimated claims amount is the mid-point between estimated damages of $250 million to $500 million
Note 4 - The amount of indemnity claims are unknown at this time.
        If indemnity claims can establish right to participate in insurance recovery, their percentage recovery will be the same as Class 10.
        Assumes that there is no recovery from the Valve Claims and Retained Causes of Action

# EXHIBIT B

### Schedule of Reserves (1)

| Watson Grinding Payment | Amount |
|---|---|
| Watson Grinding Liquidating Trust | $1,000,000 |
| **Administrative Reserves** | |
| Trustee (Post-Confirmation) Professional Fees (2) | $85,000 |
| US Trustee Quarterly Fees (2) | $14,950 |
| Chapter 11 Trustee Fees | $254,044 |
| Chapter 11 Professional Fees | $281,452 |
| Plan Administrator Fee Reserve (2) | $50,000 |
| Misc. Expenses: accounting, etc. (2) | $100,000 |
| Estimated Potential Remaining Tax Liabilities (3) | $235,000 |
| **Claim Reserves** | |
| Secured Claims | $8,166 |
| Other Priority Claims | $50,000 |
| General Unsecured Claims | $1,318,010 |
| Lease rejection damages | $300,000 |
| **Total Reserves and Payments** (4) | **$3,696,622** |

(1) Certain of the liabilities associated with these reserves may be paid prior to the Effective Date of the Plan in which case the reserve will not be established if the liability has already been paid.

(2) Any of these reserves may be used to pay trustee compensation, trustee professional fees, E&O insurance, preparation of tax returns, taxes, preparation of distribution checks, and U.S. Trustee fees.

(3) The Valve Chapter 11 Trustee has made an estimated 2020 tax payment in the amount of $565,000. This remaining amount includes
$185,000 for potential remaining 2020 income tax liability plus $50,000 for potential 2020 and 2021 Texas franchise tax liability.

(4) This schedule of Watson Valve Reserves is not intended to include amounts to be used to pay United States Trustee fees from the Valve Insurance Recovery or the proceeds of the Valve Claims and

Retained Causes of Action. The Valve Trustee will take every effort to have such payments made directly to the Holders of such Claims whenever possible. In the event that there are United States Trustee fees due as a result of the distribution of proceeds from the Valve Insurance Recovery or the Valve Claims and Retained Causes of Action, the Liquidating Trustee is authorized to withhold the amounts necessary to pay the resulting United States Trustee fees prior to making such distribution.